**FILED**
U.S. District Court
District of Kansas

MAR 1 5 2019

Clerk, U.S. District Court
By _____ Deputy Clerk


Bruce Leichty
c/o Bruce Leichty, A PC
220 W. Grand Avenue
Escondido, CA  92025
(760) 484-2467
(951) 676-7462 (fax)
leichty@sbcglobal.net
1925C.311
In Pro Per

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRUCE LEICHTY, | Case No. 6:19-cv-01064-JWB-KGG |
| Plaintiff, | |
| | CIVIL COMPLAINT FOR MONEY DAMAGES, DECLARATORY RELIEF AND |
| v. | INJUNCTIVE RELIEF: ARISING OUT OF BREACH OF CONTRACT (LICENSE AGREEMENT); INTENTIONAL TORT OR |
| BETHEL COLLEGE; MENNONITE CHURCH USA; CITY OF NORTH NEWTON, KANSAS, HARVEY COUNTY; LANCASTER MENNONITE HISTORICAL SOCIETY; JOHN THIESSEN; JOEL NOFZIGER; | NEGLIGENCE IN THE ALTERNATIVE RE: FALSE ARREST AND FALSE IMPRISONMENT; DEFAMATION INCL. FALSE ALLEGATION OF TRESPASS; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; OR NEGLIGENT INFLICTION OF EMOTION DISTRESS; AND FOR VIOLATION OF FEDERAL CIVIL |
| Defendants. | RIGHTS (42 U.S.C. Section 1983) |

Plaintiff BRUCE LEICHTY ("Plaintiff"), hereby complains of
Defendants BETHEL COLLEGE, MENNONITE CHURCH USA; CITY OF NORTH
NEWTON, KANSAS; HARVEY COUNTY; LANCASTER MENNONITE HISTORICAL
SOCIETY; JOHN THIESSEN; and JOEL NOFZIGER (collectively
"Defendants") and alleges as follows:

JURISDICTION AND VENUE

1.   This court has jurisdiction over this action under 28 U.S.C. Section 1332 pertaining to civil actions where the amount in controversy exceeds $75,000 exclusive of interest and costs and where the controversy or dispute is between the citizens of different states; and under 42 U.S.C. Section 1983 based on Plaintiff's allegations that government defendants violated his federal civil rights.

2.   Plaintiff is an individual who is a resident and citizen of the State of California.

3.   Defendant Bethel College is a citizen of the State of Kansas and is incorporated in and has its principal place of business in the State of Kansas.

4.   Defendant Mennonite Church USA is a citizen of the State of Indiana and is incorporated in and has its principal place of business in the State of Indiana.

5.   Defendant City of North Newton, Kansas is a citizen of the States of Kansas and is a governmental entity located in the State of Kansas.

6.   Defendant Harvey County is a citizen of the State of Kansas and is a governmental entity located in the State of Kansas.

7.   Defendant Lancaster Mennonite Historical Society is a citizen of the State of Pennsylvania and is incorporated in and has its principal place of business in the State of Pennsylvania.

/////

8.   Defendant John Thiessen is an individual who is a citizen and resident of the State of Kansas.

9.   Defendant Joel Nofziger is an individual who is a citizen and resident of the State of Pennsylvania.

10.   As noted below, the Plaintiff has suffered damages exceeding $75,000, exclusive of interest and costs, as a result of his false arrest and false imprisonment by government defendants City of North Newton and Harvey County, initiated by and arising from communication of false information about Plaintiff and defamation of Plaintiff's character by Mennonite-related defendants Bethel College and Mennonite Church USA, and from additional defamatory statements made by Lancaster Mennonite Historical Society, and Thiessen and Nofziger, and as a result of the breach of contract/license agreement with Plaintiff by Defendants Bethel College and Mennonite Church USA, some of which conduct also deprived Plaintiff of his federal civil rights and all of which caused him significant emotional distress and related injuries.

11.   This action is not subject to the Kansas Tort Claims Act inasmuch as the negligence claims made in this action seek relief only as to the private party defendants, and the only claims made against the government defendants are as a matter of fact or law for intentional torts or pursuant to federal law, namely 42 U.S.C. Section 1983.

12.   No claims against the government defendants herein have been presented for resolution under the Kansas Administrative

Procedures Act ("APA") because no such requirement exists under the APA or applicable Kansas law, and because in addition to being sued for intentional tort the government defendants are being sued under the federal civil rights cause of action found at 42 U.S.C. Section 1983.

13.    Neither this cause or any of the causes of action herein or a substantially equivalent complaint has previously been filed in this court.

## GENERAL ALLEGATIONS

14.    At some point weeks before March 15, 2018, Plaintiff registered for a conference titled "Mennonites and the Holocaust" sponsored by Bethel College ("College") and Mennonite Church USA ("MCUSA") scheduled entirely for the campus of Bethel College, North Newton, Kansas March 16-17, 2018 (the "Conference").

15.    Plaintiff is a citizen of the United States who was at the time of his trip to Kansas to attend the Conference was 63 years of age.

16.    Plaintiff as of his arrival in Kansas to attend the Conference had never been arrested and had no criminal record.

17.    Plaintiff as of his arrival in Kansas was a member of the California Bar in good standing, without any disciplinary record, and had practiced law as a private practitioner for over 30 years, although never in Kansas.

18.    Plaintiff was as of the time of the Conference a member of a congregation affiliated with Mennonite Church USA and at one

time had been enrolled in a class at Bethel College, where he has done research in the on-campus archives from year to year over the past couple decades, facts known to Defendants Bethel College and MCUSA and/or their agents and representatives.

19.   Prior to his trip to the Conference, Plaintiff was aware that one or more members of the Bethel College history faculty had been among the leading spokespersons in the United States decrying what they contended was propaganda used in the United States to support past wars, and on that basis and other bases, Plaintiff believed that Bethel College was an ardent advocate for and/or protector of for the right to dissent and free speech, especially when it came to war-related controversy.

20.   Plaintiff's registration for the Conference was accepted and he was prior to the start of the Conference issued a badge and conference materials by Defendants College and MCUSA, the sponsors of the Conference (collectively, "Sponsors") confirming his right to be present at and attend the Conference.

21.   Plaintiff by his act of paying the Conference registration of $100 and by the Sponsors' act of issuing him a badge and materials was effectively made a licensee who was allowed to participate in the Conference and be present on the campus of College for the duration of the Conference.

22.   Alternatively to Paragraph 21 above, Plaintiff by his act of paying the Conference registration of $100 and by the Sponsors' act of issuing him a badge and materials was effectively made a licensee who was allowed to participate in the

Conference and be present on the campus for the duration of the Conference, at least absent any violation on Plaintiff's part of any announced or written rules for the Conference made available to Conference registrants or failure to comply with said announced or written rules.

23.    Alternatively to Paragraphs 21 and 22 above, or in addition thereto, Plaintiff by his act of paying the Conference registration of $100 and by the Sponsors' act of issuing him a badge and materials entered into a binding contract for consideration allowing him to participate in the Conference and be present on the campus for the duration of the Conference, at least absent any violation on Plaintiff's part of any announced or written rules for the Conference made available to Conference registrants or failure to comply with said announced or written rules.

24.    In the expectation of his permitted participation as a registrant at the Conference, Plaintiff incurred significant expenses in order to make the trip from his home in Temecula, California to central Kansas, including to engage in a part-day of pre-conference research on Mennonites and the Holocaust at the archives located on the campus of Bethel College, where Plaintiff was a known researcher.

25.    In addition to paying the Conference registration fee, Plaintiff paid for round trip airfare from southern California to central Kansas and for related airport parking charges and rental car expense, and for his lodging for the four (4) days and nights

he had planned to be in Kansas in connection with his attendance at the Conference, having expended the amount of $1,500 or its equivalent subject to further proof.

26.  In order to be able to attend the Conference Plaintiff, an attorney licensed in California whose past practice has extended to multiple federal jurisdictions and admission to the United States Supreme Court, also sacrificed billable hours or their equivalent which he would have otherwise been able to devote to one or more of his legal cases, consisting of at least two full days of time, or at least 10 hours of billable time considering Plaintiff's case load.  At Plaintiff's then-hourly rate of $250, Plaintiff sacrificed income of no less than $2,500 to be able to attend the Conference.

27.  In anticipation of dialogue with Conference registrants Plaintiff also obtained and purchased a large quantity of pamphlets and books that he intended to hand out to interested registrants at the Conference, including Heddesheimer: The First Holocaust, and Mattogno, Auschwitz: A Three-Quarter Century of Propaganda, at a cost to Plaintiff of some $300.

28.  At the Conference, Plaintiff anticipated that there would be times for mingling with registrants, informal conversations with registrants, and questions and comments from registrants at the end of formal sessions, as there in fact were.

29.  At all times prior to the Conference, Plaintiff intended to respect the academic research that had gone into the Conference, subject to the kind of evaluation and testing that is

allowed by participants conducting themselves in a civil manner at such a conference, and at all times viewed himself as a person who could offer to interested registrants--particularly persons with a history of championing the rights of minorities and dissenters--additional overlooked perspectives and resources on the subject of "Mennonites and the Holocaust" or the Holocaust generally, as opportunity presented itself at the Conference without violating any rules or regulations, and at a separate event he had planned for a location near the College.

30.   Plaintiff at no time prior to the Conference or while attending the Conference harbored or held a motivation or intent to disrupt the Conference or interfere with any presentation or any registrant's question or comment.

31.   Plaintiff in fact did not disrupt the Conference or interfere with any presentation or any question or comments by a registrant.

32.   Plaintiff at no time prior to the Conference or whlie attending the Conference harbored or held any motivation or intent to violate any rules or regulations associated with the Conference, although he had not been made aware of any explicit rules or regulations.

33.   Plaintiff at no time prior to arriving at the Conference or prior to the first presentation was made aware of any explicit rules or was given any written rules restricting the conduct of registrants at the Conference.

34.   Plaintiff had invited two self-identified professional

individuals of Jewish origin or identity to take part in the Conference with him as registrants; and, on the side, to make their own presentation titled "Two Jewish Revisionists Consider the Holocaust," at a community room in North Newton near Bethel College rented by Plaintiff on the evening of March 16 at a time when no other activity was planned.

35.  Due to a mix-up, Plaintiff's two guests had not pre-registered for the Conference, and they were denied by Sponsors the ability upon their arrival to the College to register for the first day of the Conference, even though they were willing to pay the normal registration and forego any meals that were part of the Conference, and even though there was always ample space available in the lecture hall where the presentations were made.

36.  The Conference representative who denied them the right to register, Mark Jantzen, agreed that the issue of the registration of Plaintiff's guests could be revisited the following day since they had traveled from New York and Michigan respectively; and notwithstanding their exclusion from most of the events planned for the first day of the Conference March 16, Plaintiff's guests attended certain sessions open to the public, and made their own presentation off campus as planned on the evening of March 16.

37.  Plaintiff was prevented by the Conference sponsors upon his arrival at the Conference from handing out flyers, pamphlets or books in the foyer outside the lecture hall where the sessions were to be held, which flyers contained information about the

off-campus presentation by his guests, despite the fact that there had been no rules announced to him prohibiting distribution of any materials by registrants to other registrants.

38.   On information and belief, there were no rules announced in writing to registrants or anyone else prior to the Conference prohibiting distribution of any materials to other registrants.

39.   On information and belief, there were no rules announced to registrants that prohibited distribution of any materials to other registrants, prior to Plaintiff being confronted by Sponsors in the foyer before the opening session on March 16.

40.   When confronted by Conference sponsors during the course of distributing flyers on the morning of March 16, 2018, and as Plaintiff politely asserted what he regarded as his rights as a Conference registrant on a college campus (and particularly this campus of his own dissent-friendly religious denomination), Plaintiff was threatened with arrest, and a law enforcement officer from the City of North Newton was called to the scene, after which Plaintiff consented to refrain from distributing materials in exchange for his ability to remain at the Conference.

41.   Plaintiff thereafter discontinued distribution to registrants of any flyers or books and at no time thereafter initiated any distribution to registrants of any flyers or books.

42.   As a consequence of the above-referenced March 16

conversation that he was engaged in with Conference sponsors or
their representatives about his distribution of flyers in the
foyer, Plaintiff missed the opening remarks of the Conference
made to all or most of the registrants for the Conference,
assembled in the lecture hall.

43.    Plaintiff is informed and believes and thereupon
alleges that one of the representatives of the Sponsors and
employees of the College, John Thiessen, announced at the opening
session to the assembled registrants that there was a "Holocaust
denier" present at the Conference who had disrupted the
Conference or would or might disrupt the Conference.

44.    On information and belief, Thiessen was referring to
Plaintiff.

45.    On information and belief, there was no one other than
Plaintiff who registered for the Conference who had identified
himself with revisionist views on the Holocaust, as Plaintiff had
in the context of his flyer.

46.    Plaintiff was not on March 16, 2018 and has never been
and is not a "Holocaust denier."

47.    Plaintiff has never claimed that the pejorative label
"Holocaust denier" accurately describes him or that it accounts
for the complexity or nuances of his historical views, nor has he
ever used the terms or label to describe himself or knowingly
allowed it to be used of him where he had any ability to rebut
the use.

48.    Plaintiff is aware that to be branded a "Holocaust

denier" is one of the most damning slurs that can be used against a person in contemporary United States parlance, since it implies both that there is incontrovertible evidence for the extermination by German authorities of six million noncombatant Jews (and others) during World War II and that Plaintiff is minimizing the suffering and death of those victims of war.

49.  After his encounter with Sponsors prior to the opening session on March 16, Plaintiff attended without incident the remainder of the morning sessions, conversing peaceably with a number of registrants including about the planned presentation of his guests off-campus later that day.

50.  Plaintiff's participation in the Conference was again challenged, however, at the last session of the afternoon on March 16, at a panel on "Mennonite Attitudes Toward the Holocaust," when he stood up and asked for the microphone as a question and answer session was drawing to a close.

51.  Plaintiff was recognized, given access to a microphone, and reminded to keep his comments "on point," after two other participants had made comments without posing any question to one of the panelists.

52.  At no time prior to taking the microphone as a registrant on the afternoon of March 16 had Plaintiff ever been told that any particular comment or substantive remark or question related to the Holocaust was prohibited.

53.  On information and belief, Sponsors had never announced to registrants generally that any comments or substantive remarks

or questions "off limits" about the Holocaust were prohibited during the Conference.

54.  Plaintiff when recognized with the microphone stated to those assembled that "just as there are different Mennonites attitudes toward the Holocaust, there are also different Jewish attitudes toward the Holocaust," and he began announcing that registrants could take a unique opportunity to hear a revisionist Jewish perspective on the Holocaust at a nearby location that evening; however, Plaintiff was angrily interrupted by session moderator Mark Jantzen who called for Plaintiff's microphone to be cut and began charging up the aisle toward the place where Leichty was standing, loudly calling by means of his mobile phone for police response.

55.  Plaintiff's microphone was cut, and Plaintiff was able to complete his announcement only amidst competing noise and a number of shouts and jeers of derision, inspired by the earlier statement of Thiessen about Plaintiff's presence at the conference, since the session leader also announced that the session had ended.

56.  Plaintiff at no time used inappropriate language or voiced any hatred or animus toward Jews or Sponsors during his brief interrupted comment.

57.  With the session ended, Plaintiff began to leave the room, but was approached by a representative of MCUSA, John Sharp, who had been seated nearby; Plaintiff was then accompanied to the parking lot by Sharp, at which point he and Sharp agreed

that they would meet at lunch the next day to discuss Plaintiff's agenda and concerns.

58.   As he was exiting the parking lot, Plaintiff also had an amicable exchange with North Newton police chief Randy Jordan (his second encounter with Jordan that day), when the Chief drove by Plaintiff's car, at which time Plaintiff told Chief Jordan through the rolled-down windows of the two vehicles that he was leaving the campus and was on his way to set up the community room in North Newton (adjacent to the police station) for the event that he would be moderating, an event whose scheduling was known to Chief Jordan.

59.   At no time either during the morning or afternoon of March 16 had Plaintiff been ordered to not return to the campus.

60.   At no time either during the morning or afternoon of March 16 was Plaintiff ever told that his permit or license to be present on the campus as a Conference registrant was terminated or revoked.

61.   At no time either during the morning or afternoon of March 16 was Plaintiff ever told that he had violated the terms of the agreement under which he had first been allowed to be a Conference registrant and participant, or under which he had continued to be recognized as such that morning.

62.   Plaintiff and his guests thereafter conversed amicably for about 20 minutes at the North Newton community room with Police Chief Jordan about the basis for their presentation and the anomaly of the College response, after setting up the room.

63.   At no time during Plaintiff's interactions with Chief Jordan did Chief Jordan ever tell Plaintiff that he had been ordered to not return to the Bethel College campus.

64.   After Plaintiff had moderated and his guests had civilly and peaceably made their 6 p.m. presentation to a small group assembled at the North Newton community room, Plaintiff and one of his guests returned to the College campus for the evening event, a film open to the public, after which Plaintiff spoke with Conference representative Jantzen asking him whether the Sponsors would now agree to allow his guests to register for and attend the sessions the next day (the last day of the two-day Conference).

65.   Plaintiff advised Jantzen as part of his request that he and his guests had already concluded their own presentation off campus, and that none of them would have a further event that they would try to announce to registrants.

66.   Instead of granting the request, Jantzen instead told Plaintiff, "Not only will they not be allowed to register, you are also out of the conference."

67.   Plaintiff did not know then and does not know now the capacity in which Jantzen spoke, other than that he was and remains employed as a professor of history at the College and that on March 16 he had held himself out as a representative for the Sponsors with power to determine who could register and receive a name tag or badge.

68.   When Jantzen made the above statement to Plaintiff,

Plaintiff in turn reminded Jantzen that Plaintiff was a previously admitted paid registrant, and that Plaintiff had a right to attend the Conference sessions.

69. At no time did Jantzen or anyone else tell Plaintiff at any time on March 16 that Plaintiff was ordered or had been ordered to not return to the campus, let alone use the word "trespass."

70. At no time did Jantzen or anyone else specify that Plaintiff was being prohibited from returning to the campus as distinguished from the Conference.

71. At no time did Jantzen or anyone else revoke or purport to revoke the invitation to Plaintiff from Sponsors' representative John Sharp to meet with Sharp for conversation at lunch on March 17.

72. Plaintiff as of the time of the conclusion of his last conversation with Jantzen on March 16 believed that any issue regarding his right to attend the Conference was a civil dispute, and not a criminal matter, particularly since at no time had the word "trespass" ever been used in Plaintiff's presence nor had he ever been told that he needed to leave the grounds of the College.

73. Because Plaintiff was distressed about Jantzen's comments for the remainder of March 16 and uneasy about what had happened and about the possibility that the College would attempt to unlawfully eject or detain him, Plaintiff resolved to and did go to the North Newton police station the following morning

(Saturday, March 17) before going to the campus, to seek clarification of his prospective status.

74. During his conversation of the morning of March 17 with the officer on duty, Officer Stovall, Plaintiff told Officer Stovall that the College had called the police chief the previous day and that Chief Jordan had come to the campus. Plaintiff explained to Officer Stovall the circumstances of the police involvement and indicated that he believed that College officials might also try to deny him the right to participate in the Conference that morning.

75. Plaintiff sought assurance from Officer Stovall that he would not be arrested if he attempted to assert his right to attend and remain at the Conference, and if he was unable to persuade Sponsors of his existing right, which Plaintiff believed was still in effect by virtue of his badge and paid registrant status and his belief that Sharp's invitation was still standing and that Jantzen lacked authority to unilaterally revoke his registration and particularly without any effort to make Plaintiff whole.

76. During the amicable conversation that ensued with Officer Stovall, Officer Stovall told Plaintiff that if College officials called police that morning, that Plaintiff would not be arrested, but that College officials did have the right to order Plaintiff off the campus at that time, and that Plaintiff would at such time be given the opportunity to freely leave, upon penalty of arrest if he returned.

77.   On information and belief, Officer Stovall never thereafter sought to communicate with or did communicate with North Newton Police Chief Jordan to confirm that Plaintiff had not already been ordered by him (or in his presence or with his knowledge) not to return to the campus on threat of arrest.

78.   Instead, when Officer Stovall was called by Sponsors to the College campus later that morning to execute an arrest of Plaintiff, Stovall accused Plaintiff of not giving him all the facts and stated that he had now found out that Plaintiff had already been "trespassed" the previous day, whereupon Plaintiff was arrested by Officer Stovall with the support of Harvey County law enforcement officers.

79.   Although Plaintiff protested that the Officer had his facts wrong and indicated prior to being handcuffed that he had already disclosed to Officer Stovall the circumstances of the police calls, and that he was willing to simply leave the College campus as Officer Stovall had assured him he could do, Plaintiff was told he was not free to leave and that he would be arrested.

80.   Plaintiff's arrest was accomplished both by Officer Stovall acting on behalf of the City of North Newton, and by law enforcement officers of Harvey County dressed in tactical gear.

81.   Once Plaintiff acknowledged that he was not free to leave, and notwithstanding Plaintiff's peaceable demeanor and statement that he would not resist arrest, Plaintiff had his hands cuffed behind his back against his wishes and was forced into an uncomfortable position in the rear seat of a vehicle

where he had no range of movement and had begun to worry about losing circulation in his hands by the time of the arrival of the vehicle at the Harvey County Detention Center.

82. On information and belief, Plaintiff's arrest was at the behest of and based on information given to Officer Stovall by Sponsors or College officials acting on behalf of Sponsors.

83. On information and belief, College and MCUSA or their representative gave false and defamatory information about Plaintiff to Officer Stovall and/or to Harvey County law enforcement officers before Plaintiff's arrest on March 17, namely that Plaintiff had appeared on the campus that morning in defiance of a prior warning issued to him on March 16 that he would be trespassing if he did.

84. Plaintiff believed he had the right to be present at the Conference and thus on the Bethel College campus when he appeared on the morning of March 17.

85. Plaintiff at no time believed that he had been told not to return to the campus prior to appearing at the Conference session the morning of March 17.

86. Plaintiff in fact had been told on March 16 by a representative of Sponsors, John Sharp, that Sharp would meet with him on campus during the lunch hour on March 17.

87. Plaintiff arrived on the Bethel College campus the morning of March 17 with the additional knowledge that he had confirmed with North Newton police that very morning that if his participation at the Conference was challenged by Sponsors, he

would be given a warning to leave the campus rather than be arrested, and that he would be allowed to freely leave, and that he would be subject to arrest only if he thereafter returned.

88.   As a consequence of his arrest, Plaintiff was jailed for 18 hours in a holding cell at the Harvey County Detention Center.

89.   As a consequence of his arrest, Plaintiff was fingerprinted and his arrest record became a public record.

90.   As a consequence of his arrest, Harvey County authorities took a "mug shot" photo of Plaintiff that is now available for viewing on the worldwide web by anyone searching Plaintiff's name.

91.   Plaintiff confirmed with Chief Randy Jordan after Plaintiff's release from jail, on a visit to the North Newton police station on Monday, March 19, that Chief Jordan had not "trespassed" him on Friday, March 16 and that he was not aware of any trespass warning given by the College to Plaintiff that date.

92.   On or about April 19, 2018, Plaintiff was informed by the a prosecutor representing the City of North Newton that he would not be prosecuted for any crime.

93.   Despite Plaintiff's efforts after his release from jail to seek accountability and a remedy from the chairman of the board of College, an individual known personally to Plaintiff, Plaintiff has been offered no avenue for obtaining accountability of Sponsors or any comprehensive remedy.

94.   Plaintiff rejected and refused to endorse a $100 check sent to him after the Conference without explanation by College.

95.   Subsequent to the Conference, statements about Plaintiff appeared on the worldwide web under the auspices of Anabaptist Historians, operated by one Joel Nofziger with the consent and sponsorship of Lancaster Mennonite Historical Society ("LMHS"), and were then picked up by other Mennonite publications.

96.   Nofziger was present at the Conference in his capacity as an employee of LMHS.

97.   Nofziger and LMHS published on the Anabaptist Historians website, http://anabaptisthistorians.org, which was the only church-related site or publication to mention the participation of Plaintiff at the Conference, at least the following false and defamatory statements of one Lisa Schirch contending that:

--"A Mennonite Holocaust denier, Bruce Leichty, attended parts of the conference."

--"Leichty has passed out anti-Semitic literature at Mennonite Church USA gatherings."

--"When Leichty began to ask an offensive question during the conference, the organizers removed him by calling campus security...."

98.   Although Plaintiff informed Nofziger that each of the above statements was false and made written demand on Nofziger and LMHS that Plaintiff be allowed a place of equal prominence on

the website of "Anabaptist Historians" to rebut the false statements published by Nofziger and LMHS and to provide web readers with the facts or opinions of Plaintiff placing Plaintiff's acts and comments into context, Nofziger refused.

99.   By refusing to allow Plaintiff to rebut the libelous statements noted above, Nofziger and LMHS adopted the statements of Schirch as their own.

100.   The Anabaptist Historians website is an influential source of news and information about Mennonite history and current events known to and accessed by decision-makers and persons of prominence throughout the Mennonite church and elsewhere, purporting to publish material from serious historians interested in factual accuracy.

101.   Although Plaintiff was willing to have new coverage and/or commentary of the events that occurred, he was insistent that any news coverage be fair and balanced and offer him the opportunity to comment on what had occurred; instead Plaintiff was not able to obtain coverage of any sort by any official Mennonite publication, and news of Plaintiff's arrest was in fact censored, with the consequence that the only institutional account available to interested persons was the defamatory account appearing on the Anabaptist Historians website and later picked up by another Mennonite publication.

WHEREFORE, Plaintiff seeks relief as follows:

FIRST CAUSE OF ACTION

MONEY DAMAGES FOR BREACH OF CONTRACT/LICENSE AGREEMENT

BETHEL COLLEGE & MCUSA

102.   Plaintiff refers to the allegations appearing in Paragraphs 1 through 101 above and hereby incorporates those allegations herein by reference as though they were set forth in full.

103.   Upon acceptance of Plaintiff's registration fee and no later than the time that Defendants College and MCUSA gave Plaintiff a Conference badge and materials, a contract was formed between Plaintiff and those two Defendants under which Plaintiff had the right to participate in the Conference and be present for all sessions of the Conference that were otherwise closed to the public.

104.   Upon acceptance of Plaintiff's registration fee and no later than the time that Defendants College and MCUSA gave Plaintiff a Conference badge and materials, a license agreement was formed between Plaintiff and those two Defendants under which Plaintiff had the right to participate in the Conference and be present on the campus of the College for all sessions of the Conference that were otherwise closed to the public.

105.   Plaintiff provided Sponsor Defendants with the only consideration requested by or necessary to Sponsor Defendants to create the contract or license agreement, namely his $100 registration fee.

106.   Plaintiff either had performed or was willing to

perform all terms and conditions of the contract or agreement formed between Plaintiff and Sponsor Defendants as of the time that Sponsor Defendants breached the contract or agreement.

107. Plaintiff had not violated any term of the contract or license agreement known to Plaintiff as of the time that Sponsor Defendants breached the contract or agreement.

108. Sponsor Defendants breached the contract with Plaintiff by telling him the evening of March 16, without giving him recourse, that he was excluded from the remainder of the Conference.

109. Alternatively to the contention set forth in Paragraph 108 above, Sponsor Defendants breached the contract with Plaintiff by telling him and by telling law enforcement officers on the morning of March 17, without giving him recourse, that he was trespassing on the property of the College thus precluding him from participating in the remainder of the Conference.

110. Alternatively to either of the contentions set forth in Paragraphs 108 or 109 above, Sponsor Defendants breached the license agreement with Plaintiff by telling him the evening of March 16, without giving him recourse, that he was excluded from the remainder of the Conference.

111. Alternatively to any of the contentions set forth in Paragraphs 108 through 110 above, Sponsor Defendants breached the license agreement with Plaintiff by telling him and advising law enforcement officers on the morning of March 17, without giving him recourse, and particularly without any cancellation of his

planned meeting with Conference representative Sharp, that he was trespassing on the property of the College thus precluding him from participating in the remainder of the Conference.

112.   As a result of the breach as described in any of the paragraphs 108 through 112 above, Plaintiff suffered damages in the form of the loss of the value of his registration fee, travel and lodging expenses and publishing expense all of which he had incurred in the reasonable expectation that the contract or license agreement would be fully performed by Sponsor Defendants, with a value of not less than $1,500 according to proof.

113.   As a result of the breach as described in any of the paragraphs 108 through 112 above, Plaintiff also suffered damages consisting of the revenue that he sacrificed in order to be able to fully attend and participate in the Conference, with a value of not less than $2,500 according to proof.

114.   As a result of the breach as described in any of the paragraphs 108 through 112 above, Plaintiff also suffered consequential damages in the form of false arrest and false imprisonment as set forth in more detail in the pleadings below, with a value of not less than $500,000 according to proof.

115.   Sponsor Defendants' breach of the contract or agreement was the direct and proximate cause of all of Plaintiff's injuries set forth above.

WHEREFORE, Plaintiff requests relief as hereinafter set forth.

SECOND CAUSE OF ACTION

MONEY DAMAGES FOR INTENTIONAL TORT - FALSE ARREST

BETHEL COLLEGE & MCUSA

116.    Plaintiff refers to the allegations appearing in Paragraphs 1 through 115 above and hereby incorporates those allegations herein by reference as though they were set forth in full.

117.    Defendants College and MCUSA acted intentionally to deprive Plaintiff of his freedom and liberty, knowing they had no good cause to do so, by making a false or incomplete report to law enforcement officers on the morning of March 17, 2018 leading to the arrest and imprisonment of Plaintiff.

118.    Defendants College and MCUSA knew when making their false report to law enforcement officers the morning of March 17, 2018, namely that Plaintiff was trespassing on College property, and by not retracting it upon being told that Plaintiff was on the campus partly in response to the specific invitation of a Conference representative, that this would lead to the arrest of Plaintiff.

119.    Plaintiff was not free to leave the College property at any time after Defendants College and MCUSA had made their false report to law enforcement officers.

120.    As a direct consequence of the false report made by College and MCUSA to law enforcement officers, Plaintiff was falsely arrested and subsequently held in jail against his will for 18 hours.

121.   Defendants acted with malice, recklessness and callous disregard and indifference toward Plaintiff in causing his false arrest and imprisonment.

122.   Plaintiff has suffered damages in the amount of no less than $500,000 as a consequence of the loss of his freedom and liberty, personal humiliation and impairment to his reputation caused by his false arrest and false imprisonment.

123.   Plaintiff has thus far suffered consequential damages resulting from the false arrest and imprisonment instigated by College and MCUSA on March 17 consisting of loss of work and loss in profitability of his law practice in the amount of $50,000, over and above the damages suffered as a direct result of his false arrest and imprisonment, according to proof.

WHEREFORE, Plaintiff requests relief as hereinafter set forth.


### THIRD CAUSE OF ACTION
### MONEY DAMAGES FOR NEGLIGENCE - FALSE ARREST
### BETHEL COLLEGE & MCUSA

124.   Plaintiff refers to the allegations appearing in Paragraphs 1 through 123 above except for Paragraphs 117, 118 and 121, and hereby incorporates those allegations herein by reference as though they were set forth in full.

125.   Defendants College and MCUSA at all times before and through March 17, 2018 owed Plaintiff a duty of care as a

registrant at a Conference sponsored by them and an invitee to the College where the Conference was scheduled.

126.   Defendants College and MCUSA acted with negligence in the course of depriving Plaintiff of his freedom and liberty, without seeking to ascertain or communicate the true facts and without attempting to confirm whether Plaintiff had a standing invitation to be on the campus on March 17, by making a false or incomplete report to law enforcement officers on the morning of March 17, 2018 that Plaintiff was trespassing, leading to the arrest and imprisonment of Plaintiff.

127.   Defendants College and MCUSA could have determined, through careful and neutral investigation, before making their false report to law enforcement officers the morning of March 17, 2018, namely that Plaintiff was trespassing on College property, that Plaintiff was in fact not trespassing;

128.   On information and belief, Defendants College and MCUSA were negligent in failing to distinguish between the remarks of Jantzen that Plaintiff was "out of the Conference," which was a civil issue, and any warning that he was trespassing and would not be allowed to return to the campus, which was a potential criminal issue;

129.   Plaintiff was not free to leave the College property at any time after Defendants College and MCUSA had made their false report to law enforcement officers;

130.   As a direct consequence of the false report made through the negligence of College and MCUSA to law enforcement

officers, Plaintiff was arrested and subsequently held in jail against his will for 18 hours;

131. Sponsor Defendants acted with recklessness and callous disregard and indifference toward Plaintiff in causing his false arrest and imprisonment.

132. Plaintiff has suffered damages in the amount of no less than $500,000 as a consequence of the loss of his freedom and liberty, personal humiliation and impairment to his reputation caused by his false arrest and false imprisonment.

133. Plaintiff has thus far suffered consequential damages resulting from the false arrest and imprisonment instigated by College and MCUSA on March 17 consisting of loss of work and loss in profitability of his law practice in the amount of $50,000, over and above the damages suffered as a direct result of his false arrest and imprisonment, according to proof.

WHEREFORE, Plaintiff requests relief as hereinafter set forth.

FOURTH CAUSE OF ACTION

MONEY DAMAGES AND DECLARATORY RELIEF

FALSE ARREST AND FALSE IMPRISONMENT

CITY OF NORTH NEWTON & HARVEY COUNTY

134. Plaintiff refers to the allegations appearing in Paragraphs 1 through 133 above and hereby incorporates those allegations herein by reference as though they were set forth in full.

135.   On the morning of March 17, 2018, Defendant City of North Newton, Kansas arrested Plaintiff for trespassing without having good and adequate cause to do so.

136.   On the morning of March 17, 2018, Defendant City of North Newton, Kansas arrested Plaintiff for trespassing without having a legal basis for the arrest.

137.   On the morning of March 17, 2018, Defendant City of North Newton, Kansas arrested Plaintiff for trespassing despite the fact that Plaintiff was not in fact trespassing.

138.   On the morning of March 17, 2018, Defendant City of North Newton, Kansas arrested Plaintiff for trespassing despite having told Plaintiff that they would not do so under the conditions under which he was arrested.

139.   On the morning of March 17, 2018, Defendant Harvey County arrested Plaintiff for trespassing without having good and adequate cause to do so.

140.   On the morning of March 17, 2018, Defendant Harvey County arrested Plaintiff for trespassing without having a legal basis for the arrest.

141.   On the morning of March 17, 2018, Defendant Harvey County arrested Plaintiff for trespassing despite the fact that Plaintiff was not in fact trespassing.

142.   In making a false arrest of Plaintiff, Defendant City of North Newton, Kansas arbitrarily chose to believe the local prominent citizen of its town, Bethel College, and to not credit the narrative of Plaintiff, despite having told Plaintiff that

his narrative would be credited if College officials called for his arrest the morning of March 17, 2018.

143.   Defendant City of North Newton, Kansas effectively induced Plaintiff to be present on the College campus the morning of March 17, 2018 by assuring him that if College officials called for his arrest, that he would be warned to leave and could leave freely upon penalty of arrest if he returned.

144.   Defendant City of North Newton, Kansas failed to do a proper investigation of the facts before the false arrest of Plaintiff.

145.   Defendant City of North Newton, Kansas failed to investigate the contentions of Plaintiff that he was properly on the College campus before falsely arresting him.

146.   Defendant Harvey County failed to do a proper investigation of the facts before the false arrest of Plaintiff.

147.   Defendant Harvey County failed to investigate the contentions of Plaintiff that he was properly on the College campus before falsely arresting him.

148.   As a direct consequence of his false arrest, and at the behest of City of North Newton, Kansas, Plaintiff was falsely imprisoned and held in a jail against his will for 18 hours after his false arrest.

149.   As a direct consequence of his false arrest, and at the behest of Harvey County, Plaintiff was falsely imprisoned and held in a jail against his will for 18 hours after his false arrest.

150.   Plaintiff was not free to leave the College property at any time the morning of March 17, 2018 after Defendants City of North Newton, Kansas and Harvey County appeared at the College to arrest him.

151.   Defendant City of North Newton, Kansas acted with malice, recklessness and callous disregard and indifference toward Plaintiff in falsely arresting and falsely imprisoning him.

152.   Defendant Harvey County acted with recklessness and callous disregard and indifference toward Plaintiff in falsely arresting and falsely imprisoning him.

153.   Plaintiff has suffered damages in the amount of no less than $500,000 as a consequence of the loss of his freedom and liberty, personal humiliation and impairment to his reputation caused by his false arrest and false imprisonment.

WHEREFORE, Plaintiff requests relief as hereinafter set forth.


FIFTH CAUSE OF ACTION

MONEY DAMAGES FOR DEFAMATION

BETHEL COLLEGE AND MCUSA

154.   Plaintiff refers to the allegations appearing in Paragraphs 1 through 153 above and hereby incorporates those allegations herein by reference as though they were set forth in full.

155.   On the morning of March 17, 2018, Defendants College

and MCUSA made false and defamatory statements about Plaintiff and published them to law enforcement officers, namely that Plaintiff was trespassing on the property of College after having been warned that he did not have the right to return to the property upon penalty of arrest.

156.  As a result of the false and defamatory statement made by Defendants College and MCUSA on the morning of March 17, 2018, that Plaintiff had violated the law by trespassing on College property, Plaintiff suffered injury.

157.  The false and defamatory statement of Defendants College and MCUSA was not privileged in any way.

158.  The false and defamatory statement published by College and MCUSA was a direct and proximate cause of injury to Plaintiff.

159.  The injury suffered by Plaintiff as a result of the false and defamatory statement made by College and MCUSA was the false arrest and false imprisonment of Plaintiff.

160.  The injury suffered by Plaintiff as a result of the false and defamatory statement made by College and MCUSA on March 17 has included damage to the reputation of Plaintiff as a consequence of his false arrest and imprisonment and information available to the public about Plaintiff's arrest record.

161.  The injury suffered by Plaintiff as a result of the false and defamatory statement made by College and MCUSA on March 17 includes the loss of work for Plaintiff as a lawyer and a diminution in the profitability of Plaintiff's law practice as a

consequence of Plaintiff's false arrest and false imprisonment and information now available to the public about Plaintiff's arrest record.

162.   On information and belief, the injury suffered by Plaintiff as a result of the false and defamatory statement of College and MCUSA on March 27 includes difficulties in relationships and broken relationships including breaks in relationships with relatives with whom Plaintiff was once close.

163.   Plaintiff has suffered damages to his reputation from being defamed and thereby falsely arrested and falsely imprisoned in the amount of $100,000, over and above the damages suffered as a direct result of his false arrest and imprisonment, according to proof.

164.   Plaintiff has thus far suffered damages resulting from the false and defamatory statement of College and MCUSA on March 17 consisting of loss of work and loss in profitability of his law practice in the amount of $50,000, over and above the damages suffered as a direct result of his false arrest and imprisonment, according to proof.

WHEREFORE, Plaintiff requests relief as set forth below.

SIXTH CAUSE OF ACTION

MONEY DAMAGES FOR DEFAMATION

BETHEL COLLEGE, MCUSA & THIESSEN

165.   Plaintiff refers to the allegations appearing in

Paragraphs 1 through 101 above and hereby incorporates those allegations herein by reference as though they were set forth in full.

166. Defendant Thiessen made and published his slanderous statement about Plaintiff to approximately 200 registrants at the Conference, some of whom Plaintiff knew from previous acquaintance and some of who knew of Plaintiff based on Plaintiff's prior and present positions of trust and responsibility with different church entities.

167. Thiessen was acting on behalf of and as representative of Defendants College and MCUSA when he published the false and defamatory statement about Plaintiff.

168. As a result of the false and defamatory statement made by Defendant Thiessen on the morning of March 16, 2019, that Plaintiff was a "Holocaust denier," Plaintiff suffered injury.

169. The false and defamatory statement of Thiessen was not privileged in any way.

170. The false and defamatory statement published by College, MCUSA and Thiessen has been a direct and proximate cause of injury to Plaintiff.

171. The injury suffered by Plaintiff as a result of Thiessen's false and defamatory statement subjected Plaintiff to derision and ridicule and included significant damage to the reputation of Plaintiff.

172. The injury suffered by Plaintiff as a result of Thiessen's false and defamatory statement includes the loss of

work for Plaintiff as a lawyer and a diminution in the profitability of Plaintiff's law practice.

173.   On information and belief, the injury suffered by Plaintiff as a result of Thiessen's false and defamatory statement includes difficulties in relationships and broken relationships including breaks in relationships with relatives with whom Plaintiff was once close.

174.   Plaintiff has suffered damages to his reputation from being called a "Holocaust denier" by Thiessen in the amount of $50,000, according to proof.

175.   Plaintiff has thus far suffered damages resulting from the false and defamatory statement of Thiessen consisting of loss of work and profitability of his law practice in the amount of $20,000, according to proof.

WHEREFORE, Plaintiff requests relief as set forth below.


SEVENTH CAUSE OF ACTION

MONEY DAMAGES FOR DEFAMATION

LANCASTER MENNONITE HISTORICAL SOCIETY, NOFZIGER

176.   Plaintiff refers to the allegations appearing in Paragraphs 1 through 101 and 166 through 175 above and hereby incorporates those allegations herein by reference as though they were set forth in full.

177.   Defendants Lancaster Mennonite Historical Society ("LMHS") and Nofziger published their false and libelous

statements about Plaintiff to a significant audience of readers of their website, many of whom were drawn to what seemed like reputable news coverage of the "Mennonites and the Holocaust" conference.

178. On information and belief, LMHS and Nofziger published their false and libelous statement about Plaintiff to over 1,000 persons, some of whom Plaintiff knew from previous acquaintance and some of who knew of Plaintiff based on Plaintiff's prior and present positions of trust and responsibility with different church entities.

179. The false and libelous statements published by LMHS and Nofziger were not privileged in any way.

180. As a result of the false and libelous statements that LMHS and Nofziger published about Plaintiff on their website and refused to retract or allow to be rebutted, Plaintiff suffered injury.

181. The false and libelous statements published by LMHS and Nofziger have been a direct and proximate cause of injury to Plaintiff.

182. The injury suffered by Plaintiff as a result of the false and libelous statements published by LMHS and Nofziger included damage to the reputation of Plaintiff.

183. The injury suffered by Plaintiff as a result of the false and libelous statements of LMHS and Nofziger includes the loss of work for Plaintiff as a lawyer and a diminution in the profitability of Plaintiff's law practice.

184.   On information and belief, the injury suffered by Plaintiff as a result of the false and libelous statements published by LMHS and Nofziger includes difficulties in relationships and broken relationships with relatives with whom Plaintiff was once close.

185.   Plaintiff has suffered damages to his reputation as a result of the statements published by LMHS and Nofziger in the amount of $50,000, according to proof.

186.   Plaintiff has thus far suffered damages resulting from the statements of LMHS and Nofziger consisting of loss of work and profitability of his law practice in the amount of $20,000, according to proof.

WHEREFORE, Plaintiff requests relief as set forth below.

## EIGHTH CAUSE OF ACTION
## MONEY DAMAGES FOR INTENTIONAL
## INFLICTION OF EMOTION DISTRESS
### BETHEL COLLEGE & MCUSA

187.   Plaintiff refers to the allegations appearing in Paragraphs 1 through 186 above and hereby incorporates those allegations herein by reference as though they were set forth in full.

188.   Defendants College and MCUSA intended on March 17, 2018 to inflict significant emotional distress on Plaintiff by causing him to be arrested as a consequence of his peaceable

speech knowing that there was no basis for an allegation that Plaintiff had been clearly and irrevocably told not to return to the College campus that day.

189.   Separate and apart from the damages suffered by Plaintiff as a direct consequence of his false arrest and false imprisonment, Plaintiff has suffered significant emotional distress, valued at no less than $100,000, as a consequence of the intentional acts of College and MCUSA to exclude him from the Conference and eject him from the College campus without cause or without having proceeded in a procedurally defensible manner.

WHEREFORE, Plaintiff requests relief as hereinafter set forth.

## NINTH CAUSE OF ACTION
### MONEY DAMAGES FOR NEGLIGENT
### INFLICTION OF EMOTION DISTRESS
### BETHEL COLLEGE & MCUSA

190.   Plaintiff refers to the allegations appearing in Paragraphs 1 through 186 above and hereby incorporates those allegations herein by reference as though they were set forth in full.

191.   At all times prior to and including March 16 and 17, 2018, Defendants College and MCUSA owed Plaintiff as a registrant at a Conference they sponsored and as an invitee to the campus of College a duty of care.

192.   Defendants College and MCUSA acted negligently on

March 17, 2018 to inflict significant emotional distress on Plaintiff by causing him to be arrested as a consequence of his peaceable speech despite having reason to know or the ability to determine that there was no basis for an allegation that Plaintiff had been clearly and irrevocably told not to return to the College campus that day.

193.   Separate and apart from the damages suffered by Plaintiff as a direct consequence of his false arrest and false imprisonment, Plaintiff has suffered significant emotional distress, valued at no less than $100,000, as a direct and proximate consequence of the negligent acts of College and MCUSA to exclude him from the Conference and eject him from the College campus without cause or without having proceeded in a procedurally defensible manner.

WHEREFORE, Plaintiff requests relief as hereinafter set forth.

## TENTH CAUSE OF ACTION
### MONEY DAMAGES FOR VIOLATION OF FEDERAL CIVIL RIGHTS
### 42 U.S.C. Section 1983
### CITY OF NORTH NEWTON, HARVEY COUNTY

194.   Plaintiff refers to the allegations appearing in Paragraphs 1 through 193 above and hereby incorporates those allegations herein by reference as though they were set forth in full.

195.   Plaintiff was deprived by the City of North Newton, Kansas of his constitutionally-guaranteed right of liberty by being subjected to false arrest on March 17, 2018.

196.   Plaintiff was deprived by the City of North Newton, Kansas of his constitutionally-guaranteed right of liberty by being subjected to false imprisonment on March 17 extending to March 18, 2018.

197.   Plaintiff was deprived by Harvey County of his constitutionally-guaranteed right of liberty by being subjected to false arrest on March 17, 2018.

198.   Plaintiff was deprived by Harvey County of his constitutionally-guaranteed right of liberty by being subjected to false imprisonment on March 17 extending to March 18, 2018.

199.   Neither Plaintiff's arrest or imprisonment had any legal basis under Kansas law.

200.   The City of North Newton, Kansas was acting under color of state law when it subjected Plaintiff to false arrest.

201.   The City of North Newton, Kansas was acting under color of state law when it subjected Plaintiff to false imprisonment.

202.   Harvey County was acting under color of state law when it subjected Plaintiff to false arrest.

203.   Harvey County was acting under color of state law when it subjected Plaintiff to false imprisonment.

204.   By violating Plaintiff's civil rights through subjecting Plaintiff to false arrest, the City of North Newton

acted maliciously, recklessly and with callous indifference and disregard for Plaintiff's protected rights.

205.   By violating Plaintiff's civil rights through subjecting Plaintiff to false imprisonment, the City of North Newton acted maliciously, and recklessly and with callous indifference and disregard for Plaintiff's protected rights.

206.   By violating Plaintiff's civil rights through subjecting Plaintiff to false arrest and/or false imprisonment, Harvey County acted recklessly and with callous indifference and disregard for Plaintiff's protected rights.

207.   The City of North Newton is not immune from suit under the Eleventh Amendment.

208.   Harvey County is not immune from suit under the Eleventh Amendment.

209.   As a consequence of the violation of Plaintiff's federal civil rights by City of North Newton, Kansas and the arrest and imprisonment to which Plaintiff was wrongfully subjected, Plaintiff suffered damages in the form of physical pain and suffering and emotional distress, including but not limited to personal humiliation and impairment to his reputation, having a value in the amount of $500,000.

210.   As a consequence of the violation of Plaintiff's federal civil rights by City of North Newton, Kansas, and the arrest and imprisonment to which Plaintiff was wrongfully subjected, Plaintiff suffered damages in the form of physical pain and suffering and emotional distress, including but not

limited to personal humiliation and impairment to his reputation, having a value in the amount of $500,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1. On his first cause of action, Plaintiff requests that the Court order a money judgment in Plaintiff's favor against College and MCUSA jointly and severally in the amount of $504,100;

2. On his second or third causes of action, Plaintiff requests that the Court order a money judgment in favor of Plaintiff against College and MCUSA jointly and severally in the amount of $554,100;

3. In addition to the damages awarded under the foregoing paragraph, Plaintiff requests that the Court order punitive damages against College and MCUSA respectively and severally, subject to proof;

4. On his fourth cause of action, Plaintiff requests that the Court order a money judgment in favor of Plaintiff against Defendants City of North Newton, Kansas and Harvey County jointly and severally and over and above any judgment awarded against other Defendants in the amount of $500,000, plus $50,000 jointly and severally with Defendants Bethel College and MCUSA to the extent said damages are awarded under against those Defendants;

5. In addition to the damages awarded under the foregoing paragraph, Plaintiff requests that the Court order punitive

damages on his fourth cause of action against City of North Newton and Harvey County, respectively and severally, subject to proof;

6. On his fifth cause of action, Plaintiff requests that the Court order a money judgment in favor of Plaintiff against Defendants Bethel College and MCUSA in the amount of $150,000 on account of their defamatory statement, over and above and in addition to whatever other money judgments are awarded pursuant to the foregoing requests;

7. On his sixth cause of action, Plaintiff requests that the Court order a money judgment in favor of Plaintiff against Bethel College, MCUSA and Thiessen, in the amount of $70,000, on account for their defamatory statement, over and above and in addition to whatever other money judgments are awarded pursuant to the foregoing requests;

8. On his seventh cause of action, Plaintiff requests that the Court order a money judgment in favor of Plaintiff against Lancaster Mennonite Historical Society and Nofziger, in the amount of $70,000, on account for their defamatory statement;

9. On his eighth or ninth causes of action, Plaintiff requests that the Court order a money judgment in favor of Plaintiff against Defendants Bethel College and MCUSA, jointly and severally, in the amount of $100,000, over and above and in addition to whatever other money judgments are awarded pursuant to the foregoing requests;

8. On his eighth cause of action, Plaintiff requests that

the Court award Plaintiff punitive damages against Defendants Bethel College and MCUSA, respectively and severally, subject to proof;

9.    On his tenth cause of action, Plaintiff requests that the Court award a money judgment in favor of Plaintiff against Defendants City of North Newton, Kansas and Harvey County jointly and severally and over and above any judgment awarded against other Defendants in the amount of $500,000, plus $50,000 jointly and severally with Defendants Bethel College and MCUSA to the extent said damages are awarded under against those Defendants, for the violation of Plaintiff's federal civil rights;

10.    In addition to the damages awarded under the foregoing paragraph, Plaintiff requests that the Court order punitive damages on his tenth cause of action against City of North Newton and Harvey County, respectively and severally, subject to proof;

11.    On his fourth and tenth causes of action, Plaintiff requests that the Court grant declaratory relief or an injunction as necessary eliminating the arrest record of Plaintiff from all State of Kansas and publicly available databases and that City of North Newton, Kansas and Harvey County be directed to take all steps necessary to accomplish the elimination of any record of Plaintiff's false arrest from any database whether controlled by those defendants or otherwise; and

/////

/////

/////

12. Plaintiff requests such other and further relief as the Court may deem just and proper.

Date: 3/14/2019

_____
BRUCE LEICHTY, PLAINTIFF, IN PRO PER


## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Wichita, Kansas as the location for the trial in this matter.

Date: 3/14/2019

_____
BRUCE LEICHTY, PLAINTIFF, IN PRO PER


## REQUEST FOR TRIAL BY JURY

Plaintiff requests trial by jury.

Date: 3/14/2019

_____
BRUCE LEICHTY, PLAINTIFF, IN PRO PER

CIVIL COMPLAINT FOR MONEY DAMAGES [etc.]



Express

Reusable

TO REUSE: Cover or mark through any previous shipping information.

ORIGIN ID:HTA  (760) 484-2467
BRUCE LEICHTY

264 CLOVIS AVE

CLOVIS, CA 93612
UNITED STATES US

SHIP DATE: 14MAR19
ACTWGT: 2.10 LB
CAD: 6881230/SSF01922

BILL THIRD PARTY

TO CLERK
**US DISTRICT COURT**
**401 N MARKET ST**

**WICHITA KS 67202**
(616) 600-1705   REF:
PO:              DEPT:



FedEx
Express

E

REL#
3785346

TRK#
0201  7860 3894 5112

FRI — 15 MAR 10:30A
PRIORITY OVERNIGHT

**AZ RSLA**

67202
KS-US  ICT

RT **218**   4  A
10:30  5112
ST **21.3**  03.15

Align bottom of peel-and-stick airbill or pouch here.