**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Bruce Leichty, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 6:19-CV-01064-JWB-KGG |
| Bethel College; Mennonite Church USA; | ) |
| City of No. Newton, KS; Harvey County; | ) |
| John Thiessen; Lancaster Mennonite | ) |
| Historical Society; Joel Nofziger, | ) |
| | ) |
| Defendants, | ) |

**DEFENDANT LANCASTER MENNONITE HISTORICAL SOCIETY'S**
**MEMORANDUM IN SUPPORT OF FED R. CIV. P. RULE 12 MOTIONS TO DISMISS**

Pursuant to Fed. R. Civ. P. Rule 12(b)(1), 12(b)(2), 12(b)(6), and Local Rule 7.1(a),

Defendant Lancaster Mennonite Historical Society ("LMHS") submits the following

Memorandum in Support of its Motions to Dismiss:

**I.      Nature of the Matter Before the Court**

This is a personal injury action pertaining to claims arising from Plaintiff's attendance at

a conference held in Newton, Kansas. Plaintiff alleges breach of contract/licensing agreement,

false arrest, negligence, defamation, intentional infliction of emotional distress, negligent

infliction of emotional distress and violation of his civil rights.  The Plaintiff's sole claim against

LMHS is in his Seventh Cause of Action: "MONEY DAMAGES FOR DEFAMATION

LANCASTER MENNONITE HISTORICAL SOCIETY..." (Complaint [Doc. 1], ¶¶ 176-186).

Fed. R. Civ. P. Rule 12 allows a party, in lieu of filing an Answer, to file a motion to

dismiss for those defenses enumerated therein.  Defendant LMHS now moves the Court to

Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) (lack of subject matter

101728865.v1

jurisdiction), 12(b)(2) (lack of personal jurisdiction), and also per Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

## II.     Factual Background

This action allegedly arises from the Plaintiff's attendance at the "Mennonites and the Holocaust" conference held at Bethel College in Newton, Kansas, from March 16-17, 2018. (Doc. 1, ¶ 14).

Plaintiff subsequently filed his Complaint alleging, in part, that he was removed from the conference and was falsely imprisoned by Co-Defendants. The Complaint contains bare conclusions of subject matter jurisdiction in paragraph 1. The Complaint contains sparse allegations linking the LMHS to personal jurisdiction in Kansas for alleged defamatory statements. The Complaint alleges LMHS is a citizen of the state of Pennsylvania, is incorporated, and has its principle place of business in Pennsylvania. (Doc. 1, ¶ 7). The Complaint states in part, "Plaintiff has suffered damages…arising from communication of false information about Plaintiff and defamation of Plaintiff's Character…..from additional defamatory statements made by Lancaster Mennonite Historical Society." (Doc. 1, ¶ 10). The Complaint also alleges that subsequent to the conference, an article by a non-party, Lisa Schirch, was published "on the world wide web under the auspices of Anabaptists Historians, operated by one Joel Nofziger with the consent and sponsorship of Lancaster Mennonite Historical Society ('LMHS') and were then picked up by other Mennonite publications." (Doc. 1, ¶ 95.) The Complaint also alleges Co-Defendant Nofzinger was "present at the Conference in his capacity as an employee of LMHS." (Doc. 1, ¶ 96.)

The Complaint further alleges, "Nofzinger and LMS published on the Anabaptist Historians website, ….. which was the only church-related site or publication to mention the

101728865.v1

participation of Plaintiff at the conference, at least the following false and defamatory statements of one Lisa Schirch contending that:

--"A Mennonite Holocaust denier, Bruce Leichty, attended parts of the conference."

--Leichty has passed out anti-Semitic literature at Mennonite Church USA gatherings."

--When Leichty began to ask an offensive question during the conference, the organizers removed him by calling campus security…."

(Doc. 1 ¶ 97).

### III.   The Complaint against LMHS must be dismissed for lack of subject matter jurisdiction.

Plaintiff's defamation claim against LMHS is based entirely on diversity of citizenship, per 28 U.S.C. § 1332.  (Doc. 1, ¶¶ 1-9).  While plaintiff appears to claim damages against the defendants collectively for an amount in excess of $75,000 (Doc. 1, ¶ 10), plaintiff appears to seek specific damages against Defendant LMHS for the exact sum of only $70,000; for alleged damage to his reputation ($50,000) and lost business profit ($20,000).  (Doc. 1, ¶¶ 185-186).

In Kansas, when pleading a cause of action, "where specific allegations conflict with general allegations, the specific allegations control." *State ex rel. Fatzer v. Sinclair Pipe Line Co.*, 180 Kan. 425, 432-33 (1956) (citing *Pierce v. Schroeder*, 171 Kan. 259, 264 (1951)).

Accordingly, because plaintiff has failed to plead for damages in excess of $75,000 against LMHS, per Fed. R. Civ. P. 12(b)(1), this court lacks subject matter jurisdiction over LMHS.

### IV.   The Complaint against LMHS must be dismissed for lack of personal jurisdiction.

Alternatively, if the court should find that subject matter jurisdiction exists, then because it is not subject to personal jurisdiction in Kansas, LMHS must still be dismissed from this action

3

pursuant to Fed. R. Civ. P. 12(b)(2). This Court does not have general jurisdiction over LMHS because it is not incorporated in the State of Kansas, there is no allegation that it has a registered agent for service of process or principal place of business in Kansas, (See Doc. 1), and is not otherwise "at home" in Kansas. *See Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). This Court also does not have specific personal jurisdiction over LMHS, because the Plaintiff's claim does not arise out of, or relate to any purposeful activities by LMHS in Kansas. Further, as alleged, LMHS is a historical society based in Pennsylvania. Haling LMHS into Kansas to defend itself against Plaintiff's claims would not comport with "traditional notions of fair play and substantial justice," and would be both legally improper and unfair. Accordingly, LMHS requests that this Court grant its Motion to Dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(2).

### A.  Legal Standard

A Fed. R. Civ. P. Rule 12(b)(2) motion attacks the court's jurisdiction over the defendant's person. *See American Centennial Ins. Co. v. Seguros La Republica, S.A.*, 1991 U.S. Dist. LEXIS 4546, *8, 1991 WL 60378 (Apr. 8, 1991). "The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction and may gather evidence on the question of jurisdiction by affidavits or otherwise in an effort to determine the facts as they exist." *Ten Mile Industrial Park v. Western Plains Service Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987) (quoting *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir. 1965)) (internal quotations omitted).

The plaintiff bears the burden of establishing personal jurisdiction over a nonresident defendant. *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). The Plaintiff must make a *prima facie* showing the court has personal jurisdiction over the defendants. *Old Republic Ins. Co. v. Continental Motors Inc.* 877 F.3d 895, 903 (10th Cir. 2017).

4

If a defendant challenges the jurisdictional allegations, plaintiff must support the jurisdictional allegations of the complaint with competent proof of the supporting facts. *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.* 427 F. Supp. 2d 1011, 1014 (D. Kan. 2006), citing *Pytik v. Prof'l Res. Ltd.* 887 F.2d 1371, 1376 (10th Cir.1989).

A plaintiff can satisfy its burden to establish personal jurisdiction over a nonresident defendant by making a *prima facie* showing that jurisdiction is proper. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). At this stage of the proceedings, which is in advance of an evidentiary hearing, plaintiff must make this *prima facie* showing of personal jurisdiction "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Melea Ltd. v. Jawer SA,* 511 F.3d 1060, 1065 (10th Cir. 2007) (internal quotations omitted). The court takes "as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff's complaint." *Shrader*, 633 F.3d at 1239. The court however does not accept as true those allegations in the Complaint contradicted by the defendant's affidavits, but it must "resolve any factual disputes in the plaintiff's favor." *Melea*, 511 F.3d at 1065.

The jurisdiction of a district court over a nonresident defendant, based upon the theory of diversity of citizenship, is determined by the law of the forum state. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304 (10th Cir. 1994). A federal court sitting in diversity may exercise personal jurisdiction if "jurisdiction is legitimate under the laws of the forum state and…exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010).

101728865.v1

In determining whether it has personal jurisdiction over a nonresident defendant, a federal district court in Kansas must apply a two-part test involving analysis under both the Kansas long-arm statute, K.S.A. § 60-308, and the Due Process Clause of the United States Constitution. *Federated Rural. Elec.*, 17 F.3d at 1304 – 05.   Under the long-arm statute, a non-resident submits to the jurisdiction of the State of Kansas as to any cause arising from "committing a tortious act" within Kansas. K.S.A. § 60-308(b)(1). The Kansas long-arm statute is construed liberally to allow jurisdiction to the fullest extent permitted by due process. *Federated Rural Elec.*, 17 F.3d at 1305, citing *Volt Delta Res., Inc. v. Devine*, 241 Kan. 775, 777, 740 P.2d 1089 (1987).

Kansas's "long-arm statute is co-extensive with limitations set by the due process clause…." *Eaves v. Pirelli Tire, LLC*, 2014 U.S. Dist 64866, *14, 2014 WL 1883791 (May 12, 2014). Therefore, a plaintiff can satisfy its two-part test by showing that personal jurisdiction over the defendant meets the Constitutional requirements of due process. *See Federated Rural Elec.*, 17 F.3d at 1305.

To subject a nonresident defendant to personal jurisdiction, due process requires that the nonresident defendant have certain minimum contacts such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 66 S. Ct. 154, 158 (1945).  The due process requirement of establishing minimum contact can be met by proving either "general jurisdiction" or "specific jurisdiction." *Old Republic Ins. Co.*, 877 F.3d at 903.  General jurisdiction arises over a corporate defendant in instances in which the defendant's continuous corporate operations within a state are so substantial and of such nature as to justify suit against it on causes of actions arising from dealings entirely distinct from those activities. *Goodyear Dunlop Tires OPS., S.A. v. Brown,* 131

S. Ct. 2846, 2853, (2011).  Specific jurisdiction is present only where "there [is] some act by which the defendant purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 78 S. Ct. 1228, 1240 (1958).

      **B.**     **Argument**

          **1.**     **This Court lacks personal jurisdiction over LMHS.**

Plaintiff cannot establish either general or specific personal jurisdiction exists over LMHS because LMHS has no contacts with the State of Kansas. Even if Plaintiff could somehow show the requisite minimum contacts (which it cannot), this Court should still not exercise personal jurisdiction over LMHS because to do so would offend "traditional notions of fair play and substantial justice." Accordingly, this Court should dismiss the Complaint as to LMHS pursuant to Rule 12(b)(2).

          **a.**     **The Plaintiff cannot establish personal jurisdiction over LMHS through general jurisdiction.**

Prior to the Supreme Court's decisions in *Goodyear*, and *Daimler AG. v. Bauman*, 134 S. Ct. 746, (2014), to establish general jurisdiction, the plaintiff had to demonstrate the defendant's continuous and systematic general business contacts. *Hutton & Hutton Law Firm LLC. v. Girardi & Keese,* 96 F. Supp. 3d 1028, 1218 (D. Kan. 2015).

> "[in *Goodyear* and *Dailmer*] the Supreme Court clarified that even 'substantial, continuous, and systematic' forum-related contacts are insufficient to confer general jurisdiction; rather, the defendant's contacts with the forum must be 'so continuous and systematic' as to render [it] *essentially* at home in the forum State. For a corporate defendant, paradigmatic bases for the exercise of general jurisdiction include the defendant's place of incorporation and place of business. General jurisdiction in a forum other than the defendant's place of incorporation or place of business will exist only in 'exceptional case[s]' where the defendant's operations in the forum are so substantial and of such a nature to render the corporation at home in that particular State."

101728865.v1

See *Tomelleri v. MEDL Mobile Inc.* 2015 U.S. Dist. LEXIS 55943 WL 1957801 (D. Kan.),(citing *Daimler AG,* S.Ct. at 761 and *Fireman's Fund Ins. Co. v. Thyssen Mining Const. of Can. Ltd.* 703 F.3d 488, 493 (10th Cir. 2012)).

The Plaintiff alleges that LMHS is incorporated in Pennsylvania and has its principal place of business in Pennsylvania. (Complaint, ¶ 7.)   Plaintiff does not allege that LMHS engages in any continuous or systematic business activities in Kansas.   In fact, LMHS is a historical society located in Pennsylvania.  The Complaint does not allege that LMHS maintains offices, employees, or agents in Kansas.  There is no allegation in the Complaint that LMHS has ever held itself out as being a Kansas business.

*Daimler* makes clear that not even a "substantial, continuous, and systemic course of business" in the forum state would be sufficient to confer general jurisdiction. 1134 S. Ct. at 760 – 61. LMHS's contacts are non-existent, and thus, could never rise to this level. Accordingly, under *Daimler*, this Court may not exercise general personal jurisdiction over LMHS.

The Complaint also contains an allegation that Co-Defendant Nofzinger, "was present at the Conference in his capacity as an employee of LMHS." (Doc 1, ¶ 96.)  Assuming the truth of this allegation for purposes of this motion only, the allegation of a singular visit to the forum State is insufficient to establish specific personal jurisdiction.

In *Shrader v. Biddinger* 633 F. 3d 1235, 1247 (10th Cir. 2011), the Plaintiff brought a defamation claim against the defendant, a former business partner.  Before the lawsuit, the defendant traveled to Oklahoma for seven days to help the plaintiff work on a business project. The *Shrader* court held, "[s]poradic or isolated visits to the forum state will not subject the defendant to general jurisdiction." (citations omitted).   "As the Ninth Circuit put it, '[defendant's] lack of regular place of business in [the forum state] is significant, and is not

overcome by a few visits." *Id.* (Citations omitted). Consequently, even assuming Co-Defendant Nofziger was attending the conference in his capacity as an LMHS employee, his singular visit to Kansas for two days to attend the conference is insufficient to establish general jurisdiction over the LMHS.

**b. Plaintiff cannot establish personal jurisdiction over LMHS through specific jurisdiction.**

LMHS is also not subject to specific personal jurisdiction in Kansas. "The Due Process Clause 'does not contemplate that a state may make binding judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." *World-Wide Volkswagen Corp. v. Woodson*, 100 S. Ct. 559, 565 (1980). "However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he had had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." *Hanson*, 78 S. Ct. at 1238.

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state…[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

*Id.* at 1239 – 40.

Not only must the defendant have minimum contacts with the forum state, but those contacts "must be such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen Corp.*, 100 S. Ct. at 564 (quoting *Int'l Shoe*, 66 S. Ct. at 158).

The Tenth Circuit's specific personal jurisdiction inquiry involves two steps. *TH Agric & Nutrition, LLC v. Ace European Group, Ltd*, 488 F.3d 1282, 1287 (10th Cir. 2007). First, the court must determine whether the nonresident defendant has "minimum contacts" with the forum

9

state such "that he should reasonably anticipate being hailed into court there." *Id.* Second, if the defendant has sufficient "minimum contacts" the court must determine whether the court's "exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *Id.*

This question turns on whether the exercise of whether specific personal jurisdiction is "reasonable" under the circumstances of a given case. *Id.* "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less the defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.*

Unless a defendant has "continuous and systematic" contacts with a state, jurisdiction can only be established based on a defendant's contacts with a state that are specifically related to the plaintiff's claims. *Helicopteros Nationales de Columbia, S.A. v. Hall,* 104 S. Ct. 1868 at 1872 – 1873. Thus, as the U.S. Supreme Court has confirmed, it must be the defendant's "suit-related" conduct that creates a "substantial connection with the forum State" in order to confer specific personal jurisdiction. *Walden v. Flore,* 134 S. Ct. 1115, 1121 (2014). To establish specific personal jurisdiction, a plaintiff must demonstrate (1) the nonresident defendant "purposefully directed" its activities at residents of the forum state and (2) the plaintiff's injuries arose from those purposefully directed activities. *Inspired by Design v. Sammy's Sew Shop, LLC,* 200 F.Supp.3d 1194, 1203 (D. Kan. 2016), citing *Newsome v. Gallacher,* 722 F.3d 1257, 1264 (10th Cir. 2013).

LMHS did not engage in any "suit related" conduct in this case, so there is no basis for specific personal jurisdiction. LMHS is a historical society. The Complaint does not allege the LMHS purposefully directed any activities at residents of Kansas which resulted in the damages

being alleged in this case. Furthermore, the damages alleged in the Complaint do not arise out of any contacts that LMHS may have had with Kansas.

Additionally, LMHS is a Pennsylvania corporation with its principal place of business in Pennsylvania. There is no allegation that LMHS owns or leases any real or personal property in Kansas, nor that it solicits business in Kansas. Given the lack of any meaningful nexus between Kansas and LMHS, it would be unreasonable for LMHS to have anticipated litigating in Kansas.

The Plaintiff's Complaint is void of any allegations satisfying specific jurisdiction over LMHS. The Complaint alleges Co-Defendant Nofziger published an article on the internet website blog, Anabaptist Historians, "with the consent and sponsorship of Lancaster Mennonite Historical Society." (Doc 1. ¶ 95). Although Defendant LMHS would deny this allegation, even if the Court were to give the Plaintiff the benefit of the doubt for purposes of this Motion, the allegation of allowing an article to be posted on an internet blog, by itself, is insufficient to establish specific personal jurisdiction.

In *Shrader v. Biddinger,* 633 F.3d. 1235 (10th Cir. 2011), the Tenth Circuit discussed the extent of forum contacts necessary for internet posts to provide a basis for specific personal jurisdiction. Shrader's tort claims were derived from an email drafted by a former business associate sent to customers briefly explaining why the two parted ways. Shrader alleged the email was defamatory and intended to ruin his professional reputation. Another customer/defendant expanded its audience by posting it on a traders' blog on a website.

The *Shrader* court stated, "[a] number of circuits have addressed personal jurisdiction in the internet context, considering whether, when, and how such peculiarly non-territorial activities as web site hosting, internet posting, and mass emailing can constitute or give rise to contacts that properly support jurisdiction over the host, poster or sender." *Id.* at 1240. "The basic

problem with relating such activities directly to the general principles developed pre-internet is that, in a sense, the internet operates 'in' every state regardless of where the user is physically located, potentially rendering the territorial limits of personal jurisdiction meaningless." *Id.*

"The maintenance of a web site does not, in and of itself, subject the owner or operator to personal jurisdiction, even for actions relating to the site simply because it can be accessed by residents of the forum State." *Id.* at 1241, (citations omitted). "Similarly, posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside.)" *Id.* (citations omitted).

> "As for specific jurisdiction, the…defendants might be subject to suit in Oklahoma based on the allegedly defamatory email posted on the Wave59 forum if they had intentionally directed the forum at Oklahoma. But, there is no indication the forum targeted an Oklahoma audience or the work of Oklahoma writers, much less Mr. Shrader personally. Nor are there any facts suggesting the forum had some other connection to Oklahoma. On the contrary, Mr. Shrader's pleadings stressed the forum's *non-local* nature, repeatedly referring to the fact that it drew an audience from all over the world."

*Id.* at 1242.

Even when construing the Complaint's allegations in favor of the Plaintiff, there are no allegations supporting specific jurisdiction over LMHS. The Complaint merely alleges Co-Defendant Nofzinger posted an article authored by a non-party to a blog, "with the consent and sponsorship of LMHS." (Doc. 1, ¶ 95). This allegation does not even contend the LMHS was directly responsible for the posting. However, even assuming the LMHS was responsible for the posting, which LMHS would deny, the *Shrader* decision specifically provides there must be more action toward Kansas than merely posting an article on the internet. The plaintiff must provide evidence that the post was specifically directed at Kansas rather than at the internet at

12

large.   However, the Complaint contains no indication the blog was specifically directed to readers in Kansas.

The Plaintiff's Complaint, like the allegations in *Shrader,* emphasizes the non-local nature of the posting by alleging, "statements appeared on the worldwide web," (Doc 1, ¶ 94), and "[t]he Anabaptist Historian website is an influential source of news and information about Mennonite history and current events know to and accessed by decision makers and persons of prominence *throughout the Mennonite church and elsewhere*." (Doc 1, ¶ 100, emphasis added). Consequently, even assuming the blog and site are somehow under the control of or attributable to LMHS, which this Defendant would deny, the allegations in the Complaint emphasize the non-local nature of the posting and fails to establish the posting was specifically directed to readers in Kansas.

Finally, to submit LMHS to personal jurisdiction in Kansas would be unfair and unjust. The nature of a historical society is to provide historical content to its members.   Allegedly publishing an article on a blog merely referencing events the author contends occurred in Kansas should not lend an entity to being hailed into a Kansas court.

### IV.    The Plaintiff's Complaint must be dismissed for failure to state a claim.

The Plaintiff's Complaint must be dismissed under Fed R. Civ. P. 12(b)(6) because it fails to state a valid claim against this Defendant.   The Complaint alleges one count of LMHS making a false and libelous statement against plaintiff.  (Doc. 1, ¶ 178).  However, the Complaint sets forth no facts supporting the essential elements of a defamation, specifically, that LMHS communicated the alleged false and libelous information to any third party who reacted to it in such a way that could somehow prove that plaintiff's reputation had been damaged as alleged.

101728865.v1

Simply alleging that the allegedly defamatory material was posted on an internet website is not sufficient to prove publication to a third person.

### A.    LEGAL STANDARD

In order to pass muster under Rule 12(b)(6), the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims. *Gillmore v. L.D. Drilling Inc.*, U.S. Dist.  LEXIS 162463, WL 5904034 (Kan. 2017), citing *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d1174, 1177 (10th Cir. 2007). The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than a sheer possibility. *Id.,* citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).  Mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim. *Id.,* citing *Kan. Penn Gaming LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir. 2011).  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven. (*Id.,* citing *Iqbal).*

For purposes of a motion to dismiss, the court must take all the factual allegations in the complaint as true, but the court is not bound to accept as true a legal conclusion couched as a factual allegation. (*Id.,* citing *Iqbal).*  This Court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to the assumption of truth. (*Id.,* citing  *Iqbal).*  Second, the court must determine whether the factual allegations, when assumed to be true, plausibly give rise to an entitlement to relief. *Id.*  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

14

In Kansas, defamation has three basic elements: (1) false and defamatory words; (2) communicated to a third person; and (3) which resulted in harm to the reputation of the person injured. *Id.* citing *Hall v. Kan. Farm Bureau*, 274 Kan. 263, 50 P.3d 495, 504 (Kan. 2002); and *Byers v. Snyder*, 44 Kan. App. 2d 380, 237 P.3d 1258, 1270 (Kan. Ct. App. 2010).

**B.     ARGUMENT**

**1.  The Complaint fails to state the LMHS communicated false and defamatory words.**

Under Kansas law, to establish a claim for defamation, the alleged false and defamatory words must be more than a mere opinion. Statements of personal opinion or hyperbole are not defamatory under Kansas Law. *Robinson v. Wichita State University*, U.S. Dist. LEXIS 83577 WL 2378332 (D. Kan. 2017), citing *Byers v. Snyder*, 44 Kan. App. 2d 380, 237 P.3d 1258 (Kan. Ct. App. 2010).  Whether a given statement constitutes an assertion of fact or an opinion is a question of law to be determined by the court. *Id.,* (citing *Rinsley v. Brandt*, 700 F.2d, 1304, 1309 (10th Cir. 1983)). Kansas law distinguishes between a fact and an opinion statement. *Id.*

The Complaint cites three alleged defamatory statements contained in non-party Lisa Schirch's article, allegedly republished on the blog (1) "A Mennonite Holocaust denier, Bruce Leichty, attended the conference." (2) "Leichty has passed out anti-Semitic literature at Mennonite Church USA gatherings," and (3) "When Leichty began to ask an offensive question during the conference, the organizers removed him by calling campus security."  (Doc. 1, ¶ 97).

The three alleged defamatory statements contained in non-party Lisa Schirch's article are opinions and not statements of fact.  Whether Lisa Schirch considered the Plaintiff to be a "Holocaust denier," his materials to be "anti-Semitic," or whether his question was "offensive" are strictly matters of Ms. Schirch's opinion.  In support of this argument, the Court need look no further to Doc. 1, ¶¶ 98-101, where the Plaintiff claims he requested equal prominence on the

15

website to explain and/or rebut the opinions in Ms. Schirch's article.  There can obviously be a significant difference of opinion on whether someone considers another person to be a Holocaust denier, anti-Semitic, or offensive.

Furthermore, to determine whether a matter is of opinion or fact, the Court must be able to verify the truth of the allegations. *Id.,* citing *Schwartz v. American College of Emergency Physicians*, 215 F.3d1140, 1145 (10th Cir. 2000). Whether or not a person is a "Holocaust Denier" or whether certain materials are "anti-Semitic," or whether a question is "offensive," cannot be verified by the Court as truth or opinion.  Consequently, the Complaint fails to satisfy the first element of a defamation claim, and consequently, fails to state a claim upon which the court can grant any relief.

Should, however, the court disagree, Defendant LMHS, in the alternative, reserves all defenses, including the truth of the alleged statements, if applicable.

## 2. The Complaint fails to state Defendant LMHS communicated the information to a third party.

The Complaint alleges Lisa Schirch's article was published on the Anabaptist Historians website.  However, the Complaint is void of any allegation the LMHS owned or controlled the content of this website.  Paragraph 95 of the Complaint states that the article appeared on the website "operated by one Joel Nofzinger, with the consent and sponsorship of the Lancaster Mennonite Historical Society."  The claim that an article was placed on a website operated by Co-Defendant Nofzinger with the "consent and sponsorship" of the LMHS is insufficient to prove that the LMHS controlled the website, or the content published on the website. Consequently, the Complaint fails to establish LMHS was responsible for the communication of the alleged defamatory remarks.

16

Further, Kansas law requires the Plaintiff to identify the third party to whom the communication is made. *Classic Commuications, Inc. v. Rural Telephone Services Co. Inc.,* 956 F.Supp. 910 (D. Kan. 1997). The Complaint fails to sufficiently identify any individual who claims they read the opinions about which plaintiff complains. Without any factual allegation that any publication of the allegedly defamatory material took place, and because publication is one of the three elements which plaintiff must prove in order to state a claim for defamation, plaintiff's Complaint fails to state a claim upon which relief may be granted, and must be dismissed.

## VI.   Conclusion

WHEREFORE, by the face of the Complaint, plaintiff has not shown that he has properly plead sufficient damages to prove that subject matter jurisdiction exists against LMHS, and therefore, per Fed. R. Civ. P. 12(b)(1), his Complaint should be dismissed against LMHS.

Further, and in the alternative, because this Court's assertion of general or specific personal jurisdiction over LMHS would be contrary to "traditional notions of fair play and substantial justice" and would violate LMHS's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, pursuant to Fed. R. Civ. P., 12(b)(2), LMHS's Motion to Dismiss for Lack of Personal Jurisdiction should be granted.

Finally, and in the alternative, the Plaintiff's Complaint should be dismissed for failing to state a claim under Kansas law for defamation. The Complaint fails to identify false statements of fact versus statements of opinion, fails to establish any publication of the allegedly false material vis-a-vis the identity of any third person who claims to have seen or reacted to any of the alleged defamatory material. Thus, pursuant to Fed. R. Civ. P. 12(b)(6), LMHS's Motion to Dismiss for Failure to State a Claim should be granted.

101728865.v1

Respectfully submitted,

WALLACE SAUNDERS, CHARTERED


BY: _s/ Eric A. Ven Beber_
     Eric A. Van Beber   KS Bar #15851
     Kevin D. Weakley   KS Bar #16558
     10111 West 87th Street
     Overland Park, KS 66212
     (913) 888-1000 FAX - (913) 888-1065
     evanbeber@wallacesaunders.com
     kweakley@wallacesaunders.com

ATTORNEYS FOR DEFENDANT
LANCASTER MENNONITE HISTORICAL
SOCIETY

The undersigned hereby certifies that a true and correct copy of the above and foregoing was electronically filed with the United States District Clerk using the CM/ECF system which will send notification and provide access to a copy of this filing on the 1st day of July, 2019, to:

Bruce Leichty
Bruce Leichty, A Professional Corporation
220 W. Grand Avenue
Escondido, CA  92025
760-484-2467
951-676-7462 – Fax
leichty@sbcglobal.net
Pro Se

PLAINTIFF

Scott Sanders
McDonald Tinker, PA
300 West Douglas Ave., Suite 500
P.O. Box 207
Wichita, KS  67202
316-263-5851
316-263-4677 – Fax
ssanders@mcdonaldtinker.com

ATTORNEY FOR DEFENDANTS
BETHEL COLLEGE and JOHN THIESSEN

Robert Reynolds
Tracy M. Hayes
Sanders Warren Russell & Scheer, LLP
9401 Indian Creek Parkway, Suite 1250
Overland Park, KS  66210
913-234-6100
913-234-6199 – Fax
r.reynolds@swrsllp.com
t.hayes@swrsllp.com

ATTORNEY FOR DEFENDANT CITY OF
NORTH NEWTON, KANSAS

101728865.v1

Alan L. Rupe
Kevin Miller
Lewis Brisbois Bisgaard & Smith, LLP
1605 North Waterfront Parkway, Suite 150
Wichita, Kansas  67206
Alan.rupe@lewisbrisbois.com
Kevin.miller@lewisbrisbois.com

ATTORNEYS FOR DEFENDANT
MENNONITE CHURCH USA

Kelsey N. Frobisher
Foulston Siefkin LLP
1551 North Waterfront Parkway
Suite 100
Wichita, KS  67206-4466
316-291-9718
866-478-9553 – FAX
kfrobisher@foulston.com

Toby Crouse
Crouse, LLC
11184 Antioch, Suite 253
Overland Park, Kansas  66210
tcrouse@crousellc.com

ATTORNEYS FOR DEFENDANT
COUNTY OF HARVEY

Jennifer B. Wieland
Thomas P. Schult
Berkowitz Oliver LLP – KCMO
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri  64108
jwieland@berkowitzoliver.com
tschult@berkowitzoliver.com

ATTORNEYS FOR DEFENDANT
JOEL NOFZIGER


*s/Eric A. Van Beber*
Eric Van Beber
For the Firm