UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRUCE LEICHTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 19-CV-01064-JWB-KGG |
| | ) | |
| BETHEL COLLEGE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS BETHEL COLLEGE'S AND JOHN THIESEN'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

COMES NOW Bethel College and John Thiesen (collectively "Bethel"), by and through their attorneys of record, Scott E. Sanders and Corey M. Adams of McDonald Tinker PA, and pursuant to Federal Rule of Civil Procedure 12(b)(6) moves the Court for an Order dismissing Plaintiff's claims against them with prejudice.  In support of said motion, Bethel states:

**BREIF STATEMENT OF MATERIAL FACTS**

Pertinent to Plaintiff's claims against Bethel, Plaintiff alleges that he was improperly excluded from a portion of a conference which was organized, in part, by Bethel College. Plaintiff additionally claims that he was improperly arrested by police and that Mr. Theisen made defamatory remarks about his "revisionist" views regarding the holocaust. A non-exhaustive summary of the factual allegations made by Plaintiff are as follows:

1.      Plaintiff is a California attorney. (Doc. 1, at ¶¶ 1-2).

2.      Plaintiff registered and paid $100 to attend a conference titled "Mennonites and the Holocaust." (Doc. 1, at ¶¶ 14 and 21).

3.      The conference was organized in part by Bethel College. (Doc. 1, at ¶ 14).

4.      Plaintiff claims that his payment of the admission fee gave him the right to "participate in the Conference and be present on the campus for the duration of the Conference…." (Doc. 1, at ¶ 23).

5.      Plaintiff claims to have incurred expenses as a result of attending the conference, including travel costs and lost profit to his law practice (since he was unable to bill time in his law practice during his travel to the conference). (Doc. 1, at ¶¶ 25-26).

6.      Plaintiff has self-proclaimed "nuance[d]" historical views regarding the holocaust. (Doc. 1, at ¶ 47).

7.      Plaintiff planned on handing out material at the conference, and did attempt to hand out such material, regarding his "nuance[d]" views of the holocaust. (Doc. 1, at ¶¶ 27 and 37).

8.      According to his Complaint, Plaintiff was asked to discontinue distributing materials and was threatened by Bethel College with arrest. (Doc. 1, at ¶ 40).

9.      As a result of Bethel College's dissatisfaction with Plaintiff's handing out said materials, Plaintiff claims that Mr. Theisen, during opening remarks at the conference, called him a "holocaust denier", even though Plaintiff's name was not specifically mentioned. (Doc. 1, at ¶ 43). In support of this statement, Plaintiff claims:

> On information and belief, there was no one other than Plaintiff who registered for the Conference who had identified himself with revisionist views on the Holocaust, as Plaintiff had in the context of his flyer. (Doc. 1, at ¶ 45).

10.     With respect to his views regarding the holocaust, Plaintiff prefers to be called a "revisionist." (Doc. 1, at ¶ 45).

11.     During one of the lectures, Plaintiff made comments to the moderator and panelists regarding his "revisionist" views of the holocaust. (Doc. 1, at ¶ 54).

12.     He was asked to stop, a command that Plaintiff did not immediately comply with. (Doc. 1, at ¶ 54).

13.     Following this encounter, Plaintiff was told by Mark Jantzen, who Plaintiff believed was acting on behalf of Bethel College, that he was no longer welcome at the conference. (Doc. 1, at ¶ 66).

14.     In fact, Plaintiff obviously knew that he was asked not to return to the conference; by Plaintiff's own admission, he was afraid that Bethel College would "eject or detain him" if he returned to the conference. (Doc. 1, ¶ 73).

15.     According to his Complaint, Plaintiff visited the North Newton police department, and a police officer told Plaintiff that Bethel College officials had the right to order Plaintiff to leave campus grounds but that, in such an event, police would give Plaintiff an opportunity to voluntarily leave before arresting him. (Doc. 1, at ¶ 76).

16.     Despite being told that he was no longer allowed to attend the conference, Plaintiff attempted to return to the conference. (Doc. 1, at ¶ 78).

17.     Plaintiff was arrested by police for trespassing. (Doc. 1, at ¶¶ 79-81).

18.     Bethel College refunded Plaintiff his $100.00 registration fee (Doc. 1, at ¶ 94).

19.     Plaintiff's First, Second, Third, Fifth, Sixth, Eighth and Ninth Causes of Action are directed in part at Bethel College and John Thiesen (Doc. 1, generally).

In sum, Plaintiff claims that as a result of Bethel College's actions, he has been damaged. He claims that: Bethel College defamed him by calling him a "holocaust denier" and by telling the police that he was trespassing; he was damaged due to Bethel College's breach of contract by

3

excluding him from the remainder of the conference; he was damaged due to emotional distress he suffered as a result of the allegations; and he was damaged because he was falsely arrested.

## ARGUMENT AND AUTHORITIES

### I.   STANDARD OF REVIEW

Plaintiff appears *pro se*. Pleadings by *pro se* litigants are generally to be construed liberally and not to the standard applied to an attorney's pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, here, Plaintiff is himself an attorney. (Doc. 1, at ¶¶ 1-2). This circuit has repeatedly declined to extend the benefits of liberal construction to *pro se* pleadings filed by attorneys who have chosen to represent themselves. *See Comm. on the Conduct of Attorneys v. Oliver*, 510 F.3d 1219, 1223 (10th Cir. 2007) ("[W]hile we generally construe *pro se* pleadings liberally, we decline to extend the same courtesy to Mr. Oliver, a licensed attorney."). Nonetheless, even if Plaintiff's Complaint is extended the benefits of liberal construction, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Frank v. Bush*, No. 09-4146-RDR, 2010 WL 1408405, at *3 (D. Kan. Apr. 2, 2010), *aff'd*, 391 F. App'x 745 (10th Cir. 2010). Accordingly, the court should not supply additional factual allegations to "round out a plaintiff's claims or construct a legal theory on his behalf." *Id*. (*citing Whitney v. State of New Mexico,*113 F.3d 1170, 1173–74 (10th Cir.1997). With this in mind, Plaintiff must state a plausible claim against Bethel, as required by Tenth Circuit authority.

Plaintiff's conclusory legal assertions against Bethel are clearly insufficient by themselves to state plausible claims against Bethel. To avoid a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual allegations, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct.

4

1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S. Ct. 1955, 1960, 167 L. Ed. 2d 929 (2007)).  In other words, "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The Tenth Circuit has construed the *Twombly* court's use of the term "plausible" to refer to "the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins*, 519 F.3d at 1247 (*quoting Twombly*, 127 S. Ct. at 1974). This requirement of plausibility not only weeds out claims that do not have a reasonable chance of success but also serves to give defendants fair notice of the factual grounds for each claim. *Id*. at 1248.

The application of *Twombly* is particularly important in the context of § 1983 claims against governmental officials. *Robbins*, 519 F.3d at 1248 - 49. Although Plaintiff does not make § 1983 claims against Bethel, it involves claims against a private entity similar to those that could be made under § 1983, and thus this circuit's treatment of those similar claims is relevant.

Accordingly, such cases require "enough allegations to give defendants notice of the theory under which their claim is made." *Id*. The *Twombly* pleading standard requires specific allegations against each individual defendant:

> It is particularly important… that the complaint make clear exactly who is alleged to have done what to whom to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins*, 519 F.3d 1249 - 50 (emphasis in original) (*citing Twombly*, 127 S. Ct. at 1970-71 n. 10).

The Tenth Circuit applies a two-step process when analyzing a motion to dismiss under *Twombly* and *Iqbal*. *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009). First the court must identify conclusory allegations not entitled to the assumption of truth. *Id*. "Thus, mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, L.L.C. v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (*quoting Twombly*, 550 U.S. at 555). Second, the court must determine whether the remaining factual allegations plausibly suggest the plaintiff is entitled to relief. *Hall*, 584 F.3d at 863. "In other words, a plaintiff must offer sufficient factual allegations to 'raise a right to relief above the speculative level.'" *Kansas Penn Gaming*, 656 F.3d at 1214 (*quoting Twombly*, 550 U.S. at 555).

## II.   PLAINTIFF HAS NOT PLED A PLAUSIBLE CLAIM OF BREACH OF CONTRACT UNDER HIS FIRST CAUSE OF ACTION.

### a.  Plaintiff had a license which was revocable.

Plaintiff first argues that Bethel College, by excluding him from the remainder of the conference, breached its contract with Plaintiff. This claim must fail. An admission ticket (or other form of admission voucher) to an event is merely a license to attend that event. *Jacksonville Bulls Football, Ltd. v. Blatt*, 535 So. 2d 626, 629 (Fla. Dist. Ct. App. 1988) (collecting cases). Although not specifically addressed in Kansas, the majority rule is that a license to an event or performance that is silent on revocability is revocable at will. *Id*. This means that the licensor may terminate the license at any time, with or without cause. *See id*. The court in *Blatt*, cited above, noted that:

> As a revocable license, a ticket can be revoked by the proprietor at any time even though consideration has been paid by the ticket holder. However, where the proprietor revokes or denies the holder's admission to a performance, the holder has a

cause of action for breach of contract in which **he is entitled to recover as damages the consideration paid.**

*Id.* (*citing Marrone v. Washington Jockey Club,* 227 U.S. 633, 33 S.Ct. 401, 57 L.Ed. 679 (1913); *Burnham v. Flynn,* 189 N.Y. 180, 82 N.E. 169 (1907); *Boswell v. Barnum & Bailey,* 135 Tenn. 351, 185 S.W. 692 (1916)) (emphasis added). Thus, based on the majority rule, Plaintiff is not entitled to consequential damages, or any other damages (other than a refund of the admission fee) as a result of the revocation of his license to attend the conference. *See id.*

> *Marrone* is the landmark case on this issue. *See Marrone v. Washington Jockey Club,* 227 U.S. 633, 33 S.Ct. 401, 57 L.Ed. 679 (1913). In *Marrone*, the Court held that the defendant-proprietor was free to exclude the plaintiff from a racetrack despite the fact that the plaintiff lawfully purchased a ticket. *Id.* The plaintiff was not entitled to specific performance, and the Court strictly limited any damages to the face value price of the ticket. *Id.* The Court reached this conclusion because the "ticket was not a conveyance of an interest in the race track." *Id.* at 636. Instead, the ticket was a mere license to enter someone else's property for a limited period of time. *Id.* The ticket could be revoked at any time because the ticket holder did not actually have a property-based right to attend the event. *Id.*

> Since *Marrone*, the majority of courts continue to apply this holding to admissions to many different types of events. *See e.g. Bickett v. Buffalo Bills, Inc.,* 122 Misc.2d 880, 472 N.Y.S.2d 245 (Sup.Ct.1983) (football season tickets); *Burnham v. Flynn,* 189 N.Y. 180, 82 N.E. 169 (1987) (theater ticket); *Boswell v. Barnum & Bailey,* 135 Tenn. 35, 185 S.W. 692 (1916) (circus ticket); *Jordan v. Concho Theatres, Inc.,* 160 S.W.2d 275 (Tex.Civ.App.1941) (theatre ticket). For example, in *Bickett*, cited above, the Court started by noting the general rule that a "ticket is but a license, and is revocable so long as the revocation is not based upon a

discriminatory reason infringing upon a person's civil rights." *Bickett,* 472 N.Y.S.2d at 247. The court continued, stating that "a ticket to an entertainment performance or activity does not create a right *in rem*" but instead "is simply a license to the party presenting the same to witness a performance to be given at a certain time, and being a license personal in its character, may be revoked." *Id.* (citing *Collister v. Hayman*, 183 N.Y. 250, 76 N.E. 20 (1905)).

Here, Bethel College returned Plaintiff's registration fee.  (*See*, Doc. 1, at ¶ 94).  Thus Plaintiff has suffered no damages.  To be sure, Bethel College never entered into a contract with Plaintiff or any other attendees that a certain presentation would be made, that the event would last a certain amount of time, or even what the speakers would discuss. Instead, Bethel College merely extended licenses to its attendees to view the conference and be present on Bethel College property during the duration of the conference, as admitted by Plaintiff.  (*See* Doc. 1, at ¶ 23).  Bethel College, thus, had the right to revoke any license it granted to any of its attendees for no reason at all. In such event, Bethel College would have been responsible to merely repay the price each individual paid for admission, which it did for Plaintiff. (*See,* Doc. 1, ¶ 94).  Accordingly, Plaintiff's claim under his first cause of action must be dismissed.

> **b.  Even if Plaintiff has pled a plausible claim of breach of contract, Plaintiff is not entitled to consequential damages that were not proximately caused by the alleged breach or to non-economic damages.**

Even if Plaintiff has a viable breach of contract claim for more than the price of his admission—which he does not—Plaintiff is not entitled to the consequential damages that he seeks. Plaintiff claims damages of over $500,000 as a result of the alleged breach of contract. Specifically, Plaintiff claims that the breach of contract caused consequential damages in lost profit to his law practice and caused his subsequent false arrest.

Plaintiff's claim for lost profit to his law practice is not a consequential damage that is recoverable.  Under Kansas law, lost profits are recoverable as consequential damages if they (1) were "contemplated at the time of contracting," (2) are the proximate result of the breach of contract, and (3) are "shown with a reasonable degree of certainty." *Sprint Nextel Corp. v. Middle Man, Inc.*, No. 12-2159-JTM, 2014 WL 6977931, at *4 (D. Kan. Dec. 9, 2014). "Damages claimed which were not the proximate result of the breach of contract and those which are remote, contingent, and speculative in character cannot serve to support a judgment." *McCoy v. Wesley Hosp. & Nurse Training Sch.*, 188 Kan. 325, 338, 362 P.2d 841, 851 (1961).  Simply put, lost profit to Plaintiff's law practice was neither a proximate cause of Bethel College's alleged breach, nor was it they contemplated at the time of the contracting.  Bethel College had no idea that Plaintiff was an attorney or that he would be taking time off of his work to voluntarily attend the conference, and Bethel College certainly did not guarantee that if the conference was canceled or if Plaintiff was otherwise not able to attend the conference, that Bethel College would reimburse Plaintiff for any alleged lost profit to his business.  Thus, Plaintiff's lost profit claim must be dismissed.

Additionally, Plaintiff's alleged false arrest was not proximately caused by any alleged breach of contract by Bethel College.  Again, the consequence of Plaintiff being allegedly falsely arrested was not anticipated at the time of the contracting and it was not a proximate cause of the alleged breach, which was merely Bethel College excluding Plaintiff from the conference.  To be clear, Plaintiff alleges the Bethel College breached its contract with Plaintiff by excluding him from the remainder of the seminar.  This alleged breach has nothing to do with his false arrest which occurred not because Bethel College revoked Plaintiff's license, but instead occurred as a result of police finding probable cause that Plaintiff committed a crime.  Additionally, it is well

established in Kansas that non-economic damages are not recoverable under a breach of contract claim. *Clay v. Bd. of Trustees of Neosho Cty. Cmty. Coll.*, 905 F. Supp. 1488, 1500 (D. Kan. 1995). The damages claimed as a result of Plaintiff's false arrest are non-economic in nature. Thus, Plaintiff's breach of contract claim must be limited to the fee he paid for admission, which Plaintiff admitted was already returned. (*See,* Doc. 1, at ¶ 94).

## III. BETHEL CANNOT BE LIABLE FOR A FALSE ARREST, AS ALLEGED IN PLAINTIFF'S SECOND CAUSE OF ACTION, CARRIED OUT BY LAW ENFORCEMENT.

Plaintiff next argues that he was falsely arrested by Bethel College because Bethel provided false information to police officers which caused his arrest. The Kansas Supreme Court has held that a defendant cannot be liable for false arrest simply because it turned over to the authorities its knowledge of a suspected offense where an officer then makes an arrest on the officer's own judgment and discretion. *Thurman v. Cundiff,* 2 Kan. App. 2d 406, 580 P.2d 893, 898 (1978); *see also Wright v. Montgomery Ward & Co.*, 814 F. Supp. 986, 989 (D. Kan. 1993), *aff'd sub nom. Wright v. Montgomery Ward & Co.*, 25 F.3d 1059 (10th Cir. 1994) (citing *Thurman* for the proposition that conveying information to law enforcement cannot be a basis for defamation in Kansas). In *Thurman*, a department store was not liable under Kansas law for the false arrest of its cashier based upon the store's loss prevention specialist's report of theft to police, even though the specialist's report contained inaccuracies. *Thurman,* 2 Kan. App. 2d 406. The Court noted that the store did not swear out the complaintent, did not submit an affidavit, and after the initial call to police about the suspected crime, the store had no further role in whether charges would be filed. *Id*.

In fact, almost every court that has addressed such an issue has held the same way as the Kansas Supreme Court did in *Thurman*. *See Conn v. Paul Harris Stores, Inc.,* 439 N.E.2d 195,

10

199 (Ind. Ct. App. 1982) (relation of information to police insufficient to maintain action against third party for false imprisonment); *Johnson v. First Nat'l Bank and Trust Co. of Lincoln,* 300 N.W.2d 10, 13–14 (Neb.1980) (provision of information by employees to police not sufficient to maintain action against employer for false imprisonment and malicious prosecution); *Harrison v. Southland Corp.,* 544 S.W.2d 692, 694 (Tex. Ct. App. 1976); (mere reporting by employee of alleged offense does not establish employer's liability for false imprisonment); *Middleton v. Kroger Co.,* 38 Ill. App. 3d 295, 347 N.E.2d 27, 29 (1976) (store owner not liable for false arrest where employee merely asked sheriff's office to investigate matter); *see also Holland v. Lutz,* 194 Kan. 712, 719–21, 401 P.2d 1015, 1023 (1965) (person who merely signs complaint not liable for false arrest); *Thurman v. Cundiff,* 2 Kan. App. 2d 406, 410, 580 P.2d 893, 898 (1978) (merely giving information to officer not enough to render liable for false imprisonment).

Here, the only allegation made by Plaintiff is that someone from Bethel College called law enforcement to remove Plaintiff for trespassing.  Nowhere in his Complaint does Plaintiff allege that Bethel College actually told law enforcement to arrest Plaintiff. Instead, Plaintiff merely claims Bethel College gave false information to the police.  However, just as in *Thurman*, the decision to arrest Plaintiff was within the discretion of law enforcement, not Bethel College. Additionally, even if Bethel College provided false information, which it did not, such would not be sufficient to show a plausible claim of false arrest. *See Thurman,* 2 Kan. App. 2d 406.

Additionally, the police officers that carried out the arrest made a probable cause finding, and indeed had probable cause to arrest Plaintiff. *See Mendoza v. Reno County*, 235 Kan. 692, 695, 681 P.2d 676 (1984) (essential element of false arrest claim is lack of probable cause). Plaintiff admits that he was told by Mark Jantzen that he was no longer permitted at Bethel College for the conference. (Doc. 1, at ¶ 66).  In fact, Plaintiff was so concerned by Mr. Jantzen's

11

statement, thinking that Bethel College would "eject or detain him", that he went to law enforcement to discuss the issue. (Doc. 1, at ¶ 73). Nonetheless, Plaintiff returned the next day and police were contacted by Bethel College. (Doc. 1, at ¶ 78).

Plaintiff disputing that the word "trespassing" was never used prior to his arrest is unavailing. Criminal trespass requires only "entering or remaining upon ... any ... [l]and ... by a person who knows such person is not authorized or privileged to do so ...." K.S.A. 21-5808(a)(1)(A). Plaintiff admits in Complaint that he was asked to leave, yet he returned anyway. (*See,* Doc. 1, at ¶ 66). The fact that the word "trespassing" was never used has no impact on whether a crime was committed or whether the police had probable cause to arrest. Thus, Plaintiff's claim for false arrest must be dismissed.

## IV. KANSAS DOES NOT RECOGNIZE A CLAIM FOR NEGLIGENT FALSE ARREST, AS ALLEGED IN PLAINTIFF'S THIRD CAUSE OF ACTION.

In the alternative to his false arrest claim, Plaintiff also makes a claim for "negligent false arrest." For the same reasons as addressed in Section III, *infra*, Plaintiff's claim must be dismissed.

In addition, dismissal of Plaintiff's negligent arrest claim is proper because Kansas courts do not recognize such a cause of action. *See Brown v. State of Kansas,* 261 Kan. 6, 9, 927 P.2d 938 (1996) (finding a cause of action which alleges negligent conduct which results in false arrest and consequent damages to be a cause of action for false imprisonment rather than negligence for the purpose of statute of limitations); *see also Newell v. City of Salina*, 276 F. Supp. 2d 1148, 1158 (D. Kan. 2003) (holding that Kansas courts do not recognize a claim for negligent arrest). The Plaintiff in *Newell* brought suit against police officers for false arrest, excessive use of force, negligent arrest under state law, and against the city for failure to

adequate train its officers, after she was arrested for suspected public intoxication because she was waiving her arms during her exercise walk. *Newell*, 276 F. Supp. 2d at 1158.  The Court, noted that:

> Here, although plaintiff has couched her claim in terms of negligence of the officers, the "very gist and essence of the plaintiff's cause" is for false arrest, unconstitutional use of force, and/or negligent training by the City. Plaintiff's state law claim for negligent arrest does not state a separate cause of action under the present facts.

*Id*. at 1159 (citation omitted); *see also Grauerholz v. Adcock,* 51 Fed.Appx. 298, 301, 2002 WL 31579878, *3 (10th Cir. 2002) (noting district court's ruling that Kansas does not recognize claim for negligent use of force); *Miller v. City of Overland Park,* 231 Kan. 557, 559, 646 P.2d 1114 (1982) (noting that "negligent arrest" count had been dismissed for failure to state a claim upon which relief could be granted, and was not appealed).

Plaintiff does not address how Bethel College was negligent in causing the false arrest of Plaintiff. Thus, Plaintiff's claim for negligent false arrest is not a separate cause of action apart from his claim of false arrest. In any event, as addressed above, Kansas does not recognize such a claim. Accordingly, Plaintiff's claim must be dismissed.

## V.    PLAINTIFF HAS NOT PLED A PLAUSIBLE CLAIM OF DEFAMATION UNDER HIS FIFTH CAUSE OF ACTION.

Plaintiff claims that by providing false information to the police, Bethel is liable for defamation. In Kansas, a plaintiff alleging defamation must plead special and specific damages to survive a motion to dismiss. *Classic Communications v. Rural Telephone Service,* 995 F. Supp. 1185, 1188 (D. Kan. 1998) (stating that damages are not presumed in defamation cases, and that special damages must be plead).  In *Gobin v. Globe Pub. Co*., 232 Kan. 1, 2, 649 P.2d 1239, 1240 (1982) the Kansas Supreme Court reviewed the effect of a series of United States Supreme Court opinions upon Kansas defamation law and explained:

Prior to *Gertz,* (*Gertz v. Robert Welch, Inc.,* 418 U.S. 323 [94 S.Ct. 2997, 41 L.Ed.2d 789] (1974)) Kansas followed the common law rule dividing libel into libel per se and libel per quod. Libel per se involved words form which malice was implied and damage was conclusively presumed to result. General damages from such a publication arose by inference of law and the plaintiff was not obliged to establish damage by proof. (Citations omitted) ...

*Gertz,* as we pointed out in *Gobin I,* effected an immediate change upon the rule in Kansas and in those other states which presumed damages upon the establishment of libel per se, and permitted recovery based upon that presumption. Damages recoverable for defamation may no longer be presumed; they must be established by proof, no matter what the character of the libel.

Plaintiff merely claims damage to his reputation as a result of the alleged defamatory statements to law enforcement. (*See,* Doc. 1, at ¶ 160).  This Court has previously found that generic allegations of reputational injury are insufficient to meet the requirement of Fed. R. Civ. Pr. 9(g) that claims of special damage be definitely alleged.  For example, in *Woodmont Corp. v. Rockwood Center Partnership,* 811 F. Supp. 1478, 1484 (D. Kan. 1993), the Court observed that:

The existence of special damages is an essential ingredient of plaintiff's claim for relief. 5 Wright, Miller and Kane, FEDERAL PRACTICE AND PROCEDURE, § 1310 at 702 (1990). In Paragraph 14 of the complaint, plaintiff has merely made the general allegation that defendants' public statements damaged its business reputation. It has not named any customer whose business was lost as a result of the statement, nor has it alleged the amount of such loss. *Cf. Thompson v. Osawatomie Publishing Co.,* 159 Kan. 562, 564, 156 P.2d 506 (1945). The plaintiff's allegations are insufficient, in our judgment, to satisfy the dictates of *Rule 9(g).*

Similarly, in *Ablulimir v. U–Haul Co. of Kansas,* No. 11–4014–EFM, 2011 WL 2731774, *3, 2011 U.S. Dist. LEXIS 75191, *10 (D. Kan. July 13, 2011), where the owner of a vehicle leasing dealership was told by U–Haul that her cars were dirty, the Court dismissed the action for failure to plead the damages necessary under Kansas law, since "nothing in Ablulimir's pleadings can be construed to allege that her reputation in the community was damaged."

Here, Plaintiff has not pled special damages sufficient to survive a motion to dismiss. Plaintiff makes conclusory allegations that his reputation has been damaged because certain

unnamed individuals now have a "broken relationship" with him as a result of the defamation. Plaintiff also makes conclusory allegations that his law practice has become less profitable. These conclusory statements cannot survive a motion to dismiss.

Additionally, even if those statements are sufficient to survive a motion to dismiss, Plaintiff alleges that his *arrest* caused damage to his reputation, not the alleged statements by Bethel College to law enforcement that he was trespassing.  Indeed, Plaintiff does not, and cannot, plead that any statements made by Bethel College were communicated to a third party other than law enforcement or that those communications in themselves caused damage to his reputation. In other words, the alleged defamatory statements made by Bethel College were that Plaintiff was trespassing on school property; Plaintiff does not allege that the mere statement that he was trespassing caused reputational damage. Instead, Plaintiff alleges that the arrest, an intervening act that was carried out by someone other than Bethel College, caused his reputational damages.  Accordingly, Plaintiff's claim for defamation must be dismissed.

## VI.   PLAINTIFF HAS NOT PLED A PLAUSIBLE CLAIM OF DEFAMATION UNDER HIS SIXTH CAUSE OF ACTION.

Plaintiff also claims that John Thiesen, as a representative of Bethel College, made a defamatory statement where he allegedly stated that someone at the conference was a "holocaust denier." For the same reasons as addressed in Section VII, *infra*, this claim should also be dismissed for failing to plead special damages. However, in addition to those arguments already made, Kansas courts have consistently held that statements of opinion or hyperbole are not defamatory statements, and thus are not actionable under Kansas law. *Gatlin v. Hartley, Nicholson, Hartley & Arnett, P.A.*, 29 Kan. App. 2d 318, 320, 26 P.3d 1284, 1287 (2001).

In *Gatlin*, the Court held that a statement by the defendant, which was allegedly communicated to a third party by wife's divorce attorney that husband was not "totally innocent in all this, there are things about him you don't know", amounted to personal opinion and hyperbole, not defamation. *Id.*   An example of a statement of opinion includes calling someone a racist. *Squitieri v. Piedmont Airlines, Inc.*, No. 3:17CV441, 2018 WL 934829, at *4 (W.D.N.C. Feb. 16, 2018) (finding that calling an individual a racist is a matter of opinion, not a defamatory statement).

In fact, almost every court that has addressed statements related to a person's political affiliation or racial prejudice have found them to be statements of opinion, not defamation. *See e.g. Daniels v. Metro Magazine Holding Co.*, 179 N.C. App. 533, 540, 634 S.E.2d 586, 591 (2006) (calling an individual a fascist is not defamation, but instead an opinion); *Stevens v. Tillman*, 855 F.2d 394, 403 (7th Cir. 1988) (holding that neither general statements charging a person with being racist, unfair, unjust, nor references to general discriminatory treatment, without more, constitute provably false assertions of fact); *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) (holding that calling a judge "anti-Semitic" was a non-actionable opinion); *Ward v. Zelikovsky*, 643 A.2d 972, 980 (N.J. 1994) (accusation that plaintiffs "hated Jews" nonactionable); *Covino v. Hagemann*, 627 N.Y.S.2d 894, 895 (N.Y. Sup. Ct. 1995) (dismissing defamation claim based on statement that plaintiff was "racially insensitive," observing "an expression of opinion is not actionable as a defamation, no matter how offensive, vituperative, or unreasonable it may be" and "[a]ccusations of racism and prejudice" have routinely been found to constitute non-actionable expressions of opinion).

In fact, Plaintiff proves the point that the term "holocaust denier" is simply a statement of opinion. In paragraph 47 of his Complaint, Plaintiff states that he "has never claimed that the

pejorative label 'Holocaust denier' accurately describes him or that it accounts for the complexity

or nuances of his historical views…" (Doc. 1, at ¶ 47). Thus, Plaintiff merely argues that, based

on his opinion, the term "holocaust denier" does not accurately reflect the views he holds. There

can obviously be a significant difference of opinion, which is the case here, on whether someone

is a holocaust denier, or whether said person merely holds "nuanced" opinions of historical facts.

Thus, Plaintiff's claim of defamation must be denied.

## VII.    PLAINTIFF DOES NOT PLEAD A PLAUSIBLE CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AS ALLEGED IN PLAINTIFF'S EIGHTH CAUSE OF ACTION.

Plaintiff also asserts a claim of intentional infliction of emotional distress under Kansas tort

law against Bethel College.  This tort is also known as the tort of outrage.  *Lindemuth v. Goodyear*

*Tire and Rubber Co.*, 19 Kan. App. 2d 95, 100 (1993).

To assert a claim for intentional infliction of emotional distress ("IIED"), Plaintiff must

show: (1) Bethel College's alleged conduct was intentional; (2) the alleged conduct was extreme

and outrageous; (3) there was a causal connection between the alleged conduct and Plaintiff's

mental distress; and (4) Plaintiff's mental distress is extreme and severe. *Balmer Fund, Inc. v.*

*City of Harper*, 294 F. Supp. 3d 1136, 1151 (D. Kan. 2018). "Intentional infliction of emotional

distress 'is not a favored cause of action under Kansas law.'" *Ratts v. Bd. of Cnty. Comm'rs*, 141

F. Supp. 2d 1289, 1322 (D. Kan. 2001) (quoting *Beam v. Concord Hospitality, Inc.*, 873 F. Supp.

491, 501 (D. Kan. 1994)). Accordingly, "Kansas courts have been reluctant to extend the outrage

cause of action to discrimination claims, including claims of sexual harassment, arising in the

employment setting." *Id.* Kansas courts have also stated that:

> Liability for extreme emotional distress has two threshold requirements which must
> be met and which the court must, in the first instance, determine: 1) Whether the
> defendant's conduct may reasonably be regarded as so extreme and outrageous as to

permit recovery; and 2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it.

*Lindemuth*, 19 Kan. App. 2d at 100 (quoting *Roberts v. Saylor*, 230 Kan. 289, 292-293 (1981)).

In *Lindemuth*, the plaintiff employee sued his employer alleging a tort of outrage claim. *Id*. at 96-97.  The alleged facts in *Lindemuth* are similar to the alleged facts in this case. The *Lindemuth* plaintiff asserted that his employment had been terminated based on a false accusation of theft and a subsequent shoddy investigation of that accusation. *Id*. He further alleged that before and after his reinstatement, his working environment became so hostile because of the accusation that he was justified in not returning to work.  *Id*.

Citing relevant cases, the *Lindemuth* court noted that the "overwhelming majority" of Kansas appellate courts have rejected alleged tort of outrage claims because the defendants' alleged conduct in those cases was insufficiently "outrageous" to support such a cause of action. *Id*. at 100-01.  The *Lindemuth* Court made the same ruling.  *Id*.  Even if it was assumed that the employer's acts in *Lindemuth* were intentional and the employee suffered severe emotional distress as a result, the conduct complained of was not sufficiently extreme and outrageous to rise to the level required for a viable tort of outrage claim.  *Id*.

Here, Plaintiff merely claims that Bethel College contacted the police about a potential trespass and told a room full of people that there was a "holocaust denier" at the conference.  It is worth noting that Plaintiff does not even allege that Bethel College disclosed Plaintiff's name when the statement "holocaust denier" was made. Plaintiff's allegations against Bethel College in this case are simply not severe and outrageous enough, as a matter of law, to support a cause of action for the tort of outrage.

Moreover, Plaintiff in this case has not even alleged any facts to support the requisite element of "severe emotional distress" to support a viable tort of outrage claim. A conclusory allegation of such distress — without supporting facts — is legally insufficient. *Wood*, 90 F. Supp. 2d at 1195. Thus, Bethel College is entitled to dismissal of this claim, as well as any corresponding prayer for relief, on that basis as well.[1] *Id.*

**VIII.  PLAINTIFF'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM, UNDER HIS NINTH CAUSE OF ACTION, MUST BE DISMISSED BECAUSE PLAINTIFF HAS NOT ALLEGED A PLAUSIBLE CLAIM, SPECIFICALLY THAT HE SUFFERED A PHYSICAL INJURY.**

Although this tort is recognized in Kansas, "there can be no recovery for emotional distress caused by negligence of another unless accompanied by or resulting in physical injury". *Holdren v. General Motors Corp.*, 31 F. Supp. 2d 1279, 1285 (D. Kan. 1998) (*quoting Humes v. Clinton*, 246 Kan. 590, 598, 792 P.2d 1032, 1038 (1990)). This "physical injury rule" requires that a plaintiff's physical injuries be the direct and proximate result of the negligently-caused emotional distress. *Holdren*, 31 F. Supp. 2d at 1285; *See also Fiscus v. Triumph Group Operations, Inc.*, 24 F. Supp. 2d 1229, 1245 (D. Kan. 1998) (generalized symptoms of emotional distress are insufficient to state a cause of action).

In this case, Plaintiff does not allege, and cannot allege, that any physical injury resulted from his purported negligently-caused emotional distress. Therefore, simply and without belaboring the issue, Plaintiff has failed to state any viable claim of negligent infliction of emotional distress against Bethel College.

---

[1] In the second paragraph eight of Plaintiff's prayers for relief, Plaintiff seeks punitive damages against Bethel College for the alleged actions of its employees. Bethel College cannot be liable in punitive damages for the intentional torts of its employees, except under certain circumstances that are not present in Plaintiff's Complaint. *S. Am. Ins. v. Gabbert-Jones, Inc.*, 13 Kan. App. 2d 324, 330, 769 P.2d 1194, 1198 (1989).

## IX.    PLAINTIFF'S PRAYERS FOR RELIEF SHOULD ALSO BE DISMISSED.

Bethel generally requests that all of Plaintiff's prayers for relief, as they relate to Bethel, be dismissed as they relate to causes of actions that are also dismissed by this Court. However, two prayers for relief require brief separate discussion.

Plaintiff in paragraph four of his prayers for relief, requests that a judgment be entered against Bethel College as to Plaintiff's fourth cause of action. Plaintiff has not made any claims against Bethel College in his fourth cause of action. Specifically, Plaintiff's fourth cause of action is against the City of Newton and Harvey County for false arrest. Plaintiff seems to request an additional $50,000 against Bethel College if the City of Newton and Harvey County are found liable for their actions in arresting Plaintiff. This is simply inappropriate, and thus Plaintiff's prayer for relief should be dismissed.

Additionally, in the second paragraph nine[2] of Plaintiff's prayers for relief, he seeks damages against Bethel College if the City of Newton and Harvey County are found liable under Plaintiff's tenth cause of action. Specifically, Plaintiff's tenth cause of action asserts Section 1983 claims against City of Newton and Harvey County for his arrest. No claims are made against Bethel College in this cause of action. Thus, for the same reasons as addressed above, this prayer for relief should be dismissed. In addition, even if claims were made against Bethel College under Plaintiff's tenth cause of action, Bethel College cannot be liable under Section 1983 because it did not, and could not, act under color of state law. See *Haines v. Fisher,* 82 F.3d 1503, 1508 (10th Cir.1996).

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against Bethel should be dismissed with prejudice.

Submitted by:

/s/ Scott E. Sanders
Scott E. Sanders, #18744
Corey M. Adams, #27253
MCDONALD TINKER PA
300 W. Douglas, Suite 500
Wichita, KS 67202
T: (316) 263-5851  F: (316) 263-4677
ssanders@mcdonaldtinker.com
cadams@mcdonaldtinker.com
*Attorneys for Defendants Bethel College and*
*John Thiesen*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of July, 2019, I electronically file the above and foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record and a coy has been mailed, first –class U.S. Mail to:

Bruce Leichty
220 W. Grand Avenue
Escondido, CA 92025
P: 760-484-2467
F: 951-676-7462
*Pro Per Plaintiff*

/s/ Scott E. Sanders
Scott E. Sanders, #18744
Corey M. Adams, #27253

---

[2]  Plaintiff seems to have accidently created two paragraph nine's in his prayers for relief.