**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| BRUCE LEICHTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:19-CV-01064-JWB-KGG |
| | ) | |
| BETHEL COLLEGE; | ) | |
| MENNONITE CHURCH USA; | ) | |
| CITY OF NORTH NEWTON; | ) | |
| KANSAS, HARVEY COUNTY; | ) | |
| LANCASTER MENNONITE | ) | |
| HISTORICAL SOCIETY; | ) | |
| JOHN THIESSEN; | ) | |
| JOEL NOFZIGER; | ) | |
| | ) | |
| Defendants. | ) | |

**JOEL NOFZIGER'S MEMORANDUM OF LAW**
**IN SUPPORT OF HIS MOTION TO DISMISS**
**AND MOTION TO STRIKE PURSUANT TO THE KANSAS PUBLIC SPEECH**
**PROTECTION ACT AND/OR CALIFORNIA ANTI-SLAPP ACT**

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................................ 1

RELEVANT BACKGROUND .......................................................................... 2

     A.    Holocaust "Revisionist" Activist Bruce Leichty Is Arrested for Trespassing at A Conference on Mennonites and the Holocaust. .............. 2

     B.    The Challenged Blog Post. ........................................................................ 3

ARGUMENT ...................................................................................................... 4

    I.    THE COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION. .................................................................... 5

     A.    Standard on a Motion to Dismiss for Lack of Subject-Matter Jurisdiction. ............................................................................................... 5

     B.    Because Plaintiff Pleads Only $70,000 in Damages, He Fails to Meet the Amount-in-Controversy Requirement for Diversity Jurisdiction. ............................................................................................... 5

     C.    Because Plaintiff's Defamation Claim Does Not Arise from A Common Nucleus of Operative Fact with His Arrest Claims, this Court Lacks Supplemental Jurisdiction. .................................................... 6

    II.    THE COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION. ................................................................ 7

     A.    Kansas Lacks General Jurisdiction over Mr. Nofziger. .............................. 7

     B.    Because Plaintiff Does Not Allege That Mr. Nofziger Intentionally Directed His Website Toward Kansas, this Court Lacks Specific Personal Jurisdiction over Mr. Nofziger. .................................................... 8

    III.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ........................................................................... 10

     A.    Standard for Motion to Dismiss for Failure to State a Claim. ................. 10

     B.    Choice of Law. ........................................................................................ 11

     C.    The Challenged Statements Are Non-Actionable Opinion. ...................... 11

     D.    The Complaint Admits That the Statements Are Substantially True. ......................................................................................................... 15

E.      Because Plaintiff Admits That He Injected Himself into Public Debate, He Is A Limited Purpose Public Figure and Fails to Plead Actual Malice. ........................................................................................ 17

IV.    MR. NOFZIGER SHOULD BE AWARDED REASONABLE ATTORNEYS' FEES PURSUANT TO THE KANSAS PUBLIC SPEECH PROTECTION ACT AND/OR THE CALIFORNIA ANTI-SLAPP ACT ......................................................................................... 18

A.      Standard and Applicability of Anti-SLAPP Statutes. ............................. 19

B.      Plaintiff's Claims Arise from Mr. Nofziger's Protected Activity ............. 20

CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Frontier Broad. Co.*,
   555 P.2d 556 (Wyo. 1976)........................................................................18

*Akins v. Liberty Cty., Texas*,
   No. 1:10-CV-328, 2010 WL 11552952 (E.D. Tex. Dec. 13, 2010) .........................7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................17

*Annette F. v. Sharon S.*,
   119 Cal. App. 4th 1146 (2004) .................................................................17

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
   480 U.S. 102 (1987)..............................................................................8

*Baral v. Schnitt*,
   1 Cal. 5th 376 (2016) ...........................................................................19

*Barnes v. Borough of Pottstown*,
   No. CIV. A. 93-1498, 1993 WL 239314 (E.D. Pa. June 30, 1993) ..........................6

*Benton v. Cameco Corp.*,
   375 F.3d 1070 (10th Cir. 2004) ..................................................................8

*Boe v. AlliedSignal Inc.*,
   131 F. Supp. 2d 1197 (D. Kan. 2001) ...........................................................11

*Bosley v. Home Box Office, Inc.*,
   59 F. Supp. 2d 1147 (D. Kan. 1999).............................................................18

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
   861 F.3d 1081 (10th Cir. 2017) .................................................................15

*Brooks v. Gill Indus., Inc.*,
   No. 277660, 2008 WL 1914795 (Mich. Ct. App. May 1, 2008) ...........................14

*Buckley v. Littell*,
   539 F.2d 882 (2d Cir. 1976)......................................................................13

*Bushnell Corp. v. ITT Corp.*,
   973 F. Supp. 1276 (D. Kan. 1997)...............................................................11

*Caranchini v. Peck*,
   355 F. Supp. 3d 1052 (D. Kan. 2018)........................................................19, 20

*Church of Scientology Int'l v. Time Warner, Inc.*,
  806 F. Supp. 1157 (S.D.N.Y. 1992),
  *aff'd sub nom. Church of Scientology Int'l v. Behar*,
  238 F.3d 168 (2d Cir. 2001) ......................................................................... 11

*Clark v. Time Inc.*,
  242 F. Supp. 3d 1194 (D. Kan. 2017) ...................................................... 12, 15

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ......................................................................................... 8

*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*,
  514 F.3d 1063 (10th Cir. 2008) ............................................................ 7, 9, 10

*Edwards v. Nat'l Audubon Soc., Inc.*,
  556 F.2d 113 (2d Cir. 1977) ........................................................................... 18

*Forte v. Jones*,
  No. 1:11-cv-0718 AWI BAM, 2013 WL 1164929 (E.D. Cal. Mar. 20, 2013) ...................... 13

*Frank v. Kansas Dep't of Agric.*,
  No. 19-1054-JWB, 2019 WL 2393008 (D. Kan. June 6, 2019) ................................. 5

*Fudge v. Penthouse Int'l, Ltd.*,
  840 F.2d 1012 (1st Cir. 1988) ....................................................................... 11

*Gilbert v. Sykes*,
  147 Cal. App. 4th 13 (2007) ......................................................................... 20

*Gregory v. McDonnell Douglas Corp.*,
  17 Cal. 3d 596 (1976) ................................................................................. 12

*Holy Spirit Ass'n for Unification of World Christianity v. Sequoia Elsevier
  Publ'g. Co.*,
  426 N.Y.S.2d 759 (App. Div. 1980) ................................................................ 14

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011) ....................................................................................... 7

*Jayhawk Capital Mgmt., LLC v. Primarius Capital LLC*,
  No. 08-2202-JWL, 2008 WL 4305382 (D. Kan. Sept. 18, 2008) .............................. 9

*Jones v. City of Philadelphia*,
  893 A.2d 837 (Pa. Commw. Ct. 2006) ............................................................ 14

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ....................................................................................... 11

iv

*Kluin v. Am. Suzuki Motor Corp.*,
  274 Kan. 888 (2002) ...........................................................................................7

*Knudsen v. Kansas Gas & Elec. Co.*,
  248 Kan. 469 (1991) .........................................................................................17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ...........................................................................................5

*Kuenzle v. HTM Sport-Und Freizeitgerate AG*,
  102 F.3d 453 (10th Cir. 1996) ..........................................................................10

*Law Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys., Inc.*,
  844 F.2d 955 (2d Cir. 1988)...............................................................................11

*Lester v. Powers*,
  596 A.2d 65 (Me. 1991)......................................................................................14

*Lion Bonding & Sur. Co. v. Karatz*,
  262 U.S. 77 (1923)...............................................................................................6

*Los Lobos Renewable Power, LLC v. Americulture, Inc*,
  885 F.3d 659 (10th Cir. 2018) ..........................................................................20

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991)............................................................................................15

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ...............................................................................................12

*Morningstar, Inc. v. Superior Court*,
  23 Cal. App. 4th 676 (1994) ..............................................................................12

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*,
  418 U.S. 264 (1974)......................................................................................12, 13

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*,
  149 F.3d 1086 (10th Cir. 1998) .......................................................................8, 9

*Provisional Gov't of Republic of New Afrika v. Am. Broad. Companies, Inc.*,
  609 F. Supp. 104 (D.D.C. 1985) .......................................................................18

*Pub. Employees' Ret. Sys. v. Moody's Inv'rs Serv., Inc.*,
  226 Cal. App. 4th 643 (2014) ............................................................................21

*Ratajack v. Brewster Fire Dep't, Inc.*,
  178 F. Supp. 3d 118 (S.D.N.Y. 2016).................................................................13

*Rinsley v. Brandt*,
  700 F.2d 1304 (10th Cir. 1983) ...................................................................12, 15

*Robbins v. Oklahoma*,
　519 F.3d 1242 (10th Cir. 2008) ...................................................10

*Robinson v. Tucker*,
　No. 12-2200-JTM, 2012 WL 5499439 (D. Kan. Nov. 13, 2012) ...............................5

*Rosenaur v. Scherer*,
　88 Cal. App. 4th 260 (2001) ...................................................20

*Rudnick v. McMillan*,
　25 Cal. App. 4th 1183 (1994) ...................................................12

*Shrader v. Biddinger*,
　633 F.3d 1235 (10th Cir. 2011) ...............................................7, 8, 9

*Smith v. United States*,
　561 F.3d 1090 (10th Cir. 2009) ...................................................11

*Squitieri v. Piedmont Airlines, Inc.*,
　No. 3:17-CV441, 2018 WL 934829 (W.D.N.C. Feb. 16, 2018).............................13

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
　303 U.S. 283 (1938)...................................................6

*Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*,
　55 F.3d 1430 (9th Cir. 1995) ...................................................14

*T & T Fin. of Kansas City, LLC v. Taylor*,
　No. 117,624, 2017 WL 6546634 (Kan. Ct. App. Dec. 22, 2017) (unpublished)....................19

*Terry v. Davis Cmty. Church*,
　131 Cal. App. 4th 1534 (2005) ...................................................21

*Traditional Cat Assn., Inc. v. Gilbreath*,
　118 Cal. App. 4th 392 (2004) ...................................................21

*Turkish Coal. of Am., Inc. v. Bruininks*,
　678 F.3d 617 (8th Cir. 2012) ...................................................13, 16

*United Mine Workers of Am. v. Gibbs*,
　383 U.S. 715 (1966)...................................................6

*Waddel v. Experian Info. Sols., Inc.*,
　No. 19-1047-JWB, 2019 WL 2473835 (D. Kan. June 13, 2019) ......................................10, 11

*Ward v. Zelikovsky*,
　643 A.2d 972 (N.J. 1994)...................................................14

*Wong v. Jing*,
   189 Cal. App. 4th 1354 (2010) .................................................................................11, 12

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*,
   450 F.3d 1132 (10th Cir. 2006) ......................................................................................17

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ..........................................................................................................8

**Statutes**

28 U.S.C. § 1332(a) ....................................................................................................................5

28 U.S.C. § 1367(a) ....................................................................................................................6

Cal. Civ. Proc. Code § 425.16 .................................................................................................20

K.S.A. § 60-5320 .........................................................................................................19, 20, 21

**Other Authorities**

14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3702
   (2d ed. 1985) .....................................................................................................................6

Eric Weslander, *The First Amendment Slapps Back: An Overview of the Free-*
   *Speech Protections of Kansas' New Anti-SLAPP Statute*, J. Kan. B. Ass'n,
   Jan. 2018 ...........................................................................................................................19

## INTRODUCTION

Plaintiff Bruce Leichty is a self-professed Holocaust "revisionist" from California who briefly traveled to Kansas to challenge participants in an academic conference about Mennonites and the Holocaust being held at a private Mennonite university. He has brought defamation claims against Pennsylvania resident Joel Nofziger, a Mennonite historian who operates the *Anabaptist Historians* blog, for publishing a post by another Mennonite historian that described Plaintiff as a "holocaust denier" who has "passed out anti-semitic literature" and who was removed by the conference organizers after he "began to ask an offensive question."

Leichty's claims are frivolous. Even a cursory read of his own complaint shows that he does not really challenge the underlying facts. He admits that he actively advocates what he dubs "revisionist views on the Holocaust." He admits that he distributes pamphlets that claim that the Holocaust was Jewish propaganda. He admits that he was ejected from the conference for announcing a "revisionist" event outside the conference during a conference session. All he really takes issue with is the post's use of critical language to describe these acts, rather than his preferred labels, and Mr. Nofziger's refusal to publish Leichty's 'rebuttal.'

None of that comes close to stating a claim for libel. The statements Leichty claims harmed his reputation are classic statements of opinions, and if any facts are implied, the complaint itself shows that they are at the very least substantially true. Additionally, Leichty admits that he actively injects himself into public controversy and debate concerning the Holocaust, making him a limited-purpose public figure. He thus must plead actual malice to state a libel claim, but does not even attempt to do so.

What is more, Leichty's attempt to drag a Pennsylvania historian into this Court to defend his publication of criticism of Leichty's appalling views fails for want of jurisdiction. The defamation claims against Mr. Nofziger do not arise from the same transaction or occurrence as

Leichty's claims relating to his arrest, so the only way that this Court could have subject-matter jurisdiction is based on diversity of citizenship. But Leichty affirmatively chose to plead that his damages totaled $70,000, so he is five thousand dollars and one cent short of the amount-in-controversy requirement. Nor is there personal jurisdiction: Mr. Nofziger resides in Pennsylvania and published a post criticizing a California resident. The only contact between Mr. Nofziger and Kansas that Plaintiff alleges is that Mr. Nofziger was also an attendee of the conference; Plaintiff does not allege that the blog's publication of a post by a *different* author arose from Mr. Nofziger's brief visit to Kansas. This Court thus lacks jurisdiction.

In short, Plaintiff's claims are utterly frivolous, and smack of a bad-faith effort to force his critics to spend time and money defending themselves far from home. This type of lawsuit by a plaintiff who actively seeks to participate in public controversy and then sues people who criticize him for doing so is precisely the reason why both Kansas and Plaintiff's home state of California have enacted laws providing for a mandatory award of reasonable attorneys' fees against plaintiffs who file lawsuits based on defendants' protected speech that lack a reasonable likelihood of success. Plaintiff's claims should be dismissed, and he should be ordered to pay Mr. Nofziger's reasonable attorneys' fees.

## RELEVANT BACKGROUND

### A.      Holocaust "Revisionist" Activist Bruce Leichty Is Arrested for Trespassing at A Conference on Mennonites and the Holocaust.

Leichty is a lawyer from California. Complaint ("Compl.") ¶¶ 2, 26. As he puts it, he "ha[s] identified himself with revisionist views on the Holocaust," *id.* ¶ 45, but says that he rejects the term "Holocaust denier" because "it implies . . . that there is incontrovertible evidence for the extermination by German authorities of six million noncombatant Jews (and others) during World War II," *id.* ¶ 48.

2

Leichty actively injects himself into public debate over the Holocaust. He briefly traveled to Kansas in March 2018 to conduct "dialogue" with registrants of an academic conference on Mennonites and the Holocaust held at Bethel College and to subject their work to "evaluation and testing." *Id.* ¶¶ 14, 27. He brought with him "a large quantity of pamphlets and books that he intended to hand out to interested registrants at the Conference." *Id.* ¶ 27. One such book was Don Heddesheimer's *The First Holocaust*, *id.* ¶ 27, whose principal claim is that the Holocaust was "part of a propaganda pattern" that was "Jewish-Zionist in nature." Ex. A.

He also organized and publicized an event with people he describes as "two self-identified professional individuals of Jewish origin or identity" in North Newton on March 16, 2018, to make a "presentation titled 'Two Jewish Revisionists Consider the Holocaust." *Id.* ¶ 34. He was ejected from the conference after being told twice to stop handing out flyers for that event and using a 'question' during a panel event to publicize the event. *Id.* ¶¶ 37, 40, 54. When he tried to return, he was arrested for trespassing. *Id.* ¶ 78.

### B.    The Challenged Blog Post.

Mr. Nofziger, who lives in Pennsylvania, is the Coordinating Editor of *Anabaptist Historians: Bringing the Anabaptist Past into a Digital Century*, a collaborative blog by several Anabaptist scholars. *See* Compl. ¶¶ 95, 97.[1] On March 23, 2018, the blog published a post by guest contributor Dr. Lisa Schirch, an academic at Eastern Mennonite University in Harrisonburg, Virginia, entitled "How Mennonites Reckon with our History in the Holocaust." Ex. B (blog post).

---

[1]    The Complaint erroneously alleges that Mr. Nofziger published the blog in the course of his employment at Lancaster Mennonite Historical Society ("LMHS"). He did not; the blog is an independent project of its contributors that has received grants from many sources, only one of which is LMHS.

The post, a personal narrative, briefly referenced Mr. Leichty's ejection from the conference:

> ***A Mennonite holocaust denier, Bruce Leichty, attended parts of the conference***. Leichty is a California-based lawyer known for representing the Holocaust deniers Ernst Zundel and his Mennonite wife Ingrid Rimland Zundel. ***Leichty has passed out anti-semitic literature at the past several MCUSA gatherings***. At the introduction of the conference, the organizers told the audience there was someone attending the conference who they were watching. But many were not in the room or did not understand what was being said. ***When Leichty began to ask an offensive question during the conference, the organizers removed him by calling campus security***, but did not inform the audience of who the man was or why he was being removed. The lack of communication confused many in the audience.

*Id.* at 4 (emphasis shows statements challenged by Plaintiff (Compl. ¶ 97)).

Leichty alleges that he demanded that he "be allowed a place of equal prominence on the website . . . to rebut the [allegedly] false statements . . . and to provide web readers with the facts or opinions of Plaintiff." Compl. ¶ 98. Mr. Nofziger refused to publish Leichty's purported rebuttal.

## ARGUMENT

Leichty's attempt to sue Mr. Nofziger for publishing measured criticism of Leichty's odious conduct fails to state a defamation claim for multiple independent reasons, not least because Plaintiff does not really contest the underlying facts and simply objects to the labels used. And in any event, Leichty's attempt to burden Mr. Nofziger with the costs of defending himself in a distant forum fail because this Court lacks jurisdiction. Plaintiff's complaint should be dismissed, and Mr. Nofziger awarded reasonable attorneys' fees pursuant to the Kansas Public Speech Protection Act and/or the California Anti-SLAPP Act.

## I.    THE COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.

This Court lacks subject matter jurisdiction over Plaintiff's claims. Diversity jurisdiction is absent because the amount-in-controversy on Plaintiff's defamation claim is exactly $70,000. Supplemental jurisdiction is lacking because the defamation claim based on a post *after* the conference does not arise from the same common nucleus of operative facts as Plaintiff's claims based on his expulsion and arrest *at* the conference. Accordingly, this Court lacks jurisdiction.

### A.    Standard on a Motion to Dismiss for Lack of Subject-Matter Jurisdiction.

"Because federal courts are courts of limited jurisdiction, a presumption exists against jurisdiction, and 'the burden of establishing the contrary rests upon the party asserting jurisdiction.'" *Frank v. Kansas Dep't of Agric.*, No. 19-1054-JWB, 2019 WL 2393008, at *2 (D. Kan. June 6, 2019) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Where, as here, a motion attacks the facial sufficiency of the complaint's jurisdictional allegations, "the court must accept all such allegations as true." *Id.* at *3. A facial challenge to jurisdictional allegations "is subject to . . . *Twombly/Iqbal* plausibility standards." *Robinson v. Tucker*, No. 12-2200-JTM, 2012 WL 5499439, at *2 (D. Kan. Nov. 13, 2012).

### B.    Because Plaintiff Pleads Only $70,000 in Damages, He Fails to Meet the Amount-in-Controversy Requirement for Diversity Jurisdiction.

Plaintiff purports to invoke this Court's subject-matter jurisdiction as to his claims against Mr. Nofziger based on diversity of citizenship. Compl. ¶ 1. For this Court to have diversity jurisdiction, the action must be between "citizens of different States" and the "matter in controversy [must] exceed[] the sum or value of $75,000, exclusive of interest and costs[.]" 28 U.S.C. § 1332(a). While Plaintiff pleads that he is a citizen of California and Mr. Nofziger is a citizen of Pennsylvania, his claim fails to meet the amount-in-controversy requirement because he claims exactly $70,000, five thousand dollars and one cent less than the jurisdictional amount.

Compl. ¶¶ 185-86. "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls[.]" *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *see also Lion Bonding & Sur. Co. v. Karatz*, 262 U.S. 77, 85 (1923) (dismissing action where "[t]he facts specifically stated show that the amount in controversy was less than" the jurisdictional amount). "[P]laintiff is the master of his or her claim; if"—as Mr. Leichty has done here—"plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy." 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3702 (2d ed. 1985). Because Plaintiff has pleaded a specific amount of damages that does not exceed $75,000, exclusive of interest and costs, the complaint facially establishes that this Court lacks diversity jurisdiction over the defamation claim against Mr. Nofziger.

**C.      Because Plaintiff's Defamation Claim Does Not Arise from A Common Nucleus of Operative Fact with His Arrest Claims, this Court Lacks Supplemental Jurisdiction.**

Nor can Plaintiff rely on the allegations of damages arising from his expulsion from the conference and arrest to establish jurisdiction over the later publication of the challenged statements. Because Plaintiff cannot establish diversity jurisdiction as to his defamation claim standing alone, he must establish that it is "so related to claims in the action" as to which this Court does have "original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). To satisfy that test, the "claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Courts dealing with false arrest claims and defamation claims arising out of publication of descriptions of the challenged arrest routinely hold that they do not arise from a common nucleus of operative fact. *E.g.*, *Barnes v. Borough of Pottstown*, No. CIV. A. 93-1498, 1993 WL 239314, at *1 (E.D. Pa. June 30, 1993) ("A trial against defendant police

officials would primarily involve their conduct relating to the arrests . . . . On the other hand, the defamation claim would focus on plaintiff's reputation, his injuries allegedly resulting from the publications, and the conduct and state of mind of certain newspaper employees."); *Akins v. Liberty Cty., Texas*, No. 1:10-CV-328, 2010 WL 11552952, at *4 (E.D. Tex. Dec. 13, 2010) (finding that Plaintiff had not invoked supplemental jurisdiction, but in any event such a claim would be unlikely to succeed). Plaintiff thus fails to establish that this Court has jurisdiction as to his claims against Mr. Nofziger.

## II.   THE COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

Plaintiff also fails to plead personal jurisdiction over Mr. Nofziger. Leichty "bears the burden of establishing personal jurisdiction." *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). To survive dismissal for want of personal jurisdiction at the pleadings stage, he must make "a prima facie showing" of personal jurisdiction, based on "well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff's complaint." *Id.* (quoting *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1069-70 (10th Cir. 2008) (brackets omitted)). Kansas interprets its long-arm statute to provide "personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the United States Constitution." *Kluin v. Am. Suzuki Motor Corp.*, 274 Kan. 888, 894 (2002). Accordingly, "due process principles govern the inquiry." *Shrader*, 633 F.3d at 1239.

### A.   Kansas Lacks General Jurisdiction over Mr. Nofziger.

Due process plainly does not permit general jurisdiction over Mr. Nofziger in Kansas. Consent, citizenship, domicile, or being served with process while physically present in the state are the traditional bases for all-purpose jurisdiction. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (plurality op.). Mr. Nofziger is not a citizen or resident of Kansas, Compl. ¶ 9, was not served with process in Kansas, Doc. 16 at 2 (indicating that Mr. Nofziger

was served in Pennsylvania), and has not consented to personal jurisdiction in Kansas.

Accordingly, Mr. Nofziger is not subject to general jurisdiction in Kansas.

**B.      Because Plaintiff Does Not Allege That Mr. Nofziger Intentionally Directed His Website Toward Kansas, this Court Lacks Specific Personal Jurisdiction over Mr. Nofziger.**

Nor can Kansas exercise specific personal jurisdiction over Mr. Nofziger's publication in Pennsylvania of a post by a Virginia professor criticizing a California resident. Specific personal jurisdiction is based on "the relationship among the defendant, the forum, and the litigation." *Daimler AG v. Bauman*, 571 U.S. 117, 133 (2014). In this circuit, a court first "consider[s] whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The defendant must have "purposefully directed its activities at residents of the forum" and "the plaintiff's claim [must] arise[] out of or result[] from 'actions by the defendant *himself* that create a substantial connection with the forum state.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987)).

In internet defamation cases, the challenged statements must be *intentionally targeted* at the forum state, not merely accessible from that state. The Tenth Circuit held in *Shrader v. Biddinger* that in the "unique circumstance" of claims arising from online communications, courts must "plac[e] emphasis on the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there." 633 F.3d 1235, 1240 (10th Cir. 2011). To satisfy this test, the defendant must have targeted the online communications "specifically at a forum state audience or otherwise ma[d]e the forum state the focal point of the message." *Id.* at 1244. To emphasize this point even further,

8

the *Shrader* court noted that this Circuit rejects the view that allegedly defaming a "known forum resident" is enough, and instead adopts a "more restrictive approach, holding that *the forum state itself must be the focal point of the tort.*" *Id.* (quoting *Dudnikov*, 514 F.3d at 1074 n.9 (emphasis is the *Shrader* court's)). On a similar note, Judge Lungstrum dismissed the internet defamation claims of a plaintiff called *Jayhawk* Capital Management—a name if ever there was one that would have tipped off the defendant that they were making statements about a Kansas-based company—because there was no "evidence that the relevant community" being targeted by the online press release or instant messages was concentrated in Kansas. *Jayhawk Capital Mgmt., LLC v. Primarius Capital LLC*, No. 08-2202-JWL, 2008 WL 4305382, at *5 (D. Kan. Sept. 18, 2008).

Plaintiff fails comprehensively to make that showing here. He is a California resident. Compl. ¶ 2. He alleges damages to his relationships and his business, which is in California; indeed, he specifically avers that he has "never" practiced law "in Kansas." *Id.* ¶ 17. He does not allege that Mr. Nofziger made Kansas the focal point of the Anabaptist Historians website. Plaintiff's theory appears to be that merely by publishing a post by *someone else* that happened to criticize Plaintiff, partially but not entirely for Plaintiff's conduct during a brief sojourn in Kansas, Mr. Nofziger purposefully directed his activities toward Kansas. But the Tenth Circuit has emphasized that the relevant contacts must be those of "the defendant *himself*." *OMI*, 149 F.3d at 1091. Indeed, what Plaintiff pleads actually shows why jurisdiction is improper. Like the *Shrader* plaintiff, Leichty "stresse[s] the [blog]'s *non*-local nature." 633 F.3d at 1242. He alleges that the blog "appeared on the worldwide web" and "is an influential source of news and information about Mennonite history and current events known to and accessed by decision-makers and persons of prominence *throughout the Mennonite church and elsewhere*." Compl. ¶¶ 95, 100 (emphasis added). By Leichty's own admission, then, his dispute with Mr. Nofziger is

9

a decidedly non-local one. Plaintiff thus fails to show that Mr. Nofziger has minimum case-related contacts with Kansas, and thus Kansas lacks personal jurisdiction over him.[2]

## III.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In any event, the complaint fails to state an actionable defamation claim. Plaintiff's complaint essentially admits the core underlying facts: he challenges the historical truth of the Holocaust; he has handed out literature at Mennonite Church events that contend that the Holocaust was "Jewish-Zionist" propaganda; and he was ejected from the conference after announcing a "revisionist" event he was hosting nearby during a question-and-answer session. What he really challenges are the adjectives and labels Dr. Schirch applied to those facts in the post. That does not amount to an actionable defamation claim. And since the complaint admits that Leichty injected himself into public debate and controversy over the Holocaust, the First Amendment requires that he meet the actual malice standard for a defamation claim related to his activism. Because he does not even attempt to plead actual malice, his complaint must be dismissed.

### A.   Standard for Motion to Dismiss for Failure to State a Claim.

To state a claim, "a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." *Waddel v. Experian Info. Sols., Inc.*, No. 19-1047-JWB, 2019  WL 2473835, at *2 (D. Kan. June 13, 2019) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). This Court must view "[a]ll well-pleaded facts and the reasonable inferences derived from those facts . . . in the light most favorable to Plaintiff," but it disregards

---

[2]       Plaintiff briefly alleges that "Nofziger was present at the Conference[,]" Compl. ¶ 96, but that is irrelevant to the specific jurisdiction analysis. The Tenth Circuit has held that "the requirement that the claim arises out of or results from the forum-related activities, is not satisfied when the plaintiff would have suffered the same injury even if none of the defendant's forum contacts had taken place." *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456–57 (10th Cir. 1996); *see also Dudnikov*, 514 F.3d at 1079 (holding that at least "but-for" causation is required, and leaving open whether proximate causation is also required). Plaintiff's allegations arise out of a blog Mr. Nofziger administers publishing Dr. Schirch's post, not out of Mr. Nofziger's brief visit to Kansas.

"[c]onclusory allegations." *Id.* This Court may also consider "documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In defamation cases, courts routinely consider the entirety of the allegedly libelous publication to have been incorporated by reference into the complaint, even if the complaint itself engages in selective quotation. *E.g.*, *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988); *Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1159 (S.D.N.Y. 1992), *aff'd sub nom. Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001).

## B.     Choice of Law.

To the extent that there is any conflict between the law of Kansas and Plaintiff's home state of California, California law applies to Plaintiff's state-law defamation claims. This Court applies the choice of law rules of Kansas. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Kansas law, "defamation claims are governed by the law of the state where the wrong was felt." *Boe v. AlliedSignal Inc.*, 131 F. Supp. 2d 1197, 1206 (D. Kan. 2001) (internal quotation marks omitted). Because "Plaintiff lived in [California] when the alleged wrong occurred," this Court must "apply [California] law when considering Plaintiff's . . . defamation claims." *Id.*; *accord Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1286 n.2 (D. Kan. 1997) (Kansas law applied to Kansan plaintiff because "plaintiff felt that financial injury" in Kansas). The application of either state's laws is, of course, "subject to applicable first amendment requirements." *Law Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys., Inc.*, 844 F.2d 955, 959 (2d Cir. 1988).

## C.     The Challenged Statements Are Non-Actionable Opinion.

Under California law, "[t]he elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (2010). To plead falsehood, a

plaintiff must plead a statement that is capable of being proven false—that is, a statement of fact rather than opinion. *Id.* at 1370 ("Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. Although statements of fact may be actionable as libel, statements of opinion are constitutionally protected."); *see also Clark v. Time Inc.*, 242 F. Supp. 3d 1194, 1218 (D. Kan. 2017) (similar principle under Kansas law). An opinion can support a defamation claim only "where an expression of opinion implies a false assertion of fact." *Wong*, 189 Cal. App. 4th at 1370; *see also Clark*, 242 F. Supp. 3d at 1219; *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990) (to be defamatory, a statement must be "sufficiently factual to be susceptible of being proved true or false"). "Whether a given statement constitutes an assertion of fact or an opinion is a question of law to be determined by the court." *Rinsley v. Brandt*, 700 F.2d 1304, 1309 (10th Cir. 1983) (citing *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 283-84 (1974)). This analysis is context-specific and made "in light of the nature and content of the communication taken as a whole." *Id.* (quoting *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 601 (1976)). Thus, where a statement is presented as commentary rather than hard news, courts take account of that context in determining whether readers would regard statements as conveying facts. *Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676, 692 (1994) ("The characterization of the article as a 'Commentary' also is relevant in considering the context in which the article appears."); *Rudnick v. McMillan*, 25 Cal. App. 4th 1183, 1192 (1994) ("[G]eneral, broad comments" in a letter to the editor would not be viewed as verifiable statements of fact.).

Courts consistently reject defamation claims based on the adjectives or epithets attached to a statement. Thus, courts have found the use of the term "traitor" conveyed the opinion that plaintiffs' actions were reprehensible rather than implying that they literally committed treason,

*Old Dominion Branch*, 418 U.S. at 284, and that labels like "fascist," "fellow traveler," and "radical right" are not verifiable statements of fact, *Buckley v. Littell*, 539 F.2d 882, 894 (2d Cir. 1976). Similarly, courts routinely view statements asserting prejudice or bigotry as non-actionable opinion. *Forte v. Jones*, No. 1:11-cv-0718 AWI BAM, 2013 WL 1164929, at *6 (E.D. Cal. Mar. 20, 2013) ("[T]he allegation that a person is a 'racist' . . . is not actionable because the term 'racist' has no factually-verifiable meaning."); *Ratajack v. Brewster Fire Dep't, Inc.*, 178 F. Supp. 3d 118, 165 (S.D.N.Y. 2016) (statement "that Plaintiff was a racist . . . is nonactionable opinion"); *Squitieri v. Piedmont Airlines, Inc.*, No. 3:17-CV441, 2018 WL 934829, at *4 (W.D.N.C. Feb. 16, 2018) ("Statements indicating that Plaintiff is racist are clearly expressions of opinion that cannot be proven as verifiably true or false.")

Here, Leichty takes issue solely with the labels used in Dr. Schirch's post—that is, the constitutionally protected opinion components. As discussed below, § III.D, Leichty admits the essential facts underlying Dr. Schirch's opinions. He challenges only the use—in the context of Dr. Schirch's personal narrative—of epithets such as "Holocaust denier" rather than Leichty's preferred label of "revisionist," and the characterization of the literature that Leichty admits he handed out as "anti-semitic" and the question he admits he asked as "offensive." These labels do not convey specific verifiable factual contentions, only the author's opinions.

Indeed, each of these specific labels has been held to be a subjective statement of opinion. In *Turkish Coal. of Am., Inc. v. Bruininks*, an organization complained that its denial of the Armenian genocide was compared to Holocaust denialism. 678 F.3d 617, 620-21 (8th Cir. 2012). The court held that the "denial" description was non-actionable because it either "express[es] a subjective evaluation of the credibility of the historical sources for" the plaintiff's assertions, which "is essentially an opinion," or if it was simply a statement about the contents of the plaintiff's website, was true. *Id.* at 625. Charges of anti-Semitism have routinely been held to

13

be non-actionable opinion. *Ward v. Zelikovsky*, 643 A.2d 972, 983 (N.J. 1994) (statement that plaintiffs "hate[d] . . . Jews" was non-actionable opinion); *Condit v. Clermont Cty. Review*,  N.E.2d 475, 478 (Ohio Ct. App. 1996) ("Numerous courts have concluded that allegations of fascism, anti-Semitism, or other accusations of ethnic bigotry are not actionable as defamation."); *Holy Spirit Ass'n for Unification of World Christianity v. Sequoia Elsevier Publ'g. Co.*, 426 N.Y.S.2d 759, 760 (App. Div. 1980) ("Whether the description of the plaintiff Church and movement justifies the charge of combining elements of 'Nazi-style anti-Semitism,' or whether what plaintiff says in its manual amounts to a statement that all Jews are philosophers of hatred are opinions."); *Jones v. City of Philadelphia*, 893 A.2d 837, 845 (Pa. Commw. Ct. 2006) (opinion that statements at meeting were "anti-Semitic" could not form basis of defamation claim); *see also Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1438 (9th Cir. 1995) (First Amendment prevented court from sanctioning attorney for expression of opinion that judge's sanctions decisions were anti-Semitic). And "offensive" is even more indefinite and subjective. *See, e.g.*, *Lester v. Powers*, 596 A.2d 65, 71 (Me. 1991) ("It conveys her subjective evaluation that Lester was homophobic, and that his manner was offensive, insensitive, and occasionally intimidating; these are not statements of fact but rather her personal observations."); *Brooks v. Gill Indus., Inc.*, No. 277660, 2008 WL 1914795, at *2 (Mich. Ct. App. May 1, 2008) ("The characterization of language as offensive is subjective and cannot be provable as false."). These are, in short, classic examples of statements that convey only the view of the speaker, not specific verifiable facts.

In short, Plaintiff may not like the opinions Dr. Schirch expressed about him and his conduct, but the First Amendment and its counterparts in the California and Kansas state constitutions protect her right to express critical opinions of him and Mr. Nofziger's right to publish those critiques.

### D.      The Complaint Admits That the Statements Are Substantially True.

In any event, even judged by the face of the complaint, the challenged statements are at the very least substantially true. Under both California and Kansas law, the falsity element of defamation requires that the statement be not just technically false, but *substantially* false. *Clark*, 242 F. Supp. 3d at 1220 ("The statement that plaintiff—not the corporation—sued former members is merely a technical distinction that does not make the statement false."); *Rinsley*, 700 F.2d at 1308 (distinction between filing suit and consulting with lawyer about filing suit was "too minor to be actionable"); *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991) (noting that under California law, as in other jurisdictions, substantial truth allows a defendant to escape liability if the "substance of the charge" is true, "even if she cannot justify every word of the alleged defamatory matter" (internal quotation marks omitted)). A "statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson*, 501 U.S. at 517 (internal quotation marks omitted). The Tenth Circuit, affirming the dismissal of defamation claims on a motion to dismiss, has held that "[w]hen underlying facts as to the gist or sting are undisputed, substantial truth may be determined as a matter of law." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1101 (10th Cir. 2017).

Here, Plaintiff's own complaint admits the substance of the factual basis for each of the challenged statements.

***Leichty Is a Holocaust Denier.*** Dr. Schirch described Plaintiff as a "Holocaust denier." Compl. ¶ 97. But the complaint admits that Leichty "ha[s] identified himself with revisionist views on the Holocaust." *Id.* ¶ 45. His objection to the term "denier" is not because he does not deny the widely held understanding of the Holocaust, but rather because "denier," he says, "implies . . . that there is incontrovertible evidence for the extermination by German authorities

of six million noncombatant Jews (and others) during World War II[,]" *id.* ¶ 48. But, as the Eighth Circuit recognized in *Turkish Coal. of Am., Inc. v. Bruininks*, describing such views as denialism is at least substantially true. 678 F.3d at 625. Plaintiff cannot, under either the common law or the First Amendment, compel Dr. Schirch or Mr. Nofziger to use his preferred label to characterize what he admits his views are.

*Leichty Distributed Antisemitic Literature.* Dr. Schirch described Plaintiff as having distributed "anti-semitic literature." Compl. ¶ 97. Plaintiff admits that he brought "a large quantity of pamphlets and books that he intended to hand out to interested registrants at the Conference," *id.* ¶ 27. If any support beyond the fact that Plaintiff's leaflets deny the historical truth of the massacre of six million Jews by Nazi Germany were necessary to support the characterization of the leaflets as "anti-semitic," it bears note that Plaintiff specifically pleads that one such piece of literature was Don Heddesheimer's *The First Holocaust*, *id.*, which claims that the Holocaust was "part of a propaganda pattern" that was "Jewish-Zionist in nature." Ex. A.[3] That is easily enough to support the characterization of the literature as "anti-semitic."

*Leichty Was Ejected After Asking an Offensive Question.* Finally, Dr. Schirch stated that Plaintiff was ejected for asking an "offensive question." Compl. ¶ 97. That is consistent with Plaintiff's own allegation that he was ejected from the conference after using a 'question' during a panel event to publicize his own "revisionist" event off-site. Compl. ¶ 54 (alleging that Plaintiff "stated to those assembled that 'just as there are different Mennonites attitudes toward the Holocaust, there are also different Jewish attitudes toward the Holocaust,' and he began announcing that registrants could take a unique opportunity to hear a revisionist Jewish

---

[3]      Because Plaintiff has thus incorporated this book by reference into his complaint, it may properly be considered on a motion to dismiss without converting it to a motion for summary judgment.

perspective on the Holocaust at a nearby location that evening," before his microphone was cut off and he was ejected to "shouts and jeers of derision").

In short, to the extent that Dr. Schirch's statements contain any factual implications about Plaintiff, the Complaint admits enough facts to substantiate at least the gist or sting of the statements. Because Plaintiff thus fails to plead substantial falsity, he fails to state a defamation claim.

### E.   Because Plaintiff Admits That He Injected Himself into Public Debate, He Is A Limited Purpose Public Figure and Fails to Plead Actual Malice.

Finally, Plaintiff's allegations suffice to establish that he is, for present purposes, a public figure and required to "demonstrate by a standard of clear and convincing evidence that the defamatory statement was made with 'actual malice.'"—that is, "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1136 (10th Cir. 2006). This "rigorous standard" applies not only to all-purpose public figures, but also to "one who 'voluntarily injects himself . . . into a particular public controversy and thereby becomes a public figure for a limited range of issues.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 n.3 (1986) (involving, among other issues, allegations that political activist and major Holocaust denialism funder Willis Carto and his organization were anti-Semitic)).

Plaintiff alleges more than enough to establish that he is a limited-purpose public figure in the context of his so-called "revisionism" activism. In *Knudsen v. Kansas Gas & Elec. Co.*, the Kansas Supreme Court held that "a free-lance writer" who investigated Wolf Creek Nuclear Generating Station "voluntarily injected himself into the public's attention" and thus was required to meet the actual malice standard. 248 Kan. 469, 478-79 (1991). Similarly, California courts have routinely found that activists on a wide range of issues thereby became limited-purpose public figures. *See Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1165-66 (2004)

(holding that litigant who sought to draw attention to her custody battle "as a battle to protect the rights of gay and lesbian parents and their children" was a "limited purpose public figure on the subject matter of the litigation," and collecting a long list of similar cases ranging from the Israeli-Palestinian conflict to protests over volleyball courts in a park and writing about a nature preserve). Plaintiff admits that he traveled halfway across the country to engage in advocacy and "dialogue" with attendees at a conference about the Holocaust. *Id.* ¶¶ 14, 27. He brought with him "a large quantity of pamphlets and books that he intended to hand out to interested registrants at the Conference." *Id.* ¶ 27. He even organized a separate presentation near the conference site. *Id.* ¶ 34. Even from the allegations of the complaint alone, Plaintiff readily falls within the category of activists and advocates who inject themselves into public controversies and thus must plead and prove actual malice when their conduct provokes further debate and discussion. Because Plaintiff fails to plead actual malice, he fails to state a claim.[4]

## IV.   MR. NOFZIGER SHOULD BE AWARDED REASONABLE ATTORNEYS' FEES PURSUANT TO THE KANSAS PUBLIC SPEECH PROTECTION ACT AND/OR THE CALIFORNIA ANTI-SLAPP ACT.

Finally, Mr. Nofziger should be awarded reasonable attorneys' fees. Both Kansas and California have enacted statutes designed to deter the use of meritless lawsuits to stifle public debate. Because Plaintiff's suit arises from Mr. Nofziger's speech on matters of public concern

---

[4]    Plaintiff's allegation that Mr. Nofziger refused to retract the post when Plaintiff denied its statements does not plead actual malice. *See, e.g.*, *Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) ("Surely liability under the 'clear and convincing proof' standard of *New York Times v. Sullivan* cannot be predicated on mere denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error."); *accord Bosley v. Home Box Office, Inc.*, 59 F. Supp. 2d 1147, 1152 n.3 (D. Kan. 1999) ("The court concludes that plaintiff's denials do not cut off defendant's First Amendment protections or take away its privilege" (citing *Edwards*)). Nor is Plaintiff's allegation that Mr. Nofziger refused to allow Plaintiff a forum to publish a purported rebuttal relevant; libel law does not create a "fairness doctrine," and could not do so consistent with the First Amendment, Indeed, even when the FCC's long-abandoned fairness doctrine was in force for certain broadcast licensees, courts held that violations of the doctrine did not establish actual malice. *E.g.*, *Adams v. Frontier Broad. Co.*, 555 P.2d 556, 563 (Wyo. 1976); *Provisional Gov't of Republic of New Afrika v. Am. Broad. Companies, Inc.*, 609 F. Supp. 104, 108 (D.D.C. 1985).

and about Plaintiff in his capacity as a limited-purpose public figure, under either state's law, an award of attorneys' fees is mandatory if Plaintiff cannot show that his claims have a reasonable likelihood of success.

### A. Standard and Applicability of Anti-SLAPP Statutes.

As Judge Murguia recently explained, the Kansas Act "was passed to protect against 'meritless lawsuits that chill free speech,' known as SLAPPs, or 'strategic lawsuits against public participation.'" *Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1055 (D. Kan. 2018) (quoting Eric Weslander, *The First Amendment Slapps Back: An Overview of the Free-Speech Protections of Kansas' New Anti-SLAPP Statute*, J. Kan. B. Ass'n, Jan. 2018, at 30, 31). Under the Act, a party may move to strike a claim if it is "based on, relates to or is in response to a party's exercise of the right of free speech, right to petition or right of association." K.S.A. § 60-5320(d). The Act employs a two-step approach, requiring that the defendant "make a prima facie case 'showing the claim against which the motion is based concerns a party's exercise of free speech, right to petition or right of association.'" *Caranchini*, 355 F. Supp. 3d at 1056 (quoting K.S.A § 60-5320(d)). "If the moving party meets this burden, the burden shifts to the responding party who must then 'establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case.'" *Id.* Kansas modeled its legislation in part on California's similar statute, and the Kansas Court of Appeals' only decision so far interpreting the statute has cited California cases as persuasive authority in interpreting the Kansas Act. *T & T Fin. of Kansas City, LLC v. Taylor*, No. 117,624, 2017 WL 6546634, at *5 (Kan. Ct. App. Dec. 22, 2017) (unpublished). Unsurprisingly, then, California employs a similar approach: "[f]irst, the defendant must establish that the challenged claim arises from activity protected by" the statute. *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016). Upon that showing, "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." *Id.*

Under both statutes, a defendant who prevails on a motion to strike is entitled to a mandatory award of reasonable attorneys' fees. K.S.A. § 60-5320(g); Cal. Civ. Proc. Code § 425.16(c)(1).[5]

As Judge Murguia found in *Caranchini*, the Kansas Act "shifts burdens of proof" and "is so bound up with the state created right or remedy that it defines the scope of that substantive right or remedy." 355 F. Supp. 3d at 1061. It thus applies in federal court, with the exception of certain narrow aspects such as the timing of a hearing and limits on discovery while the motion is pending. *Id.* As Judge Murguia noted, when the Tenth Circuit held that New Mexico's anti-SLAPP statute lacked the type of substantive burden-shifting or standard-altering provisions that would apply in federal court, it contrasted it to California's statute that did shift substantive burdens and change substantive standards. *Los Lobos Renewable Power, LLC v. Americulture, Inc*, 885 F.3d 659, 670 (10th Cir. 2018). Both statutes' substantive provisions thus apply in federal court.

### B.    Plaintiff's Claims Arise from Mr. Nofziger's Protected Activity.

Under either statute, Plaintiff's claims arise from Mr. Nofziger's protected activity. Under California law, "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" is protected. Cal. Civ. Proc. Code § 425.16(e). This is "construed broadly." *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23 (2007). California courts have found, among others, reviews of a plastic surgeon, allegations of misconduct by a pastor, and allegations of domestic abuse by a person who had attained prominence in litigation over adoption by same-sex couples, each contributed toward the public debate. *Id.* at 23-24. The statute is not limited to governmental conduct, but also ongoing controversies in "a limited, but definable portion of the

---

[5]    This includes the reasonable fees of counsel who are representing the defendant pro bono. *Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 285 (2001).

public," including private organizations, "in the context of an ongoing controversy, dispute or discussion." *Pub. Employees' Ret. Sys. v. Moody's Inv'rs Serv., Inc.*, 226 Cal. App. 4th 643, 659 (2014); *see also Traditional Cat Assn., Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 397 (2004) (dispute of "evident notoriety in the cat breeding community . . . concerned matters of public interest"). While there is little case law to date interpreting Kansas's statute, it is at least as broad, if not broader, than California's: it covers any claim that even "concerns a party's exercise of the right of free speech, right to petition or right of association." K.S.A. § 60-5320(d). It defines "[e]xercise of the right of free speech" broadly to include any "communication made in connection with a public issue or issue of public interest." K.S.A. § 60-5320(c)(4). The statute provides a broad, non-exclusive list of such issues, including "community well-being." K.S.A. § 60-5320(a)(7).

Mr. Nofziger's conduct easily meets the standard under either statute. The post he published addressed the issues of Mennonite history during the Holocaust and the community's efforts to address that history today. Ex. B (post). That is plainly a matter of ongoing debate and controversy within the Mennonite community—one important enough that Bethel College had hosted a conference to discuss it. California has specifically applied its statute to controversy within churches. *E.g.*, *Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534 (2005). While Kansas has not yet confronted this specific context, debates within or about religion fall squarely within the statutory language of "community well-being"—after all, for many people, their religious community is among the most important communities they belong to.

Tellingly, Plaintiff alleges in his complaint that he sought to participate in public debate—yet now sues Mr. Nofziger for permitting Dr. Schirch to participate in the same debate from a diametrically opposite perspective. Such an action is precisely the context that led to the enactment of anti-SLAPP laws. The "classic anti-SLAPP case" is a developer seeking to distort

debate over a development proposal by touting its benefits while suing those who dare oppose it. Weslander, J. Kan. Bar Ass'n, Jan. 2018 at 31. Similarly, Plaintiff spoke out on a controversial matter in his community but now seeks to sue Mr. Nofziger for publishing another side of that controversy that was critical of Plaintiff.

**✱✱**

This case, in short, arises from Mr. Nofziger's protected conduct. Under both the California and Kansas statutes, the burden then shifts to Plaintiff to show that his claims have a likelihood of success. For the reasons explained above in support of the motion to dismiss, Plaintiff cannot meet that burden. Accordingly, his claim against Mr. Nofziger should be stricken, and Mr. Nofziger should be awarded reasonable attorneys' fees.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's defamation claim against Mr. Nofziger for lack of subject-matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. The Court should also grant Mr. Nofziger's motion to strike the claim under the Kansas Public Speech Protection Act and/or the California Anti-SLAPP statute, and award Mr. Nofziger reasonable attorneys fees.

Dated:  July 17, 2019                      Respectfully submitted,

                                           **BERKOWITZ OLIVER LLP**


                                           By:_  */s/ Thomas P. Schult*_____
                                                 Thomas P. Schult, D. Kan. No. 70463
                                                 Jennifer B. Wieland, KS Bar No. 22444
                                                 2600 Grand Boulevard, Suite 1200
                                                 Kansas City, Missouri 64108
                                                 Telephone:   (816) 561-7007
                                                 Facsimile:   (816) 561-1888
                                                 tschult@berkowitzoliver.com
                                                 jwieland@berkowitzoliver.com

                                           **KIRKLAND & ELLIS LLP**

                                                 Jay P. Lefkowitz, P.C. (*pro hac vice*)
                                                 Joseph Myer Sanderson (*pro hac vice*)
                                                 601 Lexington Avenue
                                                 New York, New York 10022
                                                 Telephone:   (212) 446-4800
                                                 Facsimile:   (212) 446-4900
                                                 lefkowitz@kirkland.com
                                                 joseph.sanderson@kirkland.com

                                                 *Attorneys for Defendant Joel Nofziger*


## CERTIFICATE OF SERVICE

        I certify that on July 17, 2019, I electronically filed the foregoing document with the
Clerk of the Court by using the CM/ECF system, which will send notice of filing to all counsel
of record.


        ___/s/ Thomas P. Schult_____
        *Attorney for Defendant Joel Nofziger*