IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRUCE LEICHTY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BETHEL COLLEGE; MENNONITE )<br>CHURCH USA; CITY OF NORTH )<br>NEWTON, KANSAS; HARVEY COUNTY; )<br>LANCASTER MENNONITE HISTORICAL )<br>SOCIETY; JOHN THIESSEN; JOEL )<br>NOFZIGER; )<br>)<br>Defendants. )<br>_____ ) | No. 6:19-cv-01064-JWB-KGG |

BRIEF OF PLAINTIFF IN OPPOSITION TO MOTION TO DISMISS
OF DEFENDANT CITY OF NORTH NEWTON, KANSAS

Plaintiff Bruce Leichty (hereinafter "Plaintiff" or "Leichty"), Pro Se,  hereby opposes the

motion of Defendant City of North Newton, Kansas to dismiss his complaint pursuant to

F.R.Civ.P. 12(b)(1) and 12(b)(6).   This Opposition is based on one argument that is believed to

be novel in certain aspects but advanced in good faith--that federal law as interpreted in the 10th

Circuit as of late 2018 does not require or support the draconian remedy of dismissal of an

otherwise adequately pled state law tort cause of action for an acknowledged failure to have thus

far complied with K.S.A. 12-105b (this pertains to Plaintiff's Fourth Cause of Action)--and on

the completely non-novel argument that Plaintiff has pled all the necessary elements of a claim

against a municipality for violation of his civil rights under federal law, 42 U.S.C. Section 1983,

1

or is capable of doing so, so that the substance of the claim as stated in his Tenth Cause of Action survives and can be litigated in at least in that form.

As to his Tenth Cause of Action, Plaintiff asserts that he can show that at least this federal law claim is not subject to dismissal based only on the facts pled to date, but if not, that it cannot be dismissed based on facts not yet pled, in which case Plaintiff should be given a reasonable time in which to move to amend considering the fact that as of this writing he faces four separate deadlines within the space of the next two weeks to oppose five different motions to dismiss, some of which could trigger a need to amend as well. This Opposition is based on a concurrently-filed Request for Judicial Notice which is meant only to shore up Plaintiff's state law false arrest claim (Fourth Cause of Action), and on the points and authorities set forth below.


## I.  STATEMENT OF CASE

Plaintiff was arrested by officers called on by the police of the City of North Newton, Kansas  (identity of the second arresting entity is not clear to Plaintiff, but he originally thought they were Harvey County officers.)  Plaintiff was arrested by and at the behest of the police of North Newton without justification, at an event held on a college campus after he had been defamed and falsely accused of trespass by one or more individuals representing the two private parties sponsoring the event, even though he was a duly-registered event participant and guest from another state whose peaceful conduct was entirely consistent with participation in the event. The event was a two-day academic conference on the subject: "Mennonites and the Holocaust." One of the two parties requesting his arrest was Bethel College, a prominent citizen in the small municipality.  In arresting him on March 17, 2018, the City of North Newton ("City") was acting

2

on a policy or custom as described to Plaintiff earlier that morning that if its police were called to

the scene of an alleged trespass at the campus, the alleged offender would be given an

opportunity to leave without risk of arrest, upon penalty of arrest if he were to return.

The City–like all the other defendants in this action--believes that it should be allowed to

avoid accountability for its decisive role in the violation of Plaintiff's rights.  According to the

City, Plaintiff has committed errors fatal to obtaining any remedy at all, because Plaintiff didn't

allow the City to dispose of his claim administratively before it had to face this lawsuit, and

because Plaintiff hasn't met the pleading standards for a civil rights claim against a municipality

based on police misconduct.

All of the following facts should be deemed established for the purpose of this motion

and all except three are drawn from Plaintiff's complaint.  Plaintiff is concurrently asking this

Court to take judicial notice of three facts: (1) On July 17, 2019  he submitted a claim for

damages directly to the City of North Newton, and (2) and (3) the total population of North

Newton and total enrollment of Bethel College as of date of arrest were approximately 1700 and

500 respectively, meaning that approximately 30 per cent of North Newton's population consists

of the Bethel College population.  In the last year (2017) for which figures were readily available

from more than one source "on-line," the City of North Newton had a population of 1773 and

Bethel College had an enrollment of 514.

The facts established by Plaintiff's complaint include the following:

Plaintiff at the time of his arrest was already known to City police who had already twice

declined to arrest him or declare him in trespass nor had they shown any indication that they

deemed him a threat to public safety or private property.   Plaintiff established a cordial

relationship with the police chief of the City, Randy Jordan, after Bethel College called North Newton police twice on March 16, the opening day of the academic conference, asking police to penalize Plaintiff for his dissident views and/or his disinclination to follow instructions to stop sharing those views (Para. 40, 58, 61).

As of March 16, 2018, Plaintiff had a history of academic-related use of and presence at the Bethel College campus predating the conference (Para. 18).  Plaintiff was at no time on the first day of the conference (March 16) ordered to not return to the Bethel College campus or told he was trespassing  (Para. 59, 69, 72, 91).   Neither Police Chief Jordan or any other police officer advised Plaintiff on March 16 that he was prohibited from returning to the campus (Para. 63, 91); indeed, Plaintiff and Jordan discussed on the evening of March 16 (the day prior to the arrest) the fact that the college response to his presence on March 16 was anomalous (Para. 62).

Because of a threat made to him by Conference sponsors at the end of the day on March 16 regarding his conference participation, which nowhere suggested trespass, Plaintiff sought out City police on the morning before his second day of his Conference attendance, March 17, to determine what the policy of the police would be with regard to a call for his arrest.  (Para. 66-70, 73).  Plaintiff was told that the policy of North Newton police under circumstances where an individual was being ordered off the campus would be to give the alleged trespasser a warning, with the opportunity to freely leave the premises, upon penalty of arrest if he returned.   (Para. 71-74).

The City knew or had reason to know that Plaintiff had not been ordered off the campus before North Newton police were called to arrest him on the morning of March 17, 2018 (para. 66-70, 72, 77 - 79, 91); however, the City stated that it was in fact implementing the policy

4

discussed with Plaintiff earlier that morning because Plaintiff had not given its officer "all the facts" (Para. 78).

Plaintiff had also been invited on March 16 by one of the conference sponsors, Mennonite Church USA  (by its representative) to have lunch with him on the Bethel campus March 17 to talk about his dissident agenda.   (Para. 57, 71).

North Newton police arrested Plaintiff at the request of Conference sponsors, one of whom (Bethel College) is a prominent presence in the small municipality.  (Para. 82, 142). North Newton police acted in accord with its apparent policy to credit the representation of Bethel College rather than that of an alleged offender (Para. 142), since the arresting officer failed to check Plaintiff's narrative with Police Chief Jordan or with anyone else (Para. 77, 144, 145) and failed to investigate Plaintiff's assertions.   The City arrested Plaintiff pursuant to the policy conditions that had been communicated to Plaintiff regarding the opportunity for an alleged offender to leave after being told he was a trespasser, upon threat of arrest if he returned. (Para. 138, 143).

The City was acting under color of state law at the time of Plaintiff's arrest thereby subjecting him to disrepute and incarceration.  (Para. 200, 201).

Plaintiff was deprived of his constitutional right to liberty by the actions of the City. (Para. 195, 196).

The City did not prosecute Plaintiff for trespassing or any other crime.  (Para. 92).


## II. ARGUMENT

While Plaintiff now concedes that he failed to follow the entirety of Kansas law with

respect to pre-litigation administrative presentation of a claim to the City of North Newton for

even an intentional tort, and while Plaintiff acknowledges that the Kansas Supreme Court has

said that such a failure leads to an absence of "subject matter jurisdiction" in the courts of the

State of Kansas, Plaintiffs asserts that the same jurisdictional defect would not attend his

complaint filed in this court in March 2019 after a change of course regarding the standards for

determining an absence of jurisdiction in analogous cases at the 10th Circuit in late 2018, and that

his pre-litigation failure therefore does not mean that federal law either requires or allows

dismissal of an otherwise well-pled state aw claim (especially where a federal claim is also

cognizable).

Accordingly, Plaintiff submits that the action should either be stayed to allow the

procedural defect attending the state law tort claim to be cured, or that he should be given ample

time in which to amend based on the claim that is now on file with City of North Newton (see

Request for Judicial Notice).   However, whether or not Plaintiff is accorded that relief on his

state law claim, Plaintiff notes that his federal civil rights claim cannot be dismissed at all, even

if that claim is currently not adequately pled, although Plaintiff asserts that the claim is indeed

well pled even under the rigorous standards applicable to liability of a municipality as distinct

from its officers–but that if it isn't, he is also entitled to an opportunity to amend that claim.


1. Plaintiff Is Not Relegated to Dismissal of His Kansas Tort Claims Act Claim

Plaintiff concedes that there is error in his pleading regarding his tort claim under state

law, although Plaintiff respectfully submits that the error is or should be non-fatal.  Plaintiff's

6

Fourth Cause of Action for the state law torts of false arrest and false imprisonment is otherwise well pled, and his claim for emotional distress is capable of being amended.

A.  The Failure to Give the City Advance Notice Is Not Fatal

When the Complaint herein was filed, Plaintiff had not submitted his claim for damages directly to the City of North Newton.  Plaintiff was laboring under what was apparently an erroneous assumption about the necessity under law of presenting his accrued state law claim for money damages for intentional tort to the municipality which had wronged him, before suing on it.  (Para. 11).  However, neither his assumption or the failure to give advance notice to City of North Newton is fatal to a remedy for the various causes of action pled for false arrest, false imprisonment and infliction of emotional distress.

Plaintiff is proceeding Pro Se in this case, and he is not a citizen of Kansas.  While Plaintiff is a lawyer, he is not admitted to the Bar in the State of Kansas and he has never practiced law in Kansas previously, nor has he ever litigated under either a tort claims act similar to that of Kansas or under the federal statutes allowing claims for violation of civil rights. Plaintiff does not know Kansas law.  Plaintiff believed in March 2018 when drafting his complaint that he had encountered Kansas case authority that exempted intentional tort actions from the requirements of K.S.A. 12-105b, resulting in his allegation found at Para. 11.  Plaintiff now concedes, however, that he has been unable to identify such authority either within his file (where he thought it would be found) or by new research.

Therefore, Plaintiff cannot reasonably argue to the Court that since false arrest and false imprisonment are intentional torts (even though that premise itself is true) he was not required to

7

comply with the written notice requirements of K.S.A. Section 12-105b.  (If, of course, the

Court is aware of such authority, Plaintiff trusts that the Court will apply the law to the facts of

this case notwithstanding Plaintiff's own inability to argue from precedent.)

Plaintiff will and does, however, advance what he believes is likely a novel argument

based on a strict reading of the applicable statutes and based on what he believes is the limited

applicability of the holding of the Kansas Supreme Court in <u>Sleeth v. Sedan City Hospital</u>, 317

P.3d 782 (2014) after August 2018,  that nothing in federal law supports or requires **dismissal** of

his claim under the Kansas Tort Claims Act for his error.   The first point that Plaintiff makes

here is that dismissal of an otherwise well-pled claim for reason of failure to exhaust an

administrative remedy is draconian: it would mean that when a plaintiff files an action for false

arrest any time after 8 months after his cause of action has accrued (as here) without realizing

that he instead should be submitting the case directly to the municipality, he has likely just

forfeited all opportunity for a remedy.[1]  This is a classic "trap for the unwary" that should not be

applied here, particularly where the claimant is not represented by counsel knowledgeable about

Kansas law.

Plaintiff submits that his failure is not a jurisdictional failure as might be the case if he

were litigating in state court.  The Kansas Supreme Court has stated that the "120-day review

---

[1] The reason that he would have forfeited all opportunity for a remedy after eight months is that by filing a court action without notice to the municipality any time after eight months, where the muncipality has 120 days in which to consider the claim before the claimant can act on it in the absence of any municipal determination, the municipality can then control whether the claimant will be able to meet the statute of limitations.  By deciding the claim adversely the day before the statute of limitations runs, which is possible whenever the claim has been filed more than eight months after the cause of action accrues, the one-year statute of limitations on a cause of action for false arrest will have already run by the time the claimant knows it.  See <u>Reindl v. City of Leavenworth</u>, 361 F.Supp.2d 1294, 1299-1300 (D. Kan. 2005).

period requirement of K.S.A. 2012 Supp. 12-105b(d) establishes a statutory condition precedent that must be met before a court has subject matter jurisdiction over a claim against a municipality under the Kansas Tort Claims Act." Sleeth, supra, at 794.   A number of Kansas federal District Court decisions hold similarly.   However, Plaintiff submits that while this would continue to arguably still hold true for an action now challenged in a Kansas court, the Kansas Supreme Court can no longer be looked to as the authority for a federal court on this issue, i.e. determination of its own subject matter jurisdiction at least in this context, in light of a 2018 decision of the 10th Circuit repudiating many decades of jurisprudence regarding the effect of a failure to exhaust an administrative remedy on its subject matter jurisdiction.   Therefore Plaintiff submits that Sleeth does not resolve the question of a federal court's subject matter jurisdiction over a Kansas law claim in March 2019 at the time this action was commenced.

The relevant 10th Circuit case is Lincoln v. BNSF Railway Co., 900 F.3d 1166 (10th Cir. 2018).   Since the time of that decision, Plaintiff believes that no published Kansas federal district court decision has held that the failure of a plaintiff to comply with the advance notice provisions of K.S.A. 12-105b(d) will require the district court to find that it has no subject matter jurisdiction over the tort claim, and even if Plaintiff is mistaken in that belief, Plaintiff respectfully submits that if a district court has held otherwise post-Lincoln, the district court would no longer be applying the principles accepted in the Circuit.

In Lincoln, the Court openly repudiated 40 years of jurisprudence in which it had steadfastly held that the exhaustion of administrative remedies is a "jurisdictional prerequisite to suit."   Id. at 1181.   It turned its back on that principle in deciding the issue in Lincoln by stating that the administrative filing in that case was in fact not a prerequisite for subject matter

jurisdiction, but rather that a failure to exhaust the applicable administrative remedy was an affirmative defense. Id. at 1185.

Admittedly, the Lincoln case does not concern the statute at issue here or any Kansas state statute but instead a federal statute in the context of an EEOC claim. However, the salient point is that the principle repudiated by the 10th Circuit is of much broader impact. Given that a federal court is entitled to determine its own subject matter jurisdiction to begin with, cf. Manning v. Blue Cross & Blue Shield of Kan. City (10th Cir. 2013), it might very well be the case, and Plaintiff submits that it is or should be the case, that post-Lincoln the 10th Circuit (or this court no matter the judge) would not rule that failure to comply with an administrative processing provision under Kansas law would deprive it of its subject matter jurisdiction, either.

See Pub. Serv. Co. of N.M. v. NLRB, 692 F.3d 1068, 1076 (10th Cir. 2012) ("[W]e must be wary about the word `jurisdiction'....[T]he Supreme Court has repeatedly warned lower courts against confusing `claim-processing rules or elements of a cause of action' with true `jurisdictional limitations.'"); see also Eberhart v. United States, 546 U.S. 12, 16 (2005) (per curiam) ("Clarity would be facilitated if courts and litigants used the label `jurisdictional' not for claim-processing rules, but only for prescriptions delineating the class of cases (subject matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority").

Thus Plaintiff submits that Dunnegan v. City of Council Grove, 77 F.Supp.2d 1192 (D. Kan. 1999) cited by the City, and similar federal district court cases decided in Kansas, can no longer be viewed as dispositive on this point. Plaintiff submits that, at the very least, the idea that the federal court can reflexively dismiss a Kansas tort claim based on absence of subject

matter jurisdiction for the reason of an administrative claim processing failure can no longer be regarded as settled law.

If not grounds for dismissal on the basis of absence of subject matter jurisdiction, however, then of what consequence to the litigant should be a violation of K.S.A. 12-105b(d)? Plaintiff suggests looking to both the literal terms and the purpose of the statute, and with that in mind, Plaintiff asserts that dismissal of any sort is neither supported or required by the Kansas Tort Claims Act.  Plaintiff submits that the purpose of the Tort Claims Act should be kept in the forefront–to give the municipality fair opportunity to consider the merits of a claim administratively before having to litigate it.

Plaintiff asserts that that goal could still be accomplished in this case by the imposition of a stay on the action, i.e. for 120 days or until such time as the City of North Newton would determine the claim that Plaintiff has now (admittedly belatedly) submitted to the City; see Request for Judicial Notice; or by simply granting Plaintiff leave to amend extending to a time that is 10-14 days after the City has made its determination on the claim.   Plaintiff submits that based on all of the motions to dismiss that have been filed in this action, and the fact that a stay of discovery has already been granted (until 30 days after a ruling has been entered on the motion to dismiss filed by another defendant) it may well be close to 120 days by the time the case is ready to be litigated in any event; and that City of North Newton itself can control the length of any delay or stay or period granted for leave to amend by taking action much earlier than the 120 days allotted to the City under Section 12-105b(d).

The literal terms of the statute, even though interpreted by the Kansas Supreme Court to constitute a jurisdictional prerequisite which is now in question under U.S. Supreme Court

11

doctrine, do not explicitly mandate dismissal; and therefore if absence of subject matter

jurisdiction does not automatically result from a violation when the action is pending in federal

court and consequently not dismissal either, then one necessarily must look at those statutory

terms closely to see if there are other grounds for dismissal, whether mandatory or discretionary.

Plaintiff submits that the statute is not explicit and that the only issue–in view of the draconian

remedy of dismissal–should really be whether the Kansas legislature mandated dismissal.

In that light, whether intentional or inadvertent on the part of the Kansas legislature,

nowhere in Kansas law is a person actually prohibited from filing a complaint for false arrest in

federal court where no claim has been presented to the municipality.  Section 12-105b(d) does

indeed make the filing of a claim mandatory, but at no point has the legislature stated (in these or

similar words),  "A person is barred from suing for a tort claim in any court absent the

submission of the claim to a municipality."

Section 12-105b instead provides that "once notice of the claim is filed," no action shall

be commenced until denial or until 120 days, whichever comes first.  K.S.A. Section 12-105b(d).

Quaere: what about when no notice of a claim has been filed?  K.S.A. Section 12-105b(d) also

states, "No person may initiate an action against a municipality...unless the claim has been denied

in whole or in part," again presupposing that a claim has been filed.  What penalty did legislators

envision for tort victims who filed legal actions in ignorance of the requirement?  Plaintiff

submits that the statute is in fact silent on what happens when an action has been filed without

the victim of the tort having first submitted the claim to the municipality, whether that victim

knows or does not know about the advance notice requirement.

Plaintiff is certainly not making a  frivolous argument that there are <u>no</u> consequences or

potential consequences to such an omission, but instead, that the assumption that has been applied by Defendants here that dismissal must inexorably follow from a failure to comply with Section 12-105b(d) is not well-taken–especially in light of the questionable basis for a dismissal on the grounds of absence of subject matter jurisdiction after Lincoln, in light of the other 10th Circuit and Supreme Court authority also cited above.

As briefed below, a person may indeed file an action against a municipality under federal civil rights law, 42 U.S.C. Section 1983–at least as long as the claim is not based on an alleged deprivation of procedural due process owed under state law--without having first exhausted state law remedies such as submitting a claim to a municipality or waiting until it is denied either in whole or in part. Hartwick v. Board of Trustees of Johnson County Community College, 782 F.Supp. 1507, 1518 n.5 (D. Kan. 1992), citing Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). To that extent, therefore, the last part of K.S.A. Section 12-105b(d) quoted above is rendered a dead letter, if read literally. In other words, a person can indeed file one kind of an action against a municipality without presenting the claim first to the municipality, and that is a federal civil rights law claim, which renders a part of 12-105b(d) untrue. Plaintiff further submits that K.S.A. Section 12-105b(d) is constitutionally infirm because it would block such an action under 42 U.S.C. Section 1983 in the absence of an identified exception built into the statute, such as, "except where otherwise permitted by federal law." Plaintiff submits that for the same reason that K.S.A. Section 12-105b(d) is infirm where it would block a federal law cause of action based on his false arrest and false imprisonment, it is to the same degree not dispositive of whether an action based on identical facts can ultimately result in an award of state law tort damages.

13

On a policy level, if a person has a claim for the violation of his civil rights resulting in his false arrest and imprisonment, why would he allowed to make it under federal law but not under state law without following an administrative presentment process? Particularly where he acts, even if belatedly, to allow the agency the "first crack" at the claim? Plaintiff recognizes that it is not policy but legislative language that controls, but at least where the language does not clearly mandate dismissal of a case filed without advance notice and where the United States Supreme Court has questioned the very type of interpretation that the Kansas Supreme Court has given to the language at issue here, Plaintiff submits that the underlying policy concerns should at least be considered.

The alternative reading of K.S.A. Section 12-105b(d) and a more typical reading would be that the mere failure to submit one's claim to the municipality will means that the action cannot be commenced at all, even if that it is not what the statute actually says. That is similar but not the same as what the Kansas Supreme Court did by holding in <u>Sleeth</u> that there is no "subject matter jurisdiction." However, even presuming that such a reading would be adopted by this court even in the absence of a controlling precedent such as <u>Sleeth</u>, Plaintiff does not believe there is anything in the statute requiring the Court do dismiss such an action with prejudice. Instead, Plaintiff submits that the Court would also have other options at its disposal, consistent with all the various policies that come into play including giving an aggrieved claimant a chance to make a recovery even from a sovereign actor. Plaintiff thus asserts that the Court could do at least one of two things: grant Plaintiff time to move for leave to amend until after the City has acted on Plaintiff's late-filed claim, or stay the case and hold it in abeyance until that same time.

14

As noted below, there is no merit to the City's protestation that the state law tort claim is otherwise not well pled.   Plaintiffs submits, in other words, that even where he has failed to follow the provisions of the Kansas Tort Claims Act,  that a dismissal with prejudice for "failure to state a claim" is not a foregone conclusion, and that this is a particularly harsh result where as here Plaintiff has met the applicable statute of limitations and has an otherwise well-pled claim that could be granted if he were able to prove the facts contended, and where the purpose of the Kansas Tort Claims Act could still be satisfied without undue delay in the litigation.

### 2.  Plaintiff's State Law Claim Is Otherwise Well Pled

Although the City has also attempted to fault Plaintiff for not adequately pleading a cause of action for false arrest or false imprisonment under Plaintiff's Fourth Cause of Action, the City's arguments on this point are without merit.  Plaintiff does concede that his Fourth Cause of action for state law infliction of emotional distress could be better pled, however, and he should be granted time to file a motion for leave to amend to do so.

The terms false arrest and false imprisonment are used in Kansas to mean any unlawful physical restraint by one of another's liberty, whether in prison or elsewhere.  Brown v. State of Kansas, 261 Kan. 6, 927 P.2d 938 (1996 ).   All such arrests are intentional torts, whether negligence is averred or not.  Id.

As noted by the City, false arrest is "the restraint of the personal freedom of an individual without legal excuse by any words, acts, threats or personal violence that under the circumstances the one being restrains fears to disregard."  Soto v. City of Bonner Springs, 38 Kan.App.2d 382, 385, 166 P.3d 1056, 1059 (2007) (citation omitted).

15

It is beyond dispute that Plaintiff has alleged exactly that.  Plaintiff alleged an act of arrest by a City and its law enforcement officers without legal excuse.  In other words, even though Plaintiff was arrested for being a trespasser, Plaintiff has alleged he was not a trespasser (Para. 59, 60, 67-72, 79, 83, 84, 91, 137), and thus he has effectively alleged that there was no legal excuse for his restraint (both his arrest and subsequent imprisonment in this case that followed from the arrest).  "Plaintiff believed he had the right to be present at the Conference and thus on the Bethel College campus when he appeared on the morning of March 17" (Para. 84) and he subsequently confirmed with the Police Chief for the City that the Chief had no contrary understanding (Para. 91).

It is also beyond question that an ordinary law-abiding person, as Plaintiff is (Para. 16, 92) fears disregarding the authority of uniformed police officers who are announcing an arrest, which can also be inferred in the specific case of Plaintiff both from the fact that he had earlier acquiesced to the demands of Conference sponsors who had threatened him with arrest (Para. 40) and that he went to the police station on the morning of March 17 before he was arrested to try to ensure he could not be arrested (Para.73) and from Plaintiff's statement that he assured officers that he would not resist arrest (Para. 81).

The City tries to posture that Plaintiff pled that the arresting officers had "probable cause" to arrest him (City Memorandum, p. 6), but that is very wide of the mark.  In Paragraph 135, Plaintiff explicitly states that City of North Newton arrested Plaintiff "without having good and adequate cause to do so" and then follows that with a similar statement that there was no "legal basis for the arrest" (Para. 136).  The fact that a sponsor's representative with unknown ability to speak for the property owner (Para. 67) had told him on the previous night of March 16 that he

16

was "out of the conference," as the City argues, is beside the point.  As Plaintiff has already

pointed out, being excluded from a conference is a civil matter, distinguishable from being

ordered off a property which can become a criminal matter.  (Para. 66, 72).

Although City wants to litigate whether there was "probable cause" to arrest him and

whether Plaintiff was in fact trespassing, a motion to dismiss is not the place to do either.  The

allegations of Plaintiff that there was no adequate cause for his arrest and that he was not

trespassing (founded on a great number of detailed allegations of subsidiary facts), are to be

accepted as true for the purposes of this particular motion.  Smith v. United States, 561 F.3d

1090, 1098 (10th Cir. 2009) [in deciding a Rule 12(b)(6) motion, a court accepts as true "all well-

pleaded factual allegations in a complaint and view[s] these allegations in the light most

favorable to the plaintiff."]; Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th

Cir. 2011) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (mere labels and

conclusions do not suffice; a plaintiff must offer specific factual allegations to support each

claim).

Moreover, the only case cited by the City in support of its argument regarding probable

cause, Mendoza v. Reno County, Kansas, 235 Kan. 692, 681 P.2d 676 (1984), is a summary

judgment case, not a 12(b)(6) case.  It is one thing to determine probable cause on a summary

judgment motion and quite another to expect a court to be able to do so in the context of motion

to dismiss–apparently from the Plaintiff's allegations alone.

Plaintiff is aware of ample legal authority to support his position that he was not

trespassing when he was arrested for protest, whether under City of North Newton policy or

statute or case law, but that this is not the proper time or place to brief this issue of substantive

law since it goes to the ultimate result in the case, and in light of the fact that he has already

established his factual allegations for purposes of this motion per <u>Smith v. United States</u>, <u>supra</u>,

and <u>Kansas Penn Gaming, LLC</u>, <u>supra</u>, and like cases.

City also attempts to argue that the City and its officers were "immune from liability"

under K.S.A. 75-6104 for various reasons, in a few brief lines that are not clear, and without

citing any case authority for its proposition.  Determining whether the arresting officer from the

City of North Newton qualified for immunity, when the whole purpose of the Kansas Tort

Claims Act is to provide for claims against public entities and officers, implicates a fact-specific

inquiry and can certainly not be resolved at the pleading stage, nor has City pointed to any

statements in Plaintiff's Complaint which would require such a finding.   Plaintiff also has not

sued individual officers, but rather the municipality.  Moreover, any attempt by a state to make a

municipality immune from liability may well clash with settled law as decided by the Supreme

Court; see <u>Monell v. New York Dept. of Social Services</u>, <u>infra</u>.

The proposition that the arresting officer would be immune if Plaintiff's damage resulted

from the officer's or the City's invalid enforcement of a law, if that is what City intends, is based

on a misreading (and selective quotation by City) of K.S.A. Section 75-6104c, where the

modifier "invalid" obviously refers to a law rather than the enforcement of the law or the failure

to enforce the law (which is not the kind of thing that can be described as "invalid" since it is by

definition a "failure"), and which states in full that a governmental entity shall not be liable for

damages resulting from "the enforcement of or failure to enforce a law, whether valid or invalid,

including, but not limited to, any statute, rule and regulation, ordinance or resolution."   Plaintiff

has not contended the Kansas trespass law was or is invalid.

18

The other possible proposition that the City is making, that the City or the officer would be immune if the officer was engaged simply in enforcement of a law, of course, begs the same question noted above, as to whether the officer had the prerogative of enforcing the consequences for trespass.   Was the City through Officer Stovall in fact enforcing "a law"?   That cannot be resolved on a motion to dismiss.

As for the City's remaining argument, relating to discretion, the Kansas Supreme Court has declared that under the Kansas Tort Claims Act "liability is the rule while immunity is the exception." Jackson v. City of Kansas City, 235 Kan. 278, 286, 680 P.2d 877, 886 (Kan. 1984). It has also opined that the "discretionary function" exception does not apply where there is a clearly defined mandatory duty or guideline which can arise from agency directives, case law or statutes.   Soto v. City of Bonner Springs, supra at 80, 283.

"Concisely stated, the rule is that if a government official in performing his statutory duties must act without reliance upon a fixed or readily ascertainable standard, the decision he makes is discretionary and within the exception of the Tort Claims Act.   Conversely, if there is a standard by which his action is measured, it is not within the exception."   Barton v. United States, 609 F.2d 977, 979 (10th Cir. 1979).   There is no question here based on Plaintiff's Complaint that the arresting officer, Officer Stovall, was harking to and believed he was acting consistent with a fixed standard, and it is eminently reasonable to believe that there would be such a standard for trespass arrests.

City has not addressed Plaintiff's claim for damages arising from "personal humiliation" which is pled in Paragraph 153 but which might better be characterized as emotional distress (see damages alleged from the same acts, alleged in Para. 209 and 210), and Plaintiff acknowledges

19

that his Fourth Cause of Action should have been more explicit with regard to such claims, both in its title (where only the words false arrest and false imprisonment appear) and in the context of Paragraph 153; but Plaintiff believes that he should allowed opportunity to move for leave to amend to allege that cause of action distinct from his cause of action for false arrest and false imprisonment. Plaintiff asserts that the cause of action for an intentional tort of infliction of emotional distress is conceptually distinct from the tort of false arrest or false imprisonment, and that its independent existence could be important here because the statute of limitations for recovering for such an injury is two years rather than one year. The "physical injury" requirement is satisfied here based on the fact that there was forcible control exerted over the person and body of Plaintiff.

Leave to amend should be freely given when justice so requires. Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Foman notes that this is a "mandate to be heeded." The exceptions to this liberal amendment standard are few: (1) undue delay, (2) undue prejudice to the opposing party, (3) bad faith, and (4) futility of amendment. Foman, supra; Stewart v. Bd. of Comm'rs for Shawnee Cnty, Kan., 216 F.R.D. 662, 664 (D. Kan. 2003). The case here has only been ripe for a short time; service of the Complaint was only attempted and accomplished within about the last 60 days, and so a defendant would be hard-pressed even to allege the first three factors.

Regarding delay, Plaintiff is aware of no Kansas federal court rule or case authority requiring that he have a motion to amend on file with the court before receiving a ruling on a given motion to dismiss filed by a given Defendant. Certainly he would have that option; F.R.Civ.P. 15(a)(1) provides for amendments of right (must follow within 21 days after the time

20

a response is due), but F.R.Civ.P. 15(a)(2) is the Rule that Plaintiff would rely on here, which provides for "other amendments" which shall be "freely given when justice so requires."   It would have been virtually impossible for Plaintiff to respond to five (5) motions to dismiss filed within three weeks of each other, and also prepare a motion to amend covering all of the amendments that Plaintiff believes he either would be or "might" be required to make in response to all of those motions, nor would it be fair for Plaintiff to have to presume that his complaint needs to be amended in any particular or guess at those particulars other than the few points where he has admitted a need for more particularity.

As to any matter discussed in this subsection, A.2, Plaintiff believes that the Court is not in a position to decline any amendment because the Court can already predict that it would be futile.   Plaintiff acknowledges that it would be a different if the Court were to not accept his analysis under Section A.1 above, but (as already indicated there) Plaintiff knows of no firm statutory or case law ground that the Court would have for saying at this point that an amendment under which Plaintiff could proceed based on the prospective denial of his administrative claim submitted 7/17/2019  (to City of North Newton) would necessarily be futile.

If the Court believes that Plaintiff's Fourth Cause of Action can be amended and needs to be amended and leave to amend is granted, Plaintiff should be granted a reasonable time to make a motion to allow the filing of an amended complaint – and Plaintiff should be allowed to do so only after all of the currently-pending five (5) motions to dismiss are determined, in the interests of justice not to mention judicial economy.

Moreover, before the Court even makes the determination regarding leave to amend, Plaintiff also respectfully submits that he is entitled to at least a modicum of consideration in this

regard based on the fact that he filed his complaint In Pro Per and has been unrepresented up to this point, and that is irrespective of whether any Defendant or the Court might be tempted to indulge in speculation about whether Plaintiff "could afford" a lawyer or should have known better than to try to represent himself [read: was a "fool" to do so].

"Pleadings must be construed so as to do justice." F.R.Civ.P. 8(e). "It is especially important for the court to consider the `liberal pleading standards' under [F.R.Civ.P.] 8(a)(2) `when [the plaintiff] has been proceeding, from the litigation's outset, without counsel." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

In closing Plaintiff also takes this opportunity to assert that, especially in view of the fact that Plaintiff would indisputably be entitled to relief for false arrest if he could prove the facts of his claim and if his claim had already been denied by the City of North Newton – i.e. that he was not trespassing when he was arrested for trespass –this is all the more reason that it would be a miscarriage of justice if his state law tort claim were to be given "the death penalty" simply because as a litigant trying to quickly learn Kansas law he failed to give a municipality advance notice of his claim before this action was filed, at least if there is any conceivable argument that the penalty need not be applied.

B. Plaintiff's Federal Civil Rights Claim Is Adequately Pled and
Not Subject to Dismissal

City has several objections to Plaintiff's Tenth Cause of Action for money damages for the City's violation of his civil rights pursuant to 42 U.S.C. Section 1983,but none of them are

22

grounds for dismissal--and certainly not for dismissal without leave to amend--and some of them can be disposed of in short order.

City opens with a citation from an unpublished Arkansas case which states merely that Plaintiff must plead two obvious elements of a Section 1983 claim:  the defendant acted under color of state law, and the defendant violated a right secured by the Constitution.  Plaintiff of course did both.  The "color of law" allegations are found as to both Plaintiff's false arrest and false imprisonment at Paragraphs 200 and 201 respectively.

One of the more obvious rights an individual has under the Constitution is the individual's Fifth Amendment right echoed in his Fourteenth Amendment right to not be deprived of his liberty without due process of law, and Plaintiff covered those bases in Paragraphs 195 and 196.  Moreover, this is not to suggest that these four paragraphs are unaccompanied conclusory allegations:  Plaintiff's Tenth Cause of Action incorporates the 193 allegations made in the first nine causes of action, quite a few of which lay out the details of an arrest under color of law and of the unlawful deprivation of Plaintiff's liberty, thus more than satisfying the pleading standards of Bell Atl. Corp. v. Twombly, supra.

When City protests, therefore, that "a municipality may not be held liable where there was no underlying constitutional violation by any of its officers," citing Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993), Plaintiff can only scratch his head and wonder whether City even understands that there is a right to liberty enshrined in the Constitution which is violated when an individual is arrested for a crime he did not commit (the facts under which the adequacy of the pleading must be assessed). .

Perhaps a less frivolous objection of City to the adequacy of Plaintiff's pleading is to the

possibility that Plaintiff's pleading attempts to hold the City liable only because City was the

"supervisor" of the police officers in question or on the basis that a defendant cannot be held

liable under a theory of *respondeat superior*.   However, this is a straw man.   One will look in

vain in the Complaint for any allegation of the City's "supervisory" role or any indication that

Plaintiff is proceeding on the basis of *respondeat superior*.   One would have to read the

Complaint imaginatively to believe that Plaintiff is proceeding under either theory.

True, Plaintiff is attempting to hold a City liable, and has cited actions of its police officer

in the course of making his allegations (not the actions of two police officers, even though the

Police Chief is referenced in the Complaint).   And City makes it sound like the mere mention of

officer actions renders the pleading suspect.   But how else would a civil rights complaint against

a City for deprivation of liberty ever be pled, but in the form of allegations naming specific

agents or employees or representatives or officers of the City?   A City only acts through such

individuals.    The mere fact that the locus of the violation is the act of an individual does not

mean that the cause of action is based on vicarious liability, or that the sole reason that the

municipality is being sued is it because it employed a tortfeasor, and the facts pled by Plaintiff

specifically state otherwise.

What is more critical to a civil rights pleading is, admittedly, that Plaintiff plead both that

a municipal employee committed a constitutional violation (not subject to any reasonable doubt

in the pleading here), and that "a municipal policy or custom was the moving force behind the

constitutional deprivation." Myers v. Oklahoma Cty. Bd. Of Cty. Comm'rs, 151 F.3d 131, 1316

(10th Cir. 1998) [citing Monell v. Department of Social Services, 436 U.S. 658, 694 (1978)].   It is

eminently clear from Plaintiff's pleading that Plaintiff has pled that Officer Don Stovall was in

fact acting in accord with municipal (police department) policy concerning trespassers when he (falsely) arrested Plaintiff for trespassing.   This is evident by the fact that Plaintiff lays out the trespass arrest policy as conveyed by Stovall in an allegation concerning Plaintiff's pre-arrest meeting with Stovall (Para. 76, 143), and then in Plaintiff's allegation regarding what Stovall told him immediately prior to his arrest, which was to simply reinforce that policy (even as Stovall was denying that Plaintiff was entitled to any consideration under it) (Para. 78).

Moreover, although the language quoted from Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 211 (1978), is often just the court's summary statement of when municipalities may be sued, and although in Monell there was a official maternity policy of the state agency that was alleged to have caused the deprivation of the claimant's rights, it also bears emphasis that not all rights sued on in an action against a municipality have to be those established by "policy" and that the court in Monell gave an expansive definition to the word "custom." "[L]ocal governments, like every other 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91.   If the Court believes Plaintiff has not pled policy, then it should recognize that he has pled custom within the Supreme Court definition.

Plaintiff is aware of no authority stating that it is necessary that either of the words "policy" or "custom" be used in pleading a violation of rights that is in its context obviously based on the policy or custom of a municipality.  Rather, the important point in a false arrest action is that the allegations show in detail that the officer was not acting outside of his self-

understood role when he was making the arrest but was implementing the will of the municipality. That is precisely the circumstances where municipality liability can be found, if Plaintiff can prove his facts true–and also the reason why Plaintiff did not sue the individual officer who may have believed he was doing his duty (although Plaintiff believes he also has alternative grounds for faulting the City based on the officer's failure to properly investigate or credit the narrative of Plaintiff). A duty, of course, arises from custom or policy.

In circumstances such as these, a plaintiff should not be required to already know and plead the existence of some document or record memorializing the applicable policy, such as the laundry list provided in Starret v. Wadley, 876 F.2d 808, 818 (10th Cir. 1989) (liability requires a "statement, ordinance, regulation, or decision adopted and promulgated by a municipality's officers"). That would be particularly unjust for an out-of-state resident who has only a passing encounter with the officers of the municipality in question, and the breadth of the dictum seems to contravene the language of the Supreme Court in Monell quoted above. Naturally enough, Starret is not a decision about the standards to be met in pleading, but rather a decision on an appeal after a jury trial, and so while **liability** of a municipality predicated on a given policy may indeed require proof of a formal written policy based on a given claim, or proof of custom in the case of a different type of claim, a plaintiff does not have to plead a specific document in order to **plead** either a policy or custom.

The same qualifier can be applied to the City's use of City of Canton v. Harris, 489 U.S. 378, 388 (1989), which is similarly an appeal after a jury trial, where it is liability and not pleading that is in issue.

To expect an out-of-state plaintiff at the pleading stage before any discovery has taken

26

place to know exactly how he would prove the existence of the North Newton, Kansas policy or custom for trespass arrests that was conveyed to him by Officer Stovall twice on the morning of March 17 would be expecting the impossible.

The above argument, of course, is premised on the fact that municipal liability will lie if the officer was implementing or executing a policy but did so based on false or incorrect assumptions or facts, which is allegedly what occurred here.  Plaintiff submits that is the intention of cases such as <u>Monell v. New York City Dept. Of Social Services</u>, <u>supra</u>, and for that matter its use of such nuanced language as "visited upon" (when referring to the deprivation); and indeed the language of the statute itself, which provides that a person is subject to liability under Section 1983 not just when the policy or custom is defective but when his/her/its "statute...or custom or usage" "*subjects, or causes to be subjected*, any other person....to the deprivation of any rights...secured by the Constitution" (italics added).

The Supreme Court has also stated that deprivations per municipal "usage" or "practice" and not just "policy" or a narrow definition of "custom" are to be considered deprivations for which liability is appropriate  .<u>L. A. Cnty v. Humphries</u>, 562 U.S. 29, 36, 131 S.Ct. 447, 178 L.Ed.2d 460 (2010.    In that case the Court repeated its concern that liability not be imposed "solely" for the "acts of others" but that the "municipality may be held liable `when execution of a government's policy or custom...inflicts the injury.'" <u>Id</u>.

City may be suggesting that the policy itself has to be unlawful, such as in <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 127-30 (1985), but Plaintiff takes issue with that suggestion and submits that it not supported by either the language used in <u>Monell</u> or <u>L. A. Cnty v. Humphries</u> and many other cases, but that an unlawful policy is only one of the theories under

27

which a municipality can be held liable for the violation of an individual's civil rights. However, if the Court disagrees, then Plaintiff believes he has also stated a cause of action based on an unlawful policy insofar as City of North Newton had a policy or custom of crediting the narrative of one of its largest citizens if it contradicted the narrative of the alleged offender and/or to do so without further investigation (Para. 142). This is plausible considering the prominence of Bethel College in the town of North Newton. (Para. 142, Request for Judicial Notice). Under this "alternative" reading of the custom or policy requirement, if and only if it were imposed by the Court and to the extent the Court thus were to hold that the existing Complaint is not adequate for recovery, Plaintiff would like to be be able to amend to better plead in the alternative that in the course of arresting him, City was acting consistent with a custom of either improper investigation of conflicting narratives or inadequate training regarding what exactly constitutes trespass (particularly where the alleged offender cites an invitation to return to the property), see Para. 151, or a custom unlawfully preferring the allegations of its prominent citizen, Bethel College, to the account of any individual accused of misconduct by the College, or to inadequate training as to how to evaluate and deal with the claims of its largest citizen, which is already suggested in his pleading as noted above. In such event Plaintiff would also like to be able to amend to better plead that the failure of Officer Stovall to contact Police Chief Jordan regarding whether in fact Plaintiff had been "trespassed" the day before Plaintiff's arrest arose from failure by official policymakers in North Newton to properly train or supervise subordinates to such an extent that the failure amounted to a custom or policy of deliberate indifference to the rights of Plaintiff and others similar situated (i.e. others who had had prior encounters with both the accuser and the police without any police action and who were now being accused of conduct

28

which was disputed by the accused).   That is also suggested, albeit not spelled out in a detailed

fashion, in Paragraph 77 of the Complaint especially when contrasted with Paragraph 91 of the

Complaint.

If the Court does not accept that Plaintiff has already adequately pled that City policy or

custom lay behind his false arrest, then the same pleading standards and amendment standards

already cited in Part A.2 above should be applied here.   However, Plaintiff again stresses that he

believes that only an unduly narrow reading of the Monell requirement regarding custom or

usage would even put Plaintiff in the position of having to request leave to amend.

WHEREFORE, Plaintiff requests that the Court deny the motion of City of North Newton

in its entirety, without more, leaving Plaintiff's pleading in his Fourth and Tenth Causes of

Action intact (and essentially allowing Plaintiff to later amend his pleading on his putative

prospective motion after City has either denied Plaintiff's newly submitted  claim or more than

120 days have passed since its submission); or alternatively, at the very least that the Court deny

the City's motion to dismiss Plaintiff's Tenth Cause of Action pled under 42 U.S.C. Section

1983 and, if the request of City pertaining to Plaintiff's state law tort claims be granted at all, that

the dismissal be without prejudice as to Plaintiff's rights, or explicitly with leave granted to

Plaintiff to amend as prayed for above, to pursue a claim on his July 17, 2019 claim against City

of North Newton; or alternatively, that if the City's motion to dismiss even Plaintiffs' federal

claim be granted, that it be granted without prejudice and with leave to amend and that Plaintiff

be granted sufficient time to file a motion to allow an amended pleading within a reasonable time

after all motions to dismiss now pending in this case are disposed of; or alternatively, that the

Court stay the entire case effective either now or upon the disposition of the final pending motion

29

to dismiss, with or without granting such other relief as the court may deem compatible, until

such time as the City has either denied Plaintiff's newly submitted claim or more than 120 days

have passed since its submission.

Respectfully submitted by,

/s/ Bruce Leichty

Bruce Leichty, In Pro Per
c/o Bruce Leichty, A Prof. Corp.
220 W. Grand Ave.
Escondido, CA 92025
(760) 484-2467
Fax: (951) 676-7462
leichty@sbcglobal.net

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd  day of July 2019, the foregoing was filed with the Clerk of the
Court of the Kansas District Court using the CM/ECF system which will send notice of
electronic filing to all counsel of record, including those shown below.

/s/ Bruce Leichty
Bruce Leichty, Plaintiff

Tracy M. Hayes
Robert M. Reynolds
Sanders Warren Russell & Scheer LLP
40 Corporate Woods
9401 Indian Creek Parkway, Ste. 1250
Overland Park, KS 66210
Phone: (913) 234-6100
Fax: (913) 234-6199
t.hayes@swrsllp.com
r.reynolds@swrsllp.com
Attorneys for City of North Newton, Kansas

Corey M. Adams
Scott E. Sanders
McDonald Tinker PA
300 W. Douglas, Ste. 500
Wichita, KS 67202
Phone: (316) 263-5851
Fax: (316) 263-4677
cadams@mcdonaldtinker.com
ssanders@mcdonaldtinker.com
Attorneys for Bethel College and  John Thiessen aka John Thiesen

Alan L. Rupe
Kevin E. Miller
Lewis Brisbois Bisgaard & Smith, LLP
1605 N. Waterfront Parkway, Ste. 150
Wichita, KS 67206
Phone: (316) 609-7900
Fax: (316) 462-5746
alan.rupe@lewisbrisbois.com
kevin.miller@lewisbrisbois.com
Attorneys for Mennonite Church USA

Eric A. Van Beber
Kevin D. Weakley
Wallace Saunders
10111 W. 87th St.
Overland Park, KS 66212
Phone: (913) 888-1000
Fax: (913) 888-1065
evanbeber@wallacesaunders.com
kweakley@wallacesaunders.com
Attorneys for Lancaster Mennonite Historical Society

Thomas P. Schult
Jennifer B. Wieland
Berkowitz Oliver LLP
2600 Grand Boulevard, Ste. 1200
Kansas City, MO 64108
Phone: (816) 561-7007
Fax: (816) 561-1888
tschult@berkowitzoliver.com
jwieland@berkowitzoliver.com
Attorneys for Joel Nofziger

31

Jay P. Lefkowitz
Joseph M. Sanderson
Kirland & Ellis - New York
601 Lexington Avenue
New York, New York 10022
Phone: (212) 446-4800
Fax: (212) 446-4900
lefkowitz@kirkland.com
joseph.sanderson@kirkland.com
Attorneys for Joel Nofziger

.....

Kelsey N. Frobisher
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Ste. 100
Wichita, KS 67206-4466
Phone:  (316) 267-6371
Fax:  (866) 347-3808
kfrobisher@foulston.com
Attorney for Harvey County [party dismissed 7/19/19]

Toby Crouse
Crouse LLC
11184 Antioch, No. 253
Overland Park, KS 6210
Phone: (913) 957-6832
tcrouse@crousellc.com
Attorney for Harvey County [party dismissed 7/19/19]

32