IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRUCE LEICHTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:19-cv-01064-JWB-KGG |
| v. | ) | |
| | ) | |
| BETHEL COLLEGE; MENNONITE | ) | |
| CHURCH USA; CITY OF NORTH | ) | |
| NEWTON, KANSAS; HARVEY COUNTY; | ) | |
| LANCASTER MENNONITE HISTORICAL | ) | |
| SOCIETY; JOHN THIESSEN; JOEL | ) | |
| NOFZIGER; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

BRIEF OF PLAINTIFF IN OPPOSITION TO MOTION TO DISMISS
OF DEFENDANTS BETHEL COLLEGE AND JOHN THIESEN

Plaintiff Bruce Leichty (hereinafter "Plaintiff" or "Leichty"), Pro Se, hereby opposes the

motion of Defendants Bethel College ("Bethel") and John Thiesen (sued as John Thiessen)

("Thiesen") ("College Defendants") to dismiss his complaint pursuant to F.R.Civ.P. 12(b)(6).   In

essence, Bethel and Thiesen want this court to grant summary judgment and determine facts that

the Court is no position to determine on a motion to dismiss for failure to state a claim; and

Plaintiff does not consent to have this motion treated as a motion for summary judgment.  To the

extent that College Defendants want to make their case for dismissal based on allegations

appearing in Plaintiff's own complaint, that attempt should be rejected because of the way in

which they have either distorted or cherry-picked the allegations they are relying on, while

ignoring allegations critical to Plaintiff's various causes of action.   Finally, even if the Court were

inclined to dismiss any of the causes of action, dismissal should be with leave to amend.

1

## I.  STATEMENT OF CASE

Plaintiff was arrested on March 17, 2018 at a conference being held on the campus of Bethel College, North Newton, Kansas, after representatives of Bethel College ("Bethel" )and Mennonite Church USA ("MCUSA") (collectively "Conference Sponsors" or "Sponsors") called the police of North Newton and claimed that Plaintiff was trespassing on the campus. (Para. 14, 82, 83).   Representatives of Sponsors had already called police twice the previous day without any charges or trespass warning being given (36, 37, 40, 54).   Also on the previous day,  John Thiesen, a Bethel employee and Sponsor representative, had labeled Plaintiff a "Holocaust Denier" in introductory remarks made to about 200 Conference registrants (Para. 43-45).   Plaintiff had duly registered for the Conference, which was titled,  "Mennonites and the Holocaust" (Para. 14, 20).   Plaintiff, a 63-year-old member of the California bar in good standing, lifelong Mennonite and member of an MCUSA congregation and former Kansas resident (Para. 17, 18),  had traveled to the Mennonite-affiliated Bethel campus from California specifically in order to participate in the Conference, and to contribute information in a non-disruptive manner.    Para. 24-30.

Plaintiff had been on the Bethel College campus many times over a period of many years for various academic purposes including regular research in the Mennonite archives and library deposited at Bethel College, without experiencing any opposition or incident.  (Para. 16. 18, 24). Conference organizers knew Plaintiff was a member of a MCUSA church.  (Para. 18).   Plaintiff brought with him to the Conference some flyers and books relating to the Holocaust which he believed Mennonites would either want to be aware of or should be aware of, and he came to the conference having planned an informational presentation titled "Two Revisionist Jews Look at the Holocaust," for the evening of March 16 at a room off the campus but located near the campus, next to the City of North Newton offices and police station (Para. 19, 27, 28, 29).

2

Two of Plaintiff's colleagues, professionals self-identifying as Jewish Holocaust revisionists had also traveled to North Newton from New York and Michigan respectively to give the off-site presentation organized by Plaintiff, and also to participate peacefully in the Conference, but were denied registration to the modestly-attended Conference after having inadvertently failed to pre-register (34-36).

Plaintiff participated peacefully and non-disruptively at all sessions of the Conference on March 16 (29, 31, 40, 41, 49).   Sponsor representative Mark Jantzen had first called North Newton police the morning of March 16 after Leichty declined to agree to stop distributing flyers and literature to Conference attendees, which resulted in no charges or trespass warnings but instead an agreement that Plaintiff subsequently adhered to (no distribution of his literature) (Para. 40, 41), and then Jantzen again called police that afternoon at a session titled "Mennonite Attitudes Toward the Holocaust" after Plaintiff asked for and was handed the microphone and tried to make a comment about different perspectives on the Holocaust among Jews and about his off-campus meeting to be held that evening (Para. 50-55).   The second police call also resulted in no charges or trespass warnings (58, 59, 62).

Another Sponsor representative who witnessed Jantzen's second call to police, John Sharp, invited Plaintiff after that incident to meet with him at lunch on the Bethel College campus the following day, March 17, to discuss Plaintiff's agenda (Para. 57).

Plaintiff approached Jantzen on the night of March 16 for a pre-arranged reconsideration of Jantzen's decision not to allow his colleagues to register, and Plaintiff was told by Jantzen that not only would his colleagues not be allowed to register but "you are also out of the Conference," whereupon Plaintiff reminded Jantzen that Plaintiff was a duly-registered participant with an invitation to return to campus the following day (Para. 64-66, 68-71).   Jantzen did not offer

3

Plaintiff any refund of his costs of attending the Conference (Para. 68, 71, 94), and Plaintiff was

not given any trespass warning at that time and considered the issue to be civil in nature (i.e. the

issue was whether he still had the right to participate in the Conference) (Para. 69, 72).

When Plaintiff appeared at the Conference the morning of March 17, Conference sponsors

including Bethel College called police again and falsely stated to police that Plaintiff had been

"trespassed" the previous day (Para. 78, 82, 83).   Plaintiff, who had never previously been

arrested, was then handcuffed and taken to the Harvey County Detention Center where his

mugshot was taken and where he was incarcerated for 18 hours before being released on his own

recognizance (Para. 16, 88, 90).   He was prevented from attending the remainder of the

Conference (108-11).   No charges were ever filed against him (Para. 92).

Neither North Newton Police Chief Randy Jordan, who had responded to both of the

March 16 calls, or any other police officer ever advised Plaintiff that he was prohibited from

returning to the campus (Para. 63, 91); indeed, Plaintiff and Jordan on March 16 discussed the fact

that the college response to his presence on March 16, the day prior to his arrest, was "anomalous"

(Para. 62).

The "mug shot" from Plaintiff's arrest appeared on the Internet shortly after the arrest,

where it remains.  (Para. 90).   Plaintiff suffered damage to his reputation and loss of business as a

result of his arrest and mugshot  (Para. 122-23), and failed to receive the benefit he was to have

received from his registration while expending some $1,900 to be in Kansas for the Conference.

## II. ARGUMENT

College Defendants, like all the other defendants in this action, do not wish to be held

accountable for their actions.  College Defendants contend that Plaintiff failed to state a claim for

relief for breach of contract or consequential damages (First Cause of Action), and that Bethel

College cannot be liable for "false arrest" that is carried out by law enforcement (Second and Third

Causes of Action).   College Defendants also claim that Plaintiff's causes of action for defamation

must be dismissed because he hasn't stated a "plausible" cause of action against either Bethel or

Thiesen (Fitth and Sixth Causes of Action), and Bethel claims that pleading defects likewise doom

Plaintiff's claims for either intentional or negligent infliction of emotional distress (Eighth and

Ninth Causes of Action).   Each contention will be discussed in turn.[1]


A.  Neither the Existence of a Contract Nor Its Breach or the Amount or Propriety
    Of Consequential Damages Can Properly Be Determined on a Motion to Dismiss

Bethel's main response to Plaintiff's contract claim is to say that even if a contract existed,

the court can already determine from the pleadings that the only damages to which Plaintiff would

be entitled would be $100 (the registration fee), which Bethel already tendered (well after Plaintiff

had returned to his California home, Para. 94).[2]   But since that does not go to the issue of whether

Plaintiff has effectively pled a cause of action, and since Bethel has not cited and cannot cite any

---

[1] For ease of reference in this Memorandum, Plaintiff will refer to the actions as alleged in his Complaint that were jointly taken by Bethel College and Mennonite Church USA, including the defamation identified in his Complaint that is NOT directly linked to Defendant Thiesen, as the acts or inaction "of Bethel." However, this does not mean that MCUSA, Bethel's co-sponsor and co-defendant, is viewed as any less liable for the acts or dereliction complained of. While Plaintiff will be responding independently to the separate motion to dismiss filed by MCUSA, Plaintiff is aware that MCUSA has in its own motion invoked all of the arguments of Bethel in this motion, and therefore Plaintiff likewise notes that to the degree that the Court deems it necessary to reach any of Bethel's arguments in order to resolve the MCUSA motion, all of Plaintiff's statements made about Bethel should also be regarded as statements made about MCUSA for the purposes of that other Opposition, unless otherwise noted, for reasons that will be apparent in the separately-filed Opposition to the MCUSA motion, due July 30.

[2] Plaintiff did not accept the tender.  Para. 94.

authority for even its own proposition that is directly on point, the court should not dismiss the contract claim without allowing Plaintiff the right to submit evidence.

Bethel admits that there is no Kansas authority for its proposition that Plaintiff would be entitled to recover only $100 as a result of Bethel's breach (Bethel Memorandum, p. 6).   Too, all of the cases cited by Bethel concern tickets to entertainment events or performances.   Plaintiff has pled that he was barred from participating in an academic conference (Para 29).  He has pled that this conference allowed for exchange of information and ideas with other participants and the opportunity to pose questions to speakers (Para. 28, 29), and that he was denied the right to participate (not merely "attend" as a passive observer) (Para. 28, 29, 37, 87, 103, 109, 111, 113), which immediately distinguishes the event here from an entertainment event such as a sporting event, circus, movie or play.

The 100-year-old U.S. Supreme Court case cited by Bethel, <u>Marrone v. Washington Jockey Club,</u> 227 U.S. 633, 33 S.Ct. 401, 57 L.Ed. 679 (1913), is not on point and actually support's Plaintiff's position that there is a cause of action for breach of contract.   <u>Marrone</u> was an action for trespass brought by an individual who had been barred from entering a race track after having purchased a "ticket of admission."  The Court held that the ticket there did not create an "in rem" right against the landowner (never claimed by Plaintiff here), and that the only recourse of the ticket-holder was to "sue upon the contract for the breach."   That is exactly what Plaintiff has done.

It is important to distinguish between two different arguments Plaintiff is making arising from the declaration of a representative of Sponsors that he was "out of the Conference" (Para. 66),  consistent with his pleading.   His main point in this action, briefed further below, is that a declaration made by even a sponsor of a conference that is located on discrete physical premises

6

does not constitute a demand to not return to the premises, the kind that is necessary to find

subsequent criminal trespass, particularly under circumstances where Plaintiff has an invitation to

return from another organizer and where portions of the premises are open to other use, indeed

public use, and where Plaintiff has in fact been using those premises without objection (Para 24,

69, 70, 71, 72).[3]   In other words, he was not told by someone who was clearly a property owner

(although he was known to be a Sponsor representative) in an unqualified manner to leave the

campus property on March 16 or that if he returned he would be trespassing, let alone in the

presence of police.  (Para. 67).

But his second point is that even as to his ejection from the Conference, the lawfulness of

which is disputed, Plaintiff has pled that he entitled to compensation for not having received the

benefit of his bargain (i.e. Conference registration) irrespective of whether it was lawful or not to

eject him without cause.   Plaintiff's first cause of action concerns only that point, and cases like

Marrone state clearly that there is a cause of action, and no other case precludes it.

The case principally relied on by Bethel for its "ticket" argument, Jacksonville Bulls

Football, Ltd. v. Blatt, 535 So.2d 626, 629 (Fla. Dist. Ct. App. 1988) stands only for the

proposition that a ticket holder  is entitled to be treated as a creditor of a bankrupt performer.  No

one spoke for the ticket holder in that context, but rather, another creditor of a defunct football

team was complaining about any payment at all to season ticketholders.  Blatt, also, finds that

there is a cognizable claim.  The Blatt court ruled that "upon cancellation of the upcoming

season's football schedule, the Bulls' season ticketholders would have had causes of action against

---

[3] Plaintiff did not plead the following point but could, if necessary, on amendment.
Apart from a library and archives to which community users are permitted. Bethel College
operates a bookstore and coffee shop which are held open to the public; Plaintiff had used both;
and on information and belief they are part of the premises owned by Bethel College.

the Bulls for breach of contract to recover the money paid for their tickets" in the context where the team had in fact only refunded the price paid for the tickets (hence the context was not one where the ticketholders were in a position to claim they had suffered greater damages).  All of the "cases collected" in Blatt concern performances or entertainment events.

Blatt does not say, as Bethel proposes, that "the majority rule is that a license to an event or performance that is silent on revocability is revocable at will" (Bethel Memorandum, p. 6).  It simply states that in Florida a "ticket" is a "revocable license;" here Plaintiff has not even pled that there was a "ticket" to admission for the Conference (Para. 21). .  However, even if that proposition were true as to events in Kansas, the proposition does not cover a university/church conference which is certainly not a performance and is unlike any event discussed in Blatt.

The Court is not yet in a position to determine the nature and extent of the contract that Bethel College entered into with Plaintiff for this academic conference, based on Conference promotional materials and registration protocols, nor was Plaintiff required to plead such detail in an already lengthy complaint, nor has Plaintiff had the opportunity to introduce any evidence as to the customary expectations that a registrant attending an academic conference on a university campus would have (relevant here because there was no written contract, not even an actual "ticket").   Bethel claims in its Memorandum (p. 8) that it "never entered into a contract with attendees that a certain presentation would be made, that the event would last a certain amount of time, or even what the speakers would discuss."  All of that is disputed, but the fact that Bethel feels the need to make such argument only points to the importance of obtaining actual evidence.

Plaintiff pled that based on his registration he was entitled to remain at the Conference for its "duration" (Para. 23) and that he was denied that right (Para. 104, 106-112), and therefore clearly he has stated a cause of action for breach of contract.

8

Regarding the contentions of Bethel that at the very least Plaintiff would not be entitled t' "consequential damages," this is again not an issue that can be resolved on the basis of the Complaint alone. Moreover, even if Bethel were correct, this does not support dismissal for failure to state a claim, but would simply mean that Plaintiff would ultimately fail to be awarded that species of damage; Plaintiff has not sought only consequential damages and he has not sought only noneconomic damages.

Even if its argument regarding consequential damages were to be taken seriously as a ground for dismissal of the entire claim, however, the argument fails. While Bethel claims that lost profits to Plaintiff were "not contemplated" at the time of contracting with Plaintiff, that is a question of fact that and such contemplation is nowhere precluded by any allegations in Plaintiff's complaint. Moreover, the only published case cited by Bethel for its proposition is McCoy v. Wesley Hosp. & Nurse Training Sch., 188 Kan. 325, 338, 362 P.2d 841, 851 (1961), which is not at all on point and does not contain the quoted language which Bethel states that it does (Memorandum, p. 9). McCoy is an action on an "implied obligation" with a hospital, where the court found that a contract cause of action arising out of the hospital's obligation to its patient survived a statute of limitations even though a tort action could not. The court said in support of its finding that "in an action for breach of an implied obligation under the contract the hospital can be held to account for consequential damages which are the natural, direct and proximate results of the wrongful act" (citing Crabb. v. Swindler, Administratrix, 184 Kan. 501, 337 P.2d 986. Plaintiff has not requested any consequential damages in this case that do not fit that exact description, where the wrongful act consists of breach of contract accomplished by a false arrest.

The other case cited by Bethel, Sprint Nextel Corp. v Middle Man, Inc., No. 12-2159-JTM, 2014 WL 6977931, at *4, is not a case that is accessible to Plaintiff, nor was it attached to

Bethel's Memorandum, but appears to be a decision upon summary judgment (not on a motion to dismiss) which was subsequently overturned by the 10th Circuit, in a case with the same title, Case No. 15-3108, filed May 10, 2016.

Plaintiff's pleading as to the breached contract does not merely seek lost profit to his law firm, though; Plaintiff clearly indicates that Bethel understood that it could eject Plaintiff from the Conference, i.e. that it could make good on its breach of contract, only by causing his arrest (Para. 109, 114), so that all damages arising from the false arrest are implicated.

The only case cited by Bethel for the proposition that "non-economic damages are not recoverable under a breach of contract claim" is Clay v. Bd. of Trustees of Neosho Cty. Cmty. Coll., 905 F.Supp. 1488, 1500 (D. Kan. 1995), and that case does not purport to speak to all instances where noneconomic damages are claimed as the result of a breach of contract. The court in that case does not cite any Kansas authority (nor does it appear there was any at the time, nor has Plaintiff discovered any), and the court simply stated that on the issue of "emotional" upset, it was more persuaded of the nonrecoverability of "emotional damages" than the recoverability by "the myriad of cases from numerous jurisdictions cited by the Board in support of its assertion that emotional damages are not recoverable for breach of contract." Id. at 1500.

The type of noneconomic damages caused by Bethel's breach in Plaintiff's case, of course, are unique. Yes, they arise from the false arrest that was both a necessary part of and a consequence of the breach, but contrary to the position that Bethel has taken, that does not mean that damages can be recovered only on a false arrest theory. These are not entirely "emotional" damages, but include damages to Plaintiff's reputation and the display of Plaintiff's arrest mugshot on the Internet for the rest of his life (and probably beyond, although he will no longer be damaged at that point). It is in fact plausible from the pleading that Sponsors planning a two-day

10

conference on the fraught issue of "The Holocaust" (Para. 29) might have considered the possible arrest of Plaintiff prior to making their contract with him for his participation, since Defendant Thiesen knew Plaintiff personally before announcing to the Conference that a "Holocaust denier" was under observation at the event, (Para. 24, 43), and equally plausible that Sponsors knew at the time of making their contract with Plaintiff for his participation that he would be caused great noneconomic damage by the consequences of the breach that Bethel then ultimately committed. Since no Kansas court has considered whether noneconomic damages could be recovered under these or similar circumstances, there are no grounds for dismissing the breach of contract claim on the speculative basis that Plaintiff could not show entitlement to any consequential damages.   If the Court were instead to rule that Plaintiff had not shown the plausibility of consequential damages, Plaintiff should be entitled to amend to enhance the plausibility of this theory of recovery.  F.R.Civ.P. 15(a)(2); Foman v. Davis, 371 U.S. 178 (1962).  In short, however, there are no grounds for dismissal of Plaintiff's cause of action for breach of contract for any reason.


B.  Plaintiff Has Adequately Pled His Intentional Tort Claim That He Was Arrested
    At the Request of Bethel College Without Having Committed A Crime

Bethel states in its Memorandum (p. 10) that Plaintiff "argues" that he was falsely arrested by Bethel College because Bethel provided false information to police officers which caused his arrest. This is misguided thinking.  Plaintiff alleged in his Complaint that Bethel provided false information that led to Plaintiff's arrest, and he didn't have to "argue" the point in his initial pleading, and he doesn't have to "argue" the point now: he simply has to show that he pled a plausible claim.  Therein lies an important distinction, and it is also the overriding reason why Plaintiff's claim for damages from Bethel for his false arrest cannot be dismissed.

Bethel wants the Court to make a determination at this phase of the case that Bethel

"simply turned over to the authorities its knowledge of a suspected offense," but that begs the question. That is not what Plaintiff alleged. Plaintiff alleged that a representative of Bethel and MCUSA falsely told the police that he had already been "trespassed"[4] the prior day (Para. 83). That is, after all, what police told Plaintiff (also duly alleged) (Para. 78).

Thurman v. Cundiff, 2 Kan. App.2d 406, 580 P.2d 893, 898 (1978), the Kansas appeals court decision on which Bethel relies most heavily, is inapposite (Bethel also erroneously refers to this case as a Kansas Supreme Court case, but irrespective of that, it is not authoritative).

Thurman is a decision rendered after a trial and therefore far from dispositive in the context of a motion to dismiss, but nothing in Thurman suggests that Plaintiff did not state a plausible cause of action for a false arrest attributable to the actions of Bethel College. Thurman, after all, does not say that the defendant must have "ordered" the arrest, but rather, "it must appear that the defendant either instigated it, or assisted in it, or by some means directed or encouraged it." Id. at 893. Plaintiff believes that it is self-evident that if Bethel provided false information to law enforcement officials (some of whom arrived in tactical gear, Para. 80) on account of an alleged trespasser, that meets the definition of instigating or assisting in or by some means directing or encouraging.

That is not even to reach the fact that Conference/Bethel representatives had already called on North Newton police twice the prior day, the second call having been made by Mark Jantzen in an enraged state (Para. 54) which amply supports the proposition that when Bethel confronted

---

[4] Plaintiff uses the word in the same way it was used by police: to mean that Plaintiff was ordered to leave the Bethel campus and told not to return on threat of arrest. Plaintiff believes based on what he was told on the morning of March 17 (Para. 73-76) that police were also using the word to mean that a police officer either had to be the one doing the warning OR that the warning had to be given in the presence of a police officer, but even if that were not true, this court is not in a position based on Plaintiff's pleading to determine that a trespass warning was given to Plaintiff any time on March 16, for reasons set forth in the body of the argument.

Plaintiff the next morning (Para. 78) Bethel was involved in more than a neutral dispassionate report of a possible crime.

This court is unable at the pleading stage to decide the truth or falsity of Bethel's contention that it simply provided truthful information to police who then exercised their own judgment. The pleading states otherwise (Para. 83). Plaintiff pled that the North Newton police chief himself acknowledged to Plaintiff that he had not been trespassed on March 16 (Para. 91).

Additionally, Bethel appears to be relying on an alleged contention made by Plaintiff that "he was asked to leave, yet he returned anyway" (Memorandum, pp. 11-12, referring to Para. 66 of Plaintiff's Complaint). Bethel has misstated what is actually alleged there. Plaintiff was not told by Mark Jantzen that he was "no longer permitted at Bethel College" (Memorandum, p. 11); the actual contention made in Paragraph 66 is: "Jantzen told Plaintiff, 'Not only will they [Plaintiff's Jewish colleagues] not be allowed to register, you are also out of the conference.'" Bethel desperately wants to equate the actual words uttered with words suggesting an order to leave the campus, but that is not what happened–or better stated for present purposes, what is pled. Setting aside the fact that there is no dimension of "asking" in that Jantzen statement (it is a declaration), Bethel is simply trying to muddy the distinction between a pronouncement that Plaintiff can no longer take part in the Conference (made) and one where he is warned that he will be considered a trespasser if he returns to any part of the campus (not made).

The actual pronouncement made by Mark Jantzen on the evening of March 16 sets up only a civil dispute as a matter of law, which is the way Plaintiff understood it (Para. 72). At worst, the pronouncement sets up a mixed question of fact and law which cannot be resolved without the facts. There is nothing criminal about a person attempting to take part in an academic conference pursuant to his paid registration. If he has also been told in unequivocal terms that his attempt to

continue to do so would be regarded as trespass (and that his invitation from John Sharp had been withdrawn and that he dared not to return to any part of the campus), then the legal analysis would be different. Plaintiff's pleading does not establish that (it simply didn't happen), and therefore there is no possible basis for the Court to find that Plaintiff himself admitted in his Complaint that he was "trespassed" on March 16.

Bethel even wants to try to take advantage of the fact that Plaintiff was concerned enough that Conference Sponsors would act illegally that he consulted with law enforcement the morning of the following day before returning to the Conference (Memorandum, p. 11) (Complaint, Para. 73ff). Plaintiff believe that simply shows his good faith and due care, not to mention the degree to which he realized that Conference representatives might be trying to instigate an arrest.

Much more space could be devoted to Kansas trespass law, but since a finding of trespass is neither proper or possible at the pleading stage, it will suffice for the moment to quote the relevant parts of the statute from the Kansas criminal code, K.S.A. 21-5808, that defines trespass:

"Criminal trespass is entering or remaining upon or in any (1) land...[or] structure by a person who knows such person is not authorized or privileged to do so, and (A) Such person enters or remains therein in defiance of an order not to enter or leave such premises or property personally communicated to such person by the owner thereof or other authorized person..."

Significantly, there are at least two components to that definition of criminal trespass, an "absence of belief in one's own authorization" component, and a "defiance of order by authorized person" component, and for Bethel to state that the Court can decide that both components are satisfied by Plaintiff's own pleading defies reality.

Plaintiff obviously did not "know he was not authorized" to be on the campus the morning of March 17 (Para. 61, 68, 70, 72). Even by Bethel's own very narrow reading of the "rights"

14

created by Plaintiff's supposed "ticket" to the Conference, it would be impossible for Bethel to prove at this phase of the case that Plaintiff knew that he was not authorized or privileged to be at the place at which he was arrested, since Plaintiff had noted his registrant status at all points where it appeared to be in issue (Para. 40, 68, 75). After all, he had paid his registration fee to attend the Conference, and neither that fee or any other monies had been refunded to him, and he believed the dispute was a civil matter (Para. 23, 60, 68, 72, 94).

But the more important point is that Plaintiff's Complaint does not plead such knowledge of a lack of authorization or privilege. Indeed, Plaintiff alleges the opposite. (Para. 84).

To justify his arrest on the second prong of the trespass definition (apparently), Plaintiff was also told by arresting officers that he had been "trespassed" the prior day, but his pleading obviously cannot be construed to constitute an admission to that component, either. Once again, he has pled exactly the opposite (Para. 85, 87, 91).

Plaintiff certainly doesn't deny that there are cases where a private entity reporting facts to a law enforcement agency will not be liable for false arrest, and he has no reason to question the conclusions reached in the cases cited in Bethel's Memorandum (at p. 11). But those cases aren't this case, and those cases pose no issue as to the sufficiency of pleadings.

Regarding Bethel's separate contention that Kansas recognizes no cause of action for negligence based on false arrest (Third Cause of Action), Plaintiff is not convinced, and Plaintiff has not pled a separate cause of action because of a need to take advantage of a statute of limitations that is longer than a year, like the court found had been done in Brown v. State of Kansas, 261 Kan. 6, 927 P.2d 938 (1996). While it is true that in the Brown case the Kansas Supreme Court held that the cause of action for negligence in that case had to be treated as a cause of action for intentional tort, the defendant in that case was a public entity, not a private party.

The same is true of the other case cited by Bethel, <u>Newell v. City of Salina</u>, 276 F. Supp.2d 1148, 1158 (D. Kan. 2003) (police officer defendants).   Even if Bethel's position on the Third Cause of Action is adopted by the Court, at worst Plaintiff should be allowed to amend to consolidate the two causes of action, F.R.Civ.P. 15(a)(2), but Plaintiff submits that there is a real distinction in this case between facts pled under the intentional tort claim and those pled in the negligence claim.

The logic of <u>Brown</u> is that "an <u>arrest</u> is an intentional act," which no one would dispute. When the defendant is the public entity, or at least the entity actually charged with making the arrest, it is indeed difficult to see how the defendant's acts could be characterized as both intentional and negligent since it will always be the arrest (by definition intentional) that defines the wrong.  "The very gist and essence of plaintiff's cause" in such a case is the arrest.  <u>Newell</u>, supra at 1159.  Moreover, as noted above, Plaintiff also believes that the act of Bethel College procuring his arrest has to be characterized as intentional, because of the false representation made by the Conference/Bethel representative to North Newton police, but when a private party is involved, Plaintiff submits that it is at least plausible that the private party's negligence can likewise lead to an (intentional) arrest constituting false arrest.

If it is conceivable, then it can happen, and it can be plausibly pled, and Plaintiff has pled a plausible scenario under which even the negligence of Bethel and MCUSA led to his false arrest, under an alternative scenario where the actual Conference/Bethel representative(s) reporting to police that morning did not know he was (they were) giving false information but instead had failed to investigate whether Plaintiff was in fact trespassing the prior day, or whether Plaintiff had been invited back to campus on March 17 by a Conference representative, namely John Sharp (Para. 71, 86, 126-28), which would destroy any claim that Plaintiff had been unequivocally ordered off the property.  Plaintiff is allowed to plead in the alternative. [If Plaintiff hadn't

16

sufficiently indicated that he was pleading Paragraphs 124-33 in the alternative, that would also be susceptible to easy amendment per F.R.Civ.P. 15(a)(2); but Plaintiff actually did so in Para. 124.]

Plaintiff submits that Bethel's statement that "Kansas courts do not recognize" a cause of action for negligence leading to false arrest, then, is far too sweeping. The Kansas Supreme Court in Brown did not say that, and likewise the other Kansas state court cased cited by Bethel, Miller v. City of Overland Park, 231 Kan. 557, 559, 646 P.2d 1114 (1982)–another statute of limitations case-- does not stand for that proposition. While the decision states that the "negligent arrest" count was dismissed for failure to state a claim for relief which could be granted, and was not appealed, there is no indication in the decision as to why that particular count did not survive a motion to dismiss, and certainly no indication that it was because Kansas does not "recognize" such an action.. Neither of the federal district court cases cited by Bethel contain holdings purporting to be applicable to anything other than the facts before them, and Bethel has in fact admitted that Grauerholz v. Adcock, 51 Fed.Appx. 298, 301, 2002 WL 31579878 is a claim for "negligent use of force" rather than false arrest by negligence.

Moreover, all of the parties in all of these cases are public entities or officers who actually effected arrest, an intentional act not capable of being negligent, and therefore Plaintiff submits there is no authority for dismissing his negligence claim directed as it is against a private party who caused a false arrest, where the instigation might have been either intentional or negligent.

C. Plaintiff Has Also Pled a Plausible Cause for Defamation Against
   Bethel and Thiesen In His Fifth and Sixth Causes of Action

The College Defendants have advanced slightly different arguments as to why Plaintiff's causes for defamation cannot survive against Bethel/MCUSA and Thiesen respectively, but none have merit. In both instances Plaintiff has been faulted for failing to allege "special damages;"

17

Indeed, although College Defendants have not stated that their motion is filed under F.R.Civ.P. 9(g), they appear to be invoking that rule as to special damages. However, Plaintiff has in fact satisfied the requirement of Rule 9(g) – to the degree that it is even relevant --by alleging in his Complaint that as a result of the defamatory statements of both College Defendants he has suffered damage to his reputation and losses to income and profits in his law practice, in specific amounts (either $70K or $150K depending on the defamatory statement) which qualify as a specific statement of special damages, and Plaintiff is not required to do more than that in a Complaint. For that reason, and because the Court lacks the ability at this stage of the action to find that the term "Holocaust denier"does not constitute defamation for the purpose of Kansas defamation law, neither the Fifth or Sixth Causes of Action can be dismissed.

### 1. Plaintiff Has Pled Special Damages

F.R.Civ.P. 9(g) provides that, "If an item of special damage is claimed, it must be specifically stated." Special damages are usually thought of as out-of-pocket expenses. These include loss of income and loss of profits. Plaintiff has alleged both loss of profits and loss of income to his law practice as a result of the injury to his reputation caused by the defamatory remarks of both Bethel and Thiesen. (Para. 163, 164, 171-175, Prayer for Relief 6, 7).

The cases cited by College Defendants do not prove otherwise. In Woodmont Corp. v. Rockwood Center Partnership, 811 F. Supp. 1478, 1484 (D. Kan. 1993), a decision on a Rule 12(b)(6) motion, the court found that the pleading was deficient because the plaintiff had alleged damage to his "business reputation" but had not "named any customer whose business was lost as a result of the statement, nor has it alleged the amount of such loss." The plaintiff in that case was a plumber, presumably with expectation of a reasonable amount of repeat business, unlike some

other businesses (which would include lawyers serving a customer base which looks to lawyers only in their hour of sporadic need).

Plaintiff did not in his Complaint "name any customer" whose business was lost because that is not an element of a cause of action for defamation.  Plaintiff did allege amounts of lost income and lost profits, which by itself distinguishes this case from Woodmont Corp.  However, Plaintiff also asserts that Woodmont Corp. did not intend to establish a standard that all claims for defamation by private business persons would be dismissed unless they named customers whose business they had lost, nor is there a basis for that in any Kansas state court decision.  Instead, the concern of the Woodmont Corp. court appeared to be for at least some specificity beyond the more conclusory statement that the plaintiff had suffered damage to his reputation.   It is not reasonable to expect that all business persons whose reputation has been damaged will be able to name customers who did **not** come to them because of their sullied reputation, and that would be particularly true in the context of a business to which most customers are first-time customers, people the business had not heard of prior to being contacted.

Moreover, even though the court in Woodmont Corp. faulted the plaintiff there for not alleging special damages of any sort, the court also granted the plaintiff 15 days to file a complaint seeking leave to amend to allege special damages.

Plaintiff accepts that under Woodmont Corp. damages cannot be presumed in defamation cases, although Plaintiff disagrees that Kansas courts now require that Plaintiffs uniformly plead special damages.   Plaintiffs submit that no special damages still need be pled when the state court case is one of "defamation *per se.*"   Indeed, even in Woodmont Corp., the district court goes through an analysis to determine whether the plaintiff there qualifies for "defamation *per se,*"

before determining that he does not. The court appears to be stating that if the case qualifies as "defamation *per se*," no special damages need be pled—although they will still need to be proved.

Plaintiff believes that his defamation claim under the Sixth Cause of Action is a claim for defamation *per se*, or that it should be, where a lawyer is called a "Holocaust denier," in a context where the publication is made to an audience where some of the assembled come from countries where Holocaust denial is a crime.[5] A defamatory statement is treated as "defamation *per se*" when there is either imputation of a crime or imputation of a person's unfitness for his trade or profession. Woodmont Corp., supra at 1484. Plaintiff acknowledges that this presumption would only apply to his pleading of damages under his Sixth Cause of Action (Thiesen). Plaintiff also reiterates that, in any case, neither of his arguments against dismissal of his claims on "plausibility" grounds depend on a presumption as to damages, since he has also pled special damages as noted above; however, Plaintiff asks the Court to make a determination on the unique facts that the label published about him is defamation *per se*, as well.

In the case of the defamation by Bethel/MCUSA (and not Thiesen), where the defamatory comments are alleged to have led to the arrest of Plaintiff, Plaintiff has alleged that his injury occurred not just because of the loss of freedom that accompanied the arrest and the imprisonment that followed the arrest but also because of the publication of his arrest "mugshot" and details on the Internet (Para. 90, 160). Plaintiff freely acknowledges that the public availability of the arrest details would not have occurred without the arrest, but believes the dissemination of that

---

[5] Plaintiff is aware that he did not plead in in his Complaint the fact that the defamatory statement of John Thiesen was published to persons in the audience which included some from countries where Holocaust denial is a crime. The Court is readily able to take judicial notice of the fact that many European countries do treat Holocaust denial as a crime, even if the English words "Holocaust denial" are not necessarily used. These countries include Germany, Poland, The Netherlands and France. Plaintiff believes that Bethel College will not dispute that there were participants at the Conference who had come from at least two of those countries.

information is conceptually distinct from the effect of the arrest itself, and therefore that his injury from the defamation itself has to be regarded as direct and proximate.

In the case of the defamation of Bethel/MCUSA (and not Thiesen), if publication of the false statements about Plaintiff by Bethel to law enforcement officers cannot qualify as defamation, then Plaintiff acknowledges that the Fifth Cause of Action does not state a claim; however, Plaintiff is aware of no case authority for the proposition that injury recoverable for defamation may not consist of injuries caused as an inevitable consequence of other injuries suffered as the result of defamation, i.e. a cascade of injuries, nor have College Defendants cited to any such authority.   Indeed, Bethel's main argument against the possibility that its statements to law enforcement officers could have caused damage to Plaintiff based on dissemination of information to the public about the arrest seems to be based on its contention that Bethel did not make a false statement, or that the arrest was "carried out by someone else" (Memorandum, p. 15) which of course cannot be presumed for the purpose of testing the pleading, as briefed above.

     2.  The Court Cannot Conclude At This Phase of the Case
         That Being Called a "Holocaust Denier" Is Not Defamatory

Plaintiff next needs to address the canard offered by College Defendants that since calling someone "Holocaust denier" is merely an "opinion," or since it was "hyperbole," it is not actionable defamation, and therefore Plaintiff cannot possibly state a "plausible" case for defamation when the only allegation made in the Sixth Cause of Action is that Thiesen (welcoming Conference-goers in his capacity as the representative of both Bethel and MCUSA) published a slander about Plaintiff to a crowd of about 200, "some of whom Plaintiff knew from previous acquaintance and some of who knew of Plaintiff based on Plaintiff's prior and present positions of trust and responsibility with different church entities" (Para. 166).

To survive a motion to dismiss under F.R.Civ.P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) [quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The plausibility standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

While public figures have "voluntarily exposed themselves to increased risk of injury from defamatory falsehood...no such assumption is justified with respect to a private individual....Thus private individuals are not only more vulnerable to injury than public officials and public figures; they are also more deserving of recovery." Gertz v. Robert Welch, Inc., 418 U.S. 323, 345 (1974).

College Defendants are essentially arguing that it is not plausible that anyone could be defamed by being called a "Holocaust denier." Plaintiff believes that the argument begins and ends there, since the enormity of the epithet is evident to anyone living in the United States other than College Defendants, who have a vested interest in the outcome of this case. The plausibility of the claim is thus apparent on its face. Of course, College Defendants may believe they have little option other than to now argue that it is a trifling thing to be called a Holocaust denier, but on the reasonable allegations of the Complaint alone, the Court should reject that argument: the warning about a Holocaust denier was one of the first things that the sponsors of the Conference (and/or Thiesen speaking for them) believed that registrants should know. Conference-goers needed to be wary since there was a [disruptive] Holocaust denier in their midst. (Para. 43).

The fact that Thiesen might not have identified Plaintiff by name at the time of his false accusation (this is a legitimate objective of discovery) is of no pleading consequence in light of the

fact that sponsors then took pains during the Conference to single out and marginalize Plaintiff in front of other Conference participants, first calling police merely because Plaintiff was handing out flyers to his fellow registrants (many of whom were headed into the auditorium to hear Thiesen's opening remarks) (Para. 42-43) and later angrily confronting him on the Conference floor (Para. 54-55); and that is not to even to mention that it is plausible from the pleading that some Conference-goers knew exactly who Thiesen was referring to (Paras.44, 45, 166) even though they had not heard anyone call him a Holocaust denier–which he is not (Para. 46).   See <u>Poe v. San Antonio Express-News Corp.</u>, 590 S.W.2d 537 (Tex. Ct. App. 1979) (defamatory statement need not name individual if reasonably ascertainable, quoting Prosser on Torts); <u>Barron v. Smith</u>, 19 S.D. 50 (1904) (same); <u>DeBlasio v. North Shore Univ. Hosp.</u> (213 A.D.2d 584, 624 N.Y.S.2d 263 (1995) (well settled that person defamed need not be named).

Plaintiff submits that unless there is precedent that is exactly on point, it would not be appropriate for the Court to make decisions about the significance of the term "Holocaust denier" at the pleading stage, partly to allow the parties to demonstrate what the epithet means both linguistically and socially, and partly because of the possibility that the Court might unconsciously import its own understanding of what the term actually means, whether favorably or unfavorably for Plaintiff's case.  Plaintiff has pled  facts in detail.  Plaintiff indeed has pled that "to be branded a `Holocaust denier' is one of the most damning slurs that can be used against a person in contemporary United States parlance" (Para. 47-48).   The only question facing the Court on this motion is whether what Plaintiff pled is plausible.

The main case that College Defendants have cited concerning defamation pleading standards is the two-page decision <u>Gatlin v. Hartley, Nicholson, Hartley & Arnett, P.A.</u>, 29 Kan.App.2d 318, 26 P.3d 1284 (2001), which is distinguishable for many reasons starting with the

23

kind of complaint at issue (a "17-page petition containing incomprehensible and convoluted allegations" which was then "rehashed" after amendment, said the court of appeals).   The plaintiff in that case did not plead specific remedies.   Id. at 320.   He did not explain why the alleged statement wouldn't be subject to Kansas privilege applicable to communications in the course of litigation.   Id.   He did not allege that the defamatory statement was made to a third party.   Id.   It is almost incidental that the statement complained of--"he's not innocent .... there are things about him you don't know"--is nothing like the statement applied to Plaintiff here.   And of course the standard under which the court upheld dismissal was not F.R.Civ.P 12(b)(6), but a state statute. The Gatlin decision has no bearing on this case.

College Defendants have had to resort to Squitieri v. Piedmont Airlines, Inc., No. 3:17CV441, 2018 WL 934829, at Note 4 (W.D.N.C. Feb. 16, 2018), an unpublished North Carolina federal district court opinion, to try to find a case where a court dismissed a defamation complaint under Rule 12(b)(6) because of the content of the alleged defamatory statement.   In that case the court made it clear that it was dismissing the pleading under North Carolina law which provides that "expressions of opinion not asserting provable facts" are protected speech.   "If defendant's words cannot be described as either true or false, they are not actionable" (citing Biospherics, Inc. v. Forbes, Inc., 151 F.3d 180, 183 (4th Cir. 1998).   Here, by contrast, federal law controls,[6] and moreover whether someone is a "Holocaust denier" is a statement that is provable. The speaker will either be able to show or otherwise prove at least one statement from Plaintiff denying the Holocaust--or he won't.

To make up for the paucity of cases where defamation claims are dismissed at the pleading

---

[6]It is actually more correct to say that the court sitting in diversity would apply Kansas law, but that Kansas law and case authorities have to be interpreted and constrained in light of Supreme Court pronouncements on defamation.  See Gertz, supra, at 347.

stage, College Defendants attempt to smuggle in facts nowhere appearing in the record, in order to

try to persuade the Court of the harmless character of the label "Holocaust denier." For example,

they call the slur "hyperbole" (Memorandum, p. 15), a word not appearing in Plaintiff's pleading.

They allege without support that being called a Holocaust denier relates to a person's "political

affiliation" or "racial prejudice" (Memorandum, p. 16). They even use the word "allegedly" when

describing Thiesen's comments as set forth by Plaintiff (Memorandum, p. 15), even though the

Court is obliged to accept as true for this motion that Thiesen did state that there was a Holocaust

denier present who had disrupted the event or might do so (Para. 43).

College Defendants want the Court to make a peremptory finding that the term "Holocaust

denier" is a mere expression of opinion by analogizing it to labels such as "anti-semitic" or

"racist" which supposedly removes it from defamation, but this is doubly misguided. First, it is

not correct that under federal law a statement of opinion can never be defamatory. Milkovich v.

Lorain Journal Co., 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (Supreme Court did not

create an exemption for "any statement that might be labeled 'opinion'"). However, even on its

face, the term Holocaust denier has attributes that the epithets "anti-semitic" and "racist" do not in

addition to the fact that it can be proved or disproved as noted above. Being called a Holocaust

denier at an academic conference is not the same as being accused of racial or ethnic

prejudice–such as at a condominium owners meeting. Ward v. Zelikovsky, 643 A.2d 972, 136

N.J. 516 (1994) (accusation of anti-semitism not actionable).

First, the Holocaust is broadly understood as a historical event. Second, the word "denier"

is unmistakably a noun and only a noun. Someone who denies the Holocaust is a person who

denies history; history is reality; and therefore a denier is necessarily someone who can not be

relied on. Third, as pled (Para. 48), an individual who denies the Holocaust is believed to be guilty

of "minimizing the suffering and death of...six million noncombatant Jews...." That is a particularly pejorative accusation to make at a conference of Christians (and specifically Mennonites) known by some for their compassion and charitable works. By contrast, the terms "anti-semitic" and "racist" are commonly adjectives devoid of truth claims, meant to call out prejudice. The latter words are used more and more frequently in political discourse, but the same is not true for Holocaust denier which stands in a different class.

It bears repeating that Plaintiff was not engaged in any hatred or animus toward Jews (or Sponsors) at this Conference, as shown by the fact that he refrained from making any such remarks when he was recognized during the Conference (immediately before being angrily shouted down) (Para. 56). He was simply offering the opportunity to hear views about history that he believed that registrants would be interested in (Para. 29. 34).

College Defendants try to prove that Plaintiff has admitted that the meaning of the term Holocaust denier is indeterminate by referring to his own allegation at Paragraph 47, but this allegation actually proves Plaintiff's point. Plaintiff calls the term a "pejorative label," not the same as an opinion, and he pleads that it is not "accurate," meaning that it is susceptible to proof. Whether someone is a "denier" is a matter of black or white, and Plaintiff states that the label does not account for the "complexity of his historical views." In other words, Plaintiff is suggesting that whatever his opinions he has not "denied," and therefore to be called a "denier" is the very essence of defamation. Someone who falsely or recklessly accuses someone else of denying history – when the target has taken pains to not do so – is engaging in defamation.

If the Court believes it can interpret words at the pleading stage, then Plaintiff urges that the Court recognize that the term Holocaust is widely understood (at least in the U.S.) as fact, with a very specialized meaning. There was only one Holocaust, and it is regarded as the worst

26

genocide of all time, and moreover one of the most obvious and indeed one of the most

documented. In American culture we are told we must "never forget" the Holocaust. The

individuals behind the Holocaust targeted adherents of a minority which preceded and spawned the

major religions of the western world. Thus the label is not just about "any" historical event, but

about a historical event with unique pathos and meaning. If America deplores its citizens who

forget the Holocaust, how much worse he who denies it? Even Holocaust "revisionists" are

unpopular; see McCaldren v. California Library Ass'n, 955 F.2d 1214 (9th Cir. 1992)

In short, "Holocaust denier" is self-evidently not a term applied casually by someone who

has different views or opinions from those of his target, but rather by someone purporting to

underscore the absolute truth and meaning of a historical event. When a person from a university

platform identifies someone else as a Holocaust denier, all of the presumed weight of the

university attaches itself to the label. Holocaust denier is a very specific charge (as distinct from

"climate change denier" where "climate change" itself is a more amorphous term), and this is

particularly the case when used by an individual speaking under the auspices of an academic

conference to which one has just arrived. Those who heard the statement had every reason not to

regard it a mere opinion of an individual, but a matter of concern to Conference sponsors; they had

every reason to give the label considerable weight and accept the accuracy of the statement, not at

all like the situation of a debate where two sides are calling each other names. Therefore there is

no basis for dismissing the Sixth Claim for Relief on the ground that Plaintiff cannot plausibly

state a cause of action for injury on account of being called a Holocaust denier.


D. Plaintiff has Pled Plausible Claims for Either Intentional Infliction
   Of Emotional Distress or Negligent Infliction of Emotional Distress

The final argument of College Defendants is that Plaintiff has not stated any cause of

27

action for either the intentional infliction of emotional distress or (in the alternative) the negligent infliction of emotional distress because the acts of College pled are not sufficiently outrageous; however, this is one of few cases where the facts are indeed outrageous enough to clearly show at least one of those causes of action even if for some reason Plaintiff's claim for false arrest or false imprisonment against Bethel would falter (e.g. if Bethel's attempt to deflect responsibility for the arrest to law enforcement authorities alone–however unlikely--were to succeed).   .

A reputable lawyer and conference registrant, a church member among fellow church adherents, attending an academic conference on a church campus well-versed in dissent, was vilified as a trespasser, solely on account of his peacefully-communicated views.   This led to public exclusion, humiliation, arrest and incarceration, but no conviction (indeed, not even a prosecution).   That is the amply-pled nub of this action.   Plaintiff submits that by definition it is an outrage when a people (church and academic community both) supposedly committed to hearing dissenters and to peaceful resolution of conflict resort to calling on law enforcement authorities to oust a peaceable but unwanted voice from their midst.

Plaintiff has pled all four of the elements of a claim for intentional infliction of emotional distress, under Balmer Fund, Inc. v. City of Harper, 294 F.Supp.3d 1136, 1151 (D. Kan. 2018): the intentionality of Bethel's conduct, the extreme and outrageous nature of the conduct, the alleged conduct and Plaintiff's distress, and the severity and extremity of Plaintiff's distress.   Regarding the last of these four, when Conference sponsors cut off Plaintiff's mike he was met with 'shouts and jeers of derision," (Para. 55), and Plaintiff was "sufficiently distressed" by his treatment on March 16 that he sought out police to make sure that he wouldn't be arrested–only to have his worst fears realized and be arrested anyway!  (Para. 73, 78).  Plaintiff was then immediately subjected to concern for his physical health (loss of circulation in his hands) (Para. 81), and he

suffered significant emotional distress separate and apart from his damages arising directly from his false arrest (Para. 189, 193). Plaintiff, who had never even been arrested let alone jailed, was confined for 18 hour (Para. 16, 88). Is Plaintiff to be faulted for failing to use the words "severe" and "extreme" rather than the word "significant"? Plaintiff submits that in context, his detailed Complaint alleges the necessary degree of distress. If not, he should be allowed opportunity to bring a motion for leave to amend to do so. F.R.Civ.P. 15(a)(2); Foman v. Davis, supra.

College Defendants cite a case on "discrimation" as proof that Kansas does not favor emotional distress claims, but of course Plaintiff is not alleging discrimination. However, Plaintiff does fit within the description given in that case of the person who is entitled to recover for emotional distress: "[where] the distress inflicted is so severe that no reasonable person should be expected to endure it." Lindemuth v. Goodyear Tire and Rubber Co., 19 Kan. App.2d 95, 100 (1993). No one going to an academic setting to confer with his dissent-loving co-religionists should expect to be thrown out and jailed for his speech, which is what the Court has to accept occurred here based only on the pleadings.

Plaintiff also submits the intent of the "physical injury" requirement for a claim of negligent infliction is satisfied by his being handcuffed, restrained and then confined for 18 hours, even if there may not be direct precedent for that proposition (mostly because it is the rare case where a claimant will prove all of those acts to be the unlawful consequence of the acts of the tortfeasor). While College Defendants contend that physical injury must be "the direct and proximate" result of the emotional injury, this is not the rule; it is sufficient that there be a physical component along with an emotional component. Holdren v. General Motors Corp., 31 F.Supp.2d 1279, 1285 (D. Kan. 1998) [quoting Humes v. Clinton, 246 Kan. 590, 598, 792 P.2d 1032, 1038 (1990)].

Bethel also argues that punitive damages could not be supported because only the acts of its"employees" are implicated in the Complaint; however, it is the College itself that was the tortfeasor under all of Plaintiff's tort claims (distinct from the defamation claim against Thiesen).

Regarding Bethel's final points, Plaintiff acknowledges that there is a lack of clarity and/or typographical error in his Prayer for Relief, and that Bethel College has no liability under the Fourth Cause of Action or the Tenth Cause of Action, but that the intent of these prayers was simply that the liability of City of North Newton should be joint and several with that of Bethel College (and MCUSA) if there was a (separate) recovery against Bethel and MCUSA on the same facts (different claim) that resulted in a recovery against the City.

WHEREFORE, the Motion to Dismiss of Bethel College and John Thiesen sued as John Thiessen should be denied, or if any portion of the motion is granted, dismissal should be granted with proper opportunity for Plaintiff to file a motion for leave to amend the portion of the complaint that is otherwise subject to dismissal.

Respectfully submitted by,

/s/ Bruce Leichty

Bruce Leichty, In Pro Per
c/o Bruce Leichty, A Prof. Corp.
220 W. Grand Ave.
Escondido, CA 92025
(760) 484-2467
Fax: (951) 676-7462
leichty@sbcglobal.net

CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of July 2019, the foregoing was filed with the Clerk of the Court of the Kansas District Court using the CM/ECF system which will send notice of electronic filing to all counsel of record, including the following:

/s/ Bruce Leichty
Bruce Leichty, Plaintiff

Scott E. Sanders
Corey M. Adams
McDonald Tinker PA
300 W. Douglas, Ste. 500
Wichita, KS 67202
Phone: 316-263-5851
Fax: 316-263-4677
ssanders@mcdonaldtinker.com
cadams@mcdonaldtinker.com
Attorneys for Bethel College and  John Thiesen sued as John Thiessen

Alan L. Rupe
Kevin E. Miller
Lewis Brisbois Bisgaard & Smith, LLP
1605 N. Waterfront Parkway, Ste. 150
Wichita, KS 67206
Phone: 316-609-7900
Fax: 316-462-5746
alan.rupe@lewisbrisbois.com
kevin.miller@lewisbrisbois.com
Attorneys for Mennonite Church USA

Tracy M. Hayes
Robert M. Reynolds
Sanders Warren Russell & Scheer LLP
430 Corporate Woods
9401 Indian Creek Parkway, Ste. 1250
Overland Park, KS 66210
Phone: 913-234-6100
Fax: 913-234-6199
t.hayes@swrsllp.com
r.reynolds@swrsllp.com
Attorneys for City of North Newton, Kansas

Eric A. Van Beber
Kevin D. Weakley
Wallace Saunders
10111 W. 87th St.
Overland Park, KS 66212
Phone: 913-888-1000
Fax: 913-888-1065
evanbeber@wallacesaunders.com
kweakley@wallacesaunders.com
Attorneys for Lancaster Mennonite Historical Society

Thomas P. Schult
Jennifer B. Wieland
Berkowitz Oliver LLP
2600 Grand Boulevard, Ste. 1200
Kansas City, MO 64108
Phone: 816-561-7007
Fax: 816-561-1888
tschult@berkowitzoliver.com
jwieland@berkowitzoliver.com
Attorneys for Joel Nofziger

Jay P. Lefkowitz
Joseph M. Sanderson
Kirkland & Ellis - New York
601 Lexington Avenue
New York, New York 10022
Phone: (212) 446-4800
Fax: (212) 446-4900
lefkowitz@kirkland.com
joseph.sanderson@kirkland.com
Attorneys for Joel Nofziger

.....

Kelsey N. Frobisher
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Ste. 100
Wichita, KS 67206-4466
Phone: (316) 267-6371
Fax: (866) 347-3808
kfrobisher@foulston.com
Attorney for Harvey County [party dismissed 7/19/19]

Toby Crouse
Crouse LLC
11184 Antioch, No. 253
Overland Park, KS 66210
Phone:   (913) 957-6832
tcrouse@crousellc.com
Attorney for Harvey County [party dismissed 7/19/19]