IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRUCE LEICHTY,                                )
                                             )
              Plaintiff,                     )
                                             )    No. 6:19-cv-01064-JWB-KGG
v.                                           )
                                             )
BETHEL COLLEGE; MENNONITE                    )
CHURCH USA; CITY OF NORTH                    )
NEWTON, KANSAS; HARVEY COUNTY;               )
LANCASTER MENNONITE HISTORICAL               )
SOCIETY; JOHN THIESSEN; JOEL                 )
NOFZIGER;                                    )
                                             )
              Defendants.                    )
_____)

BRIEF OF PLAINTIFF IN OPPOSITION TO MOTION
TO DISMISS OF DEFENDANT MENNONITE CHURCH USA

Plaintiff Bruce Leichty (hereinafter "Plaintiff" or "Leichty"), Pro Se,  hereby opposes the

motion of Defendant Mennonite Church USA ("MCUSA") to dismiss his complaint pursuant to

F.R.Civ.P. 12(b)(6).  MCUSA has focused its effort on one issue only–the alleged "conflation" by

Plaintiff of MCUSA with its joint tortfeasor co-defendant Bethel College ("Bethel")–and has

otherwise tried to essentially incorporate by reference the arguments of Bethel made in Bethel's

memorandum in support of its own motion to dismiss.   MCUSA as a small publicity-conscious

denomination wanted the virtue-signaling benefit of the "Mennonites and the Holocaust"

conference it conducted but is averse to shouldering the burden that accompanied its sponsorship-

related acts and instead wants to leave its co-sponsor university holding the entire bag.

In framing its argument, MCUSA has tried to turn the simple into the complex, since

Plaintiff has sufficiently alleged that MCUSA and Bethel were both responsible through the acts of

1

their joint representatives for breaching the contract Plaintiff made with both defendants (First

Cause) and for his false arrest and false imprisonment (Second and Third Causes), and for his

defamation (Fifth and Sixth Causes), and emotional distress (Eighth and Ninth Causes).  MCUSA

is now trying to characterize the joint representatives only as Bethel representatives, but since the

Complaint explicitly states otherwise and shows no indicia of implausibility in so doing, the

12(b)(6) inquiry effectively ends there

Regarding the attempt of MCUSA to wholesale incorporate another party's multifaceted

set of arguments into its own motion, Plaintiff respectfully requests that the Court reject that

attempt since Plaintiff should not be required merely in order to confront the motion of MCUSA to

proceed piecemeal not just through the memorandum of MCUSA but also through the separate

motion and memorandum of Bethel, which is specific to Bethel and does NOT try to defend

MCUSA, to try to guess at which of Bethel's arguments are applicable or may also be applicable

to MCUSA.   Plaintiff has already filed his brief of opposition to the Bethel motion, since that

opposition was due on July 26, 2019.   However, if the Court does take into account the argument

of Bethel in order to weigh the propriety of dismissal of any of the above-referenced causes of

action as to MCUSA, then Plaintiff respectfully asks the Court to do essentially the same thing for

him that MCUSA is asking of the Court, by considering the brief that Plaintiff filed in opposition

to the Bethel motion, and not just the summary statements regarding those points appearing below.

## I. STATEMENT OF CASE

Plaintiff was arrested on March 17, 2018 at a conference being held on the campus of

Bethel College, North Newton, Kansas, after representatives of the sponsoring organizations

Bethel College ("Bethel" )and Mennonite Church USA ("MCUSA") (collectively "Conference

Sponsors" or "Sponsors") called the police of North Newton and claimed that Plaintiff was

trespassing on the campus. (Para. 14, 82, 83).   Representatives of Sponsors had already called

police twice the previous day without any charges or trespass warning being given (36, 37, 40, 54).

Also on the previous day,  John Thiesen, a Bethel employee and Sponsor representative, had

labeled Plaintiff a "Holocaust Denier" in introductory remarks made to about 200 Conference

registrants (Para. 43-45).    Plaintiff had duly registered for the Conference, which was titled,

"Mennonites and the Holocaust" (Para. 14, 20).    Plaintiff, a 63-year-old member of the California

bar in good standing, lifelong Mennonite and member of an MCUSA congregation and former

Kansas resident (Para. 17, 18),  had traveled from California to the Bethel campus, known for its

history of championing dissent, specifically in order to participate in the Conference, and to

contribute information in a non-disruptive manner.    Para. 24-30.

Plaintiff had been on the Bethel College campus many times over a period of many years

for various academic purposes including regular research in the Mennonite archives deposited at

Bethel College, and indeed had already used the archives in connection with Conference-related

research immediately before the Conference, without experiencing any opposition or incident,

which was known to the agents and representatives of the two sponsors.  (Para. 16. 18, 24).

Conference organizers and their agents knew Plaintiff was a member of a MCUSA church.  (Para.

18).   Plaintiff brought with him to the Conference some flyers and books relating to the Holocaust

which he believed Mennonites would either want to be aware of or should be aware of, and he

came to the conference having planned an informational presentation titled "Two Revisionist Jews

Consider the Holocaust," for the evening of March 16 at a room off campus but located near the

campus, next to the City of North Newton offices and police station (Para. 19, 27, 28, 29).

Two of Plaintiff's colleagues, professionals self-identifying as Jewish Holocaust

3

revisionists had also traveled to North Newton from New York and Michigan respectively to give the off-site presentation organized by Plaintiff, and also to participate peacefully in the Conference, but were denied registration to the modestly-attended Conference after having inadvertently failed to pre-register (Para. 34-36).

Plaintiff participated peacefully and non-disruptively at all sessions of the Conference on March 16 (Para. 29, 31, 40, 41, 49).   Sponsor representative Mark Jantzen had first called North Newton police the morning of March 16 after Leichty declined to agree to stop distributing flyers and literature to Conference attendees, which resulted in no charges or trespass warnings but instead an agreement that Plaintiff subsequently adhered to (he would not further distribute literature) (Para. 40, 41), and then Jantzen again called police that afternoon at a session titled "Mennonite Attitudes Toward the Holocaust" after Plaintiff asked for and was handed the microphone and tried to make a comment about different perspectives on the Holocaust among Jews and about his off-campus meeting to be held that evening (Para. 50-55).  The second police call also resulted in no charges or trespass warnings (58, 59, 62).

Even though Jantzen and Thiesen were employed by Bethel College, each acted on behalf of both Conference Sponsors and purported to do so during the Conference.  (Para. 36, 43, 54, 64, 67).

Another Sponsor representative who witnessed Jantzen's second call to police, John Sharp, invited Plaintiff after that incident to meet with him at lunch on the Bethel College campus the following day, March 17, to discuss Plaintiff's agenda (Para. 57, 86).   Plaintiff didn't identify Sharp as the employee of either of the Conference Sponsors but simply as their representative (Para. 71), which he knew from having read about the Conference before registering (Para. 28, 29, 32, 33).

Plaintiff approached Jantzen on the evening of March 16 for a pre-arranged reconsideration of Jantzen's decision not to allow his Jewish colleagues to register, and Plaintiff was told by Jantzen that not only would his colleagues not be allowed to register but "you are also out of the Conference," whereupon Plaintiff reminded Jantzen that Plaintiff was a duly-registered participant in the Conference with an invitation from Sponsors to return to campus the following day (Para. 64-66, 68-71).   Jantzen did not offer Plaintiff any refund of his costs of attending the Conference (Para. 68, 71, 75,  94, 105, 108, 111), and Plaintiff was not given any trespass warning at that time; Plaintiff considered the issue of his Conference participation to be civil in nature (i.e. the issue was whether he still had the right to participate in the Conference) (Para. 69, 72).

When Plaintiff appeared at the Conference the morning of March 17, Conference sponsors (i.e. Bethel College and MCUSA acting through a joint representative) called police again and falsely stated to police that Plaintiff had been "trespassed" the previous day (Para. 78, 82, 83). Plaintiff, who had never previously been arrested, was then handcuffed and taken to the Harvey County Detention Center where his mugshot was taken and where he was incarcerated for 18 hours before being released on his own recognizance (Para. 16, 88, 90).   He was prevented from attending the remainder of the Conference (Para. 108-11).   No charges were ever filed against him (Para. 92).

Neither North Newton Police Chief Randy Jordan, who had responded to both of the March 16 calls, or any other police officer ever advised Plaintiff that he was prohibited from returning to the campus (Para. 63, 91); indeed, Plaintiff and Jordan on March 16 discussed the fact that the response to his presence at the Conference on March 16, the day prior to his arrest, was "anomalous" (Para. 62) and Jordan confirmed that he had no knowledge of Plaintiff having been trespassed on March 16 (Para. 91).

The "mug shot" from Plaintiff's arrest appeared on the Internet shortly after the arrest, where it remains.  (Para. 90).   Plaintiff suffered damage to his reputation and loss of business as a result of his arrest and mugshot  (Para. 122-23), and failed to receive the benefit he was to have received from his registration for the Conference (Para. 109-114).

## II. ARGUMENT

MCUSA is essentially argued  that all of Plaintiff's grievances are really against Bethel College, and that Plaintiff has simply "conflated" MCUSA with Bethel College in order to attempt to hold MCUSA liable alongside of the College.  That theory allows MCUSA to claim that Plaintiff has "not alleged any tortious activity" by MCUSA.  However, this argument turns logic and language on its head.  In order for this Court to find that Plaintiff has "conflated" the identities of Bethel and MCUSA, Plaintiff would have to be seeking damages from MCUSA for acts that were allegedly committed only by Bethel College.  The Court would have to disregard the clear pleading of Plaintiff that both Bethel and MCUSA–both of them alleged and admitted sponsors of the Conference--took all the actions that led to Plaintiff's injuries.  The Court would have to look behind or beyond the pleadings–as MCUSA is in fact asking it to do-- to make a finding that the Conference representatives who breached contract, instigated false arrest, defamed Plaintiff and caused him severe emotional distress *only represented Bethel* when they took those actions, despite Plaintiff having pled otherwise.   A finding such as that, which runs in diametric opposition to what has been pled, is not permissible in the context of a motion made under F.R.Civ.P. 12(b)(6).   For those reasons and because the other arguments of MCUSA are either not adequately spelled out or have already been addressed in the Opposition of Plaintiff to the Motion to Dismiss of Bethel College and John Thiesen, ECF 48, the motion of MCUSA must be denied.

6

1. Plaintiff Has Explicitly and Adequately Pled Injurious MCUSA Acts

In order for MCUSA to make its argument that Plaintiff has not accused MCUSA of tortious activity (MCUSA has barely touched Plaintiff's claim for breach of contract but Plaintiff will address that cause of action as well), MCUSA must effectively ignore all of the places in Plaintiff's Complaint where he has identified MCUSA as either a party breaching contract with him or a tortfeasor or defamer.   Since this supposed deficit is the main issue in MCUSA's motion, Plaintiff will spell out all the pertinent language where the allegations of breach of contract or misconduct for each claim are made, and indeed where the identification of the contracting party or tortfeasor is made.  The material appearing below is quoted precisely as it appears in Plaintiff's Complaint, and any commentary now provided by Plaintiff appears in bold.   Since the cause of action for breach of contract is the first in Plaintiff's Complaint, most of the relevant material will be quoted in the context of the discussion of that cause of action, and that material will be assumed in the remaining discussion because it has been incorporated by reference in the remaining causes.


BREACH OF CONTRACT

"14.  ...Plaintiff registered for a conference titled 'Mennonites and the Holocaust' sponsored by Bethel College ("College") and Mennonite Church USA ("MCUSA") scheduled entirely for the campus of Bethel College, North Newton, Kansas March 16-17, 2018 (the ('Conference').   **Plaintiff alleged that both organizations were sponsors of the Conference. Each time the term "Conference" is used in the Complaint it is thus a term of art used with reference to a jointly-sponsored event.**

"20.  Plaintiff's registration for the Conference was accepted and he was prior to the start of the Conference issued a badge and conference materials by Defendants College and MCUSA,

7

the sponsors of the Conference (collectively, "Sponsors"), confirming his right to be present at and attend the Conference.   **The term "Sponsors," which will recur in either plural or singular form, is clearly defined as both organizations.**

"21.  Plaintiff by his act of paying the Conference registration of $100 and by *the Sponsors'* act of issuing him a badge and materials was effectively made a licensee who was allowed to participate in the Conference and be present on the campus of College for the duration of the Conference.   **Emphasis added.  The duration of the Conference has already been identified as March 16-17.  Paragraphs 22 and 23 present alternatives pleading of the Sponsors' contractual obligation to him.**

"36.  The Conference representative who denied them **[Plaintiffs' colleagues]** the right to register, Mark Jantzen, agreed that the issue...could be revisited the following day since they had traveled from New York and Michigan respectively...."   **Jantzen is clearly identified as a Conference representative and not simply a Bethel College representative; indeed he hasn't been identified at this point as a Bethel employee or faculty member at all.  His role as gatekeeper for the Conference (not campus) is clearly established by the detailed allegations made preceding Paragraph 36 and inclusive of it.**

"43.  Plaintiff is informed and believes and thereupon alleges that one of the representatives of the Sponsors and employees of the College, John Thiesen, announced at the opening session...that there was a `Holocaust denier' present at the Conference...."   **Plaintiff pled that John Thiessen (correct spelling is actually Thiesen) was both a representative of the Sponsors, which included MCUSA, *and* an employee of Bethel College, which is an example of the rule of precision and not conflation followed by Plaintiff throughout the Complaint.**

"54. ....Plaintiff was angrily interrupted by session moderator Mark Jantzen who called for

8

Plaintiff's microphone to be cut...." **Since Jantzen has already been identified as a**

**representative of Sponsors including MCUSA, the act alleged here is as much an act of**

**MCUSA as it of Bethel under the law of agency (discussed below).   Jantzen is identified as**

**session moderator simply in order to identify his additional role at the time of the incident,**

**moderator for the session, "Mennonite Attitudes Toward the Holocaust," cf. Para. 50.**

"57.  With the sessions ended, Plaintiff...was approached by a representative of MCUSA,

John Sharp....[H]e and Sharp agreed that they would meet at lunch the next day to discuss

Plaintiff's agenda and concerns."  **As a representative of MCUSA, already identified as one of**

**the two co-sponsors of the Conference, Sharp's invitation was an invitation on behalf of**

**Conference representatives but at least one of them; and later contentions establish that the**

**invitation was to meet on the campus where the Conference was being held, see Para. 86.**

"64. ...Plaintiff spoke with Conference representative Jantzen asking him whether the

Sponsors would now agree to allow his guests to register...."

"65.  Instead of granting the request, Jantzen instead told Plaintiff, `Not only will they not

be allowed to register, you are also out of the conference.'

"66.  Plaintiff did know then and does not know now the capacity in which Jantzen spoke,

other than that he was and remains employed as a professor of history at the College and that on

March 16 he had held himself out as a representative for the Sponsors with power to determine

who could register...."   **The main significance of this contention is not that Jantzen was**

**thought to be speaking as a representative of the college (Plaintiff could not know that) but**

**that he had demonstrated by his actions that he was in fact a representative of the Sponsors.**

"71.  At no time did Jantzen or anyone else revoke or purport to revoke the invitation to

Plaintiff from Sponsors' representative John Sharp to meet with Sharp for conversation at lunch on

9

March 17." **Here Sharp is explicitly identified as a representative not just of MCUSA but of Sponsors which included MCUSA.**

"73. "Because Plaintiff...was uneasy about...the possibility that the College would attempt to unlawfully eject or detain him, Plaintiff resolved to and did to to the North Newton police station the following morning...." **Plaintiff knew that the only entity that could even attempt to have him ejected or detained from the campus under Kansas trespass law would be the landowner, the College, and thus this paragraph and Paragraphs 74 and 76 simply describe what Plaintiff was thinking prior to going to the police station. Moreover, the "College" was a Sponsor and the "College official" who had called the police March 16 a Sponsors' representatives, as already pled, so that even the background references in these paragraphs to the "College" are capable of being read as speculation or information about a Sponsor.**

"75. Plaintiff believed...that Sharp's invitation was still standing and that Jantzen lacked authority to unilaterally revoke his registration and particularly without any effort to make Plaintiff whole.

"78. Instead, when Officer Stovall was called *by Sponsors* to the College campus later that morning to execute an arrest of Plaintiff. Stovall...stated that he had now found that Plaintiff had already been `trespassed' the previous day...." **Plaintiff has clearly attributed the instigation of his arrest to Sponsors, which consistently means both Bethel and MCUSA.**

"82. On information and belief, Plaintiff's arrest was at the behest of and based on information given to Officer Stovall by Sponsors or College officials acting on behalf of Sponsors." **This paragraph--by the reference to "Sponsors"--explicitly pleads that the arrest of Plaintiff was at the behest of MCUSA since MCUSA was one of the two Sponsors of the Conference, whether MCUSA acted directly or through College officials.**

"86.  Plaintiff in fact had been told on March 16 by a representative of Sponsors, John Sharp, that Sharp would meet with him on campus during the lunch hour on March 17."

"87.  Plaintiff arrived on the Bethel College campus the morning of March 17 with the additional knowledge that...if his participation at the Conference was challenged by Sponsors, he would be given a warning to leave the campus rather than be arrested, and that he would be allowed to freely leave...."

"93.  Despite Plaintiff's efforts after his release from jail to seek accountability and a remedy from the chairman of the board of College, an individual known personally to Plaintiff, Plaintiff has been offered no avenue for obtaining accountability of Sponsors or any comprehensive remedy."

"103.  Upon acceptance of Plaintiff's registration fee and no later than the time that Defendants College and MCUSA gave Plaintiff a Conference badge and materials, a contract was formed between Plaintiff and those two Defendants under which Plaintiff had the right to participate in the Conference...."  **Para. 104 tracks this language except that a license agreement with the two Sponsor Defendants is alleged as an alternative.**

"105.  Plaintiff provided Sponsor Defendants with the only consideration requested by or necessary to Sponsor Defendants to create the contract or license agreement...."  **Paragraphs 106 and 107 also use the term "Sponsor Defendants" to refer to the parties to the contract.**

"108.  Sponsor Defendants breached the contract with Plaintiff by telling him the evening of March 16 ... that he was excluded from the remainder of the Conference."

"109.  Alternatively....Sponsor Defendants breached the contract...by telling him and by telling law enforcement officers on the morning of March 17...that he was trespassing on the property of the College...."  **Para. 110 and 111 similarly allege a breach of license agreement.**

11

"115.  Sponsor Defendants' breach of the contract or agreement was the direct and proximate cause of all of Plaintiff's injuries set forth above."

INTENTIONAL TORT - FALSE ARREST

"116.  Plaintiff refers to the allegations appearing in Paragraphs 1 through 115 and hereby incorporates those allegations...

"117.  Defendants College and MCUSA acted intentionally to deprive Plaintiff of his freedom and liberty...by making a false or incomplete report to law enforcement officers...

"118.  Defendants College and MCUSA knew when making their false report to law enforcement officers...that this would lead to the arrest of Plaintiff.

"119.  Plaintiff was not free to leave the College property at any time after Defendants College and MCUSA had made their false report to law enforcement officers.

"120.  As a direct consequence of the false report made by College and MCUSA to law enforcement officers, Plaintiff was falsely arrested....

"123.  Plaintiff has thus far suffered consequential damages resulting from the false arrest and imprisonment instigated by College and MCUSA....  **It is apparent that at these the most critical junctures of the cause of action for false arrest against MCUSA, MCUSA is always named as a tortfeasor along with Bethel College.**

NEGLIGENCE - FALSE ARREST

"124.  Plaintiff refers to the allegations appearing in Paragraphs 1 through 123 above except for Paragraphs 117, 118 and 121 and hereby incorporates those allegations....

"125.  Defendants College and MCUSA at all times before and through March 17, 2018

12

owed Plaintiff a duty of care as a registrant at a Conference sponsored by them and an invitee to the College where the Conference was scheduled.

"126.  Defendants College and MCUSA acted with negligence....

"127.  Defendants College and MCUSA could have determined...that Plaintiff was not in fact trespassing.

"128.  On information and belief, Defendants College and MCUSA were negligent in failing to distinguish between the remarks of Jantzen that Plaintiff was "out of the Conference"...and any warning that he was trespassing....

"129.  Plaintiff was not free to leave the College property at any time after Defendants College and MCUSA had made their false report to law enforcement officers.

"130.  As a direct consequence of the false report made through the negligence of College and MCUSA to law enforcement officers, Plaintiff was arrested...

"133.  Plaintiff has thus far suffered consequential damages resulting from the false arrest and imprisonment instigated by College and MCUSA....

DEFAMATION

"154.  Plaintiff refers to the allegations appearing in Paragraphs 1 through 153 above and hereby incorporates those allegations herein by reference as though they were set forth in full.

"155.  On the morning of March 17, 2018, Defendants College and MCUSA made false and defamatory statements about Plaintiff and published them to law enforcement officers, namely that Plaintiff was trespassing....

"156.  As a result of the false and defamatory statement made by Defendants College and MCUSA...Plaintiff suffered injury.

13

"158.  The false and defamatory statement published by College and MCUSA was a direct and proximate cause of injury to Plaintiff.'

"159.  The injury suffered by Plaintiff as a result of the false and defamatory statement made by College and MCUSA was the false arrest and false imprisonment of Plaintiff.  **A similar allegation is then made in Paragraph 160-62 to allege that other injuries consist of damage to Plaintiff's reputation including through information available to the public and loss of work and profitability in Plaintiff's law practice and broken relationships.**

DEFAMATION BY THIESSEN [sic]

"165.  Plaintiff refers to the allegations appearing in Paragraphs 1 through 101 above and hereby incorporates those allegations by reference....

"167.  Thiessen was acting on behalf of and as representative of Defendants College and MCUSA when he published the false and defamatory statement about Plaintiff.

"170.  The false and defamatory statement published by College, MCUSA and Thiessen has been a direct and proximate cause of injury to Plaintiff.  **Here follow a number of additional references to Thiesen which, per Para. 167 and the law of agency, must be read as references to MCUSA, in terms of the liability of MCUSA for the act of Thiesen as its representative.**

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

"187.  Plaintiff refers to the allegations appearing in Paragraphs 1 through 186 above and hereby incorporates those allegations herein by reference....

"188. Defendants College and MCUSA intended on March 17, 2018 to inflict significant emotional distress on Plaintiff....

14

"189. ...Plaintiff has suffered significant emotional distress...as a consequence of the intentional acts of College and MCUSA to exclude him from the Conference and eject him from the College campus without cause....

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

"190.  Plaitniff refers to the allegations appearing in Paragraphs 1 through 186 above and hereby incorporates those allegations....

"191. ....Defendants College and MCUSA owed Plaintiff as a registrant at a Conference they sponsored and as an invitee to the campus of College a duty of care.

192.  Defendants College and MCUSA acted negligently on March 17, 2018 to inflict significant emotional distress on Plaintiff by causing him to be arrested....  **Paragraph 193 then contains a similar allegation as to the act of both Defendants in excluding and ejecting him.**

Plaintiff also notes, even though it may not be necessary (not that any of the foregoing quotations should have been necessary) that in each of his Prayers for Relief he has also identified MCUSA to the appropriate cause of action where damages have been sought from MCUSA.

Accordingly, it can be seen that there is no paucity of specific allegations that whenever an act of the Sponsors took place, or an act of the organizers of the Conference, MCUSA was a party to it, and that there was no conflation at all of the identities of Bethel and MCUSA.  Plaintiff is careful throughout the Complaint, as is evident from the identification of the above contentions, to use "Bethel College" or "Bethel" or "College" when he means only Bethel College and MCUSA when he means only MCUSA and Sponsors when he means both, which is about as far removed from "conflation" as one could imagine.

This is hardly a situation such as the one treated in <u>Robbins v. Oklahoma</u>, 519 F.3d 1242,

1247 (10th Cir. 2008), where the court stated that the complaint had to make clear "exactly who is alleged to have done what to whom." The Robbins complaint named some 15 government-related defendants. Here there are three (as to the causes of action at issue), and Plaintiff has been singularly clear about the role of the individual named John Thiesen as distinct from the role of both Conference sponsors. Plaintiff's complaint could hardly be clearer. Plaintiff alleged that both MCUSA and Bethel were involved in all of the wrongs he suffered, and there is no basis to question the plausibility of the involvement of both, on the basis of the highly-detailed Complaint.

MCUSA may be arguing that Plaintiff is not allowed to use a term of art to refer to more than one Defendant; it appears that MCUSA is indeed equating the mere use of the term of art "Sponsors" with the supposed "conflation" engaged in by Plaintiff; however, if this is what MCUSA is arguing it should be rejected out of hand. There appear to be no published cases on the exact point and Plaintiff submits that it is because it so obvious. Plaintiff's Complaint is certainly well within the dictate of a case such as Wells v. Brown, 891 F.2d 591 (6th Cir. 1990), where the court stated that "it is reasonable to ask that all plaintiffs, even pro se plaintiffs...alert party defendants that they may be individually responsible in damages." See also In re Onstar Contract Litigation, 600 F.Supp.2d 861, 868 (E.D. Mich. 2009) (no heightened pleading standard for pleading joint liability based on the "co-venture" of the parties).

Kansas indisputably recognizes joint liability in intentional tort actions. York v. Trust Bank, N.A., 255 Kan. 271, 310-11, 962 P.2d 405 (1998). Plaintiff has done nothing more than what any injured plaintiff would do in suing a property owner and its property manager, or (perhaps more apropos) two promoters who put on a concert. (Per the MCUSA Memorandum p. 8 n.2 , that there are "multiple" examples of conflation in the Complaint, but it doesn't cite them, supposedly in the interest of brevity. Plaintiff submits that is because there are none.)

16

MCUSA also appears to be trying to say that somehow there must be "more" to the allegations in the Complaint if Plaintiff is to make out a plausible allegation for the involvement of MCUSA in his false arrest or defamation or emotional distress, as distinct from Bethel College, but this is a most curious allegation and appears to assume development of facts which cannot be accomplished at this stage of the action. When a church denomination is alleged to be a sponsor of an event, and its representatives are alleged to be active in the event and involved in all of the interactions with Plaintiff that led to his injury–and indeed three of these representatives are explicitly named– what more can be said?   Plaintiff did not and does not believe it was necessary that he also plead that the advance publicity for the Conference and/or materials for the Conference named MCUSA as a sponsor and named only Jantzen, Thiesen and Sharp as Conference organizers (as he could do, but only by amending, which he believes to be unnecessary to proceed), and certainly not that Plaintiff have to plead that any of these three were formally employed by MCUSA or were members of an MCUSA church at the time of the Conference. One can be an agent or representative of a sponsoring organization without being its "employee" per internal revenue definitions, and that would be particularly true in a church where (one could readily understand that) programmatic and committee and ad hoc assignments occur frequently.

MCUSA has tried to protest that John Sharp is the only person linked to MCUSA and he wasn't employed after 2005, which of course is an impermissible attempt to interject new facts into the context of a motion to dismiss, but even if that were true it would be irrelevant to the allegations.   Plaintiff did not plead that Sharp was employed by MCUSA, he pled that he was a representative of MCUSA as well as a representative of the Conference Sponsors.

The contention by MCUSA that the Court must somehow look only to the allegations about Sharp to determine if MCUSA was alleged to have engaged in any of the wrongdoing

17

complained of by Plaintiff is misguided.   MCUSA is apparently taking Plaintiff's contentions

about Jantzen and Thiesen--namely that each are employed by Bethel College (Para. 43, 67)--and

trying to construe them as contentions or admissions that Jantzen and Thiesen are not (or could not

be) representatives of MCUSA, but this is simply fallacious.   The one does not preclude the other.

Not only has Plaintiff stated otherwise–repeatedly–in the Complaint, by stating that Jantzen and

Thiesen represented both Sponsors without making any distinction as to the degree to which they

represented either, it is entirely plausible that the employee of a church-related college would also,

as Plaintiff has alleged, be serving as a representative of the church for purposes of a jointly-

sponsored conference.

   The proposition that the representative capacity of Jantzen and Thiesen must be viewed as

a "legal conclusion" (MCUSA Memorandum, p. 6) (same with John Sharp, Memorandum, p. 13)

rather than as a known fact that Plaintiff is allowed to plead, is not a proposition that the court is

capable of determining on a Rule 12(b)(6) motion, but even if it were, it is unsupported.   Bell

Atl'c v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), is not authority for this

proposition.   In Twombly the court ruled that there weren't enough facts to render a conspiracy

allegation plausible rather than simply conceivable, a far cry from finding deficiency in an

allegation that certain individuals who acted as though they were in charge of a sponsored event

were in fact representing the sponsors.

   Plaintiff of course is therefore not dependent on the fact that John Sharp is not explicitly

named in the Complaint as one of the tortfeasors or contract-breachers but is presented as the most

hospitable of the trio of organizers.   The fact that Plaintiff does not know about the direct

participation of Sharp in the breach of contract or instigation of his arrest does not mean it did not

occur (Plaintiff does know of the direct participation of other Sponsor representatives), and this

18

would not be the type of information that a plaintiff would necessarily be expected to have at the pleading stage; moreover, the point of the allegations about Sharp was to show not that he was any more compliant with law than the other Sponsor representatives but simply to show that Sponsors had not trespassed Plaiintiff as of the morning of March 17 and indeed quite the opposite, since Sponsors–by the agency of Sharp--had invited further dialogue.

One of the applicable legal principles here is that when individuals at an event are alleged to be representatives of a collective (here a group of two Sponsors), then any of the acts of the representatives while in the course of their duties for Sponsors are chargeable to all of the Sponsors. This is the basic law of principal-agent, vicarious liability, or the law of *respondeat superior*, where a principal is liable for the acts of its agent, and Kansas is no different from other jurisdictions in holding that the principal is liable for the tortious acts of its agent. See Kline v. Multi-Media Cablevision, Inc., 666 P.2d 711, 233 Kan. 988 (1983) (a corporation is liable for the torts of its agent when committed within the scope of the agent's authority and course of duties even though the corporation did not authorize or ratify the tortious acts, and a principal is also responsible for the torts of its agent where the tortious acts are incidental to and in furtherance of the principal's business, even though outside the scope of the agent's authority). It is no stretch to see how the facts pled by Plaintiff create liability under either of those theories of *respondeat superior*[1]. Contrary to the assertion of MCUSA, the controlling cases in Kansas do not hold that

---

[1]Indeed, Kline even discusses a false imprisonment case, Wheeler &. Wilson Mfg. Co. v. Boyce, 36 Kan. 350, 13 P. 609 (1887), in which the court ruled that punitive damages could be recovered from a corporation for the wrongful acts of their "servants and agents" to the same extent "that natural persons committing like wrongs would be held liable. In such cases the malice and fraud of the authorized agents are imputable to the corporations for which they acted." The Kline court observed that the Wheeler & Wilson case had been neither approved or overruled in the almost 100 years since it was decided.

vicarious liability arises only from the act of an "employee," but rather that it will also spring from

the tortious act of an "agent," and the term "representative" is essentially a synonym for agent.

See also Frickey v. Thompson, 135 F.Supp.3d 1300 (D. Kan. 2015) (observing that a corporation

is bound by the acts of its duly authorized agents acting within the scope of their authority, and a

corporation is also liable for torts of its agents when committed within the scope of its' agents'

authority and course of duties even though it did not authorize or ratify the tortious acts).

MCUSA has not offered any valid legal reasons why the law of *respondeat superior* would not

apply to the acts of its representatives here; it simply complains that it did not have representatives,

which is contravened (and plausibly so) by Plaintiff's Complaint. .

        If MCUSA is contending that there is no vicarious liability on its part for the acts of a

representative by citing to Resolution Trust Corp. v. Fleischer, 890 F.Supp. 972, 976-77 (D. Kan.

1995), this case is completely inapposite and certainly doesn't talk about the "agent" /

"representative" issue.   MCUSA says that Fleischer stands for the proposition that a corporation

can only act through the actions of its "officers, members, directors or employees;" however,

Fleischer does not say that.   Fleischer, like the case it cites to and that MCUSA also cites to,

FSLIC v. Huff, 237 Kan. 873, 877-78, 704 P.2d 372 (1985), arises out the specialized area of

liability of the officers of a financial institution, for breach of fiduciary duty and negligence.   These

two cases are not vicarious liability cases.   In both cases, the subject discussed by the court is the

power of the corporation to act against officers or board members who cause injury, when the

corporation is being controlled by those same persons.   Fleischer, supra at 977; Huff, supra at 877-

78.  It goes without saying that no analogous issue is presented in this case or as to MCUSA.

        .  If MCUSA was a sponsor of the event "Mennonites and the Holocaust," then it is only

logical (certainly plausible) to plead that the church acted through and had to act through

individuals.   Plaintiff could have in fact pled that Jantzen and Thiesen are members of Mennonite

Church USA (or members of a congregation affiliated with Mennonite Church USA) or pled the

organic relationship between MCUSA and Bethel College (including the fact that the College

board chairman is a representative of one of the constituent units of MCUSA, see Para. 93)  but

Plaintiff believed all that was required for the purpose of pleading was that Jantzen and Thiesen

and the persons (some possibly not known) who had him arrested acted on behalf of MCUSA, as

representatives of MCUSA, which is both consistent and plausible based on the contentions in the

Complaint taken individually and as a whole.   Individuals in a church sometimes wear multiple

hats.  (see, e.g., para. 166).  The Court should reject the implicit argument of MCUSA that by

being employed by Bethel College Jantzen and Thiesen could not also have been representatives of

MCUSA, particularly at an event that was jointly sponsored.

      MCUSA also cites Gragg v. Wichita State Univ., 261 Kan. 1037, 1050 , 934 P.2d 121, 131

(1997) for the proposition that an "organization that sponsors an event is not be liable [sic] for

actions that occur at the event unless they in some way participate in the tortious act."   Gragg is

not on point, since that decision is based on an appeal from summary judgment granted to the

university on the grounds that the university owed no duty to protect the plaintiff from the criminal

acts of a third party that took place on university grounds.  However, it is not on point for the more

critical reasons that the "sponsorships" at issue in that case were different from those here (based

on the limited factual information that is available to this court at the pleading phase which must

be extracted from Plaintiff's Complaint, where a "Mennonite" event was sponsored by a

"Mennonite" church denomination), and no representatives of the university in Gragg were

involved in the injurious acts other than (said the plaintiff) by failing to warn and failing to provide

adequate security.   This state court action is in any case not authority on the point of adequate

pleading under F.R.Civ.P. 12(b)(6), but quite unlike <u>Gragg</u>, here Plaintiff has alleged that MCUSA

not only participated in but committed the tortious acts.

MCUSA doesn't *like* the allegations that Jantzen and Thiesen were its representatives

(Plaintiff would say "facts" instead of allegations, since the court is required to accept Plaintiff's

allegations as facts for the purpose of this motion, see <u>Bell Atlantic v. Twombly</u>, <u>supra</u>), but there

is no reason to discredit them or discount these allegations as implausible.  Plaintiff has not

alleged that MCUSA is liable to Plaintiff "merely" because it was a sponsor of an event at which

Plaintiff was harmed, but rather that its actions as a sponsor through its representatives created the

liability, an important distinction.

Although it is not a dispositive point, Plaintiff also points out that MCUSA is wrong when

it asserts (Memorandum, p. 11) that "the truth or falsity of any statement [made by Sponsors] to the

police depends on Mr. Jantzen's statement that he [Plaintiff] was not allowed to be at the

conference."   This is not a dispositive point because, contrary to what MCUSA contends, Plaintiff

has adequately pled that any such statement made by Jantzen to police would be attributable to

MCUSA because Jantzen is adequately alleged to be its representative, and therefore the liability of

MCUSA is adequately pled on that basis alone, but the point is also wrong:   Plaintiff alleged side

by side with the allegation that police had been contacted by Sponsors (Para. 78, 83) that the

officer arresting him, Officer Stovall, told Plaintiff he was being arrested because he (Stovall) had

been told by Sponsors that Plaintiff had been "trespassed" the previous day.  Para. 78, 82. 83.

This is a far different statement from the supposedly pivotal statement that Plaintiff was "not

allowed to be at the Conference," as Plaintiff has pointed out even within the four corners of his

Complaint, not to mention in opposing the motion of Bethel College and now this motion.

Plaintiff was not as a matter of law "trespassed" under Kansas law when Jantzen told him

22

"you're out of the conference."   The latter declaration creates a civil dispute in the absence of any

reference made to a landowner's property, let alone absence of any use of the word trespass, and/or

when the alleged offender has not been put on notice that he has no right to be on the property

(property being properly distinguishable from an event).   K.S.A. 21-5808 ("Criminal trespass is

entering or remaining upon or in any (1) land...[or] structure by a person who knows such person is

not authorized or privileged to do so, and (A) Such person enters or remains therein in defiance of

an order not to enter or leave such premises or property personally communicated to such person

by the owner thereof or other authorized person...)"   Therefore someone, and it plausibly was

Jantzen and it plausibly was some other representative of MCUSA, told police that Plaintiff had

"been trespassed."  The plausibility follows from the detail given by Plaintiff.  Plaintiff cannot  be

expected to know, before any opportunity to do discovery, exactly who called police to give police

false information that he had been trespassed on March 16.

 MCUSA has in its Memorandum made a number of other not-so-surreptitious attempts to

improperly place before the Court facts which are nowhere found in the Complaint.

 For example, MCUSA has attempted to "admit" that it was a sponsor of the Conference

but in a way that is "much more limited" than "Plaintiff's apparent expansive definition of the

term." (Memorandum, p. 5).  However, no such qualification even in the context of an admission

counts for a determination as to whether Plaintiff has plausibly pled a cause of action against

MCUSA.  Moreover, Plaintiff has not "defined;" Plaintiff has pled.  Whether the supposedly

limited role played by MCUSA in the Conference (Plaintiff isn't required to accept that assertion

and Plaintiff does not accept it) will affect the ultimate liability of MCUSA is a different issue

from whether Plaintiff can plausibly plead liability based on the pled sponsorship–he can and he

has-- let alone the admitted fact of sponsorship.

The assertion by MCUSA that MCUSA only "provided a grant" for the holding of the Conference (Memorandum, p. 5) is baldly improper on a Rule 12(b)(6) motion, and Plaintiff does not consent to the treatment of the motion as a motion for summary judgment, even if the statement were supported by competent evidence, which it is not.   The same is true for parallel assertions that this alleged grant was also "for another event to establish a relationship between the Jewish and Mennonite communities" and that another college, named as "nondefendant Hesston College," was involved in the hosting of the Conference.   These are contentions of fact not appearing in the record, and the extent of the sponsorship of MCUSA and whether it affects the liability of MCUSA is a matter for discovery if it is disputed.

Nor can MCUSA call an admitted allegation of its sponsorship "conclusory."   Plaintiff cannot be expected at the pleading stage to know the "extent" of the sponsorship or "what actions it takes to be a considered a sponsor," as MCUSA postures (Memorandum, p. 5).   Plaintiff plausibly pled that MCUSA was a sponsor and that sponsors' acts harmed him, and he pled the circumstances in detail, thus avoiding risk of dismissal under Bell Atl. Corp. v. Twombly, supra.

If MCUSA were to be believed, Plaintiff should have been expected to plead that at no time during his attendance at the Conference did one of the Conference sponsors, MCUSA, disavow the actions of those who spoke from the platform, or that conversely the Sponsors' rrepresentatives themselves failed to make statements that they were acting only on behalf of Bethel College rather than all of the Conference sponsors.   That would take the requirements of pleading to a whole new level of absurdity, quite beyond the "heightened fact" standard that the Supreme Court has rejected. Bell Atl. Corp. v. Twombly, supra, 127 S.Ct. at 1972.   It doesn't take the pleading of any such denials or disavowals for a participant at a Conference to plausibly allege that those who held themselves out as representative of the sponsors were representing all of the sponsors.

24

MCUSA also wants to hang its hat on Paragraph 67 of Plaintiff's Complaint where he notes that when Mark Jantzen was telling him he was "out of the conference," Plaintiff did not know the capacity in which Jantzen was speaking (MCUSA Memorandum, p. 7).  The fact that Plaintiff did not know if Jantzen was authorized and able to speak in the capacity of the landowner at a time when Plaintiff's permission to be on the campus could have been made an issue, does not mean that at all other times that Jantzen spoke or acted Plaintiff was not aware that Jantzen acted as a representative of Conference Sponsors; Plaintiff has plausibly alleged to the contrary; and of course Jantzen's actual comment about the Conference the night of March 16 simply cemented the plausibility of Plaintiff's belief.

Similarly, and contrary to other assertions of MCUSA (Memorandum, p. 7), Plaintiff's recitation of the shorthand comments he made to police officer Stovall on the morning of his arrest, namely that "College" officials had called the police the prior day and that "College" officials might try to deny him the right to participate in the Conference, does not preclude the plausibility of his allegations that in fact what happened later that morning was that both College and MCUSA were implicated in both the past acts and the feared acts: moreover, obviously a local police officer would be expected to better understand the role of the local college in the conference more than the role of a church with its offices in Indiana, and the verbiage of Para. 74-75 of the Complaint can be explained on that basis alone, with Para. 76 simply reciting that Stovall accurately described the law and/or North Newton policy in implementing the law.  Plaintiff's subsequent allegation, admitted by MCUSA, that his participation at the Conference was then "challenged by Sponsors" (Para. 87) is not inconsistent with any other statement as MCUSA would have it (Memorandum, p. 7), but rather what actually occurred.

The Court can see from the extracts above that Plaintiff did not "change" any of his

allegations about who committed what acts as he progressed sequentially to add contentions to the Complaint, and that what MCUSA has tried to characterize as "change" requires lifting statements out of context.   Moreover, MCUSA is simply wrong when it states that the burden was on Plaintiff to "demonstrate" facts in his Complaint (Memorandum, p. 8); Plaintiff's only obligation per <u>Bell Atl. Corp.</u>was to plead liability with sufficient facts to make the claims plausible.

   Finally, MCUSA apparently wants to contend just as its codefendant Bethel College has contended that Plaintiff failed to state a claim for relief for breach of contract or for consequential damages (First Cause of Action), and that MCUSA cannot be liable for "false arrest" that is carried out by law enforcement (Second and Third Causes of Action), and that Plaintiff's causes of action for defamation by MCUSA must be dismissed because he hasn't stated a "plausible" cause of action against MCUSA (Fitth and Sixth Causes of Action), and that pleading defects likewise doom Plaintiff's claims for damages from MCUSA for either intentional or negligent infliction of emotional distress (Eighth and Ninth Causes of Action), on the same grounds as have been alleged by Bethel College and John Thiesen in their Motion to Dismiss, ECF 29; however, this is extremely problematic.   When Bethel and Thiesen argued their motion, of course, with perhaps a few exceptions, they made arguments specific to their liability, not to the liability of MCUSA. Thus Plaintiff believes that he cannot reasonably be expected to address reasons why those particular causes of action are not well pled as to MCUSA when MCUSA has not even bothered in its own Memorandum to point out the defects specific to MCUSA.

   If, however, the Court considers these additional arguments made by MCUSA by "incorporation" or by extension (and with speculative insertions of MCUSA for Bethel), then to that same extent the Court should consider the Opposition filed by Plaintiff to the Bethel motion, ECF 48, as opposition to the MCUSA motion, too.

Otherwise, without being able to or purporting to treat all of the causes of action exhaustively, Plaintiff would point out:

–The Court is not yet in a position to determine the nature and extent of the contract that MCUSA entered into with Plaintiff for this two-day academic conference, based on Conference promotional materials and registration protocols, nor was Plaintiff required to plead such detail in an already lengthy complaint, nor has Plaintiff had the opportunity to introduce any evidence as to the customary expectations that a registrant attending an academic conference on a university campus would have (relevant here because there was no written contract, not even an actual "ticket"), except to say that case law relative to buying a ticket to a concert or sporting event is not on point.   Plaintiff pled that based on his registration he was entitled to remain at the MCUSA-sponsored Conference for its "duration" (Para. 23) and that he was denied that right (Para. 104, 106-112), and therefore clearly he has stated a cause of action for breach of contract.

–MCUSA (like Bethel by extension) wants the Court to make a determination at this phase of the case that MCUSA "simply turned over to the authorities its knowledge of a suspected offense," but that begs the question and that is not what Plaintiff alleged.  Plaintiff alleged that a representative of Bethel and MCUSA falsely told the police that he had already been "trespassed" the prior day (Para. 83).  That is, after all, what police told Plaintiff (also duly alleged) (Para. 78). Thurman v. Cundiff, 2 Kan. App.2d 406, 580 P.2d 893, 898 (1978), is inapposite  Thurman is a decision rendered after a trial and therefore far from dispositive in the context of a motion to dismiss, but nothing in Thurman suggests that Plaintiff did not state a plausible cause of action for a false arrest attributable to the actions of MCUSA.   Thurman does not say that the defendant must have "ordered" the arrest, but rather, "it must appear that the defendant either instigated it, or assisted in it, or by some means directed or encouraged it." Id. at 893.  This court is unable at the

pleading stage to decide the truth or falsity of the contention of MCUSA (by extension from

Bethel's contention) that it simply provided truthful information to police who then exercised their

own judgment.  The pleading states otherwise (Para. 83).   Plaintiff pled that the North Newton

police chief himself acknowledged to Plaintiff that he had not been trespassed on March 16 (Para.

91).

      --Plaintiff has alleged  both loss of profits and loss of income to his law practice (forms of

special damages) as a result of the injury to his reputation caused by the defamatory remarks of

MCUSA  (Para. 163, 164, 171-175, Prayer for Relief 6, 7); and MCUSA's call (by extension) for

even more specificity is without foundation.  In <u>Woodmont Corp. v. Rockwood Center</u>

<u>Partnership</u>, 811 F. Supp. 1478, 1484 (D. Kan. 1993), a decision on a Rule 12(b)(6) motion, the

court found that the pleading was deficient because the plaintiff had alleged damage to his

"business reputation" but had not "named any customer whose business was lost as a result of the

statement, nor has it alleged the amount of such loss."  Plaintiff asserts that <u>Woodmont Corp</u>. did

not intend to establish a standard that all claims for defamation by private business persons would

be dismissed unless they named customers whose business they had lost, nor is there a basis for

that in any Kansas state court decision.  It is not reasonable to expect that all business persons

whose reputation has been damaged will be able to name customers who did **not** come to them

because of their sullied reputation.

      Moreover, Plaintiff submits that unless there is precedent that is exactly on point–which

there is not-- it would not be appropriate for the Court to make decisions about the significance of

the term "Holocaust denier" at the pleading stage, i.e. that it cannot constitute a defamatory

statement.  The parties need to be allowed to demonstrate what the epithet means both

linguistically and socially.   Plaintiff has pled that "to be branded a 'Holocaust denier' is one of the

28

most damning slurs that can be used against a person in contemporary United States parlance"
(Para. 47-48).   The only question facing the Court on this motion is whether what Plaintiff pled is
plausible.   When MCUSA (by extension) wants the Court to make a peremptory finding that the
term "Holocaust denier" is a mere expression of opinion by analogizing it to labels such as "anti-
semitic" or "racist" which supposedly removes it from defamation, this is doubly misguided.  First,
it is not correct that under federal law a statement of opinion can never be defamatory.  Milkovich
v. Lorain Journal Co., 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (Supreme Court did not
create an exemption for "any statement that might be labeled 'opinion'").  Second, the term
Holocaust denier has attributes that the epithets "anti-semitic" and "racist" do not.  It can be proved
or disproved.

—Whereas MCUSA wants to say that Plaintiff has not stated any cause of action for either
the intentional infliction of emotional distress or (in the alternative) the negligent infliction of
emotional distress because its acts are not sufficiently outrageous,  this is one of few cases where
the facts are indeed outrageous enough to clearly show at least one of those two causes of action
even if for some reason Plaintiff's claim for false arrest or false imprisonment against MCUSA
would falter (e.g. if the putative attempt by MCUSA to deflect responsibility for the arrest to
codefendant Bethel College or  law enforcement authorities alone were to succeed).    Plaintiff pled
all four of the elements of a claim for intentional infliction of emotional distress, under Balmer
Fund, Inc. v. City of Harper, 294 F.Supp.3d 1136, 1151 (D. Kan. 2018): the intentionality of the
conduct of MCUSA; the extreme and outrageous nature of the conduct, the alleged conduct and
Plaintiff's distress, and the severity and extremity of Plaintiff's distress

In conclusion, Plaintiff believes it is all too evident that the gravamen of the motion of
Mennonite Church USA is really that MCUSA was not enough of a sponsor of the Conference to

have authorized representatives to do anything on its behalf. That, however, is a question for the trier of fact, not the tester of the sufficiency of pleadings. MCUSA cannot deny that Plaintiff has contended that MCUSA's representatives actively injured him by breaching contract with him and instigating his false imprisonment and by defaming him and causing him emotional distress, and so MCUSA seeks to create a fiction that where Plaintiff has alleged that MCUSA has acted through its representative, the representative capacity is a "legal conclusion" and does not have to be accepted by the Court as a pled fact. The strategy of MCUSA is to try to smuggle in facts nowhere found in Plaintiff's Complaint and to conjure legal phantoms such as "conflation" and "employment by one sponsor precludes representation of a cooperating sponsor" and "the church cannot be held liable based on the acts of its representatives" but none of those tactics are either factually or legally sound. Thus MCUSA believes in the final analysisthat it has no recourse but to deny that it had representatives at the Conference it sponsored, but on a Rule 12(b)(6) motion, this simply cannot be done, where Plaintiff has plausibly alleged otherwise. Accordingly, Plaintiff submits that the motion to dismiss of MCUSA must be denied, and if the Court disagrees with Plaintiff's position as to any cause of action naming MCUSA, that Plaintiff deserves time to move for leave to amend to cure whatever deficiency in pleading liability of MCUSA on that particular cause of action that the Court might identify.

.

Respectfully submitted by,

/s/ Bruce Leichty

Bruce Leichty, In Pro Per
c/o Bruce Leichty, A Prof. Corp.
220 W. Grand Ave.
Escondido, CA 92025
(760) 484-2467
Fax: (951) 676-7462
leichty@sbcglobal.net

30

CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of July 2019, the foregoing was filed with the Clerk of the Court of the Kansas District Court using the CM/ECF system which will send notice of electronic filing to all counsel of record, including the following:

/s/ Bruce Leichty
Bruce Leichty, Plaintiff


Alan L. Rupe
Kevin E. Miller
Lewis Brisbois Bisgaard & Smith, LLP
1605 N. Waterfront Parkway, Ste. 150
Wichita, KS 67206
Phone: 316-609-7900
Fax: 316-462-5746
alan.rupe@lewisbrisbois.com
kevin.miller@lewisbrisbois.com
Attorneys for Mennonite Church USA


Scott E. Sanders
Corey M. Adams
McDonald Tinker PA
300 W. Douglas, Ste. 500
Wichita, KS 67202
Phone: 316-263-5851
Fax: 316-263-4677
ssanders@mcdonaldtinker.com
cadams@mcdonaldtinker.com
Attorneys for Bethel College and  John Thiesen sued as John Thiessen


Tracy M. Hayes
Robert M. Reynolds
Sanders Warren Russell & Scheer LLP
430 Corporate Woods
9401 Indian Creek Parkway, Ste. 1250
Overland Park, KS 66210
Phone: 913-234-6100
Fax: 913-234-6199
t.hayes@swrsllp.com
r.reynolds@swrsllp.com
Attorneys for City of North Newton, Kansas

Eric A. Van Beber
Kevin D. Weakley
Wallace Saunders
10111 W. 87th St.
Overland Park, KS 66212
Phone: 913-888-1000
Fax: 913-888-1065
evanbeber@wallacesaunders.com
kweakley@wallacesaunders.com
Attorneys for Lancaster Mennonite Historical Society

Thomas P. Schult
Jennifer B. Wieland
Berkowitz Oliver LLP
2600 Grand Boulevard, Ste. 1200
Kansas City, MO 64108
Phone: 816-561-7007
Fax: 816-561-1888
tschult@berkowitzoliver.com
jwieland@berkowitzoliver.com
Attorneys for Joel Nofziger

Jay P. Lefkowitz/Joseph M. Sanderson
Kirkland & Ellis - New York
601 Lexington Avenue
New York, New York 10022
Phone: (212) 446-4800
Fax: (212) 446-4900
lefkowitz@kirkland.com
joseph.sanderson@kirkland.com
Attorneys for Joel Nofziger

Kelsey N. Frobisher, Foulston Siefkin LLP
1551 N. Waterfront Parkway, Ste. 100
Wichita, KS 67206-4466
Phone: (316) 267-6371
Fax: (866) 347-3808
kfrobisher@foulston.com
Attorney for Harvey County [party dismissed 7/19/19]

Toby Crouse, Crouse LLC
11184 Antioch, No. 253
Overland Park, KS 66210
Phone:   (913) 957-6832
tcrouse@crousellc.com
Attorney for Harvey County [party dismissed 7/19/19]