IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRUCE LEICHTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:19-cv-01064-JWB-KGG |
| v. | ) | |
| | ) | |
| BETHEL COLLEGE; MENNONITE | ) | |
| CHURCH USA; CITY OF NORTH | ) | |
| NEWTON, KANSAS; HARVEY COUNTY; | ) | |
| LANCASTER MENNONITE HISTORICAL | ) | |
| SOCIETY; JOHN THIESSEN; JOEL | ) | |
| NOFZIGER; | ) | |
| | ) | |
| Defendants. | ) | |

BRIEF OF PLAINTIFF IN OPPOSITION TO MOTIONS
TO DISMISS AND TO STRIKE OF DEFENDANT JOEL NOFZIGER

Plaintiff Bruce Leichty (hereinafter "Plaintiff" or "Leichty"), Pro Se, hereby opposes the combined motions of Defendant Joel Nofziger ("Nofziger"), ECF 39, to dismiss the Seventh Cause of Action in his Complaint pursuant to F.R.Civ.P. 12(b)(1), (2) and (6), and to strike the same cause of action pursuant to either K.S.A. 60-5320 or Cal.Code of Civ.Pro. 425.16, and the request made pursuant to the latter motion for an award of attorney fees and costs. In summary, the motion to dismiss on the grounds of an absence of subject matter jurisdiction has no merit because Plaintiff has plausibly alleged damages giving this court subject matter jurisdiction based on the fact that his pleading must reasonably be construed to implicate damages of over $75,000 despite Plaintiff's pleading oversight (or Plaintiff should be allowed to amend to make that explicit); or alternatively there is supplemental jurisdiction with regard to the claim against Nofziger. Moreover, because Nofziger specifically and personally directed his business activities to conferees in Kansas leading to Nofziger's libel of Plaintiff, there is personal jurisdiction over Nofziger.

The proposal of Nofziger that–as a matter of law--being called a "Holocaust denier" is a protected statement of opinion is without merit, as is the venomous proposal that Plaintiff has admitted the truth of that libel, and Nofziger's proposal that Plaintiff is already shown to be a "public figure for a limited purpose" is likewise without merit in the context of a Rule 12(b)(6) motion on the pleadings here. The extensive declarations and exhibits submitted by Nofziger should be stricken, or substantial portions stricken (or at least excluded from consideration or discounted), because of the impropriety of submitting the exhibits in the context of a motion to dismiss or to strike. Moreover, if the Court disagrees with any of the above points and believes that any of Plaintiff's arguments require amendment to his pleading, Plaintiff should be given fair opportunity to make such a motion for leave to file an amended complaint.

The "anti-SLAPP" motion of Nofziger, and with it an award of attorney fees, should also be denied because Plaintiff's action cannot on the pleadings be said to implicate free speech in connection with a matter of public interest, and also based on the most recent federal appeals court authority interpreting the use of California anti-SLAPP law in federal court, or otherwise for reasons of federal preemption, meaning that Plaintiff need not attempt the monumental task (which would require a brief of its own) of showing *right now* that he is likely to prevail on the merits. .

## I.  STATEMENT OF CASE

Plaintiff was arrested on March 17, 2018 at a conference being held on the campus of Bethel College, North Newton, Kansas ("Conference"), after representatives of the sponsoring organizations Bethel College ("Bethel") and Mennonite Church USA ("MCUSA") (collectively "Sponsors") called the police of North Newton and claimed that Plaintiff was trespassing on the campus. (Complaint, Para. 14, 82, 83).   Also on the previous day, John Thiesen, a Sponsor spokesperson, had labeled Plaintiff a "Holocaust Denier" in remarks made to about 200 registrants (Para. 43-45).   Defendant Joel Nofziger was in attendance at the Conference.  (Para. 96).

Plaintiff had duly registered for the Conference, titled,  "Mennonites and the Holocaust" (Para. 14, 20).   Plaintiff, then a 63-year-old member of the California bar in good standing, lifelong Mennonite and member of an MCUSA congregation and former Kansas resident (Para. 17, 18),  had traveled from California to Bethel, known for its history of championing dissent, in order to participate in the Conference and to initiate dialogue and share information and encourage engagement with dissenters "on topic" in a respectful non-disruptive manner.  (Para. 24-30). Plaintiff did not intend to take the public platform at the Conference or engage in debate with Conference organizers.  (Para. 28, 30).                   .

Plaintiff brought with him to the Conference some flyers and books relating to the Holocaust which he believed Mennonite registrants would either want to be aware of or should be aware of, and he came to the conference having planned an informational off-campus presentation titled "Two Revisionist Jews Consider the Holocaust," for the evening of March 16 at a community room located near the campus. (Para. 19, 27, 28, 29).   Plaintiff at no time indicated he espoused all the points of view expressed in the books that he brought  or that would be expressed by his colleagues.   (Para. 27, 29, 34, 47;  Complaint, passim).

Two of Plaintiff's colleagues, professionals identifying themselves as Jewish Holocaust revisionists, had also come from some distance to give the off-site presentation organized by Plaintiff, and also to participate peacefully in the Conference, but were denied registration to the modestly-attended Conference after having inadvertently failed to pre-register. (Para. 34-36).

Plaintiff participated peacefully and non-disruptively at all sessions of the Conference on March 16. (Para. 29, 31, 40, 41, 49).   At the close of the day's sessions he himself was angrily interrupted when, after having been recognized by a session moderator and handed a microphone, he attempted to make an observation about Jewish attitudes toward the Holocaust and to provide information about the opportunity for registrants to hear two divergent Jewish viewpoints. (Para. 51-54).  The session ended at that point and he departed the meeting room voluntarily after speaking amicably with a Conference organizer. (Para.  55, 57).   At no time either then or during the Conference did he make an anti-Semitic remark or express any anti-Semitism, nor had he done so at prior church gatherings (indeed his colleagues were Jewish).   (Para. 34, 56, 97, 98).

Based on false statements made by Sponsors to local police the following day, Plaintiff was falsely arrested for trespass, incarcerated and sustained other injuries incident to the false statements. (Para. 83, 155-64).

Nofziger was present at the Conference in his capacity as an employee of Lancaster Mennonite Historical Society, which allows Nofziger to operate an entity called Anabaptist Historians and sponsors that entity.   Nofziger published three false statements on the website of the Anabaptist Historians organization, and did not allow Plaintiff to either correct them or a place of equal prominence on the website to publish Plaintiff's explanation of their falsehood and why they were false. (Para. 95-98).    The false statements published and adopted by Nofziger were:

"A Mennonite Holocausts denier, Bruce Leichty, attended parts of the conference."

"Leichty has passed out anti-Semitic literature at Mennonite Church USA gatherings."

"When Leichty began to ask an offensive question during the conference, the organizers removed him by calling campus security...."   (Para. 97, 99).

Plaintiff was injured as a result of the false statements published by Nofziger.   Plaintiff lost work as a lawyer.   His law practice suffered in profitability. (Para. 183).   The statements caused strain in his relationships, including with relatives with whom Plaintiff had been close. (Para. 184).   Plaintiff suffered damage to his reputation. (Para. 185).   Plaintiff pled the amounts of the damages suffered to his reputation and profitability and lost income of his law practice at $70,000, without estimating or pleading his other noneconomic damages (i.e. suffering from disrupted and strained relationships) (Para. 184-186), nor did Plaintiff account for those noneconomic damages in the framing of his prayer for relief (Prayer for Relief, Para. 8).


## II. ARGUMENT

A.  Nofziger Has Not Overcome Plaintiff's Prima Facie Showing of Subject Matter Jurisdiction

Nofziger's first attempt to get the Seventh Cause of Action in Plaintiff's Complaint dismissed is based on his contention that Plaintiff cannot establish subject matter jurisdiction

inasmuch as there is no independent jurisdiction over Nofziger for purposes of federal diversity jurisdiction since Plaintiff's prayer for relief seeks only $70,000 from Nofziger and not the required minimum of $75,000.  Moreover, Nofziger contends that there is no supplemental jurisdiction based on the fact that the complaint against Nofziger lacks a nucleus of operative facts that is common to other defendants over whom the court concededly has jurisdiction.   Plaintiff acknowledges that his prayer for relief was too hastily drafted, but submits that supplemental jurisdiction can already be established even without amendment, and moreover, if necessary, he should be allowed to amend to show that Nofziger's liability is in fact greater than $75,000 based on the damages he has already pled in the body of the Complaint even if not the prayer for relief.

Plaintiff addresses the second of these contentions first.   In Paragraphs 182 through 186 of his Complaint, Plaintiff pled the types of damages he has suffered as a result of Nofziger's libel. These include damage to his reputation, loss of work for Plaintiff as a lawyer, diminution in profitability of his law practice, and **difficulties in relationships and broken relationships with relatives with whom Plaintiff was once close**.   Plaintiff assigned numbers to two of those categories of loss: $50,000 to damages to his reputation, and $20,000 to loss of work and profitability.  Adding just the latter two of those numbers equals $70,000.  However, Plaintiff did not assign for purposes of either Paragraph 184 or for his prayer for relief a  number corresponding to the damage done to his relationships, which is a species of damage different from either of the other two, and which Plaintiff reasonably believes is at least as significant as the damage to his reputation, or in other words, worth at least $50,000.   This was clumsy on the part of Plaintiff, a *pro se* filer operating out of his sphere of legal familiarity, but it should not be fatal to subject matter jurisdiction.  Had Plaintiff assigned damages of $50,000 to the loss he has suffered over strained relationships–which is clearly pled and capable of proof–there would be no question of

subject matter jurisdiction since his prayer for relief would have (more properly) specified $120,000 as his loss rather than $70,000.

Plaintiff asserts that the Court can clearly see that the number shown in the prayer for relief is but a partial tally of Plaintiff's damages as pled in the body of his complaint.   Plaintiff was not as calculating as he should have been.   Had Plaintiff asked in his prayer for relief for damages of "no less than $70,000 according to proof," Plaintiff submits that this gaffe would have been readily amendable under the circumstances where he plainly pled damages not represented in this tally; and therefore Plaintiff submits that he should not be penalized for either the omission in the prayer or for the failure to quantify damages he should have and could have quantified for purposes of establishing jurisdiction over Nofziger without needing to depend on supplemental jurisdiction.

Under California law which must necessarily incorporate decisions of the U..S. Supreme Court, a defamed plaintiff can recover damages for his actual injuries including impairment of reputation, personal humiliation and mental anguish and suffering.   Gertz v. Robert Welch, Inc., 418 U.S. 323, 350 (1974).

Where Plaintiff is able to propose an amendment which is not implausible on its face and which does not render his cause of action implausible, leave to amend should be freely given. F.R.Civ.P. 15(a); Foman v. Davis, 371 U.S. 178 (1962), Ashcroft v. Iqbal, 556 U.S. 662 (2009), Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (with neither of the latter cases making any overt statements about the relationship between amended complaints and original complaints). In this case, of course, Plaintiff would simply need a reasonable amount of time after the final decision on any of the pending motions to dismiss in which to amend all implicated causes.

However, Plaintiff believes that the Court need not even rule that amendment would be required in order to find subject matter jurisdiction.   It is obvious from the pleading that there is a

common nucleus of operative fact that justifies the inclusion of Nofziger as a defendant in this action along with the other defendants as to whom subject matter jurisdiction is established. Plaintiff does not dispute the pleading standard proposed by Nofziger for establishing subject matter jurisdiction, but believes it will be met based on the discussion below.

First, Nofziger is one of two individuals sued for the same defamatory statement calling Plaintiff "a holocaust denier,"[1] the other of whom (John Thiesen) is clearly subject to the court's subject matter jurisdiction.[2].   Second, both statements clearly arose out of Plaintiff's attendance at the same conference and the defamers' presence at the Conference.   Third, publication was either to those in attendance at the Conference or who wanted to know what happened at the Conference. Complaint, Para. 43, 177.   Fourth, the damage that Plaintiff will have to show from the slander and libel respectively is the same type of damage: damage to his reputation, damage to his law practice, and damage to his relationships, and has been pled as such.  Para. 171-75, 182-86. Moreover, some of the evidence needed to prove that one of Nofziger's three statements was libelous (false) is intertwined with evidence that will be introduced on Plaintiff's claim against multiple defendants regarding his false arrest, in that Nofziger published a false statement that Plaintiff was removed from the Conference by campus "security" after asking an offensive question. Para. 97.  Thus it is only proper that a cause of action for defamation against Nofziger sharing with other claims all these characteristics be stated in the same action.

Supplemental jurisdiction over a claim is established when that claim is "so related" to

---

[1] Nofziger's statement was more expansive than that, see Complaint, Para. 97, but the "Holocaust denier" slur was a common nucleus.

[2] The Court has subject matter jurisdiction over Thiesen because of supplemental jurisdiction, but it is even more clear from the common facts pled as to Thiesen, Bethel College and MCUSA why that would be, and Thiesen has not argued an absence of subject matter jurisdiction over him.

7

other claims over which the Court has jurisdiction so that the claims form "part of the same case or

controversy under Article III of the United States Constitution." 28 U.S.C. Section 1367(a). To

meet the latter test the U.S. Supreme Court has looked at whether the claims derive from a

"common nucleus of operative fact." United Mine Workers of America v. Gibbs, 383 U.S. 715,

725 (1966). The claims made by Plaintiff against Thiesen and Nofziger clearly arise out of a

common nucleus of operative fact, but so do the claims against Nofziger, Bethel and MCUSA.

Bethel and MCUSA are also alleged to have defamed Plaintiff, albeit in a different manner by

publication of a false statement to police, but also incident to the outcast status assigned to

Plaintiff, and otherwise all of the above-identified elements of the nucleus are equally to be found

in claims not just against Thiesen and Nofziger but also in claims against Bethel and MCUSA.[3]

Accordingly, Plaintiff has established either that subject matter jurisdiction can be found

on the present pleading through supplemental jurisdiction, or by way of amendment.


B.  Nofziger Has Not Shown an Absence of Personal Jurisdiction

Nofziger also argues that he as a Pennsylvania resident cannot be haled into a court in

Kansas to answer for his defamatory act committed elsewhere; however, his argument assumes too

much and he cannot in fact overcome the pleading by Plaintiff of the Kansas nexus between his

---

[3]Nofziger has cited two unpublished cases from Pennsylvania and Texas (Memorandum, p. 6-7) for his proposition that claims of "false arrest" and "defamation" cannot possibly arise out of the same nucleus of operative fact. Despite repeated efforts Plaintiff was not able to locate either case in Plaintiff's non-Westlaw legal research database which includes both published and unpublished cases, and Plaintiff is not required to subscribe to the Westlaw service and Nofziger did not supply the cases to Plaintiff, and for that reason Nofziger should be deemed to have submitted no authority. In any event, Plaintiff submits that there can be no across-the-board rule for this very sweeping proposition claimed by Nofziger, and Plaintiff believes that the common nucleus here – which extends to the commonality of professed religious faith and apparent religious motive of the tortfeasors, not to mention common evidentiary questions -- sets this case apart from any other case where claims of both false arrest and defamation would be joined.

activities and the defamatory publication based on argument alone.   The pleading clearly

establishes that Nofziger went to Kansas in connection with his business–as an employee of a

Mennonite historical society publishing the defamer forum Anabaptist Historians under historical

society auspices--and conversely, if the court believes that Plaintiff himself has not sufficiently

pled Nofziger's activities in Kansas (and/or the connections of website to Kansas) Plaintiff should

be allowed opportunity to amend on that element as well.

Although Nofziger starts out by alleging that Plaintiff "bears the burden of establishing

personal jurisdiction," citing Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011), Nofziger

hasn't cited the statement in context.   In the same paragraph, the Shrader Court adds,  "Where, as

here, the issue is raised early on in litigation, based on pleadings...that burden can be met by a

*prima facie* showing....We also must resolve any factual disputes in the plaintiff's favor." Id.

(citing Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063, 1069-70 (10th Cir. 2008).

Here the unassailable facts show that Nofziger's business activities in connection with Mennonite

history brought him to Kansas and that his business in Kansas resulted in the published libel.

Nofziger's activities in Kansas are the focal point of the tort since that was where he was

told that Plaintiff was a Holocaust denier (Para. 43, 45, 96),  and since the Conference he attended

was the context for the libel. Para. 97.   Part of the libel involved a false statement about the

nature of Plaintiff's "removal" from the Conference. Para. 97.   Based on what is pled, Nofziger

was incontrovertibly in Kansas to obtain information for his Mennonite historical work including

the website Anabaptist Historians on which the defamatory statements appeared.  Para. 95-100.

Nofziger protests that his Conference attendance is "irrelevant" to the analysis of specific

jurisdiction (Memorandum, p. 10, note 2), citing Kuenzle v. HTM Sport-Und Freizeitgerate AG,

102 F.3d 453, 456-57 (10th Cir. 1996), but he is doing nothing more than putting his "spin" on the

9

trip when he contends it has nothing at all to do with his defamatory publication regarding the branding and treatment of Leichty that took place there.   When the Kuenzle decision states, therefore (in the very different context of a product liability claim that makes its precedential value weak to begin with), that a court can't find that a claim has arisen out of the forum-related activities "when the plaintiff would have suffered the same injury even if none of the defendant's forum contacts had taken place," Plaintiff asserts that his allegations indeed make the showing that his injuries arose out of Nofziger's business activities in Kansas, but if the Court disagrees, Plaintiff should be allowed opportunity to amend to make the showing clearer.

Nofziger relies heavily on Shrader v. Biddinger, supra, as authority for why Plaintiff would have to show facts he did not show in his pleading, such as that the Anabaptist Historians website itself was directed primarily to residents of Kansas, but Nofziger has overstated the showing required, and Nofziger overlooks the fact that the appellant in Shrader had to resort to such a showing because he could not point to the same set of facts that Plaintiff here can, i.e. the defamer's state-specific business activities as focal point of the defamation.   The same would be true of the other 10th Circuit case on which Defendants chiefly rely (and which is relied on in Shrader), Dudnikov v. Chalk & Vermillion, supra.(in which the court found there was personal jurisdiction in the absence of any ties to the forum state other than the defamatory action aimed at the forum state).

Indeed both of these 10th Circuit cases must be read in light of the Supreme Court test announced for "minimum contacts" of the defendant with the state in which suit is brought, per Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985): "The out-of-state defendant must have purposefully directed its activities at residents of the forum state, and [] plaintiff's injuries must arise out of defendant's forum-related activities."   The

Shrader court itself acknowledged that in Dudnikov the court was "delineating" three salient factors that would indicate "purposeful direction" of an Internet transmission for purposes of the Burger King test, and it is apparent that Dudnikov was not purporting to define standards for all cases involving Internet communications.   Dudnikov is a copyright infringement case and not a defamation case, where the only basis for establishing that the infringer purposefully directed its activities at the forum state was to show that it did so by Internet.

Here, by contrast, Plaintiff's pleading shows that Nofziger had a broader mandate, working for a historical society which gathers and publishes "news and information about Mennonite history and current events...." on the website it sponsors and which Nofziger operates as a co-publisher.   Moreover, Plaintiff pled that Nofziger was at the Conference in Kansas in his capacity not just as publisher but as an employee of the historical society.  Para. 95, 96, 100.  Nofziger's contacts with Kansas are not the type of "random, fortuitous or attenuated" contacts that were disapproved as a basis for personal jurisdiction in Burger King, supra. at 475, 2174.

In such a case there is more than one way to establish that the defaming party, albeit an Internet publisher while wearing one of his hats, purposely directed his business activities at the residents of a state such that the defaming party should be deemed to have consented to personal jurisdiction of that state for injuries caused as a result of and arising out of those activities. Nofziger directed his Mennonite history-related information-gathering activities at conferees in Kansas in March 2018, resulting in the publication of the defamatory article.

Significantly, the appellant in Shrader apparently did not argue that there was a focal point in Oklahoma (the forum state in that case) from which the defamation resulted, but even at that, the court acknowledged that this plaintiff might have been able to properly plead an allegation of personal jurisdiction had he alleged that the defendant had sent an e-mail to his customers and

11

"some of them resided in Oklahoma."   The court noted, however, that the alleged defamer had

submitted uncontroverted affidavits in the context of the appellant's motion for leave to amend

showing that he had sent no e-mail to any customer in Oklahoma, thereby dooming any possibility

that Appellant had established personal jurisdiction by means of specific jurisdiction.   Shrader,

supra,  at 1248.

While it might be argued that when a defamatory statement appearing on a website is

involved it is "only" the publication itself that counts in terms of whether it was purposely directed

to the citizens of the forum state, and indeed Nofziger has assumed that in his argument, Plaintiff

submits that is not the law, and that "minimum contacts" of the publisher sufficient to not offend

"fair play and substantial justice" can be established through other kinds of purposeful direction,

and that if courts have not recognized that it is because they have not had a case with those facts.

Accordingly, Plaintiff has met his minimal burden of showing personal jurisdiction.


C.  Nofziger Has Not Proved a Basis for Dismissal Under F.R.Civ.P. 12(b)(6)

In addition to Nofziger's jurisdictional challenges, Nofziger claims that the Seventh Cause

of Action does not state a claim on which relief can be granted under F.R.Civ.P. 12(b)(6) for

essentially three reasons, having to do with Nofziger's opinion of the nature of the libelous

statement he published, as well as his speculation about Plaintiff's activities which are not

mentioned in the Complaint, which of course are not properly considered on a motion to dismiss.

For that reason and because Nofziger's opinions as to the status of his libelous statements cannot

nullify or supersede the allegations made by Plaintiff himself, the truth of which are presumed,

none of Nofziger's Rule 12(b)(6) contentions have merit.

1.  Dismissal Is Not Warranted Based on the Contention That the Libel Was Mere Opinion

Plaintiff is presented by Nofziger as a Holocaust denier and as an offensive individual who posed such a threat to "security" of a gathering of scholars that he had to be removed from the gathering,  in the statements published by Nofziger, and moreover Plaintiff is presented not just as an anti-Semite but someone who is an activist anti-Semite, to the point where he will hand out anti-Semitic literature at multiple gatherings of the denomination Mennonite Church USA.   There is no precedent for treating this type of statement as opinion.

A critical test for whether an alleged defamatory statement is merely an opinion is whether it can be proven or disproven.   Wong v. Jing (2010),  189 Cal.App.4th 1354, 1369; Milkovich v. Lorain Journal Co., 497 U.S. 1, 21 (1990).   Moreover, California courts apply the "totality of circumstances test" to determine whether an allegedly defamatory statement is actionable.  Baker v. Los Angeles Herald Examiner  (1986), 42 Cal.3d 254, 260,, 721 P.2d 87.   Whether Plaintiff is a "Holocaust denier" is an obvious example of a statement that **can** be proven or disproven.  Either Plaintiff has in his writings or in his speech (which presumably would be the subject of testimony by those who heard him) denied the Holocaust, or he has not.   The statement made about Plaintiff is unlike the statement made in the 8th Circuit decision Turkish Coal. Of America, Inc. v. Bruninks, 678 F.3d 617, 620-21 (8th Cir. 2012) where the court found that an allegation made against a Turkish organization that its denial of Armenian genocide was like "Holocaust denialism" was either unactionable opinion or was true.   No individual was called a Holocaust denier in that case.

Regarding the totality of circumstances, as Plaintiff has also pled, the label "Holocaust denier" is one of the most damning labels that can be fixed on someone (and particularly a lawyer charged with separating fact from fantasy) in contemporary America.  Para. 48.   If instead of denying the Holocaust  (for example) Plaintiff takes a critical scholarly approach to pivotal

historical mass killings of World War II and desires more careful consideration of these events by

conscientious academics, or if Plaintiff simply believes that in a Christian church committed to

loving one's enemy there must be a willingness to confront even adversarial viewpoints such as

those denying the veracity of certain accounts of the Holocaust, then Plaintiff has been defamed.

Likewise, the statement that Plaintiff was "removed [from the Conference] by campus

security" after he "began to ask an offensive question" can also be proved or disproved, regardless

of whether the term "offensive" can be proved or not (and Plaintiff concedes that this descriptor

alone qualifies as an opinion: but it hardly the core or sum of the libel).   If that allegation is in fact

inaccurate, and if Plaintiff was not removed from the Conference at that time and **certainly not as**

**a threat to security** but was later falsely arrested for trespass-- then Plaintiff has been defamed.

Plaintiff's allegation of a false statement made about his having "passed out anti-Semitic

literature at Mennonite Church USA gatherings" must also be taken at face value and is capable of

being proved or disproved.   While some cases say that calling a person "anti-Semitic" can be an

opinion, Plaintiff does not agree that the epithet itself can never be defamatory, because it will

depend on context and the totality of the circumstances; however, in any case this the statement

published by Nofziger was not just that Leichty is anti-Semitic but rather that he is essentially a

rabid anti-Semitic (rabid meaning virulent, someone intent on spreading anti-Semitism, for

example at a church gathering).   This is not the same accusation made in Ward v. Zelivosky, 643

A.2d 972, 983 (N.J. 1994) (sudden outburst at a homeowners' meeting did not qualify as slander);

or Condit v. Clermont Cty. Review, 111 Ohio App.3d 755, 760-61, 675 N.E.2d 475, 478 (Ohio Ct.

App. 1996) (editorial statement by someone not purporting to be unbiased or impartial that a

political party organizer showed anti-Semitism and was prone to "blame the Jews" was not

actionable); or Jones v. City of Philadelphia, 893 A.2d 837, 845 (Pa. Commw. Ct. 2006) (court

14

dismissed third amended complaint of governmental advocate for minority business who commented at public meeting that developer teams were dominated by "Jewish architects and lawyers" and was subsequently referred to as both racist and anti-Semitic, because the published responses regarding the advocate could not be proven to be "false statements of fact" but instead amounted to statements of "pure opinion").

Here, by contrast, the statement published by Nofziger (from one Mennonite about another) is an allegation that Plaintiff is an active anti-Semite, i.e. that he is acting on his anti-Semitism to attempt to recruit others to his Jew-hating cause, published by who is purporting to be a historian and a faithful historian at that.   The fact that a charge of anti-Semitism may be an opinion in some contexts does not mean that it cannot be disproven in other contexts, and the Court has insufficient information from which to make a decision about whether this is one of those contexts.

Nofziger also wants the Court to accept by way of exhibits to the supporting Sanderson declaration, ECF 41  (without any proof that the exhibits show the same booklet or the edition of the booklet purchased by Plaintiff for use in Kansas),[4]  that because Plaintiff purchased copies of a book written by Don Heddesheimer titled, The First Holocaust, which he intended to make available to registrants of the March 2018 "Mennonites and the Holocaust" Conference (seemingly a natural fit), and because this book supposedly contains an anti-Semitic statement, that Plaintiff must have passed out anti-Semitic literature at other "MCUSA gatherings" (see Note 6 *infra*) but the invitation to take this leap in logic should be resisted.   Once it is recognized that the

---

[4] Nofziger contends without any citation of authority that Plaintiff "incorporated" the book by reference into his complaint, and therefore the entire contents of the book can be considered on a motion to dismiss "without converting it to a motion for summary judgment" (Memorandum, p. 16 note 3), but the premise is flawed.  Plaintiff did not "incorporate the book" into his allegations by merely referring to titles of books that he purchased to bring to the Conference to show how they were related to the Conference theme.  (Complaint, Para. 7).

Heddesheimer statement seized on by Nofziger as "anti-Semitic"[5] is not capable of being proven

false (and thus not capable of being proven anti-Semitic) in the context of Nofziger's motion,

there is absolutely nothing in the Complaint to show an admission by Plaintiff that he passed out

anti-Semitic literature at any church gathering let alone at other church gatherings.

Moreover, under California law if there is any doubt at all as to whether a statement could

reasonably be construed as fact rather than opinion, the issue should not be resolved as a matter of

law by the court, but instead by the finder of fact. Good Government Group of Seal Beach, Inc. v.

Superior Court (1978), 22 Cal.3d 672, 680, 586 P.2d 572.   At the very least the Court should

acknowledge that the statements published by Nofziger are not indisputably opinion statements.


2.  The Court Is Not Yet Equipped to Determine the Truth or Falsity of the Alleged Libel

In light of the discussion above, it is vexing that Plaintiff need spend any time at all

rebutting Nofziger's fantastic assertions–illustrative of Nofziger's overreach--that Plaintiff has

admitted in his Complaint the truth of all of the allegations as published by Nofziger.  Those

assertions are specious.  Nofziger would need a summary judgment motion to even attempt proof.

---

[5] The editorial blurb that Nofziger wants the Court to regard as anti-Semitic is:
"Heddesheimer's book clearly shows that the `six million' figure, together with `extermination'
and `holocaust' claims, are Jewish-Zionist in nature and part of a propaganda pattern that started
at the very dawn of the 20th century in order to promote Jewish political and financial goals...."
Plaintiff wishes to make it clear that he has no objection to a judicial determination of whether a
statement or person is anti-Semitic or not, and believes it can be done in the right circumstances,
but he needs to point out that Nofziger's position is self-contradictory: he apparently believes that
the term anti-Semitic can be proven true or false when he uses it about a book, but not when he
uses it about Plaintiff.  In any case, however, the attempt by Nofziger to get the court to accept
that this editorial blurb is effectively "group libel" (i.e. anti-Semitic) or motivated by hatred for
the Jewish people merely because they are Jewish, the usual definition of anti-Semitism, is
problematic without factual development, i.e. at the pleading stage of a complaint, since a true
statement is not defamatory, even setting aside the fact that "guilt by association" is also
problematic because thinkers often urge examination of writings with which they disagree.

Nofziger has claimed that Plaintiff is obviously a Holocaust denier because he has admitted to "identify[ing] with Holocaust revisionists" in Para. 46 of the Complaint (Memorandum, p. 15). However, even assuming that Plaintiff had made that statement in his Complaint (his statement is actually slightly different from that), that would not be the same as admitting that one is a "Holocaust denier." Anyone with common sense will acknowledge that the term "revisionist" (a term used to connote reinterpretation of many a historical event) is not simply a "preferred term" that a "denier" uses to cloak his denial, as Nofziger alleges (Memorandum, pp. 15-16). Moreover, all Plaintiff said in Paragraph 46 was that no other registrant had been known to associate with anyone with revisionist views; Plaintiff was stating nothing about his own views. Anyone familiar with lawyering for clients with different views should understand this distinction.

Nofziger is notoriously loose not just with the pleadings but with the facts, e.g. when he says that Plaintiff was ejected from the Conference after being "told twice to stop handing out flyers" (Memo, p. 3), which has no support in the pleading. The Complaint alleges the contrary. Para. 40-41. Consistent with this untrustworthy approach to his motion, Movant also repeatedly tries to smuggle in information nowhere found in the Complaint, such as when Movant portrays Nofziger as a "coordinating editor" of a "collaborative blog" (assertions not found in the pleading) and purports to provide the curriculum vitae of the writer (Schirch) whose defamation was published by Nofziger (Memo, p. 3) (similarly not pled). Nofziger even engages in impermissible attempts to refute facts pled by Plaintiff, as he does in denying that Nofziger operates the Anabaptist Historians website in his capacity as an employee of his employer Historical Society. (Memo, p. 3, note 1). The Court should exclude this material under F.R.Civ.P. 12(d) and not be influenced by it since Plaintiff is entitled to have his well-pled allegations accepted as true for purposes of this motion.. Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2009).

17

Nofziger also takes out of context the statement Plaintiff has made about what it means to be "branded" a Holocaust denier, which Plaintiff pled is one of the most damning slurs that can be used against a person in contemporary parlance "since it implies both that there is incontrovertible evidence of the extermination by German authorities of six million noncombatant Jews (and others) ...and that Plaintiff is minimize the suffering and death of those victims...." Complaint, Para. 48. Nofziger must know, but alleges to the contrary anyway (Memorandum, p. 2), that this statement is not and cannot be understood as a statement about what Plaintiff believes or does not believe, or whether Plaintiff believes that there is incontrovertible evidence for mass extermination, but only about what those using the term "Holocaust denier" mean.

Plaintiff has already alluded to the impropriety of Nofziger's use of declarations, but certainly Nofziger has not proved, by the use of excerpts from a book of unverified similitude to Plaintiff's books, that Plaintiff passed out anti-Semitic literature at *other* church gatherings (as Nofziger's libel has it). If necessary, Plaintiff could also plead that even organizers of the Conference screened an anti-Semitic propaganda movie at the Conference – and this session opened to the public! – that was produced by German Nazis during the prewar years, and Plaintiff would argue that this did not make those organizers anti-Semitic. Like Plaintiff, they no doubt wanted to use the literary material for purposes of discussion and to advance knowledge. Plaintiff could also prove what is clearly implied in his Complaint already, by Para. 27, that he didn't even own the Heddesheimer book until the March 2018 Conference, so that whatever the book signifies it could still have had nothing to do supposed anti-Semitic literature at other church gatherings.[6]

------

[6]Nofziger explicitly makes the assertion that Plaintiff handed out at other church gatherings the Heddesheimer book allegedly referring to "Jewish-Zionist propaganda" (Memorandum, p. 10), but there is no evidence for this in the Complaint or even in Plaintiff's own impermissible submissions.

Nofziger's final claim (Memorandum, p. 16-17) that Plaintiff admitted to being "ejected" from the Conference after asking an "offensive question" is also fanciful.  Far from that, Plaintiff stated that he voluntarily left that particular Conference session based on the ending of the session after the session moderator caused an uproar by interrupting Plaintiff's brief comment.  Plaintiff decisively did not admit that he had been ejected from the Conference as a whole or that "campus security" played any role in his departure (indeed there is no mention of campus security but rather the averment that Plaintiff conversed with a Conference organizer).  Complaint, Para. 55-61.

Accordingly, there is nothing of substance to the allegations of Nofziger that Plaintiff is unable to state a claim for defamation because he admitted to the truth of Nofziger's libels.

3.  Plaintiff's Complaint Does Not Show That He Is a Public Figure for a Limited Purpose

Nofziger further argues that Plaintiff made himself a "limited-purpose public figure" by his "so-called 'revisionism' activism," thus subjecting himself to a higher standard of pleading of actual malice that Plaintiff has not met in his Complaint, but first Nofziger has to construct the straw man that Plaintiff has been a revisionist activist, and even then the facts do not support his contention that Plaintiff is a "limited-purpose public figure."  As before, Nofziger apparently wants the Court to make assumptions or to find facts nowhere shown in Plaintiff's Complaint.

Nofziger states (Memorandum, p. 17) that Plaintiff "alleges more than enough to establish that he is a limited-purposed public figure," and he even states without any support whatsoever that Plaintiff "admits he actively advocates what he dubs 'revisionist views on the Holocaust' (Memorandum, p. 1), but Nofziger doesn't provide proof of those allegations and the latter statement is made up out of whole cloth.  Promoting engagement by Mennonites with dissenting views on the Holocaust at a conference specifically titled "Mennonites and the Holocaust" cannot

be converted into "active advocacy."   Possibly Nofziger wants the Court to assume the truth of the libel that Plaintiff passed out anti-Semitic literature at other MCUSA gatherings, but of course Plaintiff expressly controverted this statement published by Nofziger (Para. 97) and even if it had not been controverted, it shows nothing about "revisionism activism."

Nofziger also alleges (heading of Section E, Memorandum, p. 17) that Plaintiff injected himself into a "debate," and a "public debate" no less, whereas there is no evidence to be found in Plaintiff's materials that there was either any debate at the Conference or that Plaintiff intended to engage in debate by going to the Conference, much less that the Conference was public.   Plaintiff has explicitly pled that the Conference was closed to the public except for a couple sessions.

It is clear from Plaintiff's pleading, by contrast, that Plaintiff had a focused religious orientation and that he envisioned when traveling to the Conference that he could contribute to the knowledge base of his co-religionists, indeed that some of them would be interested in expanding their knowledge about the Holocaust perhaps even to the point of finding out that "not all Jews believed the same thing about the Holocaust" (but this could not be allowed).   In other words, Plaintiff's motivation was to take part in a church-sponsored gathering, where persons of similar religious orientation and presumed commitment to truth-telling and historical commitment, would gather, and see if the dialogue could be expanded consistent with the avowed aims of followers of Jesus Christ and Menno Simons.   If there was to be any "debate" (a word not found in Plaintiff's Complaint), it would be peculiarly parochial rather than public debate.   There is no evidence whatsoever that Plaintiff has ever participated in a public debate about revisionism or wanted to.[7]

The sponsorship by Plaintiff of a single off-campus event featuring two Jewish revisionists

---

[7] Plaintiff pled nothing about prior activism let alone public activism.  Quite to the contrary, in fact,  Plaintiff pled his parochial orientation, i.e. that he had present and prior positions of trust and responsibility with various church entities.  Para. 166, 178.

does not turn Plaintiff into a "limited-purpose public figure." First, it is clear from the Complaint that Plaintiff in offering that opportunity was not primarily reaching out to the public, but rather to the assembled registrants at a Mennonite-related event. Nofziger cannot unilaterally convert what is of interest to Mennonites, or a matter of Christian interest or religious interest, to a matter of interest to the general public. Second, the fact that Plaintiff would organize such an event does not show the kind of repeated appeal to the public that is required of even a limited-purpose public figure. This is not even to mention that, as pled by Plaintiff, attendance at the event was small. Para. 64. There is nothing else in the Complaint suggesting that Plaintiff had done any prior advocacy on this subject or even educational outreach of this type--or any other type--to the public.

None of the four cases cited by Nofziger in this section of his Memorandum (p. 17-18) offer any precedent for his proposal that the court make a finding that Plaintiff was a limited-purpose public figure at this stage of the proceeding. In World Wide Ass'n of Specialty Programs v. Pure, Inc., 450 F.3d 1132, 1136 (10th Cir. 2006)–a case involving how Utah law defines limited-purpose figures and inapposite under Nofziger's own legal rubric for that reason alone---the issue was the existing public controversy of "how to deal with troubled teens," and the Court observed that the principals of the association claiming defamation had given "dozens of interviews to media including L.A. Times, 48 Hours, New York Times" and others, and had chosen to place themselves in "the national spotlight advocating" a particular method of behavior modification for teens. Id. At 1137. Nothing similar is claimed by Plaintiff here or evidenced in the Complaint. Indeed, not only is Plaintiff not a well- known person (and that is probably the reason why co-Defendants Bethel College, Mennonite Church USA and John Thiesen made no such claim that he was a limited-purpose public figure even though they have also been sued for defamation), there is no "public controversy" about the Holocaust–or if there is, that is something that would have to be

established by evidence that does not appear in Plaintiff's Complaint, because such a conclusion

certainly cannot be derived from the allegations in the Complaint alone.

In Knudsen v. Kansas Gas & Elec. Co., 248 Kan. 469, 478-79 (1991), the defamatory

publication was in a major newspaper marketed to the public, the Kansas City Star, and the court

observed that by offering a story about a reservoir to that newspaper the plaintiff "should have

realized that his article "would create a concern for the public at large."  It further noted that

"limited purpose public figures" are those persons who "thrust themselves to the forefront of

particular public controversies in order to influence the resolution of the issues involved."

Nofziger wants the Court to adopt his own view that the only possible purpose that someone could

have had for coming from California to a Kansas conference with flyers and books and friends was

to be a *public* "activist" or "advocate."   However, the Court is instead required to accept the

alternative narrative presented by Plaintiff, plausible on its face, that Plaintiff's objectives were

educational in nature and narrowly focused on his Mennonite cohorts.    Para. 27-29.   Nor does his

coming "halfway across the country" (Nofziger Memorandum, p. 18) to attend the conference tend

to establish that Plaintiff's goals were "revisionism activism" or public in scope.   Nofziger

himself came halfway across the country with his own agenda.

Annette F. v. Sharon S. (2004), 119 Cal.App.4th 1146, 1165-66, is the only California case

cited by Nofziger.  That decision begins as follows: "this case is a spinoff of the highly publicized

and controversial litigation over the validity of second-parent adoptions in Sharon S. v. Superior

Court (2003) [citations omitted]."   The party claiming defamation in that marital discord case had

first invited media attention to the commitment ceremony she undertook with her lesbian partner

in 1992, and had then co-authored a book with her partner titled Straight Jobs Gay Lives  for

which they had interviewed 100 gay and lesbian alumnae of Harvard Business School, leading to

22

various references to her in discussion on the Internet, and to her founding a nonprofit corporation that raised money for her cause.  Id. at 1165.  The plaintiff herself viewed herself and her partner as "advocates for the civil rights of gay and lesbian people" and as "public figures."  Id. at 1164. That profile is sufficiently different from the profile of Plaintiff that the case is totally inapposite.

Moreover, the Annette F. court first noted that in order to find a limited-purpose public figure a court would first have to find that there was a "public controversy" before adding that, "not every private conflict that attracts widespread interest in the general public is considered to be a public controversy."  A public controversy is "a dispute that in fact has received public attention because its ramifications will be felt by persons who are not direct participants." Id. at 1164. That cannot be said about the Mennonite Conference held at Bethel College in March 2018.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 n.3 (1986), another case cited by Nofziger, was a summary judgment case in which the limited-purpose public figure designation by the lower court was not contested,[8] but even so, it is not helpful to Nofziger.  In the very footnote Nofziger cites to, the Supreme Court after commenting about "public figures" stated,  "More commonly, an individual voluntarily injects himself into a particular public controversy and thereby becomes a public figure for a limited range of issues.  **In either case such persons assume special prominence in the resolution of public questions**" (emphasis added).   It is plain to see from this note what the Supreme Court expects of an even a limited-purpose public figure and equally plain to see from his Complaint that Plaintiff not only did not inject himself into a "public" controversy, but did not thereby have prominence in the resolution of a controversy.

---

[8]Nofziger also claims that this case  involved a "major Holocaust denialism funder" but that is nowhere in evidence in the decision; indeed Plaintiff has found no reference to "the Holocaust" or to Holocaust denial in the Anderson v. Liberty Lobby decision.

D. The Anti-SLAPP Statutes Are Either Inapplicable or Do Not Create Plaintiff Liability

Finally, Nofziger also wants a dismissal and attorney's fees because Nofziger contends that Plaintiff's Complaint can be stricken under modern-era state statutes drafted to protect constitutional rights of petition and free speech. It is clear that Nofziger is invoking these statutes because they wreak havoc with plaintiffs who, although they can prove a plausible cause of action for purposes of Rule 12(b)(6) at the pleading stage, may be unable to prove at the pleading stage the higher "probable to prevail" standard imposed as part of the Anti-SLAPP regimens adopted by the states of California and Kansas. However, there are multiple reasons why neither of these statutes apply here, or for otherwise denying the motion to strike.

As a threshold matter, under Nofziger's own logic, California's Anti-SLAPP law ought to apply if state law applies at all, because, in Nofziger's words, "California law applies to Plaintiff's state-law defamation claims" (Memorandum, p. 11, citations omitted). Defamation is the only cause of action pled in the Complaint against Nofziger, and yet strangely – or rather not so strangely for reasons that will be apparent below -- Nofziger seems loathe to apply to anti-SLAPP motions the choice of law argument that he makes in the context of the rest of his arguments. Accordingly, Plaintiff submits that no resort to Kansas anti-SLAPP law or cases or 10th Circuit authority interpreting Kansas law will be proper, but Plaintiff also asserts that if the Court believes otherwise, the Court should read Kansas authority in the light of the development of anti-SLAPP cases applying the California statute on which the Kansas statute was modeled, see Caranchini v. Peck, 355 F.Supp.3d 1052, 1055 (D. Kan. 2018).

1. The Anti-SLAPP Statutes Are Inapplicable Because Nofziger Libeled Plaintiff
   In Connection with an Issue Obviously of Parochial and Not Public Interest

In order to deny the motion to strike, the Court really need do nothing further than read the

24

Complaint in light of one of the provisions of California's Anti-SLAPP statute: the predicate

provision requiring that some exercise of speech about a "public issue" be implicated in the

challenged complaint.   Since this is not what Plaintiff has alleged and since the pleading does not

support it,  and for the reasons already detailed above, the motion fails for that reason alone.

C.C.P. Section 425.16(b) and (e) state respectively, in relevant part, "A cause of action

against a person arising from any act of that person in furtherance of the person's right of...free

speech...in connection with a public issue shall be subject to a special motion to strike...As used in

this section, [such an act] includes..."any written or oral statement or writing made in a place open

to the public or public forum *in connection with an issue of public interest*" (emphasis added).

Although Nofziger claims that he published a statement about an issue of public interest,

no allegation in the Complaint supports that.   Rather, the Complaint makes it clear that Nofziger's

libel arose out of a conference convened for parochial purposes (for and about Mennonites) and in

a forum designed to serve and cater to parochial interests (of Anabaptists[9]).  Admittedly, the

website "Anabaptist Historians" in which publication of the libel occurred was available to the

public; however, there is nothing in the Complaint to suggest that either the website or the subject

matter of Nofziger's speech published on the website, the conference "Mennonites and the

Holocaust," was anything other than parochial.  Para. 97, 100.   Plaintiff speaks of "news

coverage" of the conference only in the context of reporting by Mennonite publications.  Para.

101.  Plaintiff alleges that the libel on the Anabaptist Historians website was read by about 1,000

persons, which included many persons who knew Plaintiff or knew his name from Plaintiff's

church involvement.  Para. 178.   It is also clear from the Complaint that the two-day Conference

---

[9] Plaintiff submits that Nofziger would agree that "Anabaptist"  is a generic term used for
Mennonites and others of similar faith or similar historical roots, based on the origin of the
Mennonite church out of what is regarded as the broader 16th century Anabaptist movement.

was closed to the public except as to certain sessions.   Para. 14, 20, 36, 64, 103, 104 (there were

two public sessions although that is not specified in the Complaint).    The information on the

Conference that can be gleaned from the Complaint, i.e. that a session was titled, "Mennonite

Attitudes Toward the Holocaust," Para. 50, shows its unmistakably parochial orientation.

Plaintiff's purposes were likewise parochial in nature.   Para. 27-29.   Nofziger has tried to

bolster his contrary argument through the use of exhibits, which themselves should be stricken for

reasons of relevance and lack of foundation, but his argument seems to be that "controversy"

equates to "public concern," when the two are not at all the same thing.  All Nofziger proved by

his exhibits (if they are not excluded as they should be) is that Lisa Schirch alleged that Leichty's

legal work has included representation of two "Holocaust deniers" (one of whom she admits was a

Mennonite and the other married to the Mennonite) (she neglected to add that this was in

connection with an important immigration/habeas corpus/free speech  issue) and that he passed out

what she terms "anti-Semitic" literature at "the past several MCUSA [Mennonite Church]

gatherings."   This fails as proof that the Nofziger publication was somehow related to a public

debate or a matter of public interest.   When Nofziger inaccurately alleges (Memo, p. 21) that

Plaintiff "sought to participate in public debate," that simply begs the question as to whether any

of the website discussion about the "Mennonites and the Holocaust" Conference in March 2018

was on an issue of public interest, and all Plaintiff said to Nofziger was that he wanted his

corrections to be posted in a place of equal prominence on the website, never using the words

"public debate."  Para. 98.   Even if evidence outside of the four corners of the pleading were to

be considered, all of Plaintiff's acts not including those undertaken professionally have been

directed at a church audience, showing his interest not in "public debate" but in truth claims as

they concern a small religious community.

The only authority cited by Nofziger for his proposition that the "public interest" is inevitably involved when there is a "controversy within churches" is <u>Terry v. Davis Cmty. Church</u>, 131 Cal.App.4th 1524 (2005); however, that case did not make such a broad statement and should be limited to its facts.  In <u>Terry</u>, the plaintiffs sued because of defamatory statements made to members of plaintiffs' church <u>and</u> to the neighbors of the plaintiffs that plaintiffs were alleged sexual predators who had preyed on a young member of the church.   The court ruled that California's anti-SLAPP provisions were applicable because the speech was "protected activity," since the statements "involved the societal interest in protecting a substantial number of children from predators, and the matter was referred to the Davis Police Department...."   When compared to the statements published by Nofziger, the dissimilarities are striking: no aiming of statement at the general public, and no explicit "public safety" component, and certainly nothing published that would place readers of the Anabaptist Historians website on notice that a criminal might be in their midst.   Nofziger hasn't alleged (as the court found in <u>Terry</u>) that there was a "societal interest" served by his publication of his disparagement of Plaintiff, and his only argument seems to be that because the statements were of concern to the Mennonite or Anabaptist community, they would be of concern to the general community, too.  That is demonstrably a non-sequitur.

Even if can be said that "the Holocaust" is itself a matter of public interest, as distinct from a matter of curiosity regarding events now occurring some 70 years ago, that does not render some subset of "Holocaust studies" such as "Mennonite perspectives" a matter of public interest.   If any controversy existed in Kansas, it was created by the unlawful attack on Plaintiff and not by Plaintiff's own acts, and a publisher should not be entitled to treat a private figure as a limited purpose public figure based on the fortuitous false arrest or other actions taken by co-Defendants.

This case is actually more like <u>Weinberg v. Feisel</u> (2003), 110 Cal.App.4th, 1122, 2

27

Cal.Rptr. 386, which involved statements about suspicious activity in the newsletter of a 700-member private association and subsequent communications to some members stating that the plaintiff was a thief and that he should be barred from future conventions.   The court held this was a private controversy, not a matter of public interest.

>   2.   The Anti-SLAPP Statutes Are Also Inapplicable Because Nofziger's Freedom of
>        Speech Is Not  Implicated,  At Least Without a Corresponding Violation of
>        The Federal Rules of Civil Procedure and Plaintiff's Due Process Rights

Nofziger's contention that an Anti-SLAPP statute can be used to strike Plaintiff's Seventh Cause of Action must also be rejected because it would force the Court to make a premature conclusion that Nofziger's freedom of speech is implicated, which would be contrary to the pleading and contrary to the Federal Rules of Civil Procedure, not to mention a violation of Plaintiff's right to due process under the U.S. Constitution.   While there may be cases that appear to contradict this, Plaintiff submits that is because few litigants have even made the argument in the context of a federal case governed by federal rules.

For pleading purposes, the Court must assume that Plaintiff's well-pled allegations are true. Straub v. BNSF Ry. Co., 909 F.3d 1280, 1287 (10th Cir. 2018), Dudnikov, supra at 1070.   For a well-pled motion to survive a motion to dismiss, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face.   Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).   Plaintiff has stated that Nofziger published three false statements about Plaintiff that caused him injury. These statements are in a category of statement that can be proved  false.   Thus Plaintiff was libeled for purposes of preliminary motions, and libel is not immunized by one's generalized constitutional right to freedom of speech.   Milkovich v. Lorain Journal Co., 497 U.S. 1, 110 S.Ct. 2695 (1990).   Accordingly, neither anti-SLAPP statute

invoked by Nofziger can be said to apply unless and until the Court has already determined that Nofziger's speech is protected free speech rather than libel, which of course is the ultimate issue in the cause of action. An anti-SLAPP motion under those circumstances is simply a way to seek summary judgment, without the provisions of Rule 56 applicable to summary judgment motions.

Accordingly, Plaintiff submits that because the Court is either bound to accept that Plaintiff has been libeled by Nofziger for purposes of considering a motion to strike or that evidence would be required for a contrary finding or that a contrary finding consistent with an anti-SLAPP statute would impermissibly require the Court to enforce the statute into conflict with F.R.Civ.P. 12 and 56, the Court should summary deny the motion to strike.

3.   The Anti-SLAPP Statutes Are Inapplicable Because of Federal Preemption

Principles of federal preemption as explained in the most recent pertinent case law also require denial of Nofziger's motion, since either the California anti-SLAPP statute or the Kansas anti-SLAPP statute would be in conflict with the Federal Rules of Civil Procedure if applied here.

As noted above, California anti-SLAPP law should apply to this case (if any such law applies at all) under Nofziger's own logic, yet Nofziger has ignored the most recent authority in which the interplay has been examined–for perhaps obvious if still discreditable reasons.

In Planned Parenthood Federation of America, Inc. v. Center for Medical Progress, 890 F.3d 828 (9th Cir. 2018), the 9th Circuit effectively put the brakes on a facile application of California's anti-SLAPP statute in a federal case precisely because the statute implicates procedural rights and remedies, not just "substantive" rights. Noting that "the degree to which the anti-SLAPP provisions are consistent with the Federal Rules of Civil Procedure has been hotly disputed," the Court ruled that it would not be proper to grant the motion at all under California's

anti-SLAPP statute, and instead gave instructions as to what should happen when an anti-SLAPP

motion is made to strike a federal case or cause of action.

> "We hold that, on the one hand, when an anti-SLAPP motion to strike
> challenges only the legal sufficiency of a claim, a district court should apply the
> Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is
> properly stated.   And, on the other hand, when an anti-SLAPP motion to strike
> challenges the factual sufficiency of a claim, then the Federal Rule of Civil
> Procedure 56 standard will apply.   But in such a case, discovery must be allowed,
> with opportunities to supplement evidence based on the factual challenges, before
> any decision is made by the court."

Id. at 834.   Plaintiff is aware that earlier decisions in both the 9th Circuit and the 10th Circuit have,

in testing to see whether federal preemption applies, found that the objects of anti-SLAPP statutes

are "substantive" rather than "procedural," in order to permit the statutes to be applied in federal

proceedings where the courts can apply state substantive law but must follow federal procedure in

doing so.   However, that analysis must change in the wake of Planned Parenthood, and

accordingly, Plaintiff submits that the 10th Circuit would similarly be obliged to convert the

invocation of an anti-SLAPP statute into a F.R.Civ.P. motion and that here the applicable Rule is

F.R.Civ.12(b)(6), with consideration under F.R.Civ.P. 56 premature.   Accordingly, Plaintiff

cannot be required to show he is likely to prevail on the Seventh Cause of Action at this juncture.

WHEREFORE, both motions and the fee request of Nofziger should be denied, or if not

denied as to any aspect, Plaintiff should be given fair opportunity to move for leave to amend.

Respectfully submitted by,

/s/ Bruce Leichty
Bruce Leichty, In Pro Per
c/o Bruce Leichty, A Prof. Corp.
220 W. Grand Ave.
Escondido, CA 92025
(760) 484-2467
Fax: (951) 676-7462
leichty@sbcglobal.net

30

CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August 2019, the foregoing was filed with the Clerk of the
Court of the Kansas District Court using the CM/ECF system which will send notice of electronic
filing to all counsel of record, including the following:


/s/ Bruce Leichty
Bruce Leichty, Plaintiff

Thomas P. Schult
Jennifer B. Wieland
Berkowitz Oliver LLP
2600 Grand Boulevard, Ste. 1200
Kansas City, MO 64108
Phone: 816-561-7007
Fax: 816-561-1888
tschult@berkowitzoliver.com
jwieland@berkowitzoliver.com
Attorneys for Joel Nofziger

Jay P. Lefkowitz
Joseph M. Sanderson
Kirkland & Ellis - New York
601 Lexington Avenue
New York, New York 10022
Phone: (212) 446-4800
Fax: (212) 446-4900
lefkowitz@kirkland.com
joseph.sanderson@kirkland.com
Attorneys for Joel Nofziger

Alan L. Rupe
Kevin E. Miller
Lewis Brisbois Bisgaard & Smith, LLP
1605 N. Waterfront Parkway, Ste. 150
Wichita, KS 67206
Phone: 316-609-7900
Fax: 316-462-5746
alan.rupe@lewisbrisbois.com
kevin.miller@lewisbrisbois.com
Attorneys for Mennonite Church USA

Scott E. Sanders
Corey M. Adams
McDonald Tinker PA

300 W. Douglas, Ste. 500
Wichita, KS 67202
Phone: 316-263-5851
Fax: 316-263-4677
ssanders@mcdonaldtinker.com
cadams@mcdonaldtinker.com
Attorneys for Bethel College and  John Thiesen sued as John Thiessen

Tracy M. Hayes
Robert M. Reynolds
Sanders Warren Russell & Scheer LLP
430 Corporate Woods
9401 Indian Creek Parkway, Ste. 1250
Overland Park, KS 66210
Phone: 913-234-6100
Fax: 913-234-6199
t.hayes@swrsllp.com
r.reynolds@swrsllp.com
Attorneys for City of North Newton, Kansas

Eric A. Van Beber
Kevin D. Weakley
Wallace Saunders
10111 W. 87th St.
Overland Park, KS 66212
Phone: 913-888-1000
Fax: 913-888-1065
evanbeber@wallacesaunders.com
kweakley@wallacesaunders.com
Attorneys for Lancaster Mennonite Historical Society [party dismissed 8/2/2019]

Kelsey N. Frobisher
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Ste. 100
Wichita, KS 67206-4466
Phone: (316) 267-6371
Fax: (866) 347-3808
kfrobisher@foulston.com
Attorney for Harvey County [party dismissed 7/19/19]

Toby Crouse, Crouse LLC
11184 Antioch, No. 253
Overland Park, KS 66210
Phone:   (913) 957-6832
tcrouse@crousellc.com
Attorney for Harvey County [party dismissed 7/19/19]