UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRUCE LEICHTY,                          )
                                        )
                  Plaintiff,            )
                                        )
vs.                                     )          Case No. 19-CV-01064-JWB-KGG
                                        )
BETHEL COLLEGE, et al.,                 )
                                        )
                  Defendants.           )
_____ )

## DEFENDANTS BETHEL COLLEGE'S AND JOHN THIESEN'S
## REPLY IN SUPPORT OF MOTION TO DISMISS

COMES NOW Bethel College and John Thiesen (collectively "Bethel"), by and through

their attorneys of record, Scott E. Sanders and Corey M. Adams of McDonald Tinker PA, and

provides the following Reply in support of its Motion to Dismiss (Doc. 29):

**I.      Standard of Review**

It is worth first readdressing the applicable standard of review. At one point, Plaintiff

states, in opposition to Bethel's motion to dismiss, that "[i]f it is conceivable, then it can happen,

and it can be plausibly pled, and Plaintiff has pled a plausible scenario…." (Doc. 48, p. 16). As

the Court knows, this is not the standard. In fact, the standard is the complete opposite: Plaintiff

must "[nudge his] claim across the line from conceivable to plausible. The allegations must be

enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for

relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). In this respect, Plaintiff has

missed the mark on all of his arguments. It is not enough to have pled conceivable claims against

Bethel. Plaintiff must instead allege sufficient facts on the four corners of his Complaint to have

set forth a plausible claim. *Id*.

Additionally, Plaintiff's many attempts at creating a factual dispute (or alleging that

discovery is necessary to flesh out certain facts) regarding inconsequential factual issues is a red herring and does not save his claims from dismissal. The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Simply put, this Court should not shy away from ordering dismissal when Plaintiff's claims fail as a matter of law, which they do in this case.

**II.     Plaintiff has not, and cannot, allege a viable breach of contract claim against Bethel.**

In his Complaint, Plaintiff alleges that "by his act of paying the Conference registration of $100 and by the Sponsors' act of issuing him a badge and materials was effectively made a licensee who was allowed to *participate in the Conference and be present on the campus of College for the duration of the Conference*." (Doc. 1, p. 5) (emphasis added). In the alternative, Plaintiff alleges that by paying his admission fee, he "entered into a binding contract for consideration allowing him to *participate in the Conference and be present on the campus for the duration of the Conference*…." (Doc. 1, p. 6) (emphasis added).

In *Bickett v. Buffalo Bills, Inc.*, 122 Misc. 2d 880, 472 N.Y.S.2d 245 (Sup. Ct. 1983), cited in Bethel's original brief, the defendant sought dismissal of the plaintiff's claims for breach of contract. Plaintiff alleged that the Buffalo Bills went on strike and canceled three of its regular season games. The plaintiff was a season ticket holder who claimed to have a contract with defendant to attend all 10 scheduled regular season games, and that defendant breached that contract when it canceled three of those 10 games. The defendant refunded the plaintiff the amount he paid for the three games that were canceled. The court stated that:

> Generally, a ticket for admission to a place of public amusement entitles one to enter the premises. This right, however, is not without limitation. A ticket is but a license,

and is revocable so long as the revocation is not based upon a discriminatory reason infringing upon a person's civil rights (see *Aaron v Ward*, 203 NY 351). Moreover, a ticket to an entertainment performance or activity does not create a right in rem (*Collister v Hayman*, 183 NY 250; *People ex rel. Burnham v Flynn*, 189 NY 180). A theatre ticket, for example, is simply a license to the party presenting the same to witness a performance to be given at a certain time, and being a license personal in its character, may be revoked (*Mendenhall v Klinck*, 51 NY 246).

*Id*. at 882. The court granted defendant's motion to dismiss because "the amended complaint [was] insufficient to state any cause of action…" for breach of contract, since the plaintiff had already been refunded for the three canceled games. *Id*. at 884.

This case is no different from *Bickett*. By Plaintiff's own allegations, he paid $100 for a "badge and materials" that allowed him to "participate" in the conference. (Doc. 1, p. 5). Just as the Plaintiff in *Bickett*, Plaintiff was given a mere admission to the conference through issuance of the badge, and to attend and interact with other participants. (*See id*.). Just as in *Bickett*, Plaintiff was merely entitled to a refund of his admission price, which Bethel refunded and Plaintiff chose to reject. (Doc. 1, ¶ 94). These facts come straight from Plaintiff's own Complaint. No discovery is necessary because Plaintiff has failed to plead a plausible claim at the outset. For this reason alone, Plaintiff's first cause of action must be dismissed.

Arguing against the reasonable application of *Bickett* to this case, Plaintiff claims that his admission fee gave him the right to participate in the conference (as oppose to "merely 'attend[ing]' as a passive observer….") which "allowed for exchange of information and ideas with other participants and the opportunity to pose questions to speaker…." (Doc. 48, p. 6). Even assuming this as true, there is virtually no distinction between the participation expected at a concert, circus, or sporting event, from the participation expected at a conference. At all of these events, participants are entitled to interact with other attendees, performers, and organizers. In such events, courts across the county have held that a plaintiff is limited in damages to the

amount paid for admission. (*See* Doc. 30, pp. 6-8).

Nonetheless, even if there is a distinction, Plaintiff alleges that he only "anticipated" having an opportunity to engage in questions and conversations with registrants. (Doc. 1, p. 7). Nowhere in Plaintiff's complaint has he alleged that he contracted with Bethel to engage in such activity. Plaintiff's anticipation does not nudge his claim across the line from conceivable to plausible. *Robbins*, 519 F.3d at 1247

Accordingly, Plaintiff only had a right to the return of his admission fee, which Bethel refunded. Because Bethel tendered a refund, it has not breached any agreement it had with Plaintiff. However, even if Plaintiff has a viable breach of contract claim against Bethel because Plaintiff refused the refund, the only damages he can recover is his admission fee. Thus, at a minimum, Bethel is entitled to dismissal of Plaintiff's first cause of action to the extent he seeks more than $100 in damages.

### III.   Plaintiff's claims for intentional and negligent false arrest must be dismissed.

Plaintiff has not adequately pled a claim for intentional or negligent false arrest. In *Thurman*, the Kansas Court of Appeals stated the general rule in Kansas that "the mere giving of information to a peace officer tending to show that a crime has been committed is not enough to render the informer guilty of resulting false imprisonment by the officer." *Thurman v. Cundiff*, 2 Kan. App. 2d 406, 410, 580 P.2d 893, 898 (1978).

Relying on *Thurman*, this court held in *Wright* (rather than *Thurman* which was inadvertently cited in Bethel's Memorandum in Support of Motion to Dismiss (Doc. 30)) that a department store was not liable under Kansas law for the false arrest of its cashier based upon the store's loss prevention specialist's report of theft to police, even though the specialist's report contained inaccuracies.  *Wright v. Montgomery Ward & Co.*, 814 F. Supp. 986, 989 (D. Kan.

1993). There, plaintiff claimed that a loss prevention specialist for the defendant reported that merchandise presented to the plaintiff for payment was not properly rung up. The plaintiff was a cashier for defendant and the customer was the wife of another of defendant's employees. The police were called to the scene, the loss prevention employee's statement was taken, and subsequent theft charges were filed against the plaintiff. The court recognized that the defendant may have provided inaccurate information, but ultimately rejected the plaintiff's argument that defendant was liable under a theory of false arrest.

Here, Plaintiff makes the same argument. He claims that because Bethel allegedly provided inaccuracies in their report to police (*i.e.* that Bethel called the police regarding a potential trespass), that Bethel is subject to liability under a theory of false arrest. However, as addressed, this court in *Wright* specifically rejected this exact argument. *Wright*, 814 F. Supp. at 990; *see also  Palton v. Armour Swift–Eckrich,* No. CIV.A. 99–2466–GTV, 2000 WL 1715297, at *1 (D. Kan. 2000) (granting 12(b)(6) motion on plaintiff's false arrest claim where plaintiff merely alleged that his plant manager called the police).

Additionally, Plaintiff has not established plausible facts that his arrest was unlawful. Plaintiff alleges that there "is nothing criminal about a person attempting to take part in an academic conference pursuant to his paid registration." (Doc. 48, p. 13). However, Plaintiff admits that he was told by Mark Jantzen that he was no longer permitted to attend the conference (Doc. 1, at ¶ 66) and that the police had been called to Bethel twice the previous day regarding his involvement at the conference. (Doc. 1, at ¶ 79). Yet, Plaintiff returned to the conference knowing that he was told he was no longer permitted at the conference. To be clear, Plaintiff does not allege that he was arrested for merely roaming the Bethel property; Plaintiff alleges that he was arrested because he was attempting to re-enter the conference, a conference he was told

he was no longer welcome. As a matter of law, Bethel was entitled to call the police to report that Plaintiff was trespassing at the conference.

Finally, this court has already addressed whether Kansas recognizes a claim for negligent arrest. *Newell v. City of Salina*, 276 F. Supp. 2d 1148, 1159 (D. Kan. 2003). In *Newell*, the Defendant argued that Kansas does not. This court agreed and entered summary judgment on the plaintiff's negligent arrest claim. This holding was unequivocal, and Plaintiff has not pointed this court to any Kansas case law recognizing a claim for negligent arrest.

For these reasons, Plaintiff's intentional and negligent false arrest claims must be dismissed.

**IV.     Plaintiff has not sufficiently pled claims for defamation.**

This Court, siting in diversity (or exercising supplemental jurisdiction over Plaintiff's state law claims), must apply the law of the state of Kansas, not federal law as suggested by Plaintiff. When exercising diversity jurisdiction, the court must apply the forum state's choice of law rules to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). In Kansas, tort actions are governed by the law of the state where the tort occurred. *Ling v. Jan's Liquors,* 237 Kan. 629, 634–35, 703 P.2d 731 (1985). Because the alleged tort was committed in Kansas, Kansas law will apply.

Kansas no longer allows the pleading of presumed damages for defamation, even in cases of defamation *per se*. *Gobin v. Globe Pub. Co.*, 232 Kan. 1, 2, 649 P.2d 1239, 1240 (1982). Thus, this Court cannot presume damages when the Plaintiff has not actually plead special damages. *See id*. As to being called a "holocaust denier," Plaintiff has not pled how a comment at a conference outside of his home state caused any damage to him. Thus, for this reason alone,

Plaintiff's Sixth Cause of Action must be dismissed.

In addition to the reasons stated above, as a matter of Kansas law, Plaintiff's Sixth Cause of Action must be dismissed because being called a "holocaust denier" is not defamatory. Kansas law is clear that statements of opinion or hyperbole are not defamatory statements, and thus are not actionable. *Gatlin v. Hartley, Nicholson, Hartley & Arnett, P.A.*, 29 Kan. App. 2d 318, 320, 26 P.3d 1284, 1287 (2001). For a statement to be defamatory as a matter of law, it must be susceptible to being disproven. *Id*. Just as courts all over the country have held that being labeled a racist is not defamatory, for the same reason being called a holocaust denier is similarly not defamatory.

For example, in *Daniels v. Metro Magazine Holding Co.*, 179 N.C. App. 533, 540, 634 S.E.2d 586, 591 (2006), a North Carolina court held that statements of opinion or hyperbole are usually not considered defamatory—a rule similar to Kansas. Even with the less stringent standard, the North Carolina court held that a statement by the defendant that the plaintiff was a fascist was not defamatory because the statement was not susceptible to being proven or disproven.

Plaintiff alleges in his complaint only that Thiesen stated that he was a "holocaust denier." Plaintiff does not claim that Thiesen stated in specifics what part of the historical events of the holocaust Plaintiff denied. Neither does the Complaint state that Thiesen's statement meant that Plaintiff denied that the holocaust was not in fact a historical event (as seemingly suggested now by Plaintiff in his briefing, but not in his Complaint). In fact, Plaintiff had been passing out literature prior to Thiesen's remarks (Doc. 1, ¶ 45). The conference attendees knew Plaintiff's views prior to the statement being made. Thus, even if Thiesen's statements were untrue, the attendees would have known that the statement was either one of opinion or

hyperbole. *See Daniels*, 179 N.C. App. at 541 ("Likewise, [defendant's employee's] assertion that plaintiff was a fascist is both opinion and hyperbole, and, in light of his comparison of plaintiff to communists, patently contradictory. Such contradictions highlight the frivolous tone and general tenor of absurdity throughout the article.").

Plaintiff calls himself a revisionist. (Doc. 1, ¶ 45). A historical revisionist is one that challenges the orthodox views held by professional scholars (or widely accepted views) about historical events. Plaintiff was presenting views of the holocaust not shared by Bethel or Thiesen. (*See* Doc. 1, ¶¶ 27, 29, 37, 40, 54). Thiesen's broad statement that Plaintiff was a holocaust denier was merely a statement of opinion that Plaintiff denied what Thiesen believed to be the historical holocaust. Plaintiff himself admits that he held different views from the conference attendees, which included Thiesen.

For this same reason, Plaintiff's Fifth Cause of Action must be dismissed because calling the police stating that Plaintiff was trespassing was also a statement of opinion. Bethel merely provided statements of opinion to the police that Bethel believed Plaintiff to be trespassing. Thus, Bethel cannot be liable for such statements. For these reasons, Plaintiff's defamation claims must also be dismissed against Bethel.

## V. Plaintiff has not plead a sufficient claim for intentional or negligent infliction of emotional distress.

As to Plaintiff's claim under the tort of outrage, Kansas has set the bar high for recovery. Liability for extreme emotional distress has two threshold requirements which must be met and which this Court must, at the outset, determine: "(1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it."

*Valadez v. Emmis Commc'ns*, 290 Kan. 472, 477, 229 P.3d 389, 394 (2010). Whether conduct is extremely outrageous or whether Plaintiff has pled extreme distress is a matter of law that can be decided by this Court based on the sufficiency of the pleadings.

> In *Valadez*, the court stated:
>
> Conduct that rises to the level of tortious outrage must transcend a certain amount of criticism, rough language, and occasional acts and words that are inconsiderate and unkind. The law will not intervene where someone's feelings merely are hurt. In order to provide a sufficient basis for an action to recover for emotional distress, conduct must be outrageous to the point that it goes beyond the bounds of decency and is utterly intolerable in a civilized society.

*Id*. There, the court held that a news media incorrectly reporting facts suggesting that the plaintiff was potentially the BTK serial killer was not outrageous conduct. If suggestions that someone was the BTK serial killer was held by a Kansas court to not be outrageous conduct, then similarly suggesting that someone is a "holocaust denier" is also not severe enough to recover under the tort of outrage. As a matter of law, Plaintiff has no claim.

Additionally, the court in *Valadez* held that the plaintiff could not show severe enough distress for his claims to be actionable. Similarly, here, Plaintiff has made only conclusory allegations that he suffers from severe emotional distress. These conclusory allegations do not show a plausible claim for relief under the tort of outrage. For all of the reasons stated in Bethel's original brief, and as further outlined here, Plaintiff's claims for intentional infliction of emotional distress must be dismissed.

Finally, Plaintiff has not made a claim for negligent infliction of emotional distress. As stated by this Court "a plaintiff seeking to recover for negligent infliction of emotional distress must show "that the physical injuries complained of were the direct and proximate result of the emotional distress caused by the [defendant's] alleged negligent conduct." *Holdren v. Gen. Motors Corp.*, 31 F. Supp. 2d 1279, 1285 (D. Kan. 1998). In *Holdren*, the court held that the

plaintiff, who actually claimed that he suffered some generalized physical injuries as a result of his emotional distress (such as sexual disfunction and knee pain), did not state a claim under negligent infliction of emotional distress.

Here, Plaintiff has not alleged *any* physical injury resulting from his emotional distress. *Holdren*, 31 F. Supp. 2d at 1285. Being handcuffed was not an injury that resulted from Plaintiff's emotional distress (if it can be considered an injury at all). Thus, Plaintiff's claims for intentional and negligent infliction of emotional distress must be dismissed as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's claims against Bethel should be dismissed with prejudice.

Submitted by:

/s/ Scott E. Sanders
Scott E. Sanders, #18744
Corey M. Adams, #27253
MCDONALD TINKER PA
300 W. Douglas, Suite 500
Wichita, KS 67202
T: (316) 263-5851  F: (316) 263-4677
ssanders@mcdonaldtinker.com
cadams@mcdonaldtinker.com
*Attorneys for Defendants Bethel College and*
 *John Thiesen*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of August, 2019, I electronically file the above and foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Scott E. Sanders
Scott E. Sanders, #18744
Corey M. Adams, #27253