# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRUCE LEICHTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:19-CV-01064-JWB-KGG |
| | ) |
| BETHEL COLLEGE; | ) |
| MENNONITE CHURCH USA; | ) |
| CITY OF NORTH NEWTON; | ) |
| KANSAS, HARVEY COUNTY; | ) |
| LANCASTER MENNONITE | ) |
| HISTORICAL SOCIETY; | ) |
| JOHN THIESSEN; | ) |
| JOEL NOFZIGER; | ) |
| | ) |
| Defendants. | ) |

**JOEL NOFZIGER'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS
AND MOTION TO STRIKE PURSUANT TO THE KANSAS PUBLIC SPEECH
PROTECTION ACT AND/OR CALIFORNIA ANTI-SLAPP ACT**

## **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.    THE COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION. ................................................................................... 2

    II.    THE COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION. ............................................................................... 3

    III.    THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM. ................................................................................................... 5

        A.    Plaintiff's Brief Demonstrates That He Takes Issue with the Opinions Expressed in the Blog Post, Not Specific Defamatory Facts. ............................................................................................................. 5

        B.    The Challenged Statements Are Substantially True. ................................. 7

        C.    By "Promoting Engagement . . . With Dissenting Views on the Holocaust," Plaintiff Is A Limited Purpose Public Figure. ........................ 8

    IV.    THE ANTI-SLAPP STATUTES APPLY. .............................................................. 9

CONCLUSION ................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*205 Ruidoso Invs., LLC v. Westfield Ins. Co.*,
  No. 19-CV-0243 CG/SMV, 2019 WL 1316033 (D.N.M. Mar. 22, 2019) ...............................3

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..........................................................................................................9

*Caranchini v. Peck*,
  355 F. Supp. 3d 1052 (D. Kan. 2018) ..............................................................................10

*Clark v. Time, Inc.*,
  242 F. Supp. 3d 1194 (D. Kan. 2017) ................................................................................8

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
  514 F.3d 1063 (10th Cir. 2008) ..........................................................................................4

*Freebird, Inc. v. Merit Energy Co.*,
  597 F. Supp. 2d 1245 (D. Kan. 2009) ................................................................................2

*GetFugu, Inc. v. Patton Boggs LLP*,
  220 Cal. App. 4th 141 (2013) .............................................................................................6

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
  130 F.3d 1381 (10th Cir. 1997) ..........................................................................................2

*Gilbert v. Sykes*,
  147 Cal. App. 4th 13 (2007) ...............................................................................................9

*Kuenzle v. HTM Sport-Und Freizeitgerate AG*,
  102 F.3d 453 (10th Cir. 1996) ............................................................................................5

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
  885 F.3d 659 (10th Cir. 2018) ..........................................................................................10

*In re Marriage of Leichty*,
  No. F069875, 2015 WL 8090091 (Cal. Ct. App. Dec. 7, 2015) ..........................................3

*Martin v. Roy*,
  54 Mass. App. Ct. 642 (2002) ............................................................................................9

*McGarry v. Univ. of San Diego*,
  154 Cal. App. 4th 97 (2007) ...............................................................................................6

*Morningstar, Inc. v. Superior Court*,
  23 Cal. App. 4th 676 (1994) ...........................................................................................6, 7

*Myers v. United States*,
  No. 12-4005-KHV, 2013 WL 5596813 (D. Kan. Oct. 11, 2013),
  *aff'd,* 593 F. App'x 814 (10th Cir. 2014)............................................................................2

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir. 2018) ...............................................................................................10

*Ransmeier v. Mariani*,
  718 F.3d 64 (2d Cir. 2013)..............................................................................................3, 7

*Shrader v. Biddinger*,
  633 F.3d 1235 (10th Cir. 2011) ..........................................................................................4

*St. Paul Mercury Indem. Co. v. Red Cab Co.*,
  303 U.S. 283 (1938)............................................................................................................2

*Terry v. Davis Cmty. Church*,
  131 Cal. App. 4th 1534 (2005) ...........................................................................................9

*Turkish Coal. of Am., Inc. v. Bruininks*,
  678 F.3d 617 (8th Cir. 2012) ..............................................................................................6

*Underwager v. Channel 9 Australia*,
  69 F.3d 361 (9th Cir. 1995) ................................................................................................6

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966)............................................................................................................3

*Weinberg v. Feisel*,
  110 Cal. App. 4th 1122 (2003) ...........................................................................................9

*Wilhelm v. TLC Lawn Care, Inc.*,
  No. 07-2465-KHV, 2008 WL 640733 (D. Kan. Mar. 6, 2008) ...........................................3

**Statutes**

Cal. Civ. Proc. Code § 425.16 ...................................................................................................9

Cal. Civ. Proc. Code § 425.16(e).............................................................................................10

**Rules**

Fed. R. Civ. P. 11......................................................................................................................3

Fed. R. Civ. P. 12(b)(6)...........................................................................................................10

Fed. R. Civ. P. 56....................................................................................................................10

**Other Authorities**

U.S. Const. Amend. I ............................................................................................................. 1

# INTRODUCTION

Plaintiff went to a conference at Bethel College about Mennonites and the Holocaust to "initiate dialogue and share information and encourage engagement with dissenters," accompanied by "flyers and books relating to the Holocaust" to give to conference participants. After he attempted to advertise a nearby event he had organized with other so-called 'revisionists' during a conference session, the moderator, Mark Jantzen, "angrily interrupted" him, "called . . . for police response," and prompted "shouts and jeers of derision." Plaintiff is now suing Mr. Nofziger because a website he operates published a post by another Mennonite historian that described Plaintiff as a "holocaust denier" who has "passed out anti-semitic literature" and who was removed by the organizers after he "began to ask an offensive question."

Plaintiff is, in short, upset that after he chose to speak out and advocate for "revisionist views on the Holocaust," other people criticized him for doing so. But the First Amendment, as well as California libel law (which Plaintiff appears to agree applies here), protect Dr. Schirch's right to criticize Plaintiff and Mr. Nofziger's right to publish that criticism. Plaintiff's opposition brief makes it clear that what he is really challenging are the "damning labels" Dr. Schirch's post applied to his conduct—that is, the opinions she expressed. To the extent that any factual content is left after stripping out the statements of opinion, the difference between what Plaintiff pleads is the truth and what Dr. Schirch said is insignificant. Similarly, while Plaintiff dubs his activism "[p]romoting engagement," "[c]ontribut[ing] to the knowledge base of his co-religionists," and "see[ing] if the dialogue could be expanded," the First Amendment effect is the same—he is a limited purpose public figure. He cannot advocate his point of view and then resort to the courts to shut down criticism, or force his opponents to use only his preferred labels to criticize him.

Similarly unconvincing are Plaintiff's efforts to justify bringing a Pennsylvania historian into a Kansas court. He attempts belatedly to rewrite his unequivocal prayer for relief seeking

*exactly* $70,000 in damages, below the amount-in-controversy threshold. And regarding personal jurisdiction, while Plaintiff alleges that Mr. Nofziger attended the conference, he does not allege that Mr. Nofziger's *later* publication of Dr. Schirch's post was intentionally directed at Kansas.

In short, Plaintiff's claims should be dismissed with prejudice, and Mr. Nofziger should be awarded reasonable attorneys' fees under the Kansas and California statutes designed to prevent these sorts of abusive lawsuits to burden critics amid public participation and debate.[1]

## ARGUMENT

**I.  THE COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.**

Plaintiff attempts to rewrite his unequivocal allegation that only $70,000 is in controversy here. *See* Compl., Prayer for Relief ¶ 8 ("On his seventh cause of action, Plaintiff requests that the Court order a money judgment in favor of Plaintiff against Lancaster Mennonite Historical Society and Nofziger, in the amount of $70,000, on account for their defamatory statement"). This Court should not permit him to do so. Plaintiff is a lawyer, and "[a] pro se attorney does not receive the same liberal construction of pleadings that generally is afforded an unrepresented party." *Myers v. United States*, No. 12-4005-KHV, 2013 WL 5596813, at *9 (D. Kan. Oct. 11, 2013), *aff'd,* 593 F. App'x 814 (10th Cir. 2014)

Rather, what matters is that he included an express prayer for relief that was less than the jurisdictional amount. "[T]he amount in controversy is determined based on the plaintiff's allegations, unless the amount is not claimed in good faith." *Freebird, Inc. v. Merit Energy Co.*, 597 F. Supp. 2d 1245, 1248 (D. Kan. 2009); *see St. Paul Mercury Indem. Co. v. Red Cab Co.*,

---

[1] Plaintiff complains that Mr. Nofziger attached to his motion the challenged blog post and one of the "pamphlets and books" he identifies by name as being one that he intended to distribute at the conference. Compl. ¶ 27. Plaintiff's claims fail regardless of either document. But both are properly before the Court. Both documents are central to the Complaint—the blog post is the core of his defamation claim, and the distribution of pamphlets and books is the basis of some of the claims against the conference organizers, *see* Compl. ¶¶ 27, 37, 41-42—and Plaintiff provides no good-faith basis to question their authenticity. They are thus properly before the Court on a motion to dismiss. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

303 U.S. 283, 294 (1938) (noting that plaintiffs may seek less than the jurisdictional amount even if they would be entitled to more). Plaintiff asked for $70,000; that amount is controlling.

Nor do Plaintiff's supplemental jurisdiction arguments withstand scrutiny. He provides no authorities to support his contention that claims against two people making similar statements at different times or people who were at the same conference are "so related . . . that they form part of the same case or controversy." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Statements published by different people at different times with different facts necessary to prove their state of mind do not arise from a common nucleus of operative fact. That is especially true where—as Plaintiff admits here—"Nofziger's statement was more expansive." Opp. at 7 n.1. *See Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2008 WL 640733, at *3 (D. Kan. Mar. 6, 2008) (no supplemental jurisdiction where there was "very little overlap in the evidence relevant" to the different claims).[2]

## II. THE COMPLAINT MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.

Plaintiff similarly fails to establish a basis consistent with due process for Kansas exercising personal jurisdiction over a Pennsylvania resident for publishing a Virginia's professor's criticism of a California lawyer. Plaintiff asserts that since Mr. Nofziger is alleged to have attended the conference in Kansas and then later to have published someone else's criticism of Plaintiff, there is a sufficient "Kansas nexus." Opp. at 8. Plaintiff thus contends that "the

---

[2]   As for Plaintiff's request to amend, that can await a motion for leave to amend. But in any event, such an amendment must be "in compliance with the dictates of Rule 11 of the Federal Rules of Civil Procedure." *205 Ruidoso Invs., LLC v. Westfield Ins. Co.*, No. 19-CV-0243 CG/SMV, 2019 WL 1316033, at *2 (D.N.M. Mar. 22, 2019) (discussing amendment of jurisdictional allegations). Given that Plaintiff has been publicly sanctioned by the Second Circuit for making "unmistakably anti-Semitic" insinuations about a federal judge, it is difficult to see what further harm he could have suffered from a small portion of a post on a blog about Anabaptist history. *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013). Additionally, such an amendment would be in tension with representations Plaintiff has made to other courts: not long ago he represented that his law practice was doing so badly that he should have his alimony reduced, claiming his *gross revenues* were just $17,604 over a three-month period— although he was later ordered to pay his ex-wife's attorney's fees for concealing a contingent fee he realized. *In re Marriage of Leichty*, No. F069875, 2015 WL 8090091, at *8, 14-19 (Cal. Ct. App. Dec. 7, 2015).

unassailable facts show that Nofziger's business activities in connection with Mennonite history brought him to Kansas and that his business in Kansas resulted in the published libel." *Id.* at 9.

That ignores both the "intentionally directing" test that the Tenth Circuit applies to internet libel cases and the lack of any connection between Plaintiff's allegation that Mr. Nofziger attended the conference and his allegation that a website Mr. Nofziger operates later posted Dr. Schirch's post. Plaintiff theorizes (without citing authority) that Kansas is the "focal point of the tort," because he alleges that *someone else* called him a "Holocaust denier" at the conference, which was thus the "context" for the alleged libel. *Id*. But the Tenth Circuit has emphasized that what matters is "a defendant's intentions," that is, "where was the 'focal point' of its *purposive efforts*." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1075 (10th Cir. 2008) (emphasis added). It has described this prong as "express aiming," *id.*, and in the internet context has identified this with "the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state." *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011). Plaintiff in any event ignores that the Tenth Circuit has held that this test is *in addition to* the requirement that the defendant "must know that the harm was suffered in the forum state." *Dudnikov*, 514 F.3d at 1075 (internal quotation marks and ellipsis omitted).

Plaintiff makes neither showing here. He does not allege that the Anabaptist Historians blog has any particular focus on Kansas or otherwise particularly targets a Kansas audience. Rather, he emphasizes that the blog is "known to and accessed by decision-makers and persons of prominence *throughout the Mennonite church and elsewhere*." Compl. ¶¶ 95, 100 (emphasis added). As in *Shrader*, then, he "stresse[s] the [blog]'s *non*-local nature." 633 F.3d at 1242. And while *Dudnikov* noted the *separate* prong of "knowledge that the brunt of the injury would be felt in the forum state," 514 F.3d at 1072, Plaintiff alleges harm to his relationships and business in California, where he lives, Compl. ¶ 2, and emphasizes that he has "never" practiced law "in

4

Kansas." *Id.* ¶ 17. And, given that the post was written *by Dr. Schirch*, Plaintiff's allegation that Mr. Nofziger attended the conference is irrelevant—"plaintiff would have suffered the same injury even if none of the defendant's forum contacts had taken place." *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456–57 (10th Cir. 1996).

Plaintiff, in short, fails to point to any allegations that Mr. Nofziger intentionally directed the site at Kansans, that Mr. Nofziger knew Plaintiff would suffer harm in Kansas (because he pleads none), or that Mr. Nofziger's attendance at the conference was at least a but-for cause of Plaintiff's alleged injury. Kansas thus may not exercise personal jurisdiction over Mr. Nofziger.

### III.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Plaintiff fails, in any event, to state a viable libel claim. What Plaintiff characterizes as "damning" are not the facts, but the "labels," Opp. at 13—that is, the *opinions* expressed of him. To the extent that there are any factual statements left once the statements are shorn of the non-actionable opinion, what is left is either anodyne or so close to what he pleads is the truth that the gist or sting is the same. And Plaintiff's attempt to rephrase his advocacy as "contribut[ing] to the knowledge base of his co-religionists," "see[ing] if the dialogue could be expanded," and "sponsorship . . . of a single off-campus event," merely serves to confirm that he *did* voluntarily inject himself into public controversy, however he attempts now to characterize it to avoid dismissal, and thus his claim fails because he has not pleaded actual malice.

####   A.   Plaintiff's Brief Demonstrates That He Takes Issue with the Opinions Expressed in the Blog Post, Not Specific Defamatory Facts.

Plaintiff's opposition brief is replete with the tell-tale signs that he is challenging *opinions*, not facts. He complains that Mr. Nofziger refused to publish "Plaintiff's explanation." Opp. at 4. He complains about the "damning labels." Opp. at 13; *cf.* Compl. ¶ 47 ("pejorative label"). He in fact agrees that "offensive" is an opinion, and admits that "anti-Semitic" "can be

5

an opinion." Opp. at 14. Tellingly, he struggles to point to specific facts that would prove or disprove any of the challenged statements, or points only to his subjective motivations or state of mind. *Id.* at 13-14. But such statements whose "content does not rest on a 'core of objective evidence,'" such as "opinions of . . . motivations and personality" are "not capable of verification." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995). And he has no response whatsoever to Mr. Nofziger's argument that the statements' context—a blog post plainly framed as Dr. Schirch's subjective personal narrative—signal to the reasonable reader that the post consists of Dr. Schirch's opinions, not specific provable facts. *See Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676, 692 (1994) ("The characterization of the article as a 'Commentary' also is relevant in considering the context in which the article appears."). In short, Plaintiff does nothing to suggest that reasonable readers would understand the statements as offering *facts*, rather than Dr. Schirch's vehement disapproval of Plaintiff.

      California law squarely places the burden on Plaintiff to plausibly plead "a provable falsehood," since "[t]he sine qua non of recovery for defamation ... is the existence of falsehood." *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 155 (2013) (quoting *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 112 (2007)). "To ascertain whether the statements in question are provably false factual assertions, courts consider the totality of the circumstances." *Id.* at 156. Contrary to Plaintiff's contention that the Court should leave this question to the jury, Opp. at 16, "[w]hether challenged statements convey the requisite factual imputation is ordinarily a question of law for the court." *GetFugu*, 220 Cal. App. 4th at 156.

      Plaintiff fails to point to any statement that could reasonably be understood as containing statements of fact, let alone *defamatory* statements of fact. Try as he might, Plaintiff fails to credibly distinguish this case from *Turkish Coal. of Am., Inc. v. Bruininks*, where an organization complained that its denial of the Armenian genocide was compared to Holocaust denialism. 678

6

F.3d 617, 620-21 (8th Cir. 2012). If dubbing that plaintiff's position on the Armenian genocide as denialism "express[ed] a subjective evaluation of the credibility of the historical sources for" the plaintiff's assertions, which "is essentially an opinion," *id.* at 625, so does Dr. Schirch's characterization of Plaintiff's so-called revisionism. Likewise, Plaintiff does not point to a single case in which "anti-Semitic" was found to convey facts rather than just the speaker's subjective assessment. Opp. at 14-15. Instead, he speculates that readers would infer that he is "a rabid anti-Semitic [sic]" or "an active anti-Semite, i.e. that he is acting on his anti-Semitism to attempt to recruit others to his Jew-hating cause." Opp. at 14, 15. That is somewhat ironic coming from Plaintiff, who has been sanctioned in a published Second Circuit opinion for making "unmistakably anti-Semitic" aspersions against a federal judge. *Ransmeier*, 718 F.3d at 68. But it is also beside the point: California courts have warned against this sort of hyper-parsing of statements to try to draw out defamatory implications that simply aren't there. *Morningstar*, 23 Cal. App. 4th at 688 ("[T]he publication is to be measured not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader."). Dr. Schirch's view that the pamphlets were anti-Semitic does not convey any facts to the reasonable reader, only her judgment; without that opinion, all the statement says is that Plaintiff handed out literature, which is not defamatory.

      **B.**      **The Challenged Statements Are Substantially True.**

Plaintiff similarly fails adequately to show how his complaint does not admit that, to the extent that the blog post contained any defamatory statements of fact, at least the gist or sting of those statements is true. Citing no authority aside from a brief reference to *Twombly*, Plaintiff essentially argues that since he does not literally admit that he is a Holocaust denier but rather "had identified himself with revisionist views on the Holocaust," this Court cannot determine the truth of that statement as a matter of law. Opp. at 17; Compl. ¶ 45. But that is precisely why the

7

substantial truth doctrine exists: this Court need not trouble itself with "technical distinction[s]." *Clark v. Time, Inc.*, 242 F. Supp. 3d 1194, 1220 (D. Kan. 2017). Defamation law is about substantial falsehood, not semantic battles. What Plaintiff calls "identif[ying] himself with revisionist views on the Holocaust," Compl. ¶ 45, Dr. Schirch called Holocaust denial. That is far too insubstantial a difference to be the basis for a libel claim. The same goes for the allegation of anti-Semitism; even if Plaintiff had not incorporated by reference an anti-Semitic screed, Plaintiff's so-called "identif[ying] himself with revisionist views on the Holocaust" amply justifies describing his conduct as anti-Semitic, which is the sting of the statement.[3] And, as for Plaintiff's assertion that he was not ejected by campus security, given that Plaintiff pleads that he was approached by conference organizers, Compl. ¶ 57, and was arrested at the conference the next day, *id.* ¶ 79, the difference between the pleaded truth and the statement is insignificant and does not change the 'sting.'

### C. By "Promoting Engagement" With "Dissenting Views on the Holocaust," Plaintiff Is A Limited Purpose Public Figure.

Plaintiff's brief similarly shows precisely why he is a limited purpose public figure. Plaintiff contends that he was merely "[p]romoting engagement by Mennonites with dissenting views on the Holocaust," Opp. at 19, or "contribut[ing] to the knowledge base of his co-religionists," *id.* at 20, or "sponsor[ing]" an "off-campus event featuring two Jewish revisionists," *id.*, but that is precisely why he *is* a limited purpose public figure. *See also* Compl. ¶¶ 14, 27 (alleging that Plaintiff went to the conference to seek "dialogue," bringing "a large quantity of pamphlets and books that he intended to hand out to interested registrants at the Conference."). He went to spread his perspectives with attendees at a conference—and to put on

---

[3] Plaintiff accuses Mr. Nofziger of misrepresenting his allegations, but paragraph 45 of the Complaint plainly says that he "identified himself with revisionist views on the Holocaust," and paragraphs 37 and 40 allege that he was told to stop flyering in the foyer and then confronted by conference sponsors while distributing flyers.

8

his own advocacy event. Either of those are easily enough to conclude that he "voluntarily inject[ed] himself . . . into a particular public controversy." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 n.3 (1986); *cf. Martin v. Roy*, 54 Mass. App. Ct. 642, 645 (2002) (professor was limited purpose public figure in public controversy over his use of teaching materials challenged as anti-Semitic).[4] It is thus only fair that others receive the protection of the First Amendment's actual malice standard when they criticize him for doing so. The challenged statements are, after all, not about Plaintiff's personal life but about his public advocacy.

## IV. THE ANTI-SLAPP STATUTES APPLY.

Finally, Plaintiff contends that neither the California nor Kansas Anti-SLAPP statutes apply, reasoning that his public statements about Holocaust 'revisionism' were not about a "public issue," Opp. at 24-28, that the Anti-SLAPP statutes unfairly require him to meet a summary judgment standard, *id.* at 28-29, and that the statutes are preempted, *id.* at 29-30.

First, Plaintiff is wrong to say that Mr. Nofziger's publication of Dr. Schirch's post was not "in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e). The standard is "construed broadly," including in the context of controversies in private organizations. *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23 (2007). The only case Plaintiff cites, *Weinberg v. Feisel*, involved an obscure dispute among token collectors, which the court concluded was merely "a private dispute between private parties." 110 Cal. App. 4th 1122, 1134 (2003). By contrast, the Holocaust is of obvious ongoing public importance—advocates on either side invoke it in discussing a wide range of international and domestic issues. It was important enough for Bethel College to organize an academic conference about it. The challenged post

---

[4] Plaintiff cites no case law for his proposed distinction between "parochial" advocacy and "public" advocacy, because it is untenable: the issue of the Holocaust is plainly an important public issue, and the issue of Mennonites and the Holocaust was sufficiently important for a university to hold a conference on it. In any event, California courts have properly found that the importance of religion in public life justifies treating many debates within churches as matters of public interest. *E.g.*, *Terry v. Davis Cmty. Church*, 131 Cal. App. 4th 1534 (2005).

9

specifically discussed the Mennonite community's efforts to address its history today. It is thus a "public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e).

Second, it is neither unfair nor preempted to apply the statutes states have created to limit the abuse of libel actions here. Plaintiff candidly admits that "showing . . . that he is likely to prevail on the merits" is a "monumental task." Opp. at 2. That is precisely why states like California and Kansas have passed laws to impose limits on defamation causes of action by making plaintiffs liable for attorneys' fees if they cannot make this showing of merit.

The sole authority in this district, *Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1055 (D. Kan. 2018), holds that when anti-SLAPP statutes contain substantive provisions like burden-shifting, they apply in federal court. *Id.* at 1061. The Tenth Circuit, as Judge Murguia noted, had contrasted New Mexico's procedural-only statute with California's substantive one. *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 670 (10th Cir. 2018). Plaintiff cites the Ninth Circuit's decision in *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), but that court expressly *approved* of applying California's anti-SLAPP statute, *id.* It simply held that a federal court applies the standards of Rule 12(b)(6) to anti-SLAPP motions challenging the legal sufficiency of the complaint and Rule 56 (including permitting discovery) where its evidentiary sufficiency is challenged. *Id.* at 834-35. Because anti-SLAPP statutes are substantive burden-shifting or immunity statutes, the Ninth Circuit's decision is wrong, and this court should follow Judge Murguia's decision in *Caranchini* instead. But even on the Ninth Circuit's view, this court can award anti-SLAPP attorneys' fees if it concludes that Plaintiff failed to state a claim.

## CONCLUSION

For the foregoing reasons and those stated in Mr. Nofziger's opening brief, this Court should grant Mr. Nofziger's motion to dismiss and anti-SLAPP motion to strike.

| | |
|---|---|
| Dated:  August 21, 2019 | Respectfully submitted, |

<div style="margin-left: 40%;">

**BERKOWITZ OLIVER LLP**

By: */s/ Thomas P. Schult*
   Thomas P. Schult, D. Kan. No. 70463
   Jennifer B. Wieland, KS Bar No. 22444
   2600 Grand Boulevard, Suite 1200
   Kansas City, Missouri 64108
   Telephone:  (816) 561-7007
   Facsimile:   (816) 561-1888
   tschult@berkowitzoliver.com
   jwieland@berkowitzoliver.com

**KIRKLAND & ELLIS LLP**

   Jay P. Lefkowitz, P.C. (*pro hac vice*)
   Joseph Myer Sanderson (*pro hac vice*)
   601 Lexington Avenue
   New York, New York 10022
   Telephone:  (212) 446-4800
   Facsimile:   (212) 446-4900
   lefkowitz@kirkland.com
   joseph.sanderson@kirkland.com

*Attorneys for Defendant Joel Nofziger*

</div>

### CERTIFICATE OF SERVICE

I certify that on August 21, 2019, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notice of filing to all counsel of record.

<div style="margin-left: 40%;">

   */s/ Thomas P. Schult*
*Attorney for Defendant Joel Nofziger*

</div>

11