IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRUCE LEICHTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 6:19-cv-01064-JWB-KGG |
| v. | ) |
| | ) |
| BETHEL COLLEGE; MENNONITE | ) |
| CHURCH USA; CITY OF NORTH | ) |
| NEWTON, KANSAS; JOHN THIESEN; | ) |
| JOEL NOFZIGER; | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OF PLAINTIFF IN SUPPORT OF MOTION
FOR ORDER AUTHORIZING FILING OF FIRST AMENDED COMPLAINT

1

Plaintiff Bruce Leichty (hereinafter "Plaintiff" or "Leichty"), Pro Se,  hereby submits the following Memorandum pursuant to District of Kansas Local Rule 7.6(a) in support of his motion for an order authorizing filing of a first amended complaint pursuant to F.R.Civ.P. 15(a)(2) and District of Kansas Local Rule15.1 in light of the Court's Order and Memorandum filed October 28, 2019 granting certain motions to dismiss directed at the initial complaint filed herein ("10/28 Order").   In support of the Motion, Plaintiff states as follows:


I.  NATURE OF MATTER BEFORE THE COURT

The motion consists of the request of Plaintiff to allow Plaintiff to file a First Amended Complaint.  Plaintiff asserts he is able to better articulate claims and state plausible claims relating to breach of contract and false arrest against Mennonite Church USA, and false arrest and false imprisonment against City of North Newton, Kansas, so that these are cognizable claims which, if proven, will lead to a remedy for him.  These two existing defendants would otherwise ultimately be dismissed from the action by virtue of the 10/28 Order (only the granting of the motions of these two defendants to dismiss the original claims stated against them are at issue in the current motion).  Plaintiff seeks leave to amend under Federal Rule of Civil Procedure 15(a)(2), and – if and as deemed necessary –Rules 59 or 60, although Plaintiff is not invoking the latter rules except as a fallback in the event that the Court rules that amendment would otherwise not be possible.

.

II.  STATEMENT OF FACTS

Plaintiff filed a Complaint naming seven (7) different parties on or about March 15, 2019, seeking damages for breach of contract, false arrest and defamation, among other wrongful acts, arising from Plaintiff's attendance at a conference titled "Mennonites and the Holocaust" held at

1

Bethel College, North Newton, Kansas March 17-18.  (Doc. 1).  Two of the parties were

subsequently dismissed from the action by agreement of Plaintiff, after they filed motions to

dismiss.  (Doc. 45, 51).   The motions to dismiss of four additional parties were granted in their

entirety by this Court on October 28, 2019 (Doc. 63), as follows:

–The motion of one party, Joel Nofziger, was granted based on absence of personal

jurisdiction (Doc 63, p. 30), and Plaintiff is not attempting to replead the complaint to attempt to

establish that the Court has personal jurisdiction over Joel Nofziger.

--One party, John Thiesen, was dismissed pursuant to the Court's legal finding based solely

on the pleadings that Plaintiff could not show, as someone who had associated himself with

"Holocaust revisionists," that it was anything more than a personal opinion or a statement of

hyperbole for Thiesen to call Plaintiff a "Holocaust Denier," (Doc. 63, pp. 19-21).  Plaintiff has

determined based on the 10/28 Order that it would be futile for him to try to replead the complaint

to attempt to establish that John Thiesen defamed him by applying that epithet to Plaintiff.  A

motion to dismiss a similar claim against Bethel College as Thiesen's employer was granted on the

same basis (Doc. 63, p. 21), and Plaintiff similarly is not attempting to plead an amended cause of

action for that particular act, since it would be futile based on the Court's finding.[1]

–The motion to dismiss of one party, Mennonite Church USA, was granted pursuant to the

Court's finding that although MCUSA had been identified in the complaint as a sponsor of the

Conference, Plaintiff had not sufficiently pled facts showing what its sponsorship consisted of, and

similarly, that to the extent Plaintiff was asserting liability of MCUSA under an agency theory,

Plaintiff had not provided an adequate factual predicate for a principal-agency relationship with

---

[1] Plaintiff reserves his right and option to eventually appeal that ruling, per Davis v. TXO Production Corp., 929 F.2d 1515, 1518 (10th Cir. 1991).

the persons whose acts were alleged to have injured Plaintiff.  (Doc. 63, p. 25).  Plaintiff now

acknowledges that he was not as articulate as he could have been in the original complaint in

identifying the role of MCUSA in putting on the Conference.  This role, he realizes, should have

been and can be best described by the language of "joint venturer" or partner and not "sponsor"

(which has various connotations not anticipated by Plaintiff), although that term remains

applicable as well; and for that reason and others he can state a viable cause of action against

MCUSA as noted below.

    –The motion to dismiss made by another defendant, City of North Newton, Kansas was

granted pursuant to the Court's findings on two different claims Plaintiff made against the City.

First, the Court agreed with the City of North Newton that at the time of the Complaint, Plaintiff

had not met a statutory prerequisite for suing City of North Newton on a state law claim for false

arrest, namely, compliance with the administrative claim presentment requirements of K.S.A. 12-

105b and 12-105(d)  (Doc. 63, p. 8).  Second, the Court ruled that Plaintiff had not plausibly pled

any violation by City of North Newton that would satisfy the standard for maintaining a civil rights

violation action against a municipality under Waller v. City of Denver, __ F.3d __, 2019 WL

3543115 (10th Cir. Aug. 5, 2019), and under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694

(1978), since he had not adequately pled that his arrest was the result of a municipal policy or

custom.  (Doc. 63, p. 10).

    Plaintiff in his original Complaint conceded he had not filed an administrative claim with

City of North Newton before March 15, 2019.  (Doc. 63, p. 7.)  Plaintiff now asserts that, based

on his filing of an administrative claim with the City on July 17, 2019, as pled in his proposed

First Amended Complaint accompanying this Memorandum,  he has now met the prerequisite for

suing City of North Newton at the time this motion to amend is filed, namely he has filed a claim

that was administratively denied before seeking to recover in a court of law, since his claim was deemed denied after the passage of more than 120 days after it was submitted and since well over 120 days have passed between July 17, 2019 and the date that the First Amended Complaint could be filed (the accompanying Motion is being filed about 130 days after July 17, 2019).   Moreover, as to his federal claim, Plaintiff asserts that although he tried in his original complaint to articulate the "custom and practice" under which North Newton arrested him, which involved police deference to Bethel College as a prominent business in a small town, he has now properly articulated the custom and practice relating to police deference to prominent employers in North Newton, and stated background information going to plausibility, and has thus satisfied the standard for prosecuting a cause of action for the violation of his civil rights by the City under 42 U.S.C. 1983.

Plaintiff had requested in his Opposition Briefs filed in response to the motions to dismiss of both MCUSA and City of North Newton that the Court allow Plaintiff opportunity to amend his pleading if the Court granted the motions of either MCUSA or City of North Newton  (Doc. 46, p. 28, Doc. 49, p. 30; Doc., 63, pp. 11-12, p. 25).   With regard to the request pertaining to City of North Newton, the Court stated that to the extent that request could be deemed a request by Plaintiff for leave to amend then and there, it was denied; however, the Court did not deny the request with prejudice or  dismiss the claims of Plaintiff against either MCUSA or City of North Newton with prejudice, nor did it dismiss MCUSA or City of North Newton as parties (compare to John Thiesen who was "dismissed from the action" (Doc 63, p. 31).   The Court stated in the 10/28 Order that, "If Plaintiff is seeking leave to amend against North Newton, he must do so as provided in D. Kan. R. 15.1."  (Doc. 63, p. 12).   Similarly, the Court stated as to Plaintiff's claims against MCUSA that, "Plaintiff again asserts that he should be allowed to amend the

complaint if the court grants the motion []. As the court noted previously, requests to amend a complaint must comply with D. Kan. R. 15.1."

The Court nowhere found in its 10/28 Order, as to the claims against MCUSA or City of North Newton, that amending would be futile. (Doc. 63, passim.)

The Court in the 10/28 Order did not deny leave to amend requested under F.R.Civ.P. 15, nor had any such request been made as to these two defendants (Doc. 63 passim, Doc. 46 passim, Doc. 49 passim), nor did the Court grant leave to amend (Doc. 63, passim). This motion is being filed within 28 days after the 10/28 Order.

The facts which are directly relevant to the four (4) claims that Plaintiff proposes to amend are stated more comprehensively in the proposed First Amended Complaint submitted concurrently with Plaintiff's Motion, but in summary form they are:

–MC was a joint venturer with Bethel College in holding the conference, and was prominently one of the organizers of the Conference which was held just miles away from its headquarters; MCUSA had a prior history of trying to instigate an arrest of Plaintiff; Plaintiff learned of the conference and the role of MCUSA in holding it at another meeting held by MCUSA; a published article written in 2017 by a prominent scholar of the subject of "Mennonites and the Holocaust" stated that the conference would be held at Bethel College and would be "sponsored by Mennonite Church USA;" the three-member team of Conference Organizers were all members of MCUSA; as persons in charge of the conference these three individuals represented both Bethel College and MCUSA in the leadership given at the Conference and in all actions they took at the Conference including the breach of contract or license agreement entered into with Plaintiff and as to the instigation of Plaintiff's arrest (see proposed First Amended Complaint, paragraphs 12, 13, 14, 16, 19-32).

–Plaintiff submitted a claim to the City of North Newton on July 17, 2019 for damages for his false arrest, consisting of the substance of his original complaint filed herein (see proposed First Amended Complaint, paragraph 7, and attachment).

–The 7/17/19 claim submitted to the City of North Newton has been deemed denied due to failure of the City of North Newton to act on it even as of the date this motion is filed and definitely before a First Amended Complaint will be filed (see proposed First Amended Complaint, paragraph 7, 176-78).

–Plaintiff was arrested pursuant to a custom and practice of the City of North Newton pertaining to arrests that automatically credit the complaints of the largest employers in the City, to the detriment of the accused, where there are complaints that the accused, having engaged in speech that would otherwise be protected, is threatening the employer's security, without adequate regard by the City for whether a crime had actually been committed or adequate inquiry by the City into the facts of the alleged security threat preceding the arrest (see proposed First Amended Complaint, paragraphs 185-95).

## III.  QUESTIONS PRESENTED

The questions presented in this motion are not whether Plaintiff's proposed First Amended Complaint can withstand one or more motions to dismiss, but only whether Plaintiff should be allowed in the exercise of the Court's discretion under a liberal amendment standard to file a First Amended Complaint pursuant to F.R.Civ. P. 15(a) (2), in four respects:

–Should Plaintiff be allowed to file a First Amended Complaint which pleads that MCUSA is liable along with Bethel College for instigating Plaintiff's false arrest on the ground that MCUSA was a joint venturer with Bethel College in holding the subject conference and acting

through conference organizers at each point where any of the organizers acted, where Plaintiff has not in the First Amended Complaint stated any new claim against MCUSA but simply shored up the facts showing MCUSA liability for the false arrest and false imprisonment?

–Should Plaintiff be allowed to file a First Amended Complaint which pleads that MCUSA is liable along with Bethel College for breaching a contract or license agreement made with Plaintiff on the grounds that MCUSA was a joint venturer with Bethel College in holding the conference and acting through conference organizers in entering into the agreement with Plaintiff whereby Plaintiff became a recognized registrant at the conference, and at each point where any of the organizers acted, where Plaintiff has not in the First Amended Complaint stated any new claim against MCUSA but simply shored up the facts showing MCUSA liability for the breach of contract and its foreseeable results?

–Should Plaintiff be allowed to file a First Amended Complaint which pleads that City of North Newton, having denied Plaintiff's claim by 11/14/19 due to a lack of a response by that date, is liable to Plaintiff for falsely arresting him, in light of the fact that the absence of compliance of Plaintiff on 3/15/19 with the claim filing requirement of K.S.A. 12-105b, which has now been complied with, was the only basis cited by the Court for granting the City's Motion to Dismiss with regard to that state law claim, and since the City cannot plausibly claim it was not aware of the claim as a matter of law and thus Plaintiff's claim "relates back"?

–Should Plaintiff be allowed to file a First Amended Complaint which pleads for purposes of 42 U.S.C. Section 1983 liability that the small town police force of the City of North Newton had a custom and practice of reflexively arresting individuals in response to the complaints of its largest employers when those employers complained about perceived threats to their security arising from acts that would otherwise be deemed to be protected speech, without adequate regard

or investigation as to whether a crime had occurred, where Plaintiff was in fact arrested at the behest of one of the largest employers in the City (acting as a joint venturer for purposes of its own liability) despite having committed no crime and without adequate consideration of whether he had committed a crime, but where Plaintiff had apparently offended the complaining entity because of his speech?

–As to each of the above-referenced claims, is the Court currently in a position to state that any of the amendments would be futile, or untimely, or that they are based on facts which Plaintiffs knew or should have known and included in the initial complaint, or that they have been asserted only after undue delay or in bad faith, or that there is prejudice to either of the defendants implicated in the proposed amended claims?   These questions will be discussed in the context of consideration of each of the proposed amendments.

–Finally, even though Plaintiff does not believe a motion under F.R.Civ.P.  59 or 60 is necessary on the facts here, has Plaintiff satisfied one of the grounds stated in those rules for "reopening" a dismissed claim IF and to the extent this Court finds that to be a necessary predicate for seeking leave to amend following the granting of a motion to dismiss?  That question will be addressed first.


IV.  ARGUMENT

A.  Although No Motion Under F.R.Civ.P. 59 or 60 Should Be Necessary Here,
Relief Should Be Accorded Under One of Those Rules to the Extent that the
Court Finds that "Reopening" a Dismissed Claim is Required for Leave to Amend

Plaintiff deals first with authority in the 10th Circuit suggesting that if a motion to dismiss has been granted and the plaintiff wants to amend, it is incumbent on the plaintiff to "move to reopen the case" pursuant to a motion under Rule 59 or 60 as a precondition for amendment.  See

Dahn v. U.S., 127 F.3d 149 (10th Cir. 1997), citing Glenn v. First National Bank, 868 F.2d 368,

371 (10th Cir. 1989). Plaintiff believes this authority to be inapplicable on the facts here, but that if

the only way for him to have a chance to amend would be to obtain relief under Rule 59 or 60, said

relief should be granted as explained below.

Plaintiff believes that this line of authority developed in a context that is distinct from the

context faced here. Here a motion for leave to amend is being filed within 28 days after an order

granting certain motions to dismiss, and the parties whose motions were granted have not been

formally dismissed from the action. The terminology of "reopening" suggests, and Plaintiff

submits, that Dahn and its progeny apply to cases where the entire case has been dismissed or

where there has been a final judgment, which of course is not yet true here. In the case at hand, the

court by and large has not dismissed parties, but merely granted certain parties' motion to dismiss.

Neither City of North Newton nor MCUSA were dismissed as parties, in contrast to John Thiesen,

for instance. (Doc. 63, p. 31).

Taken to its logical conclusion, Plaintiff believes that the Dahn rule also could not apply

here because it would force a plaintiff to file a motion to amend while his opposition to a motion

to dismiss is still pending, or risk the possibility that he would always have to find some error in

the order granting a dismissal of the prior pleading in order to be able to amend. In effect, the

Plaintiff would be faced with a "use it or lose it" option regarding the liberal federal policy of

allowing amendment declared by the U.S. Supreme Court in Foman v. Davis, 371 U.S. 178

(1962). Plaintiff would effectively be allowed only "one bite at the apple," in total contrast to the

spirit of Foman and indeed of Rule 15(a) as interpreted by the Foman court, not to mention the

literal terms of Rule 15(a)(2) which apply when a party is limited in its ability to amend to either

obtaining consent of the opposing party or leave of court: "The court should freely give leave [to

amend] when justice so requires."   A hypothetical plaintiff should be allowed to defend against a Rule 12(b)(6) motions to dismiss on the basis that its complaint is properly pled for purposes of Rule 12, and then still be entitled to ask to amend if its initial good faith analysis proves wrong, rather than face "the death penalty" (for its causes of action or claims) if it doesn't immediately move to amend under Rule 15(a)(1)(B) but instead has guessed wrong about the adequacy of its pleadings; indeed one could argue that is one of the important purposes of Rule 15(a)(2).   See Runnion v. Girl Scouts of Greater Chicago, 786 F.3d 510, 519 (7th Cir. 2015) [noting that the court has "repeatedly" ruled that "ordinarily a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint...")]; cf. Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1111 (7th Cir. 1984) [where the original complaint alone is dismissed, the litigation is not terminated and the plaintiff still retains his right to amend (in that case under Rule 15(a)), but "that right does not...survive a dismissal of the entire action" in which case reopening is required]; see also Mountain Home Flight Service, Inc. v. Baxter County, Ark., 758 F.3d 1038, 1045 (8th Cir. 2014) (a motion for leave to amend after dismissal is still possible unless the district court has clearly indicated that no amendment is possible or that dismissal of the complaint constitutes dismissal of the action).

Plaintiff has not found 10th Circuit authority directly on point and Plaintiff speculates that is because in the vast majority of cases, Rule 15(a)(2) motions in these circumstances are granted and no appeal or published decision is therefore necessary; however, in Mocek v. City of Albuquerque, 813 F.3d 912, 938 (10th Cir. 2015), the court appears to be suggesting that even after dismissal of all claims under F.R.Civ.P. 12(b)(6) and unsuccessful appeal, a plaintiff would still have the right to seek leave to amend under F.R.Civ.P. 15(a)(2), when it dismissed a request for leave to amend made at the level of the appellate court without a request having already been made

at the district court, for lack of jurisdiction. <u>See also</u> <u>Lane v. Page</u>, 649 F.Supp.2d 1256, 1274 (D. N.M. 2009) [although court dismissed allegations without indicating that an amendment would be allowed, i.e. without expressly granting leave to amend, plaintiff should nonetheless be allowed under F.R.Civ.P. 15(a)(2) to seek leave to amend.].

Plaintiff cannot be absolutely sure what <u>Dahn</u> and similar cases mean when they refer to reopening. Neither Rule 59 or 60 speak of "reopening" and Plaintiff does not believe the term is used in any of the Federal Rules of Civil Procedure. However, assuming the worst for the moment, i.e. that use of the term suggests that some other act must precede all amendments after rulings under F.R.Civ.P. 12(b)(6) rather than just amendments following final judgment or dismissal of the entire action, F.R.Civ.P. 59(e) allows a motion to alter or amend not just a judgment but to orders as well; and therefore if getting relief under either F.R.Civ.P. 59 or 60 is in fact necessary before the Court could consider an otherwise well-taken motion for leave to amend, Plaintiff submits that there are grounds for the court to alter or amend the 10/28 Order to explicitly provide that Plaintiff may seek leave to amend without showing an error in the order, and that Rule 59(e) relief would be the most appropriate under the circumstances. However, if the Court believes that some "reopening" is required before a Rule 15(a)(2) motion can be considered but is not inclined to take the Rule 59 route, then Rule 60 could and should be applied, in which case Plaintiff respectfully submits that there are grounds for relief under that rule as well, since a party may be relieved of the effect of "an order" for reasons of mistake, inadvertence, surprise or excusable neglect, F.R.Civ.P. 60(b)(1), all of which would be applicable here for the reasons noted below.

Plaintiff did not believe he was required to either file a motion for leave to amend before the motions of MCUSA and City of North Newton were adjudicated or risk loss of the possibility

of amending, and so he was mistaken on the law if Dahn were to apply to him now.  Other jurisdictions do not have the same requirements.  Similarly when the Court did not explicitly rule as part of its 10/28 Order on Plaintiff's "contingency" request for leave to amend by stating that Plaintiff would be permitted to *file* a motion for leave to amend (within a certain amount of time)–and not that amendment would then and there be granted–that was a surprise to Plaintiff for the same reason.    Without challenging or questioning the Court's processes, Plaintiff was aware of D. Kan. Loc. Rule 15.1, but did not know his right to file such a motion would be left in suspense after he had explicitly requested that option as an alternative to outright dismissal in his opposition briefing.   If that constitutes neglect, Plaintiff asks that the Court rule that this species of neglect was excusable under the circumstances for a pro se litigant venturing into the courts of the 10th Circuit for the first time and facing six motions to dismiss all filed within a short period of time.

The Court has stated that it did not construe Plaintiff's complaint with the liberality normally associated with a pro se pleader because Plaintiff is an attorney, Doc. 63, p. 11; however, Plaintiff submits that a slightly more liberal standard should apply when the question is whether a California-licensed attorney appearing pro se in Kansas, and familiar with the Foman standard of liberality of amendment of the U.S. Supreme Court but not well versed in 10th Circuit or Kansas procedural law, should know the nuances of 10th Circuit law on a question that he has not faced yet and does not necessarily expect to face.

Accordingly, Plaintiff does not believe that he is required to first obtain relief under Rule 59 or Rule 60 as a condition precedent for obtaining relief on a motion under Rule 15(a)(2) based on the procedural profile of this case, but if he is, the Court should grant that relief as a part of its ruling hereon.

A. The Proposed Amendment Claiming That MCUSA Breached Contract and Was a
   Co-Instigator of the Arrest Is Supported, Plausible and Is Not Otherwise Nonviable

Regarding the substance of Plaintiff's proposed motion to file an amended cause of action

against Mennonite Church USA, Plaintiff submits that he has cured the problem that led to the

court's grant of MCUSA's motion to dismiss the claim as pled in the first complaint.   Plaintiff

has added numerous new allegations to the proposed First Amended Complaint, and specifically

Paragraphs 12-32 and 38-43 and 89, 92 and 112-13, which allege (among other things) that

MCUSA and Bethel College were joint venturers in the organization of the Conference, that there

was pre-Conference publicity emphasizing the leading role that MCUSA would take in the

Conference; and that all organizers being members of MCUSA churches (among other reasons)

acted on behalf of both MCUSA and Bethel College.

Plaintiff has pointed out that he first heard about the conference at another MCUSA event

where the role of MCUSA in the event was highlighted. Para. 29.  He has pointed out that in a

2017 publication a prominent "Mennonites and Holocaust" scholar referred to the conference as

being "sponsored by MCUSA." Para. 31-32.  Based on all of the contentions in the proposed First

Amended Complaint he has plausibly pled that the team of three persons who led and administered

the conference represented the joint venture, not just their respective employers or congregations,

Para. 19-28; and that all three of these organizers are connected to MCUSA, which had offices

only a couple miles from the conference venue in the neighboring town of Newton.  Para. 13, 21.

Indeed, to add plausibility as to why MCUSA would be expected to have some role in instigating

his false arrest, Plaintiff has pointed out that MCUSA had previously called on police at another

venue to arrest Plaintiff where Plaintiff was (again) only performing functions that he might have

been expected to perform as a duly-recognized registrant at a church conference where certain

issues were to be discussed.    Para. 38-43.

13

A refusal to grant leave to amend should normally be justified by factors such as futility, undue delay, undue prejudice to the non-moving party, or bad faith of the moving party. Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993).   The court did not in its 10/28 Order find, or even suggest, that any attempt to amend the claim against MCUSA would be futile, when the court briefly referred to Plaintiff's contingent offer to amend.   An amendment might be futile if the new claim would be barred by the statute of limitations and the new claim would not "relate back," for purposes of F.R.Civ.P. 15( c); however, the amendment proposed by Plaintiff as to MCUSA's liability clearly would relate back to the date of the filing of Plaintiff's original complaint (3/15/2019, within one year of the breach of the license agreement or contract made with Plaintiff and within one year of his arrest) under Rule 15(c)(1)(B) because Plaintiff is not alleging any acts or conduct different from what was alleged in his initial complaint, but only shoring up the allegations about MCUSA's role and articulating why MCUSA would bear responsibility.

Nor has Plaintiff been dilatory in filing this motion, as the plaintiff was in Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1025 (10th Cir. 1994) (motion denied where plaintiff who sued police waited over five months  after a prior amendment and after "the court dismissed [] claims against the officers and the city" to seek leave to amend to assert an unlawful detention claim based on the same facts used in the dismissed false arrest claim).   Plaintiff has filed this motion within 28 days of the order granting the motion to dismiss filed by MCUSA.   Plaintiff submits that MCUSA would not be able to show prejudice from the mere fact that Plaintiff was not more specific as to the meaning of "sponsor" in his first pleading or had not sufficiently shown why MCUSA's participation in the injurious acts even if by way of a Bethel College employee was plausible.   Plaintiff trusts that when the Court reviews the amplified pleading of the proposed amended complaint, the Court will understand why the liability of MCUSA co-equal with that of

14

Bethel College would have been clear to Plaintiff and that all the allegations of Plaintiff in that initial complaint remain consistent with the changed pleading, even if they were formerly incomplete or could have been expressed in better terms; and that the Court will acknowledge that Plaintiff may not have effectively communicated what Plaintiff knew, but that the amendment is not made in bad faith.   (Similar points negating any suggestion of "bad faith" also apply to Parts B and C below).

Cases have also faulted a plaintiff seeking to leave to amend if the plaintiff wants to add facts that were known or should have been known at the time of the original pleading, even though this is not a factor specifically mentioned in Foman, supra.   Las Vegas Ice and Cold Storage Co. V. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990).   Plaintiff submits that the number and scope of facts added in his proposed amended complaint are not of a character which dramatically changes the pleading and that the amendment should be allowed purely on that basis; however, even if the Court believes that Plaintiff is adding facts that he knew at the time of the commencement of the action, he should not be faulted for failing to include these additional facts about MCUSA in his original complaint since he did in fact plead "sponsorship" by MCUSA of the conference (and is simply fleshing the meaning of that usage now) and he pled in good faith that the organizers were acting on behalf of both Bethel and MCUSA without realizing why the support for that allegation would not be apparent.   In other words, Plaintiff's failure to have include some facts in his initial complaint is neither prima facie intentional nor egregious in nature.

To the contrary, in the absence of any showing of undue delay or prejudice or bad faith or futility, an amendment should be allowed.   Wilkerson v. Shinseki, 606 F.3d 1256, 1267 (10th Cir. 2010).   Accordingly, the Court should grant Plaintiff leave to file a First Amended Complaint

containing the contentions he has now made against MCUSA as to the liability of MCUSA for

breaching the agreement of Conference Organizers with a conference registrant, and as to the

arrest instigated by both MCUSA and Bethel inexorably related to that breach and based on an

unsupported charge of trespass, whether in the form proposed by Plaintiff attached to his Motion,

or otherwise as determined by the Court.

### B. Plaintiff Has Adequately Pled in his Proposed Amended Complaint That He Has Met The Statutory Prerequisite for a State Law False Arrest Claim Against North Newton

Plaintiff has also on the face of his proposed amended complaint cured the problem

identified by the Court in its dismissal of Plaintiff's state law claim against the City of North

Newton, namely that Plaintiff never submitted an administrative claim to the City of North

Newton and therefore failed to fulfill a statutory prerequisite for legal action under K.S.A. 12-

105b.

Plaintiff has now pled that his claim was submitted on July 17, 2019, and he has likewise

pled that as of the time of the filing of the First Amended Complaint (and already as of 11/25/19

when this motion is being filed) his claim has been deemed denied by operation of law, since it

had then been pending more than 120 days from submission without any response.   K.S.A. 12-

105(d).  He has pled that he has thus fulfilled the statutory condition for filing suit against the

municipality.   Once again, none of the allegations relating to the underlying conduct or acts are

different from what they were in the initial complaint, and therefore they also relate back under

F.R.Civ.P. 15( c) for the purpose of any issue that might arise regarding the applicable statute of

limitations (which in any case is merely a defense, not a ground for finding at the pleading stage

that a claim is futile).

If the filing of the complaint within a year after the false arrest was sufficient as a matter of

law to put the City of North Newton on notice of the facts of the wrongful act of the City for the purpose of the applicable statute of limitations, then the City is just as much on timely notice of the claim after proper administrative presentment as it was when there was still an absence of administrative presentment.   The spirit of a one-year statute of limitations precluding stale claims is satisfied.

Full Life Hospice, LLC v. Sebelius, 709 F.3d 1012 (10th Cir. 2013) is not to the contrary. In that case, the 10th Circuit ruled that an amendment would be futile where it would not relate back on facts that, on first glance, might be compared to the facts here.  Plaintiff in that case had attacked the validity of a federal regulation in its initial complaint and had sued based on the premise that it did not need to wait for a ruling from an agency before filing suit in federal court. In its amended complaint, by contrast, Plaintiff's challenge was based on a "procedural ruling" of that agency which (in the meantime) had acted.   Under those circumstances, the court found that the amended claim could not relate back and therefore was time-barred under a federal statute, because a pleading "cannot relate back if the effect of the new pleading `is to fault [the defendants] for conduct different from that identified in the original complaint." Id. at 1018.

By contrast, Plaintiff here is not faulting City of North Newton for any conduct other than what is at issue in the original complaint, which was filed within the one-year statute of limitations (even though subject to dismissal at the time for reasons pointed out in the 10/28 Order). Therefore, the contentions Plaintiff has made as to the City of  North Newton will relate back, and there is nothing in the statutory structure of K.S.A. 12-105 et seq. itself which dictates otherwise.

As Plaintiff argued in opposing the City's motion to dismiss the claim as originally pled, the question about fulfilling the statutory precondition of K.S.A. 12-105b et seq apparently remains one of subject matter jurisdiction rather than anything else.   (Plaintiff argued that the

jurisdiction-based analysis of the Kansas Supreme Court could not be applied in federal court because of subsequent contrary authority as to the proper application of "subject matter jurisdiction" bars decided at the federal appeals level, but this Court rejected Plaintiff's argument in the 10/28 Order.)   The Kansas Supreme Court has stated that the "120-day review period requirement of K.S.A. 2012 Supp. 12-105b(d) establishes a statutory condition precedent that must be met before a court has subject matter jurisdiction over a claim against a municipality under the Kansas Tort Claims Act."   Sleeth v. Sedan City Hospital, 317 P.3d 782 (2014).

Plaintiff submits that when this is read in the context of the purpose of the Tort Claims Act, there is nothing about a "post-complaint" submission of an administrative claim that should impact the statute of limitations as distinct from a finding of subject matter jurisdiction, which can now be found.   The purpose of the Tort Claims Act is to give the municipality fair opportunity to consider the merits of a claim administratively before having to litigate it, and Plaintiff has now done that.   The litigation that City of North Newton has engaged in to date is not regarding the merits of Plaintiff's claim.

As Plaintiff also noted previously, the literal terms of the statute, even though interpreted by the Kansas Supreme Court to constitute a jurisdictional prerequisite, do not explicitly mandate dismissal, and therefore should not be interpreted as a separate time bar under the facts at hand. Whether intentional or inadvertent on the part of the Kansas legislature, nowhere in Kansas law is a person actually prohibited from filing a complaint for false arrest in federal court where no claim has been presented to the municipality. Section 12-105b(d) does indeed make the administrative filing of a claim mandatory, but at no point has the legislature stated (in these or similar words), "A person is barred from suing for a tort claim in any court absent the submission of the claim to a municipality."   The court will instead simply have no subject matter jurisdiction, Plaintiff

18

submits, until and unless such a claim has been denied–which condition is now met.    Plaintiff

notes that the statute is silent on what happens when an action has been filed without the victim of

the tort having first submitted the claim to the municipality, whether that victim knows or does not

know about the advance notice requirement, but that in any case Plaintiff has now satisfied the

jurisdictional prerequisite announced in <u>Sleeth</u>.

     Plaintiff further submits that  K.S.A. Section 12-105b(d) should be regarded as

constitutionally infirm to the extent it would read to now prohibit Plaintiff's state law claim when,

if taken literally, it would  block even an action under 42 U.S.C. Section 1983 in the absence of an

identified exception built into the statute, such as, "except where otherwise permitted by federal

law."   On a policy level, if a person has a claim for the violation of his civil rights resulting in his

false arrest and imprisonment, why would he be allowed to make it under federal law but not

under state law without following an administrative presentment process?   Particularly where he

acts, even if belatedly, to allow the governmental unit the "first crack" at the merits of the claim?

     Plaintiff has been transparent in his acknowledgment of his mistake regarding

administrative presentment.   He acted swiftly to comply with K.S.A. 12-105b when he realized

his oversight.   He has also filed the accompanying motion within a reasonable amount of time after

the 10/28 Order.   Prejudice (as distinct from noncompliance with a statute of limitations already

addressed above) cannot be shown simply because of the passage of time of a number of months,

or because a complaint which was not well pled has now been properly pled.   Therefore, since

City of North Newton will be unable to show undue delay or prejudice or bad faith or futility,

amendment should be allowed.   <u>Wilkerson v. Shinseki</u>, 606 F.3d 1256, 1267 (10th Cir. 2010).

     Accordingly, Plaintiff should be allowed to amend as to his state law false arrest cause of

action against City of North Newton as part of his First Amended Complaint.

C.   Plaintiff Has Adequately Pled That His Arrest was Pursuant to a Custom and Practice
Of North Newton for Purposes of Pursuing a Claim of Federal Civil Rights Violation

Finally, Plaintiff has also met the standard stated by this Court in the 10/28 Order for when

a plaintiff can state a cause of action against a municipality under 42 U.S.C. Section 1983; and he

has done so plausibly for the purposes of Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)..

Of the five possible ways that a plaintiff may establish municipal liability for a civil rights

violation, one of them is when the injury arises from a policy or custom taking the form of "an

informal custom amounting to a widespread practice that, although not authorized by written law

or express municpal policy, is so permanent and well settled as to constitute a custom or usage

with the force of law...."   Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010).

Courts that have held that claims arising from the actions of law enforcement officers

based on "custom and practice" under Section 1983 were cognizable and could be litigated in

several contexts.  In Wagner v. Cook County Sheriff's Office, 378 F.Supp.3d 713 (N.D. Ill. 2019),

the plaintiff alleged that the Cook County Sheriff's Office observed an unwritten policy, custom

and practice of insufficiently investigating or disciplining its deputies, which then resulted in these

officers being able to act with impunity; it declined to dismiss the complaint of a bartender that he

was battered by a deputy sheriff customer.    In Ferry v. Simpson, 202 F. Supp.3d 444 (E.D. Pa.

2016) an arrestee brought an action against the City of Philadelphia for its officers' use of

excessive force against him after a foot chase.  He claimed that the City was liable under Section

1983 in part because the police department had a custom of tolerating excessive force, which he

claimed was at least partially supported by statistics cited in his complaint.   While the court

acknowledged that mere allegations in the complaint "do not establish liability of the existence of

an unlawful custom [] [n]evertheless, at this early stage I must assume the veracity of these

statistics;" the court then found that the plaintiff had sufficiently pled a widespread practice of excessive force.   Id. at 453.

In Johnson v. Shasta County et al, 83 F.Supp.3d 918 (E.D. Ca. 2015), the plaintiff alleged that Defendant Sutter County had both official policies and established customs allowing the use of unjustified force, arrests without probable cause during the execution of search warrants, and failure to use generally accepted law enforcement procedures in the arrest of disabled persons. Moreover, the plaintiff pointed to an established custom of cover-up including by failure to properly investigate claims of unjustified force used against mentally disturbed persons, toleration of a "code of silence" as between fellow officers, and toleration of deficient procedures for reviewing complaints of officer misconduct.   The court[2] without distinguishing between "official policy" and "custom" stated that the allegations were sufficient to state a cause of action under the established custom element of Section 1983, and gave the County "fair notice to enable it to defend itself."

Plaintiff has now articulated such a custom and practice, namely, that the City of North Newton does the bidding of its largest employers without thorough investigation when those employers complain of an individual who they believe is somehow a threat to their security.   This custom and policy might be characterized colloquially as, "Arrest first, ask questions later." Plaintiff has pled knowledge of one or more other instances where this custom and usage has been applied.   Plaintiff has pled that this practice is recognized by at least one religious leader in a nearby community.   Plaintiff submits that as someone from a different state, he should not be held to an impossibly high standard of plausibility in his pleading that would require, for instance, that

---

[2] Ironically, though irrelevantly, the judge who issued the decision in the Johnson case, Kimberly Mueller, is a native of Newton, Kansas, and a member of the Bethel College Board of Directors.

he have knowledge or be knowledgeable about even more such incidents where the incidents would normally be shielded from public view to begin with.

Thus, for instance, when the plaintiff in Simpson, supra, was able to allege that during a five-year period preceding his arrest "approximately 1,223 lawsuits were brought against the City of Philadelphia for police misconduct," and that the City "paid more than $40 million in damages and settlements for police misconduct lawsuits," id. at 453, that should be viewed in context and not as an indication that statistics or comparable data will be needed to achieve plausibility in one's contentions. That case was about a large city where statistics were obtainable. It would be unreasonable to expect that most plaintiffs, particularly without a long history in the municipality and particularly where the municipality is a small one – as here -- would be able to bolster the plausibility of a pleading in a similar manner. Any suggestion that only "insiders" can meet the standard for pleading under Bell Atlantic v. Twombly, supra, and that the marginalized "need not apply" would be repugnant and would defeat the very purposes for which Section 1983 was enacted in the first place. Plaintiff notes, for example, that in Johnson, supra,the decision does not recite any equivalent data in the pleading at issue.

Meanwhile Plaintiff's allegations are not totally devoid of information suggesting that the arrest of Plaintiff was not simply a "one-off," based on the limited data available to him regarding at least one other arrestee and the observations of a community religious leader. Plaintiff should not be shut out of the courthouse door simply because he cannot at the pleading stage prove a custom or practice that by its very nature would be hard to document.

Per Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 211 (1978), "local governments, like every other Section 1983 `person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental

`custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91.   And as with the other claims discussed above, there should no concern as to whether this proposed amendment would be futile because it could not relate back, because none of the essential conduct or occurrences or acts supporting the amended federal civil rights claim are different from those originally pled, under F.R.Civ.P. 15( c).   The prejudice, bad faith and (no) undue delay analyses are also the same as advanced in Part B above.

Accordingly, the Court should permit Plaintiff to include an amended claim against City of North Newton under 42 U.S.C. Section 1983 as part of his First Amended Complaint as well.

WHEREFORE, Plaintiff should be permitted under F.R.Civ.P. 15(a)(2) to file a First Amended Complaint in the form attached to this Motion filed concurrently herewith, or in such other form as the Court may require or allow, on the grounds stated above including – only if necessary – the grounds supplied for a predicate grant of relief under Rule 59 or Rule 60, and understanding that the Defendants will have the right before any ruling by this Court to oppose the motion on the grounds that the proposed amended complaint would be as subject to dismissal as the first pleading (which grounds Plaintiff submits will have no merit).

Respectfully submitted by,

/s/ Bruce Leichty
Bruce Leichty, In Pro Per
c/o Bruce Leichty, A Prof. Corp.
220 W. Grand Ave.
Escondido, CA 92025
(760) 484-2467
Fax: (951) 676-7462
leichty@sbcglobal.net

CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of November 2019, the foregoing was filed with the Clerk of the Court of the Kansas District Court using the CM/ECF system which will send notice of electronic filing to all counsel of record, including those shown below.


                              /s/ Bruce Leichty
                              Bruce Leichty, Plaintiff


Tracy M. Hayes
Robert M. Reynolds
Sanders Warren Russell & Scheer LLP
40 Corporate Woods
9401 Indian Creek Parkway, Ste. 1250
Overland Park, KS 66210
Phone: (913) 234-6100
Fax: (913) 234-6199
t.hayes@swrsllp.com
r.reynolds@swrsllp.com
Attorneys for City of North Newton, Kansas

Corey M. Adams
Scott E. Sanders
McDonald Tinker PA
300 W. Douglas, Ste. 500
Wichita, KS 67202
Phone: (316) 263-5851
Fax: (316) 263-4677
cadams@mcdonaldtinker.com
ssanders@mcdonaldtinker.com
Attorneys for Bethel College [and  John Thiessen aka John Thiesen]

Alan L. Rupe
Kevin E. Miller
Lewis Brisbois Bisgaard & Smith, LLP
1605 N. Waterfront Parkway, Ste. 150
Wichita, KS 67206
Phone: (316) 609-7900
Fax: (316) 462-5746
alan.rupe@lewisbrisbois.com
kevin.miller@lewisbrisbois.com
Attorneys for Mennonite Church USA

ATTORNEY FOR PARTIES NO LONGER IN ACTION OR NOT IMPLICATED

Eric A. Van Beber
Kevin D. Weakley
Wallace Saunders
10111 W. 87th St.
Overland Park, KS 66212
Phone: (913) 888-1000
Fax: (913) 888-1065
evanbeber@wallacesaunders.com
kweakley@wallacesaunders.com
Attorneys for Lancaster Mennonite Historical Society

Thomas P. Schult
Jennifer B. Wieland
Berkowitz Oliver LLP
2600 Grand Boulevard, Ste. 1200
Kansas City, MO 64108
Phone: (816) 561-7007
Fax: (816) 561-1888
tschult@berkowitzoliver.com
jwieland@berkowitzoliver.com
Attorneys for Joel Nofziger

Jay P. Lefkowitz
Joseph M. Sanderson
Kirland & Ellis - New York
601 Lexington Avenue
New York, New York 10022
Phone: (212) 446-4800
Fax: (212) 446-4900
lefkowitz@kirkland.com
joseph.sanderson@kirkland.com
Attorneys for Joel Nofziger

Kelsey N. Frobisher
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Ste. 100
Wichita, KS 67206-4466
Phone:  (316) 267-6371
Fax:  (866) 347-3808
kfrobisher@foulston.com
Attorney for Harvey County [party dismissed 7/19/19]

Toby Crouse
Crouse LLC
11184 Antioch, No. 253
Overland Park, KS 6210
Phone: (913) 957-6832
tcrouse@crousellc.com
Attorney for Harvey County [party dismissed