IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BRUCE LEICHTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 6:19-cv-01064-JWB-KGG |
| v. | ) |
| | ) |
| BETHEL COLLEGE; MENNONITE | ) |
| CHURCH USA; CITY OF NORTH | ) |
| NEWTON, KANSAS; JOHN THIESEN; | ) |
| JOEL NOFZIGER; | ) |
| | ) |
| Defendants. | ) |

REPLY OF PLAINTIFF TO OPPOSITION OF MENNONITE CHURCH USA
TO PLAINTIFF'S MOTION TO FOR LEAVE TO AMEND

Plaintiff Bruce Leichty (hereinafter "Plaintiff" or "Leichty"), Pro Se, replies as follows to the Memorandum of Opposition of Mennonite Church USA (Docket No. 69) to Plaintiff's motion for leave to amend his Complaint (Docket Nos. 66 and 67)[1]:

1. The desperation of MCUSA to avoid liability to Plaintiff is starkly apparent in its latest mud-slinging memorandum. MCUSA effectively wants the Court to grant an ad hominem-based summary judgment in its favor before Plaintiff has had a chance to prove even one of his allegations, cloaking its argument in terms of the supposed "futility" of Plaintff's proposed amended complaint. Plaintiff's proposed amended complaint is certainly not futile let alone frivolous, as shown below; Plaintiff has squarely and competently confronted in his proposed

---

[1] Plaintiff has requested leave to amend his Complaint to state causes of action against two defendants: Mennonite Church USA and City of North Newton. MCUSA is alone in opposing the motion seeking leave to amend.

1

amended pleading the prior holding of this court that he did not plead enough detail about the sponsorship of MCUSA in his initial complaint against MCUSA "to state a claim that is plausible on its face." Youngblood v. Qualls, 308 F.Supp.3d 1184, 1191 (D. Kan. 2018). Surprised that MCUSA would deny something that was so obvious to Plaintiff and to its own church constituents--namely its co-sponsorship with Bethel College of the conference that Plaintiff attended--Plaintiff has now added crucial detail to his proposed pleading to plead a number of potential predicates for alleging co-sponsorship liability, as set forth below.[2] Because F.R.Civ. P. 15 requires that a court grant leave to amend "when justice so requires," and the Supreme Court has underscored a liberal standard for granting leave to amend, Foman v. Davis, 371 U.S. 178 (1962) (a case not addressed by MCUSA in its Memorandum), MCUSA's protestations and smear attempts must fail in the face of the only evidence that matters in a motion such as this: the pleading offered by Plaintiff states an entirely plausible claim that MCUSA acting jointly with Bethel College breached its agreement with Plaintiff and instigated Plaintiff's arrest acting through one or more leaders of the event titled "Mennonites and the Holocaust" in March 2018.

2. As an initial matter, the specter of Gragg v. Wichita State University, 934 P.2d 121, 261 Kan. 1037 (Kan. 1997) should be dispelled from any role of influence in this case. (See MCUSA Memorandum, p. 14). Superficially, the two cases might appear similar: a third party is attempting to prove the liability of not merely a Kansas university where wrongful conduct occurred but the liability of a sponsor of the event where the wrongful injury occurred. But that is where the similarity ends. The only question in Gragg was whether, by their involvement as avowed "corporate sponsors" of an event held on the Wichita State University campus, "the

---

[2] MCUSA seems to acknowledge that Plaintiff's case really rises or falls on its ability to prove MCUSA's sponsorship of the Conference, however characterized. Its specific argument relating to the use of the terms "partnership" and "joint venture" is addressed in Para. 9 below.

2

sponsors also became 'owners, occupiers or possessors of the premises'" so that any relationship Ms. Gragg enjoyed with WSU "could be extended to them," and the court ruled that it did not. *Id.* at 129-30. Plaintiff's claim, by contrast, is not a premises liability claim, and therefore the theory of the Gragg plaintiffs and certainly the pleading in that case is not the theory of liability in Plaintiff's proposed amended pleading, where MCUSA's liability is predicated on breach of contract committed through one of its designated representatives and instigation of false arrest perpetrated by one of its designated representatives–and has been pled as such. Moreover, Gragg is not a case that even purports to test the sufficiency of pleading, since it is a summary judgment case, and therefore is not authority for whether a pleader has plausibly pled facts that could show that a given entity was by virtue of its sponsorship acting through a set of its representatives. Plaintiff deserves his opportunity to prove his allegations--like most plaintiffs have where the claim is not far-fetched or speculative [*see* Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (involving antitrust conspiracy allegations), and Ashcroft v. Iqbal (similarly involving contentions that two high-ranking U.S. officials orchestrated confinement of a 9/11-related detainee), 556 U.S. 662 (2009)]. Sponsorship of an event is in a category far different from the claims at issue in the Twombly and Iqbal pleadings.

3. Moreover, the single argument that MCUSA makes in its discussion of Gragg is inaccurate. MCUSA wants the court to believe that there are no factual allegations in the proposed amended pleading of Plaintiff that "support a conclusion that MCUSA was in control of any of the three persons alleged to have committed any actions in regards to Plaintiff" (MCUSA Memorandum, p. 14), but clearly there are now multiple such allegations in Plaintiff's proposed amended complaint. The most targeted allegations are found at Paragraphs 19 and 20, but more generally, all of the material found at Paragraphs 19 through 27 goes to the claim that MCUSA

acted through a set of designated representatives at the Conference, and there are other indispensable predicate allegations as well, namely that it was known to the church and to the public that MCUSA was a co-sponsor of the event, see Paragraphs 29-32.[3]

4. At the risk of being repetitive, the Court found fault with Plaintiff's original complaint because Plaintiff had not alleged sufficient facts to show what the sponsorship of MCUSA consisted of, the nature of any arrangement it had with Bethel College, and what authority or control MCUSA had with regard to the event. Plaintiff contends that all of those points have now been addressed in proposed Paragraphs 19-32 (and others by virtue of the context in which those paragraphs must be interpreted). Specifically, Plaintiff has pled facts sufficient to support a finding that MCUSA was not a mere "financial sponsor," with its obvious implication that mere financial sponsorship would not inexorably lead to liability for breach of contract or false arrest especially when coupled with insufficient pleading as to the relationship of the breacher or tortfeasor to the church, according to the Court's prior ruling. The fact that only Bethel College and MCUSA are mentioned in the statements that Plaintiff heard about the event sponsorship (at Orlando, Florida in 2017) and that historian Benjamin Goossen uttered (at around the same time) (Para. 29 and 32) suggests now that it is **implausible** that MCUSA was to have functioned only as a "financial" sponsor of the Conference, else its name would not have been featured to the church and to the public as one of only two sponsors. Indeed, MCUSA was held out to the

---

[3] MCUSA ridicules the allegation made by Plaintiff that each of these representatives is a member of an MCUSA congregation (MCUSA Memorandum, p. 11), but Plaintiff of course has never alleged that membership in a congregation affiliated with MCUSA would be sufficient to create agency on behalf of MCUSA. Rather, Plaintiff's task in his amended pleading was to bolster his case for the plausibility of his contention that these three persons were representatives of MCUSA, and their denominational church membership therefore becomes a relevant detail: certainly had they not been members of one of the congregations within the denomination in question, it would be implausible that they could function on behalf of the denomination.

4

community at least as a co-equal sponsor with Bethel College if not the main sponsor. (Para. 32). It is worth quoting precisely the language of Paragraphs 29 through 32:

> --29. Plaintiff learned about the "Mennonites and the Holocaust" Conference set for March 2018 because it was announced as an upcoming conference of MCUSA and Bethel at the sessions of the 2017 biennial MCUSA Conference held in Orlando, Florida, at which Plaintiff was in attendance.
>
> --30. It was known broadly throughout MCUSA prior to the Conference that MCUSA was one of the partners, joint venturers or co-sponsors of the Conference.
>
> --31. The Conference was also publicized in advance of the meeting by one of the most prominent "Mennonites and the Holocaust" scholars affiliated with MCUSA, Benjamin Goossen, who has no affiliation with Bethel College.
>
> --32. In an article written by Goossen a year prior to the Conference, for Religion News Services, titled "Mennonites seek to come to terms with Nazi collaboration," Goossen wrote about a symposium that had taken place in Paraguay on the subject before stating, "Discussion will continue at a third conference, on `Mennonites and the Holocaust.' Scheduled for March 2018 at Bethel College in North Newton, Kan., the event is sponsored by Mennonite Church USA, the largest Mennonite denomination in North America."

The contention regarding the published statement of Goossen, which must be taken as true for the purposes of evaluating the amended pleading, is dispositive standing by itself. Since MCUSA has admitted that Plaintiff has now pled facts in its proposed pleading which show that "MCUSA can [] be classified as a sponsor of the event" (MCUSA Memorandum, p. 13) the Court is no longer in a position to say that Plaintiff has not pled sufficient detail to plausibly claim that MCUSA was a sponsor of the event with more than a mere financial relationship to Bethel College.

5. Any more onerous requirement than that at the pleading stage would be improper. MCUSA also makes the statement that "the Court has rejected the contention that Mr. Jantzen or

Mr. Thiesen or Mr. Sharp are agents or employees of MCUSA" (MCUSA Memorandum, p. 10), but that is an outrageous overreach and a misrepresentation of what the Court did do or could do. The Court was not in a position on a Rule 12(b)(6) motion to make any findings of fact and specifically was not so positioned on the motion to dismiss filed by MCUSA, but only to find that Plaintiff had not pled enough facts to show the plausibility of his contention that Jantzen and Thiesen and Sharp were agents of MCUSA, which is what the Court did.  And that omission is part of what Plaintiff has now corrected in his proposed amended pleading.  Plaintiff does NOT have to show that any of these three individuals were formally employed by MCUSA outside of the context of the Conference, to the extent his other contentions of a joint sponsorship with an agreed set of coordinators is true, although conversely the Court certainly should not assume that they were not employees or did not receive some compensation from MCUSA; see also Para. 10 below.  Alan Rupe has no ability to deny that these representatives were employed by MCUSA and he certainly has no authority to present any testimony whatsoever through his pleading on a Rule 15 motion, as he has done (MCUSA Memorandum, p. 12), namely that "none of the named individuals were employees or agents of MCUSA.  They cannot expressly or impliedly act in any way on behalf of MCUSA").  Those statements are simply so much detritus.  Although MCUSA asserts that Plaintiff's careful pleading that these three men were the Conference Organizers is a "conclusion" without a "factual basis," (MCUSA Memorandum, p. 5), MCUSA seems to forget that Plaintiff was present at the Conference and observed all three men carrying out the roles that are within the definition that Plaintiff has pled in his proposed amended complaint.  It would be hard to know what better factual basis there would be than observation.  Surely the Court would not say that Plaintiff had to have had a seat in the planning meetings held by these three individuals, or be able to plead the language of a "program" or brochure for the Conference which

explicitly showed, for instance, that Mark Jantzen had some formal title with MCUSA. Similarly, MCUSA wants Plaintiff to have to say in his amended complaint what exactly Mark Jantzen did to "make it clear [he] was acting on behalf of MCUSA," (MCUSA Memorandum, p. 6), but that is not the law. The Conference was obviously sponsored by MCUSA, that is the threshold point; and Jantzen and his cohorts held themselves out as the representatives of the sponsors, which necessarily includes MCUSA. Under the Twombly standard, Plaintiff should be charged only with raising in his pleading a reasonable expectation that discovery will reveal that Jantzen and his colleagues were in fact planning and implementing and administering and coordinating the Conference on behalf of both Bethel College and MCUSA – which Plaintiff has done. *See also* Youngblood v. Qualls, *supra* ["the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims," citing Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)]. The volume and intensity of the protest of counsel Rupe that of course MCUSA cannot have any liability to Plaintiff must be given no factual credit or weight in determining such a likelihood.

6.. The plausibility of a linkage between Jantzen and MCUSA is even more pronounced when one compares the coordinating function of Jantzen as to Plaintiff with the coordinating function of MCUSA convention coordinator Glen Guyton with regard to Plaintiff a year earlier. Plaintiff has explicitly proposed to plead this relationship in Para. 38-43 of his First Amended Complaint, not because the Florida incident is relevant to the liability of MCUSA in this action but because it tends to make Plaintiff's claim more plausible. The similarities in method between Guyton in 2017 and Jantzen in 2018 are unmistakable, as are the similarities in motive (preventing discussion of a controversial point of view relating to Israel). Although MCUSA wants to claim that the material about the Florida threat is entirely irrelevant, or even frivolous, that is taking an

7

outdated and overly parsimonious view of how one satisfies the plausibility standard. Plaintiff has to work with what he has and what he knows. Plaintiff is obviously not going to have a lot of facts at the outset of a case regarding the exact relationship of the MCUSA representatives to each other or the history of appointment or delegation of each of the three representatives to their Conference duties, or the "arrangements" made between the co-sponsors as to how the Conference would be conducted, but all of that is no different from what would typically be true where a party is known only to be a sponsor of an event and where the party alleging liability has no special relationship with the representatives who appear at the event on behalf of the sponsor: such facts would be expected to emerge in discovery. Plaintiff respectfully reminds the Court that it is not proof but plausibility that a plaintiff is expected to have at the pleading stage, even though in this case Plaintiff has been fortunate enough to locate and to be able to include in his proposed pleading the statement of one prominent scholar in the field acknowledging the role of MCUSA in the academic Conference.

7. Even though Plaintiff has included the statement of historian Goossen as part of his pleading, Plaintiff also believes that it should not even be necessary to plead it under F.R.Civ.P. 8, which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." F.R.Civ.P. remains in force whatever the status of <u>Conley v.Gibson</u>, 355 U.S. 41 (1957), the Supreme Court case that interpreted Rule 8 with liberality and which is now generally regarded as having been overturned (although it was not explicitly overturned) by <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). The court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim that is plausible on its face" or when an issue of law is dispositive; and the court must accept all facts alleged in the complaint as true even if doubtful in fact. <u>W&W Steel, LLC v. BSC Steel, Inc.</u>, 944 F.Supp.2d 1066 (D. Kan.

2013). "The issue [in resolving a 12(b)(6) motion] is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Id. [citation omitted]. *See also* Leatherman v. Tarrant County, 508 U.S. 223 (1993) (rejecting the need for a pleading to contain greater specificity in order for plaintiff to state a Section 1983 claim against a municipality).

8. Plaintiff has to underscore the point that there is absolutely no parallel between the facts at issue in the cases that interpret the pleading standard most strictly, namely Bell Atlantic Corp. v. Twombly, *supra*, and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009), and the case at hand. Plaintiff urges the Court to look at the plausibility standard with a panoramic view. Plaintiff trusts that it is obvious to the Court that there is nothing inherently implausible about an event titled "Mennonites and the Holocaust" being sponsored by Mennonite Church USA based on "judicial experience" or "common sense," for example. These are the two somewhat subjective standards for plausibility used by the Supreme Court in upholding the dismissal of the complaint brought by the 9/11 detainee plaintiff in Iqbal, supra. For purposes of illustration, under the Iqbal rule it would be implausible if a plaintiff were to contend that an event using the term "Christian" in its title was of course linked to the denomination called "Christian Church (Disciples of Christ)," because based on judicial experience and common sense a judge would be warranted in finding that the term "Christian" has so many uses that the linkage of the title, by itself, to that specific denomination would be implausible. By way of contrast the term "Mennonite" is specific and unusual enough that it is not implausible to believe that a modern-day Mennonite church or organization could be responsible for an event using that name, even based

9

on the name alone.[4] In Twombly, an antitrust case, the plausibility standard required that the plaintiff plead enough facts to "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Under that standard, it should be sufficient merely that Plaintiff's pleading here create a reasonable expectation that discovery will reveal that MCUSA was in fact a self-acknowledged co-sponsor of the Conference. The allegations contained in paragraphs 31 and 32 of the proposed amended complaint alone raise just such a reasonable expectation.

9. The main "legal" argument that MCUSA makes in its Memorandum is that Plaintiff has failed to allege any facts proving that MCUSA and Bethel College were "joint venturers" in their sponsorship of the "Mennonites and the Holocaust" conference. But this is a red herring. Before "joint venture" has to be regarded as a term of art, it is merely another way of expressing a concept in English. Plaintiff nowhere says in his proposed amended complaint that he is trying to establish that MCUSA and Bethel were engaged in a "joint venture" or "joint adventure" as defined under Kansas law. At most, the language used by Plaintiff in the proposed pleading of "partnership" or "joint venture" is inartful, and the Court can and should look to the substance of the pleading rather than those exact terms (and even MCUSA states that the term "joint venture" should be overlooked because it is a legal conclusion; MCUSA Memorandum, p. 9). Since there is no legal definition of a "sponsor" and no established case law regarding liability of a "sponsor," Plaintiff was merely attempting to put into more recognized terms the underlying reality of joint

---

[4] Of course, Plaintiff is not relying simply on the use of the term "Mennonite" to establish plausibility but on many facts. Plaintiff's point is simply that there is nothing inherently implausible about his proposed pleading, as the Supreme Court held was true for Iqbal. MCUSA repeatedly treats the allegations made by Plaintiff as if they are designed to prove its sponsorship, when in fact "proof" is not the task where Plaintiff is submitting a proposed amended pleading, but only plausibility. It is with "plausibility" of sponsorship in mind, for example, that Plaintiff alleges the proximity of MCUSA offices in the town bordering North Newton where the conference was held. Plaintiff is aware that this fact does not prove that MCUSA was a sponsor but by the same token it is a factor in whether such a claim is plausible.

sponsorship and the liability that will be associated with those who jointly sponsor an event--and perhaps this was ill-advised, but it should not be fatal. The Local Rules for this Court [Local Rule 15.1(a)(2)] merely require that the moving party attach the pleading that he proposes to file, but those Rules do not say – and the liberal pleading standard of F.R.Civ.P. 15 and Foman, supra would not approve of the idea – that if the pleading cannot be filed in that exact form with those exact terms then no amended complaint can be allowed at all. Indeed, contrary to the implication of the MCUSA Memorandum, Plaintiff is not even far from the mark in his current iteration of his causes of action in asserting partner liability of MCUSA. A partnership in Kansas leading to the liability of its individual partners, just like in all jurisdictions of which Plaintiff is aware, can be formed even if the word "partner" or partnership is never used. "Any act, representation, or conduct on the part of a person, reasonably calculated to induce the belief that he is a partner, constitutes a holding out, with respect to whether a partnership will be held to exist as to third persons." Van Heusen v. Korn, 480 P.2d 549, 204 Kan. 172 (Kan. 1969) (quoting 68 C.J.S. Partnership Section 32 and discussing the liability of a partner even if the partnership did not "exist by fact"). Therefore, in a given case, the true test for whether liability associated with partnership conduct will lie as to one alleged to be a partner is whether the plaintiff has plausibly pled acts, representations or conducts on the part of the one alleged to be a partner that are reasonably calculated to induce the belief in others that the party is a partner in the offending enterprise. In the case at hand, Plaintiff has pled sufficient facts to make a plausible claim that MCUSA held itself out as a co-sponsor of an event and that its sponsorship was both broadly understood and evidenced by specific statements, and Plaintiff has also pled specific facts showing that one or more representatives of MCUSA breached the agreement of MCUSA and Bethel College with Plaintiff and instigated his arrest. .

11

9. Since Plaintiff's intention in the proposed amended complaint is obviously to show that Bethel College and MCUSA were co-sponsors of the event and that they *jointly implemented the event*, Plaintiff should be allowed to modify the amended pleading he will file to one that merely alleges joint sponsorship. Even MCUSA acknowledges, "At most, Plaintiff has alleged that MCUSA was a sponsor of the event" (MCUSA Memorandum, p. 13). Plaintiff does not believe that a discussion of the legal requirements of a "joint venture" is either on point or necessary, because quite obviously Plaintiff did not in his proposed amended pleading intend the term as a "term of art" but rather only a descriptor for a relationship which might have been more properly characterized as a joint enterprise (and that, only if the term "sponsorship" had to be avoided). Assuming the term "joint venture" must be regarded as a term of art in Kansas rather than merely descriptive of two persons acting cooperatively or in concert, Plaintiff should be allowed to change the term "joint venture" in the First Amended Complaint to "joint enterprise" or joint sponsorship or co-sponsorship, and "joint venturers" similarly. Liberality in allowing amendment means nothing if it will fault a pleader for the inappropriate choice of a single word or label when the grounds for attaching the label are otherwise clear and actionable, as here.

10. Plaintiff urges that the Court not make assumptions, either, about what kind of pleading it takes to show that MCUSA has delegated responsibility to certain representatives. The Court should not assume that MCUSA is a hierarchical organization such as the Roman Catholic Church, for example (*see* Para. 21 and 42). If it is plausible that in 2017 a "convention coordinator" for MCUSA could threaten Plaintiff with an arrest, then it is equally plausible that administrators or coordinators for the Conference acting on behalf of MCUSA in 2018 could instigate the same. (MCUSA wants the Court to consider the events of 2017 in Florida irrelevant or an example of the supposed "frivolousness" of Plaintiff's pleading, but once again, since

Plaintiff is tasked with showing plausibility in his pleading, that is an issue different from what actually needs to be proved on the causes of action of Plaintiff in the new pleading.)   Similarly, an attender at a conference should not be faulted for not being able to plead with specificity the precise "act" or acts of a church that show(s) its sponsorship of the event.   A church can act only through its representatives, and Plaintiff has proposed to plead the acts of representatives whose roles with MCUSA are formally and precisely alleged, and he has alleged sufficient facts to show a reasonable expectation that the exact "acts" by which the representatives received their mandate from MCUSA will be revealed in discovery.

11.   Plaintiff asks by way of a short excursus what facts a conference attender is supposed to have at his disposal beyond what is "generally known"--when the attender has no special connection to the organizers and does not have the minutes or notes of meetings that led up to the conference-- sufficient to "prove" the sponsorship of a given sponsor.   Are only persons with special insider knowledge permitted inside the courthouse door to pursue a claim against a generally acknowledged conference sponsor for breach of contract or other injury?   To ask the question is to show just how unjust that would be.   Moreover, while one could complain that it would be easy for a pleader to simply make up a statement about an announcement linking a given entity to the sponsorship of a given event, the Court has no ability to second-guess that kind of a fact statement if made as part of a complaint; it must be taken as true.   W & W Steel, L.L.C., *supra* at 1071.   Finally, Plaintiff ackowledges that it would be even more plausible that one has stated a viable sponsorship claim against an entity if one could quote directly from the entity sponsoring the event, or from multiple sources, as distinct from a scholar professing knowledge of the event.   However, that degree of specificity should never be made into a pleading requirement, because that kind of a statement will not always be available.   At the pleading stage, one cannot be

13

expected to obtain testimony from either an executive of the offending entity, or in this case hundreds or even tens of other members in MCUSA, that they also understood that MCUSA was a sponsor of the event, and Plaintiff is hard pressed to believe that the new federal pleading requirement would require him to solicit and quote such testimonials in his complaint to be able to state a viable cause of action.

12. With regard to the personal attacks launched by MCUSA against Plaintiff, Plaintiff notes only that this is consistent with MCUSA's conduct toward Plaintiff and motives to strip Plaintiff of all rights as pled in the proposed amended complaint, and moreover shows just how weak MCUSA's argument really is. According to MCUSA, Plaintiff is "obfuscating" (MCUSA Memorandum, p. 1) and his pleading "frviolous" (p. 2) and he has pled a "wealth of irrelevant information" (p. 4) and is "harboring a grudge" (p. 14);; however, all of these accusations are patently absurd. Obviously whether Plaintiff was sanctioned by a New York appeals court for a frivolous filing in 2013 has no bearing on whether Plaintiff is engaged in any frivolousness in this case.[5] Quite frankly, the shoe should be on the other foot. Plaintiff couldn't have imagined that MCUSA would try to deny its role in sponsoring the Conference, in the same self-interested way that the Apostle Peter issued his own historic denial, and Plaintiff finds it preposterous that

---

[5] If this were relevant in any way to the current proceeding, Plaintiff would also have multiple points to make about the finding of a two-judge appellate panel in Ransmeier v. Mariani, 718 F.3d 64 (2nd Cir. 2013), and whether that opinion–although published--is essentially "political" in nature (as the current United States President recognizes is possible) or is even reliable law based on that Circuit's own rules and the fact that only two judges were involved in the appeal by the time of the opinion. Plaintiff simply observes for now that if this Court were to delve into the tortuous procedural history for that case, the Court would find that a three-judge panel of the Second Circuit had at a much earlier stage of the same appeal refused to dismiss the appeal of Plaintiff and his client–and indeed had invited further targeted briefing from Plaintiff-- even though that panel had in front of it the very same underlying pleadings that two of its colleagues were to later characterize as frivolous, and this despite the contention made to the three-judge panel by the Appellee that those underlying pleadings were "frivolous."

MCSUA persists contrary to all available evidence not only in trying to deny its very public role in sponsoring and holding the conference but also branding Plaintiff's legitimate request to amend a complaint on that ground "frivolous." There is nothing frivolous about Plaintiff, nothing frivolous about Plaintiff's proposed amended complaint, and nothing frivolous about his request that he be allowed to amend.

13. MCUSA's resort to various "straw men" throughout its Memorandum is apparent even beyond the examples already given above. For example, MCUSA has seen fit to quote (and then disparage) certain factual allegations appearing for the first time in the proposed amended pleading even though those allegations are obviously not directed at the claim against MCUSA. This is true, for example, when MCUSA argues the irrelevance of a new allegation in the proposed amended pleading that Bethel College is one of the largest employers in the City of North Newton, MCUSA Memorandum at p. 4, an allegation which any casual reader of Plaintiff's motion and memorandum can see is included in the new pleading solely to support Plaintiff's claim against the City of North Newton, **not** its claim against MCUSA).[6] Moreover, MCUSA would have the Court believe that Plaintiff is basing his motion on his "ignorance of Kansas law" (MCUSA Memorandum, p. 1), which is also demonstrably false. Plaintiff included in his supporting Memorandum a couple paragraphs hypothesizing that there might be a protocol in the 10th Circuit for seeking to file a post-dismissal amendment different from the protocol and practice in other jurisdictions, and Plaintiff simply stated that if this were true, he should be excused from knowing

---

[6]This is also true as to the allegations still left in the complaint that John Thiesen of Bethel College called Plaintiff a "Holocaust denier." While admittedly Plaintiff is no longer suing to recover for defamation, this accusation by a Conference Organizer remains relevant to Plaintiff's cause of action against the City of North Newton because it shows that the College in all likelihood labeled Plaintiff a dangerous "security risk" when Bethel and MCUSA acted to get him arrested (either that or police concluded he was a risk from what they were told about him).

that, for reasons including the fact that he does not have the benefit of Kansas counsel in this case, but only his own knowledge as a lawyer not admitted in Kansas. However, MCUSA hasn't even bothered to oppose the motion on the grounds that it is not permitted as a procedural matter, and therefore it beggars the imagination that MCUSA would try to get some mileage out of that request when none of Plaiintiff's substantive arguments for his ability to amend against MCUSA are in any way based on a claim of his prior "ignorance" of the law, nor are they dependent on same. MCUSA would also have the court believe that Plaintiff "relies upon a lack of denial of affiliation with MCUSA by Mr. Jantzen" as part of his contention that the Conference was a joint enterprise between Bethel College and MCUSA (MCUSA Memorandum, p. 12). However, reading Plaintiff's proposed paragraphs 24-28 makes it obvious that in no way does Plaintiff's argument "rely" upon some "lack of denial" by Jantzen, but instead only that Plaintiff is being prudent and preemptively covering all possible objections of implausibility that could be raised about Jantzen's affirmative statements regarding his Conference role. Finally, MCUSA sets up a straw man when it accuses Plaintiff himself of engaging in a "straw man" argument in asserting that his claim is not futile because it "relates back" (which is definitely one of the ways an amended claim can be futile, as Plaintiff briefed in his opening Memorandum). MCUSA Memorandum, p. 7. In a claim devoid of fundamental logic, MCUSA asserts that this is a straw man because it is a way to sidestep the real argument for futility, namely that Plaintiff's motion could not survive a Rule 12(b)(6) motion, never realizing (or better said choosing not to realize) that any reasonable plaintiff is not going to consider his own attempt to amend "futile" for that reason but is naturally going to assert preemptively reasons why other arguments for futility are without merit.

14. In conclusion, MCUSA wants to gloss over two points: first, that it is not the responsibility of Plaintiff to establish any "facts" at all at this stage of the proceeding, but only to

plead with enough specificity to establish the plausibility of Plaintiff's claim that MCUSA was one of the sponsors or planners or operators of the event from which Plaintiff was improperly excluded and that MCUSA participated in the instigation of Plaintiff's arrest; and second, Plaintiff should not be held to an impossible standard of knowing all the "facts" concerning the sponsorship of the event by MCUSA that MCUSA seems to want to require at the pleading stage. Even if Plaintiff's use of the term "joint venture" was inartful or legally inappropriate, the Court should recognize that those words are not always used as a term of art and that Plaintiff's use of them is consistent with a claim of joint sponsorship, and Plaintiff's request to file an amended complaint containing the substance (even if not all the terms) of the complaint he has submitted to the Court should not be denied, in the interest of F.R.Civ.P. 15 and Foman v. Davis, *supra*. Far from simply rehashing his prior claims regarding sponsorship, Plaintiff has submitted significant new facts concerning the sponsorship by MCUSA of the Conference he attended, sufficient to meet a plausible claim standard that would be necessary to survive a motion to dismiss under F.R.Civ.P. 12(b)(6). MCUSA has not shown and cannot possibly show at the pleading stage that it would be futile for the Court to allow Plaintiff to try to obtain a judgment against MCUSA for its breach of contract and instigation of Plaintiff's arrest, under the facts pled by Plaintiff, and indeed it does not take any flight of fancy at all to posit that MCUSA was a sponsor of the conference from which Plaintiff was forcibly removed and that MCUSA acted through the representatives who breached contract with Plaintiff and instigated his arrest. Finally, in no case has MCUSA met its burden of showing that Plaintiff's detailed new allegations regarding sponsorship and the agency of the sponsors' representatives is "frivolous" and that MCUSA deserves a dismissal "with prejudice," even if this particular motion were to be denied.

WHEREFORE, Plaintiff Bruce Leichty requests that the Court grant his motion for order authorizing filing of a First Amended Complaint as set forth in the accompanying Memorandum.

Respectfully submitted by,

/s/ Bruce Leichty
Bruce Leichty, In Pro Per
c/o Bruce Leichty, A Prof. Corp.
220 W. Grand Ave.
Escondido, CA 92025
(760) 484-2467
Fax: (951) 676-7462
leichty@sbcglobal.net

CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of December 2019, the foregoing was filed with the Clerk of the Court of the Kansas District Court using the CM/ECF system which will send notice of electronic filing to all counsel of record, including the following:

/s/ Bruce Leichty
Bruce Leichty, Plaintiff

Alan L. Rupe
Lewis Brisbois Bisgaard & Smith, LLP
1605 N. Waterfront Parkway, Ste. 150
Wichita, KS 67206
Phone: 316-609-7900
Fax: 316-462-5746
alan.rupe@lewisbrisbois.com
Attorneys for Mennonite Church USA

Scott E. Sanders
Corey M. Adams
McDonald Tinker PA
300 W. Douglas, Ste. 500
Wichita, KS 67202
Phone: 316-263-5851
Fax: 316-263-4677
ssanders@mcdonaldtinker.com
cadams@mcdonaldtinker.com
Attorneys for Bethel College [and John Thiesen sued as John Thiessen]

18

Tracy M. Hayes
Robert M. Reynolds
Sanders Warren Russell & Scheer LLP
430 Corporate Woods
9401 Indian Creek Parkway, Ste. 1250
Overland Park, KS 66210
Phone: 913-234-6100
Fax: 913-234-6199
t.hayes@swrsllp.com
r.reynolds@swrsllp.com
Attorneys for City of North Newton, Kansas

ATTORNEYS AND PARTIES NOT IMPLICATED BY MOTION:

Eric A. Van Beber
Kevin D. Weakley
Wallace Saunders
10111 W. 87th St.
Overland Park, KS 66212
Phone: 913-888-1000
Fax: 913-888-1065
evanbeber@wallacesaunders.com
kweakley@wallacesaunders.com
Attorneys for Lancaster Mennonite Historical Society [dismissed by stipulation]

Thomas P. Schult
Jennifer B. Wieland
Berkowitz Oliver LLP
2600 Grand Boulevard, Ste. 1200
Kansas City, MO 64108
Phone: 816-561-7007
Fax: 816-561-1888
tschult@berkowitzoliver.com
jwieland@berkowitzoliver.com
Attorneys for Joel Nofziger [party dismissed 10/28/2019]

Jay P. Lefkowitz
Joseph M. Sanderson
Kirkland & Ellis - New York
601 Lexington Avenue
New York, New York 10022
Phone: (212) 446-4800
Fax: (212) 446-4900
lefkowitz@kirkland.com
joseph.sanderson@kirkland.com
Attorneys for Joel Nofziger [party dismissed 10/28/2019]

Kelsey N. Frobisher
Foulston Siefkin LLP
1551 N. Waterfront Parkway, Ste. 100
Wichita, KS 67206-4466
Phone: (316) 267-6371
Fax: (866) 347-3808
kfrobisher@foulston.com
Attorney for Harvey County [party dismissed 7/19/19]

Toby Crouse
Crouse LLC
11184 Antioch, No. 253
Overland Park, KS 66210
Phone:   (913) 957-6832
tcrouse@crousellc.com
Attorney for Harvey County [party dismissed 7/19/19]