IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRUCE LIECHTY,

    Plaintiff,

v.                                                                           Case No. 19-1064-JWB

BETHEL COLLEGE;
MENNONITE CHURCH USA; and
CITY OF NORTH NEWTON, KANSAS,

    Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Plaintiff's motion to amend the complaint. (Doc. 66.) Defendant Mennonite Church USA ("MCUSA") has responded to the motion; Defendant City of North Newton ("the City") filed no response. The matter is now ripe for review. (Docs. 67, 69, 71.) For the reasons stated herein, the motion to amend is DENIED.

### I. Background

In a Memorandum and Order of October 28, 2019, the court (among other things) granted motions to dismiss by MCUSA and the City. (Doc. 63.) As to MCUSA, the court found the complaint failed to allege any facts showing that MCUSA was directly or vicariously liable for tortious acts by certain individuals named in the complaint. (*Id.* at 25-26.) As to the City, the court found that Count 4 alleging false arrest/imprisonment was barred by Plaintiff's failure to comply with K.S.A. §12-105b(d), and that Count 10 failed to state a claim for relief under 42 U.S.C. § 1983 because it did not assert facts showing the City had a policy or custom that caused the alleged false arrest. (*Id.* at 11-12.) The court noted that if Plaintiff wanted to amend the

defective claims, he would have to file a motion and provide a proposed amended complaint as required by local rules. (*Id.* at 12.)

Plaintiff has now filed a motion to amend and has submitted a proposed amended complaint. (Doc. 66.) As to MCUSA, Plaintiff argues the amendments properly allege that MCUSA is liable for the alleged breach of contract and false arrest because MCUSA was a "joint venturer" with Bethel College ("Bethel"). (Doc. 67 at 7-8.) As to the City, Plaintiff argues he has now complied with K.S.A. 12-105b(d), such that his claim for false arrest/imprisonment against the City is properly before the court, and that the proposed amended complaint adequately alleges a City custom or practice that caused his arrest. (*Id.* at 22.)

## II. Facts

The following allegations are included in the proposed amended complaint. (Doc. 66.) MCUSA is a corporation and is a citizen of Indiana. (*Id.* at 7.) Bethel is a corporation and is a citizen of Kansas. (*Id.*) Plaintiff registered for a conference called "Mennonites and the Holocaust" ("the Conference") sponsored by MCUSA and Bethel and scheduled to be held on the Bethel campus on March 16-17, 2018. MCUSA and Bethel – referred to by Plaintiff as the "Conference Organizers" – were allegedly partners or joint venturers in the Conference. (*Id.* at 9.) As a result of the joint venture, MCUSA had the right to use the land, campus and facilities of Bethel College for the days of the Conference. (*Id.*) The joint venture was achieved by the collaboration of a number of individuals, including Mark Jantzen, John Thiessen, and John Sharp. Jantzen, Thiessen, and Sharp were all "representatives" of the Conference Organizers and functioned in that capacity with respect to the planning, publicity, leadership, organization, and administration of the Conference. (*Id.* at 10.) They presented themselves to attendees, including Plaintiff, as the coordinators of the Conference and representatives of the organizers. At the time

of the Conference, Jantzen was an employee of Bethel, but his actions "made it clear that he was acting on behalf of the Conference Organizers, including Bethel and MCUSA," and he never denied that he had authority to act on behalf of the Conference Organizers. (*Id.* at 11.)  It was known throughout MCUSA prior to the Conference that MCUSA was one of the partners, joint venturers, or co-sponsors of the Conference.  The Conference was publicized ahead of time by a scholar affiliated with MCUSA who has no affiliation with Bethel. (*Id.* at 11-12.) Plaintiff learned about the Conference back in 2017 because it was announced at a biennial MCUSA conference he attended in Florida.  (*Id.* at 13.)

Plaintiff's registration for the 2018 Conference at Bethel was accepted and he was issued a badge and conference materials by the Conference Organizers, thereby making him a licensee who was allowed to participate in the Conference and be present on the Bethel campus for the duration of the Conference, absent any failure by Plaintiff to comply with any announced or written Conference rules. (*Id.* at 14-15.)  Alternatively, Plaintiff alleges that his payment and acceptance amounted to a binding contract with the Conference Organizers. (*Id.* at 15.) Plaintiff incurred travel and lodging expenses to attend the Conference. (*Id.*)  He alleges in Count One that MCUSA and Bethel breached the license or contract and are liable for damages.  (*Id.* at 32.)

When Plaintiff arrived at the Conference on March 16, 2018, he was confronted by Conference representatives because he was handing out materials about an off-campus presentation he was promoting entitled "Two Jewish Revisionists Consider the Holocaust." (*Id.* at 18-19.)  When Plaintiff insisted he had a right to distribute the materials, he was threatened with arrest and a police officer from the City was called to the scene.  Plaintiff then consented to refrain from distributing the materials in exchange for his ability to remain at the Conference.  (*Id.* at 18-20.)  At the last session of the afternoon, Plaintiff raised his hand and asked for a microphone and

began announcing a "unique opportunity to hear a revisionist Jewish perspective on the Holocaust at a nearby location that evening" when Jantzen, the moderator, called for the microphone to be cut off and used a mobile phone to call the police. (*Id.* at 22.)  With the session ended, Plaintiff began to leave the room, when he was approached by John Sharp, a "representative[] of the Conference Organizers," with whom he agreed to have lunch the next day to discuss Plaintiff's concerns. (*Id.* at 23.)  As Plaintiff was exiting the parking lot, he had "an amicable exchange" with City Police Chief Randy Jordan. (*Id.* at 23.)  Plaintiff alleges he was never told or ordered not to return to campus.

On the evening of March 16th, Jantzen allegedly told Plaintiff he was "out of the conference." (*Id.* at 25.)  The next morning, Plaintiff sought "clarification of his prospective status" by speaking to City Police Officer Stovall at the police station before returning to the Bethel campus.  (*Id.* at 26.) Stovall told Plaintiff that if college officials called the police, Plaintiff would be given the opportunity to leave under penalty of arrest if he refused.  (*Id.* at 27.)  When Plaintiff went to the campus, Conference Organizers called the police "to execute an arrest" of Plaintiff. (*Id.* at 27.)  Conference Organizers or their representatives "gave false information" to the police that Plaintiff had appeared on campus "in defiance of a prior warning … that he would be trespassing if he did." (*Id.* at 29.)  Officer Stovall told Plaintiff "he had just learned that Plaintiff had already been 'trespassed' the previous day" and accused him of not having given Stovall all the facts.  (*Id.* at 27.)  Stovall and other officers arrested Plaintiff.  (*Id.* at 28.)  Plaintiff's arrest was "at the behest of and based on information given to Officer Stovall by Conference Organizers" or college officials acting on their behalf or at their behest.  (*Id.* at 28-29.)

Count Two of the proposed amended complaint alleges that MCUSA and Bethel are liable for false arrest because, in their capacity as Conference Organizers, they intentionally and

4

maliciously deprived Plaintiff of his liberty, knowing they had no good cause to do so, by making a false or incomplete report to law enforcement officers, thereby leading to Plaintiff's arrest and imprisonment. (*Id.* at 38.) MCUSA and/or Bethel allegedly falsely reported, or MCUSA instructed Bethel to falsely report, that Plaintiff was trespassing on Bethel property. (*Id.*)

Count Three of the proposed amended complaint alleges that the City is liable for false arrest because it arrested Plaintiff for trespassing without having good cause to do so, it acted with malice, and it acted without doing a proper investigation of the facts. (*Id.* at 40-41.) It further alleges that Plaintiff has now satisfied K.S.A. § 12-105b(d), because more than 120 days have passed since Plaintiff submitted this claim to the City and it has failed to act on the claim. (*Id.* at 42.)

Count Four alleges the City is liable under 42 U.S.C. § 1983 because the City, acting under color of state law, falsely arrested Plaintiff after it "uncritically accepted the narrative of Conference Organizers" that Plaintiff was a trespasser and a security risk. (*Id.* at 43-44.) In doing so, the City followed a custom and practice "of catering to and giving a controlling voice to the security and anxiety narratives of its largest employers to the exclusion of any reasonable attempt or good faith willingness to determine whether a crime has been committed or to first hear narratives of those accused by these employers." (*Id.* at 44.) Plaintiff is allegedly "aware of one or more instances" where the City "at the behest of one of its large employers" arrested an individual engaged in constitutionally protected activity "on the strength of the narrative of the employer." (*Id.* at 45.) Plaintiff was told by a "minister and long-time resident of a nearby community" that "this is a small town and when a major employer calls the police and says someone has violated the law and should be arrested, that is what the police will do." (*Id.* at 45-46.)

### III. Standard

The rule applicable in these circumstances, Fed. R. Civ. P. 15(a)(2), provides that a party may amend its pleading only with consent of the opposing party or with the court's leave. *Id.* "The court should freely give leave when justice so requires." *Id.* A court may refuse to grant leave to amend on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies ..., or futility of amendment." *Loggins v. Norwood*, No. 18-3016-DDC-KGG, 2020 WL 224544, at *4 (D. Kan. Jan. 15, 2020) (citing *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009)).

A proposed amendment is futile if the pleading, as amended, would be subject to dismissal. *Ad Astra Recovery Servs., Inc. v. Heath,* No. 18-1145-JWB-ADM, 2019 WL 7187329, at *5 (D. Kan. Dec. 26, 2019) (citing *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999)). In making that determination, the court considers whether the amended complaint could withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* The latter rule requires a complaint to contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

### IV. Analysis

As an initial matter, Plaintiff has not complied with this court's standing order on page limitations. *See* http://www.ksd.uscourts.gov/wp-content/uploads/2018/05/attachment-1.pdf. That order limits initial briefs and replies for this type of motion to 15 and 5 pages, respectively. Plaintiff's initial brief is 23 pages and his reply brief is 18 pages. (Docs. 67, 71.) The court will consider Plaintiff's initial brief in addressing the instant motion but his reply brief will be stricken for failure to comply with the order on page limitations.

1. <u>MCUSA</u>.  Plaintiff contends his allegations of a joint venture are sufficient to plausibly show that MCUSA is liable for the claims alleged.  A joint venture in Kansas is an association of two or more persons or entities to carry out a single business enterprise for profit.  *Mod. Air Cond., Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 76, 596 P.2d 816, 823 (1979).  A joint enterprise, by contrast, is an undertaking to carry out an act or objective which is entered into by associates under circumstances where all have an equal voice in directing the conduct of the enterprise.  *Schmid v. Eslick,* 181 Kan. 997, 1002, 317 P.2d 459, 463 (1957).  In either case, Kansas law considers that each associate "is the agent of the other, and the acts of any one within the scope of the enterprise may be charged against the other." *Id.*  "In Kansas, the elements of joint ventures and joint enterprises are essentially the same, with the distinction that joint ventures apply to business ventures while joint enterprises do not. The elements of a joint enterprise are (1) an agreement, (2) a common purpose, (3) a community of interest, and (4) an equal right to a voice, accompanied by an equal right of control over the instrumentality." *Cullip ex rel. Pitts v. Domann ex rel. Domann*, 266 Kan. 550, 557, 972 P.2d 776, 783 (1999) (citing *Scott v. McGaugh*, 211 Kan. 323, 327, 506 P.2d 1155 (1973)).  *See also Siruta v. Siruta,* 301 Kan. 757, 781, 348 P.3d 549, 566 (2015); *Klose v. Wood Valley Racquet Club, Inc.,* 267 Kan. 164, 975 P.2d 1218 (1999) (noting the elements of a joint venture that permit vicarious liability).

Plaintiff's previous attempt to allege vicarious liability on MCUSA's part for actions taken by Bethel employees asserted simply that the Bethel employees were "representatives" of Conference co-sponsors Bethel and MCUSA.  (Doc. 63 at 25.)  Plaintiff attempts to remedy that deficiency by asserting that MCUSA and Bethel were joint venturers who collaborated in the planning, publicity, leadership, organization, and administration of the Conference. He alleges that Mark Jantzen, John Thiesen, and John Sharp collaborated on these matters, and he labels all three

7

as "representatives of the Conference Organizers" or the joint venture. (*Id.* at 10.)  Jantzen is elsewhere alleged to be a Bethel employee.  (*Id.* at 11.) Thiesen and Sharp are not alleged to be employees or agents of any party, although, again, Plaintiff labels all three as "representatives" of the Conference Organizers.[1] The proposed amended complaint does not identify any individual as an employee or agent of MCUSA or allege any act by such an individual.  It does not allege that MCUSA had any right to control the actions of Bethel employees. Plaintiff does allege that "[t]he joint venture had the right to use the land, campus and facilities of Bethel College for the days of the Conference."  (Doc. 66 at 9.)

Even if the amended allegations support some of the elements of a joint venture or joint enterprise, they still fail to show "an equal right to a voice, accompanied by an equal right of control over the instrumentality."  *Cullip ex rel. Pitts,* 266 Kan. at 557, 972 P.2d at 783.  That element is critical here because the claims involve the exclusion of Plaintiff from the Bethel premises and an assertion that he was trespassing on Bethel property.  Plaintiff alleges no facts to suggest that MCUSA was given an equal right with Bethel to exclude or revoke permission for individuals to be on the Bethel campus. Even if MCUSA and Bethel agreed to conduct the Conference on Bethel property and to jointly use the property for that purpose, there is no suggestion that MCUSA was given any right to exclude or revoke permission for attendees or campus visitors to be on the Bethel premises. *Cf. Klose v. Wood Valley Racquet Club, Inc*., 267 Kan. 164, 172, 975 P.2d 1218, 1225 (1999) (vicarious liability for injury did not apply where two joint venturers did not have control over the premises of a third joint venturer on whose premises the injury occurred); *Long v. Houser,* ___P.3d___, 2020 WL 111490, at *2 (Kan. Ct. App. Jan. 10, 2020) (vicarious liability applies in relationships, including joint enterprises, where a party has

---

[1] Plaintiff's initial complaint alleged that Thiesen was an employee of Bethel. (Doc. 1 at 11.)  The proposed amended complaint omits that allegation.  (Doc. 66 at 20.)

sufficient control and responsibility for the actions of others to justify holding them liable.) Nor has Plaintiff alleged any facts to show that the individual who transmitted an allegedly false claim of trespassing to the police did so under circumstances that make MCUSA responsible for that conduct.[2] *See Restatement of the Law of Agency (Third)* § 7.03 (a principal may be directly or vicariously liable to third party harmed by an agent's conduct.) Absent such allegations, Plaintiff has still not plausibly alleged that MCUSA is liable for the alleged breach of contract or false arrest.

2. City of North Newton.

A. False arrest. The court previously granted the City's motion to dismiss this claim based on Plaintiff's failure to satisfy the notice-of-claim requirement in K.S.A. 12-105b(d). (Doc. 63 at 8-9.) Plaintiff argues he has now satisfied the statute because he filed an administrative claim with the City on July 17, 2019, and more than 120 days have elapsed without a denial of the claim by the City. *See* K.S.A. 12-105b(d) ("A claim is deemed denied if the municipality fails to approve the claim … within 120 days….") He therefore seeks leave to amend the complaint to allege compliance with K.S.A. 12-105b(d).

Although the City has not responded to this motion, the court addresses the argument because compliance with K.S.A. 12-105b is considered jurisdictional in nature. *See Whaley v. Sharp,* 301 Kan. 192, 197, 343 P.3d 63, 67 (2014) (compliance with K.S.A. 12-105b is required before a court has subject matter jurisdiction over a municipal tort claim). Moreover, courts have strictly applied the statutory requirement that "no action shall be commenced until after" satisfaction of the notice requirement. K.S.A. 12-105b(d). Thus, the Tenth Circuit "has concluded

---

[2] Plaintiff now alleges that his arrest was based on information given to Officer Stovall "by Conference Organizers or one of them, or College officials acting on behalf of or at the behest of Conference Organizers or one of them." (Doc. 66 at 28-29.) These allegations, which are both vague and conclusory, fail to show a plausible factual basis for finding MCUSA directly or vicariously responsible for the reporting of false information to the officer.

9

that allowing plaintiffs to file suit 'before exhausting their administrative remedies and then curing the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system.'" *Debbrecht v. City of Haysville, Kan.,* No. 10-1419-JAR-DJW, 2012 WL 1080527, at *6 (D. Kan. Feb. 7, 2012) (quoting *Duplan v. Harper,* 188 F.3d 1195, 1199 (10th Cir. 1999)). The court therefore concludes the request to amend the complaint to allege satisfaction of 12-105b should be denied on grounds of futility, as the proposed amendment does not overcome the jurisdictional defect of having initiated this suit prior to satisfaction of the statute. *See Wanjiku v. Johnson Cty.,* 173 F. Supp. 3d 1217, 1237 (D. Kan. 2016) (denying opportunity to amend complaint to allege satisfaction of 12-105b because court lacks subject matter jurisdiction).

B. 42 U.S.C. § 1983. The court likewise denies leave to amend the § 1983 claim against the City because Plaintiff's proposed amendment is plainly inadequate to state a claim. The amended allegation of a City custom or practice that caused Plaintiff's arrest is vague and unsupported by any non-conclusory allegations of fact. It alleges "a custom and practice … of catering to and giving a controlling voice to the security and anxiety narratives of its largest employers to the exclusion of any reasonable attempt or good faith willingness to determine whether a crime has been committed or to first hear narratives of those accused by these employers." (Doc. 66 at 44.) The alleged custom or practice is full of vague terms – "catering to," "anxiety narratives," "giving a controlling voice," "reasonable attempt," "hear[ing] narratives" – that are unsupported by concrete facts. These types of "threadbare recitals of the elements of a cause of action" are insufficient to state a plausible claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The complaint contains no facts showing any other instance of the alleged practice causing a deprivation of constitutional rights or any facts showing the City was aware of such a practice.

10

The mere fact that Officer Stovall (according to the proposed complaint) believed Bethel's assertions rather than Plaintiff's, combined with a conclusory allegation that this resulted from a City custom or practice, does not suffice. Nor do Plaintiff's assurances that he "is aware of one or more other instances" of the custom being employed or the belief of a "long-time resident of a nearby community" that the City has such a practice provide any factual support for the claim. (Doc. 66 at 45-46.) *See Mocek v. City of Albuquerque,* 813 F.3d 912, 934 (10th Cir. 2015) ("Aside from conclusory statements, no allegations in the complaint give rise to an inference that the municipality itself established a deliberate policy or custom that caused [the plaintiff's] injuries.") "Consequently, the complaint 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

### V. Conclusion

Plaintiff's motion for leave to amend (Doc. 66) is DENIED. The clerk is directed to STRIKE Plaintiff's reply brief (Doc. 71) from the record.

IT IS SO ORDERED this 27th day of February, 2020.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE