IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

BRUCE LEICHTY,                              )
                                            )
                    Plaintiff,              )
                                            )   No. 6:19-cv-01064-JWB-KGG
v.                                          )
                                            )
BETHEL COLLEGE,                             )   Final Pretrial Conference: 4/15/2021
                                            )   Time:  2 p.m.
                                            )   Magistrate Judge Kenneth G. Gale
                                            )
                                            )   COMPLAINT FILED: 3/15/2019
                              .             )   DISCOVERY CUTOFF: 3/26/2021
                                            )
                    Defendant.              )
_____)


REPLY OF PLAINTIFF TO OPPOSITION TO MOTION
FOR MODIFICATION OF SCHEDULING ORDER AND RELATED RELIEF

Plaintiff Bruce Leichty (hereinafter "Plaintiff" or "Leichty"), Pro Se, replies as follows to the Memorandum in Opposition to Plaintiff's Motion filed by Defendant Bethel College ("Defendant" or "College") (Docket No. 136) submitted in response to Plaintiff's motion for modification of the scheduling order and for related relief (Docket No. 129).   This Reply is supported by the Supplemental Declaration of Bruce Leichty ("Supp. Dec.") and the Request to Strike filed concurrently herewith.[1]

1. Defendant wants the Court to believe that Plaintiff is seeking a request for modification of the Scheduling Order in this case only because of Plaintiff's own dereliction and delay; however, it is clear in the Motion that Plaintiff is in the position of needing more discovery–very specifically delimited--only because of Defendant's own absence of timely responses and because of late-revealed apparent spoliation of evidence after conflicting responses, whether characterized as innocent or willful, and other factors beyond Plaintiff's control.   Plaintiff has been diligent at all times after Defendant's initial responses were received 11/7/20 in seeking compliant responses.

2. Plaintiff acknowledges and has already acknowledged that at the time of the Scheduling Order he underestimated the number of depositions that he would need to take, where an institutional defendant was involved and so many different employees or representatives of the College involved.   However, Plaintiff is also mindful of the fact that this Court stated during the scheduling conference that a limit on the number of depositions was largely up to the parties. Had Plaintiff received the documents he should have received on 11/7/20 (including draft cabinet

---

[1] Plaintiff believes that even though this motion is being heard by Magistrate Judge Gale, he may be bound by the provisions of the Standing Order of Judge Broomes, which would limit this Reply Memo to five (5) pages.  Paragraph 1 of the Standing Order explicitly applies to all cases assigned to Judge Broomes, even if Para. 2 applicable here is not as explicit, but Plaintiff believes he cannot take the chance.  If the limits do not apply, or even if they do, Plaintiff respectfully seeks oral argument per Local Rule 7.2 since he is hard pressed to respond to all of Defendant's assertions – in a multi-faceted Motion -- in one-third the space allowed to College.

1

minutes that are now said to be destroyed, and e-mails that revealed new witnesses or the role of certain other disclosed witnesses), he would have been able to either avoid some depositions entirely, or at least by early December 2020[2]--instead of early March 2021--identify the need for more than four additional depositions, a modification already informally approved by this Court.

3. Plaintiff also respectfully reiterates that where he has asked for leave to take more depositions in his Motion, these are all projected to be short depositions; and after the Court's order of March 23, 2021 (Docket No. 135) Defendant also has the ability (notwithstanding Plaintiff's own wishes and interests) to require that they all be conducted remotely. The burden on Defendant of such depositions--particularly when Plaintiff believes based on his due process rights that he would have the option of instead subpoenaing the individuals to trial--is minimal.

4. Defendant even wants to fault Plaintiff for not having done more after the death of an important witness which he was informed of only on March 2, a week before this motion was filed. Plaintiff was not sitting on his hands after the 3/2 notice of the death of City of Newton police officer Levi Minkevitch, but he knew he had to make a trip to and from Kansas to take the depositions that remained on calendar (Mar. 10-16), and he also believed he needed to query the unusual disclaimer made in the wake of this death: that City of Newton had no records pertaining to Plaintiff. As alluded to in his initial declaration and as further detailed in the accompanying Supp.Dec., he did just that. Defendant apparently believes that Plaintiff was relegated to

---

[2] Defendant's allegations that Plaintiff unduly delayed in sending an initial "golden rule letter" fails to account for the fact that Plaintiff took seven depositions beginning the day after documents were due 11/7/20, did not return (and could not have returned) to his office in California until mid-November, and that a major holiday season then followed during which it was reasonable to expect that the multiple demands in Plaintiff's own law practice would have to be met along with needs in this case (Plaintiff also conducted a deposition in this case 12/14). Even so, the initial duty to comply fell on Defendant, not on Plaintiff to mitigate. Plaintiff acted timely to identify defects in the responses, obtain extensions, and review responses, and his inability to forecast that a number of disclosures made in mid-February to early March would seriously handicap him should not now lead to a conclusion that HE was the party derelict.

subpoenaing a supposedly nonexistent file as a consequence of this death.   Defendant's expectations of an out-of-state "in pro per" Plaintiff in these various regards are unreasonable.

5.  By now, there is even more reason for modification of the Scheduling Order, since the discovery deadline established in the Scheduling Order (3/26) has come and gone without College having provided responses that *it agreed to provide* by 3/26, namely to interrogatories relating to calls and texts during the academic conference that is the subject of the action.  This was agreed to at the informal discovery conference held with this Court on 3/2/21   Supp. Dec..

6.  Plaintiff believes that his initial presentation to the Court was clear on how it happened that late compliance by Defendant left him in the position of having to take more depositions, but responds specifically to some of Defendant's contentions as follows:

–Defendant is mischaracterizing Plaintiff's argument regarding the "cabinet meeting." Plaintiff knew from e-mails that there was apparently discussion of him at such a meeting on the eve of the conference, 3/15/18, although President Gering denied having heard of Plaintiff before the conference.  After Dr. Milliman confirmed 12/14/20 that discussion had taken place at a meeting attended by Gering, it took another two months until the College disclosed that the cabinet minutes provided to Plaintiff (as proof of absence of any decision) were not the original minutes created, i.e. that there were draft minutes available to participants.  Gering is now known as the person who called police to arrest Plaintiff, and the role of the cabinet is relevant.  His lack of memory or prevarication creates the need to question all those who attended that meeting.

–One of the attendees was an ex-vice-president Eric Schrag, who is shown exactly a week later (cabinet meetings are held on the same day every week) engaged in written communication about Plaintiff with an employee in his department.  Neither the correspondence or parties were timely disclosed to Plaintiff, and it is irrelevant in the context of the legitimate scope of inquiry of Plaintiff that the communication occurred after the conclusion of the Holocaust conference.

–Plaintiff has never contended that the name of Renae Stucky was not disclosed early in discovery. However, her e-mail regarding the Holocaust Conference, and specifically her concern for security of registration materials (implying some supervisorial role) was not disclosed until the 11th hour even though it was duly requested, so that Plaintiff could consider deposing her.

–It was not until a production was finally made of duly-requested board member correspondence, again within days before this motion was filed, that Plaintiff finally knew with a certainty that College was contending that this member had not communicated to anyone else about Plaintiff's post-conference messages to him. That production was owed in November and not made until late February. Because it would have been unusual for a board member to not have further processed receipt of Plaintiff's request, it was not till February that Plaintiff had to conclude that Flickinger's communications with other College employees (probably Gering) were likely by phone. Time of the messages is inconsequential given a legitimate scope of inquiry into the motivation for breach and ouster and what a witness was/may have been told about the arrest.

–As to the death of Officer Minkevitch, Defendant is twisting out of context Plaintiff's citation of the case <u>Sithon Mar Co. v. Holiday Manston</u>, No. CIV A 96-2262-KHV, 1999 WL 66216, at *2 (D. Kan. 2/8/1999). Plaintiff merely mentioned that case as an example of a case construing Local Rule 30.3 which discusses "presumptive good cause" for altering a deadline on depositions on certain grounds admittedly not present here. Plaintiff was not urging a wooden application of either the Rule or the holding of a case, but merely sought to highlight the policy underlying both the case and the rule when a witness who would have otherwise been deposed suddenly is not available. No Rule covers exactly the situation now confronted by Plaintiff, and so the fact that Officer Minkevitch had not "voluntarily" agreed to appear for trial becomes irrelevant: he was duly subpoenaed, but just weeks away from the discovery deadline Plaintiff was notified that he had died and moreover was given no ready recourse to related data.

7. The exhibits attached to Defendant's Memorandum should be disregarded, per the accompanying Request to Strike. These evidentiary documents are objectionable hearsay and not properly submitted into evidence, and there are portions of the Jantzen and police narratives and other e-mails that are flatly inaccurate and will be disputed, and indeed some already were the subject of cross-examination, and clearly these are inserted for the purpose of prejudicing the Court against Plaintiff's modification request; and they would cause prejudice unless stricken.

8. In sum, after all of Defendant's arguments are duly considered, Plaintiff is has shown that leaving the Scheduling Order and discovery deadline in place and preventing Plaintiff from taking additional targeted depositions would work an injustice to him despite his diligence, and would reward either dereliction or tardiness by Defendant, and therefore there is good cause to modify the Order.  Pfeiffer v. Eagle Mfg. Co., 137 F.R.D. 352, 355 (D. Kan. 1991); McCormick v. Medicalodges, Inc., No. CIV A 05-2429-KHV, 2007 WL 471127 at *2 (D. Kan. 2/8/2007). As the Court knows based on several discovery conferences, based on the issuance of an Order Compelling Production regarding student records, and based on Plaintiff's prior declaration, Plaintiff has acted responsibly and in good faith throughout, certainly with nothing akin to "cavalier disregard," and there is a reasonable basis for everything he is requesting.  Putnam v. Morris, 833 F.2d 903, 095 (10th Cir. 1987). He does not rely on lack of prejudice to Defendant even though he submits there is none: it is instead Defendant that caused prejudice to Plaintiff.

9. Defendant is itself stipulating to modification, including to depositions of the two witnesses previously scheduled, as well as to a clause that Defendant believes serves its interests (time for supplementing Disclosures).  The further modification sought by Plaintiff is modest.

WHEREFORE, Plaintiff requests that he be granted the relief requested in his Motion, for good cause, and subject only to such restrictions (if any) as will not impair his ability complete the legitimate discovery that he could have already completed but for Defendant's untimely action.

                Respectfully submitted by,

                /s/ Bruce Leichty

                Bruce Leichty, In Pro Per
                c/o Bruce Leichty, A Prof. Corp.
                220 W. Grand Ave.
                Escondido, CA 92025
                (760) 484-2467
                Fax: (951) 676-7462
                leichty@sbcglobal.net

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March 2021 the foregoing was filed with the Clerk of the Court of the Kansas District Court using the CM/ECF system which will send notice of electronic filing to all counsel of record, including the following:

                /s/ Bruce Leichty
                Bruce Leichty, Plaintiff

Scott E. Sanders
Corey M. Adams
McDonald Tinker PA
300 W. Douglas, Ste. 500
Wichita, KS 67202
Phone: 316-263-5851
Fax: 316-263-4677
ssanders@mcdonaldtinker.com
cadams@mcdonaldtinker.com
Attorneys for Bethel College